IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| THE TRUSTEES OF<br>PURDUE UNIVERSITY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS N.V.,<br>STMICROELECTRONICS<br>INTERNATIONAL N.V., and<br>STMICROELECTRONICS, INC.,<br><br>　　　　Defendants. | Civil Action No. 6:21-cv-00727-ADA<br><br>JURY TRIAL DEMAND |

**PURDUE'S RESPONSE IN OPPOSITION TO
STNV'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff The Trustees of Purdue University ("Purdue") files this Response to the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant STMicroelectronics N.V. ("STNV").

**I.      INTRODUCTION**

To defeat STNV's motion to dismiss, Purdue need only make a *prima facie* case that this Court has personal jurisdiction over STNV. That burden is easily met here.

Having knowingly placed the accused products into established distribution channels for sale throughout the United States—including in Texas—STNV is subject to this Court's specific jurisdiction at least under a stream of commerce theory. This Court's exercise of personal jurisdiction over STNV is reasonable and fair: STNV cannot direct its sales efforts to the entire United States and then be surprised to be haled into court in the nation's second biggest state.

1

In the alternative, this Court has jurisdiction over STNV under Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) allows this Court to exercise specific jurisdiction over a foreign defendant that has minimum contacts with the United States but is not subject to jurisdiction in any particular state. When a complaint asserts jurisdiction under the rule—as Purdue's First Amended Complaint did here—the defendant bears the burden to show that the suit would be possible in another state. If the defendant fails to do so in its motion to dismiss, it waives any objection to the rule's application and allows jurisdiction to be based on its contacts nationwide.

STNV clearly has minimum contacts with the United States as a whole. And despite STNV's undeniable contacts with STMicroelectronics, Inc. ("ST-INC"), its Texas-based subsidiary, STNV does not concede that this suit could proceed against it even in Texas. Because STNV has at least minimum national contacts but has refused to identify another jurisdiction where this suit is possible, this Court also has personal jurisdiction over STNV under Rule 4(k)(2).

**II.    LEGAL STANDARD**

For patent cases, Federal Circuit law governs personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). Where, as here, there has not been any jurisdictional discovery or an evidentiary hearing regarding jurisdiction, the plaintiff need only make a *prima facie* showing. *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). A district court must accept uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in plaintiff's favor. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). Once the plaintiff makes a prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A. Rule 4(k)(1)(A)

"Analysis of personal jurisdiction in federal court begins with Rule 4 of the Federal Rules of Civil Procedure." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009). Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), personal jurisdiction is proper where the state long-arm statute permits service of process on the defendant and the requirements of due process are satisfied. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). Because the Texas long-arm statute has been interpreted as extending to the limit of due process, these two inquiries are the same for district courts in Texas. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). The Supreme Court has articulated a two-pronged test to determine whether the requirements of due process are satisfied: (1) the nonresident must have "minimum contacts" with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Breckenridge*, 444 F.3d at 1361. The due process inquiry varies based on the two types of personal jurisdiction that may be exercised: general jurisdiction or specific jurisdiction.

"The Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff has the burden to show minimum contacts exist under the first two prongs, but the defendant has the burden of proving the exercise of jurisdiction would be unreasonable under the third. *Elecs. For Imaging Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). The Federal Circuit has counseled, however, that the exercise of jurisdiction is unreasonable

only in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994).

The Federal Circuit has also applied the "stream of commerce" theory born in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) and reaffirmed in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987). *See Beverly Hills Fan*, 21 F.3d at 1566. In *Asahi*, two four-justice pluralities offered slightly different versions of this theory as a means of establishing the existence of minimum contacts. *Id.* Justice Brennan, supported by three other justices, argued jurisdiction could be validly exercised over a defendant who placed goods into the stream of commerce so long as the defendant could foresee the goods might end up in the forum state. *See Beverly Hills Fan*, 21 F.3d at 1566 (citing *Asahi*, 480 U.S. at 117). Justice O'Connor, also supported by three other justices, argued there must be "more than the mere act of placing a product in the stream of commerce" and endorsed the additional requirement of "an action of the defendant purposefully directed toward the forum State." *Id.* (quoting *Asahi*, 480 U.S. at 112 (emphasis removed)).

### B. Rule 4(k)(2)

Federal Rule of Civil Procedure 4(k)(2) allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (internal quotation marks omitted); *see* FED. R. CIV. P. 4(k)(2). "The third requirement under Rule 4(k)(2)—the due process analysis—contemplates a defendant's contacts

with the entire United States, as opposed to the state in which the district court sits." *M-I Drilling*, 890 F.3d at 999. "Rule 4(k)(2), therefore, serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Id.*

### III. THIS COURT HAS PERSONAL JURISDICTION OVER STNV

#### A. This Court has specific jurisdiction under a stream of commerce theory.

This Court has specific jurisdiction[1] over STNV under at least the "stream of commerce" theory of personal jurisdiction.

#### 1. STNV puts the accused products into the stream of commerce, expecting that they will be sold in Texas.

The evidence shows that STNV's activities abroad and in the U.S. are part of its global supply chain through which STNV places the accused products into established distribution channels, expecting that the products will ultimately be sold throughout the United States, including in Texas. STNV's manufacture of accused products and use of its U.S. subsidiary to sell them here easily support personal jurisdiction over STNV. *Nuance Commn'cs*, 626 F.3d at 1231 (district court erred in dismissing Russian corporation for lack of personal jurisdiction where the Russian corporation had intentionally set up a U.S. sister corporation to act as its distributor of the accused software product); *Absolute Software, Inc. v. World Computer Sec. Corp.*, No. A-09-CA-142-LY, 2009 WL 10678335, at *6 (W.D. Tex. Dec. 2, 2009) (court properly exercised specific jurisdiction over foreign defendant who, through its U.S. subsidiary, sold the infringing product in the forum).

As detailed in Purdue's First Amended Complaint (FAC ¶¶ 6-68), STNV manufactures the accused products overseas. STNV is also responsible for product design, development, testing,

---

[1] Purdue does not contend that the Court has general jurisdiction over STNV.

and quality control. STNV then uses its distribution network to ship the products to the U.S.; its wholly owned subsidiary STMicroelectronics International N.V. ships the products to STNV's wholly owned subsidiary ST-INC in the U.S. The accused products are then sold nationwide to customers through national distributors, retailers and other intermediaries, including in Texas and specifically in this District.

And STNV knows that its products are sold throughout the United States. As the July 2021 Company Presentation makes clear, STNV touts its fourteen offices located throughout the United States. (FAC ¶¶ 43-45.) And that the accused products are STNV's products is further shown by the copyright on their packaging, manuals, and other product information. (FAC ¶¶ 22, 26-28, 46-48.)

Nor is there any doubt that STNV knows that its products are available in Texas specifically, especially since it has one of its "Main Sales & Marking" offices in this District. (FAC ¶¶ 29, 42-43, 54.) In light of the July 2021 Company Presentation, it is unreasonable for STNV to feign ignorance of sales of its products in Texas. *See Icon Health & Fitness v. Horizon Fitness, Inc.*, No. 5:08-cv-26, 2009 WL 1025467, *13 (E.D. Tex. Apr. 16, 2009) (In light of evidence of sales of defendant's products in Texas, court found that defendant's argument that "it is not aware whether its products are sold in a particular state cannot stand.").

Even without the July 2021 Company Presentation, given that "the State of Texas has the second largest population of any state and three of the ten most populated cities," STNV must know the shipping of its products to the United States for distribution through national retailers would cause its products to be sold in Texas. *See Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*, No. 4:19-CV-696, 2020 WL 569815, at *7 (E.D. Tex. Feb. 5, 2020). In *Largan Precision*, where defendant manufactured lenses overseas and intended that they be sold in the United States,

this Court held it had "no problem concluding that [defendant] could have expected that those products would be sold in Texas." *Id.* at *7 ("In light of resolving the controverted factual allegations in favor of [plaintiff], it is only reasonable to assume that [defendant] knew, or reasonably could have foreseen, that [products incorporating its lenses] would be sold in the State of Texas."). Where accused products are sold by national distributors, retailers and other intermediaries, including in Texas, courts routinely hold that distribution channels have been established to sell the infringing products in Texas. *See AGIS Software Dev. LLC v. HTC Corp.*, No. 2:17-CV-00514-JRG, 2018 WL 4680558, at *5 (E.D. Tex. Sept. 28, 2018) (Court found jurisdiction over HTC in Taiwan where "HTC sells its products via an established distribution channel through HTC America with knowledge, or at least reasonable foreseeability, that its products will end up in Texas."); *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 119 (E.D. Tex. 2009) (plaintiff made prima facie case where defendant used subsidiary to sell products in the U.S. and those products were available for sale in Texas, leading the court to conclude that defendant either "knew or should have known that its products were being marketed and sold in Texas").

   **2. Specific jurisdiction exists under the purposeful direction standard.**

STNV contends that this Court does not have jurisdiction because STNV has not "purposefully directed" its activities at Texas residents. (Motion at 6.) The Federal Circuit has not adopted either side of the *Asahi* Court's split about whether "[m]ere placement in the stream of commerce is sufficient," or whether additional evidence of purposeful direction toward the forum is needed. *See Largan Precision Co.*, 2020 WL 569815, at *5-*6. In any event, Purdue has made a *prima facie* case of jurisdiction under the "purposeful direction" formulation of the test as well.

Additionally, the evidence here is sufficient to show STNV's intent to direct its products to Texas customers in this forum. The sales do not occur through happenstance. Rather, they are

7

part of STNV's concerted, admitted efforts to capture a larger share of the U.S. market. Given Texas' population, and thus outsized share of the U.S. market, STNV's efforts to sell its products in the United States also show that it purposefully directed its activities at this forum's residents. Under the case law cited above, this evidence establishes a *prima facie* case of jurisdiction under either stream of commerce theory.

### 3.  The alleged injuries arise out of or relate to the claims in this action.

Purdue has also sufficiently established that STNV's activities arise out of or relate to the claims in this action. *See Burger King*, 471 U.S. at 472, n. 15. Where the plaintiff alleges that the defendant "purposefully shipped the accused [product] into [the forum] through an established distribution channel" and the "cause of action for patent infringement is alleged to arise out of these activities," "[n]o more is usually required to establish specific jurisdiction." *Beverly Hills Fan*, 21 F.3d at 1565.

STNV argues that the litigation does not result from alleged injuries that rise out of relate to activities STNV purposefully directed at the forum. This is nonsense. Accepted as true, Purdue alleges that the accused products ended up in this forum because STNV directed them here. Ample evidence supports this allegation. This is enough to make a *prima facie* case that the claims of injury arise out of or relate to STNV's activities sending accused products to this forum. *See Absolute Software*, 2009 WL 10678335, at *6 (court properly exercised specific jurisdiction over foreign defendant who, through its U.S. subsidiary, sold the infringing product in the forum).

### 4.  STNV has not shown that proceeding in this Court would offend traditional notions of fair play and substantial justice.

The exercise of personal jurisdiction over STNV is also reasonable and fair, and trying Purdue's claims against STNV in this Court will not offend traditional notions of fair play and substantial justice. *See Asahi*, 480 U.S. at 113. STNV has not met its burden to make a "compelling

case" otherwise. *See Burger King*, 471 U.S. at 477. Indeed, STNV provides no evidence that it would be substantially burdened by having to defend this case in Texas over and above the general burdens of litigating in a foreign country. It is well recognized that modern communication and transportation have made defending a lawsuit in a foreign tribunal less burdensome. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980). The State of Texas has a significant interest in preventing patent infringement within its borders. *See Beverly Hills Fan*, 21 F.3d at 1568 ("[The forum state] has an interest in discouraging injuries that occur within the state."). Further, Texas has an interest in furthering commerce and scientific development, especially within its technology sector, which is promoted by patent laws. Ultimately, this is not one of the rare cases where exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. The State of Texas's interests are not so attenuated that they are clearly outweighed by any burden STNV would suffer by having to defend this case in Texas.

    **B. The jurisdictional allegations, together with the evidence, support personal jurisdiction over STNV.**

STNV argues that Purdue "alleges no facts supporting" personal jurisdictional over STNV. (Motion at 10.) In connection with this 12(b)(2) motion, the Court considers the allegations pled together with the evidence presented. *See Beverly Hills Fan*, 21 F.3d at 1566. Purdue has not only alleged a stream of commerce theory (FAC ¶¶ 23, 26, 66), but it has presented specific evidence of that theory. This is sufficient to exercise jurisdiction over STNV. *See Monroe v. ERINYS*, No. 4"07-cv-03528, 2008 WL 8082759, at *2 (S.D. Tex. Apr. 29, 2008) (jurisdiction proper where plaintiff, "offered uncontroverted evidence indicating that Defendant's contacts are significantly more extensive than Defendant suggests").

    **C. This Court has specific jurisdiction under an agency theory.**

The United States Supreme Court has recognized that agency relationships are relevant to the existence of specific jurisdiction: "A corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135, n. 13 (2014). As opposed to the alter ego theory, the agency theory does not treat the parent and subsidiary as one entity, "but rather attributes specific acts to the parent because of the parent's authorization of those acts." *Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009). "The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length." *Id.* Finally, the Court need not find that corporate formalities were violated to exercise specific jurisdiction based on the ties between entities. *See, e.g., Oakley, Inc. v. Jofa AB*, 287 F. Supp. 2d 1111, 1116 (C.D. Cal. 2003) (denying foreign holding company's motion to dismiss for lack of personal jurisdiction where the company acted in concert with its subsidiaries to serve the market of the forum state by designing the infringing products and encouraging the sale and distribution of those products).

Purdue alleges that STNV directs or controls the making, shipment, and sale of the accused products in the United States, including in Texas, through its distribution channels, including its United States based affiliates. (FAC ¶¶ 6, 9-18, 26, 29-35, 43-56, 68.) These allegations are borne out in the evidence. For instance, STNV's recent Form 20-F describes a "global business," with STNV driving and promoting the sales of its products worldwide, including the United States and Texas, a primary geographical market. (FAC ¶¶ 9-12, 16, 19, 21-24.) STNV specifically claims it uses its headquarters to help local offices drive global sales. (FAC ¶¶ 9-12, 15, 19, 21-23, 29-35, 42-54.) By not controverting Purdue's allegations and supporting evidence, STNV acknowledges that its U.S. subsidiary, ST-INC, sells products in the U.S. under the common brand name "ST."

Indeed, there appears to be little or no distinction between STNV and ST-INC in branding or marketing of the accused products. (FAC ¶¶ 19, 22, 46-48.) ST-INC thus operates in concert with and at STNV's direction to sell the accused products in this country.

These facts support the finding of an agency relationship, where ST-INC in the United States operates at less than arm's length with STNV, and at STNV's direction to sell products here. *Cephalon*, 629 F. Supp. 2d at 348 (subsidiary's sales activities were attributed to the parent under the agency theory where parties had nearer-than-arm's-length relationship and operated in concert with respect to drug sales); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 531 (5th Cir. 2014) (finding that subsidiary acted as parent's agent where parent capitalized, staffed, and had business dealings with subsidiary, and subsidiary held itself out to be same entity as parent). Where such evidence of an agency relationship is alleged, even if it "may not be sufficient to succeed on agency theory at later stages in litigation, it is sufficient to survive a motion to dismiss . . . ." *British Telecomms. PLC v. . IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 410 (D. Del. 2019).

### D. STNV's contacts nationwide support jurisdiction under Rule 4(k)(2).

Even if STNV's contacts with Texas could not confer specific jurisdiction, STNV clearly has minimum contacts with the United States. STNV's arguments otherwise are belied by the evidence, especially evidence that STNV files with the U.S. Securities and Exchange Commission. (FAC ¶¶ 6, 9-20, 22, 46-48.) Evidence that STNV's subsidiary overseas ships products to another subsidiary in the United States, that STNV uses its subsidiaries to distribute products through national distributors, retailers and other intermediaries, and that STNV touts those U.S. sales to its investors through SEC filings, further demonstrate STNV's minimum contacts with the United States.

### 1. Purdue's claim arises under federal law.

Purdue sues STNV for patent infringement pursuant to 35 U.S.C. § 271. (FAC ¶ 65.) Federal district courts have "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. . . ." 28 U.S.C. § 1338(a); *see also Kroll v. Finnerty*, 242 F.3d 1359, 1363 (Fed. Cir. 2001). The first requirement for applying Rule 4(k)(2) is met.

### 2. STNV is not subject to jurisdiction in any state's courts of general jurisdiction.

Despite STNV's clear contacts with Texas, where ST-INC is headquartered, STNV does not concede that Texas would have jurisdiction. Nor does STNV concede New York would have jurisdiction, even though "[s]hare of STNV are listed and traded on the New York Stock Exchange, and STNV maintains a registered agent in the State of New York." (ECF No. 38-1 (Tuinfort Decl.) ¶ 6.) Instead, STNV both contends that it is not subject to personal jurisdiction in a Texas forum and does not assert that jurisdiction in any other state forum would be proper. (Motion at 4-6, 10.) Where a defendant contends that it cannot be sued in the forum state and has not named another state in which it would be subject to jurisdiction, the Federal Circuit has found that, for purposes of Rule 4(k)(2), the plaintiff has made a *prima facie* showing sufficient to show that the defendant is not subject to any state's courts of general jurisdiction.[2] *Touchcom*, 574 F.3d at 1415; *Ceats, Inc. v. Cont'l Airlines*, No. 6:10CV120, 2011 WL 13137131, at *3-4 (E.D. Tex. Mar. 29, 2011) (criticizing defendant's "gamesmanship" of refusing to concede jurisdiction in any state, and thus finding jurisdiction under Rule 4(k)(2) appropriate); *Bluestone Innovations Texas, L.L.C. v.*

---

[2] STNV cannot use its reply brief to concede that the suit could proceed in another forum, for instance New York, as that argument would be deemed waived. *See Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1273 (Fed. Cir. 2002).

*Formosa Epitaxy Inc.*, 822 F. Supp. 2d 657, 664 (E.D. Tex. 2011) (where plaintiff presented sufficient evidence to make a *prima facie* showing that defendant delivered its allegedly infringing products into the stream of commerce expecting they would be purchased in the United States, but evidence could not establish contacts with Texas, court held it had personal jurisdiction under Rule 4(k)(2).)The second requirement to apply Rule 4(k)(2) is satisfied.

### 3. Exercising jurisdiction over STNV would comport with due process.

In deciding whether due process permits the exercise of personal jurisdiction under Rule 4(k)(2), a district court considers whether "(1) defendant has purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair." *Touchcom*, 574 F.3d at 1415 (internal quotation marks omitted). However, the due process analysis under Rule 4(k)(2) differs somewhat from the analysis under Rule 4(k)(1), because the district court considers the defendant's contacts with the entire nation as opposed to an individual forum state.

The final consideration of whether jurisdiction is consistent with the United States Constitution and laws—whether personal jurisdiction is reasonable—involves five factors. STNV is based in Amsterdam, The Netherlands, where the majority of its witnesses and documents may likely be located. (ECF No. 38-1 (Tuinfort Decl.) at 2.) Thus, the burden on STNV to defend the case in the United States will be high. The United States has a great interest in adjudicating this dispute, which involves enforcement of several United States patents. Purdue has a strong interest in obtaining convenient and effective relief. Without jurisdiction in the United States, Purdue will have no forum in which a jury could decide its claims. Adjudicating the claims in this particular forum will also work in the interstate judicial system's interest in efficient resolution of the controversy as Purdue's claims against the non-moving Defendants are proceeding here. Finally,

the United States has a strong interest in the enforcement of the rights conveyed by its issued patents. Accordingly, the first factor weighs against jurisdiction, but the remainder of the factors favor jurisdiction. Accordingly, personal jurisdiction over STNV is reasonable.

On balance, this is not one of those "rare cases" in which fair play and substantial justice defeat the reasonableness of a U.S. court exercising personal jurisdiction over a defendant. Accordingly, STNV has not met its burden to present a compelling case that the assertion of personal jurisdiction over it is unreasonable or unfair under the five due process factors.

### E. Alternatively, jurisdictional discovery is warranted.

The jurisdictional facts raised herein are more than sufficient to establish a *prima facie* showing that STNV is subject to personal jurisdiction in this forum. Moreover, STNV has not (and cannot) meet its burden to present a compelling case that jurisdiction is unreasonable and incompatible with "fair play and substantial justice." Accordingly, personal jurisdiction is proper here. To the extent the Court disagrees, jurisdictional discovery is appropriate if a party demonstrates factual issues related to jurisdictional allegations that it can supplement through discovery. *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005). This Court has held that "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts … the plaintiff's right to conduct jurisdictional discovery should be sustained." *Next Techs., Inc. v. ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)). Jurisdictional discovery is especially appropriate when, as here, the movant relies heavily on declaration testimony. *See Parus Holdings, Inc. v. Google LLC*, W-19-cv-00432-ADA, slip op. at 6 (W.D. Tex. Feb. 27, 2020) (explaining in the context of a venue motion that "the declarations that movants provide often raise more questions than they answer," and are "particularly problematic" with pre-discovery motions "because they are generally

untested by cross-examination and uncorroborated by document production"). Thus, if any question remains whether: (1) STNV was involved in the development, manufacture, sale, or marketing of the infringing products in the United States generally and in Texas specifically, with the expectation and intention that they would be sold here; or (2) whether sales of the accused products in the United States generally and in Texas specifically are because of STNV's authorization of those acts, Purdue should be permitted to develop these facts through limited jurisdictional discovery.

Here, Purdue has demonstrated sufficient facts that, if supplemented through discovery, could demonstrate jurisdiction is proper as to STNV. STNV's motion alleges without factual support, and in conflict with Denise Tuinfort's declaration, that "STNV is a holding company." Indeed, Ms. Tuinfort's declaration makes clear that she has been "employed by [STNV] since August 2018." (ECF No. 38-1 (Tuinfort Decl.) ¶ 1.) Although Purdue's First Amended Complaint alleges that STNV is subject to this Court's specific jurisdiction (FAC ¶¶ 62, 63, 66, 68), STNV's motion also argues—in conflict with the law—that the Court should accept its unsupported and non-specific version of those facts. In particular, STNV offers no proof or explanation as to what type of "holding company" it is, leaving the Court to guess what the term means. Critically, Ms. Tuinfort's declaration makes no mention of the accused products. Nor does Ms. Tuinfort's declaration controvert any of Purdue's jurisdictional allegations. At a minimum, Purdue should be entitled to test and cross-examine the vague summary factual assertions in STNV's motion and Ms. Tuinfort's declaration.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny STNV's motion to dismiss in its entirety.

Dated: November 22, 2021

Respectfully submitted,

*/s/ Samuel E. Joyner*
Mark D. Siegmund
Texas Bar No. 24117055
mark@swclaw.com
**STECKLER WAYNE COCHRAN CHERRY, PLLC**
8416 Old McGregor Rd.
Waco, Texas 76712
Telephone: (254) 651-3690
Facsimile: (254) 651-3689


Alfonso G. Chan (Texas 24012408)
Michael W. Shore (Texas 18294915)
Samuel E. Joyner (Texas 24036865)
Halima Shukri Ndai (Texas 24105486)
Raphael Chabaneix (Texas 24118352)
**SHORE CHAN LLP**
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone: 214-593-9110
Facsimile: 214-593-9111
achan@shorechan.com
mshore@shorechan.com
sjoyner@shorechan.com
hndai@shorechan.com
rchabaneix@shorechan.com

***COUNSEL FOR PLAINTIFF***
***THE TRUSTEES OF PURDUE UNIVERSITY***

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system on November 22, 2021.

*/s/ Samuel E. Joyner*
Samuel E. Joyner