IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| TRUSTEES OF PURDUE UNIVERSITY,<br>Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS N.V.,<br>STMICROELECTRONICS<br>INTERNATIONAL N.V., and<br>STMICROELECTRONICS, INC.,<br>Defendants. | 6:21-cv-727-ADA |

**MEMORANDUM OPINION & ORDER DENYING DEFENDANT STMICROELECTRONICS N.V.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [ECF No. 38]**

Came on for consideration this date is Defendant STMicroelectronics N.V.'s ("STNV") Motion to Dismiss for Lack of Personal Jurisdiction, filed November 8, 2021. ECF No. 38 (the "Motion"). Plaintiff Trustees of Purdue University ("Purdue") filed an opposition on November 22, 2021, ECF No. 47, to which STNV replied on December 3, 2021, ECF No. 50. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **DENIES** STNV's Motion without prejudice.

## I. BACKGROUND

Purdue initiated this Action on July 14, 2021, suing STNV and STMicroelectronics Inc. ("ST-INC") for infringing U.S. Patent Nos. 7,498,633 (the "'633 patent") and 8,035,112 (the "'112 patent") (collectively, the "Asserted Patents"). *See generally* ECF No. 1. The Asserted Patents relate generally to semiconductor devices for high-voltage power applications and self-aligned source contacts for field-effect transistors, respectively. *See id.* ¶¶ 20, 30. Purdue is specifically accusing the following SiC power MOSFETs of infringing the Asserted Patents: SCT1000N170AG, SCT20N170AG, SCTWA35N65G2VAG, SCTH100N65G2-7AG,

1

SCTH35N65G2V-7, SCTH35N65G2V-7AG, SCTH90N65G2V-7, SCTW100N65G2AG, SCTW35N65G2V, SCTW35N65G2VAG, SCTW90N65G2V, SCTWA35N65G2V, and SCTWA90N65G2V. ECF No. 27 ¶ 91.

On October 11, 2021, STNV filed a motion to dismiss for lack of personal jurisdiction. *See* ECF No. 22. ST-INC did not seek dismissal. Purdue filed an amended complaint on October 25, 2021, further accusing STMicroelectronics International N.V. ("ST-INTL") of infringement and adding allegations directed to the Defendants' contacts with the United States and Texas. *See* ECF No. 27 (the "FAC"). The FAC alleges that STNV is organized under the laws of the Netherlands and locates its head offices there. *Id.* ¶¶ 9–10; *see also* ECF No. 38 at 1.

On November 8, 2021, STNV, in view of the FAC, renewed its motion to dismiss for lack of personal jurisdiction. *See* ECF No. 38. STNV's co-defendants, ST-INC and ST-INTL, did not join STNV's Motion.[1] Purdue opposes but requests that, if jurisdiction is found lacking, the Court permit Purdue limited jurisdictional discovery. *See* ECF No. 47 at 14–15. STNV's Motion is now ripe for judgment.

## II. LEGAL STANDARD

### A.   Personal Jurisdiction Generally

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. The plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). When a court assesses a non-resident defendant's challenge to personal jurisdiction without holding an evidentiary

---

[1] STNV concedes that ST-INC has "connections to Texas." ECF No. 38 at 1. The FAC alleges that ST-INC has its principal place of business in Coppell, Texas and an office in Austin. ECF No. 27 ¶¶ 42, 43. As to ST-INTL, the FAC alleges that it is a Dutch company, acting through a Swiss branch, that markets Accused Products in the United States. *Id.* ¶¶ 25–29.

hearing, the plaintiff bears the burden of presenting "sufficient facts" for a *prima facie* case of personal jurisdiction. *Thiam v. T-Mobile USA, Inc.*, No. 4:19-CV-00633, 2021 WL 1550814, at *1 (E.D. Tex. Apr. 20, 2021); *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). The court accepts as true allegations in the plaintiff's complaint, except when they are contradicted by the defendant's affidavits. *Thiam*, 2021 WL 1550814, at *1. However, "genuine, material conflicts" between the facts in the parties' affidavits and other evidence are construed in the plaintiff's favor. *Id.*

In matters unique to patent law, Federal Circuit law—rather than the law of the regional circuit—applies. *See In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (citing *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999)). Whether this Court has personal jurisdiction is just such an issue, so Federal Circuit law governs the substantive questions of law. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).

Establishing *in personam* jurisdiction in a federal question case is a two-step inquiry (at least when the implicated federal statute does not provide for service of process). First, a court asks whether a defendant is subject to the jurisdiction of a state court of general jurisdiction under state law. Fed. Rule Civ. Proc. 4(k)(1)(A). This requires measuring the reach of the long-arm statute of the state in which the federal court sits. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Second, the court asks if the exercise of personal jurisdiction would exceed the limitations of due process. *See id.* Since the Texas long-arm statute extends to the limits of due process, *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002), the Court need only focus on the due process aspects of the personal jurisdiction question, *see Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

The constitutional inquiry requires the court to consider (1) whether a defendant has purposefully availed itself of the protections and benefits of the forum state by establishing "minimum contacts" with the state, and (2) whether the exercise of jurisdiction comports with traditional notions of "fair play and substantial justice." *Tanfoglio*, 615 F.3d at 584. Minimum contacts are satisfied by contacts creating either general or specific jurisdiction. *Thiam*, 2021 WL 1550814, at *2 (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

A corporation is only subject to general jurisdiction when its contacts with the state are so "continuous and systematic" they render it "essentially at home" in the forum state. *Daimler AG*, 571 U.S. at 138–39. Ordinarily, a corporation is only subject to general jurisdiction where it is incorporated or has its principal place of business. *Daimler AG*, 571 U.S. at 137, 139 n.19.

"The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff has the burden to show minimum contacts exist under the first two prongs, but the defendant has the burden of proving the exercise of jurisdiction would be unreasonable under the third. *Elecs. For Imaging Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). The Federal Circuit has counseled, however, that the exercise of jurisdiction is unreasonable only in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174 (1985)).

The test of reasonableness and fairness is "a multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996) (citing *Burger King*, 471 U.S. at 477). This test requires balancing the following factors: "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies." *Viam Corp.*, 84 F.3d at 429.

### III. ANALYSIS

STNV argues that it should be dismissed from this Action because it is not incorporated here nor does it "manufacture, market, distribute, offer to sell, sell, import, export, transport, or service products or services in or to Texas or anywhere else in the United States." ECF No. 38 at 1. STNV continues that it "has no offices, facilities, bank accounts, employees, or real estate in Texas or anywhere else in the United States." *Id.* Nor does it "publish, own, or operate any website." *Id.* Furthermore, STNV avers that it is "not registered to conduct business in Texas, and it has no registered agent for service of process in Texas." *Id.* According to STNV, the allegations in the FAC purporting to establish this Court's jurisdiction over STNV "merely conflate STNV with [ST-INC]." *Id.* at 1–2.

In opposing the Motion, Purdue does not allege that this Court has general personal jurisdiction over STNV. ECF No. 47 at 5 n.1. Rather, Purdue supposes that jurisdiction lays under: (1) a stream-of-commerce theory; (2) an agency theory; and/or (3) Federal Rule of Civil Procedure 4(k)(2).

A. **Stream-of-Commerce**

The stream-of-commerce doctrine "recognizes that a defendant may purposefully avail itself of the protection of a state's laws—and thereby [] subject itself to personal jurisdiction—by sending its goods rather than its agents into the forum." *In re Depuy Orthopaedics, Inc.*, 888 F.3d 753, 753 (Fed. Cir. 2018). The existence of an "established distribution channel into the forum" is a "significant factor" when evaluating the strength of a non-movant's stream-of-commerce theory. *See Beverly Hills Fan*, 21 F.3d at 1565 n.15. The Supreme Court has, however, introduced a split of authority as to what is required to establish minimum contacts under a stream-of-commerce theory. In *Asahi Metal Indus. Co. v. Superior Court*, two four-justice pluralities offered slightly different versions of this theory. 480 U.S. 102 (1987). Justice Brennan, supported by three other justices, argued jurisdiction could be validly exercised over a defendant who placed goods into the stream of commerce so long as the defendant could foresee the goods might end up in the forum state. *See Beverly Hills Fan*, 21 F.3d at 1566 (citing *Asahi*, 480 U.S. at 117). Justice O'Connor, also supported by three other justices, opined that there must be "more than the mere act of placing a product in the stream of commerce" and endorsed the additional requirement of "an action of the defendant purposefully directed toward the forum State." *Id.* (quoting *Asahi*, 480 U.S. at 112 (emphasis removed)).

The Federal Circuit has repeatedly refused to endorse either articulation of the stream of commerce theory. *See, e.g.*, *Beverly Hills Fan*, 21 F.3d at 1566 ("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."); *see also AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012) ("Thus, *Beverly Hills Fan* counsels that we refrain from taking a position on the proper articulation of the stream-of-commerce theory where the facts of a particular case mandate exercising or declining to exercise personal jurisdiction under any articulation of

that theory."). Instead, the Federal Circuit's approach is to determine whether the plaintiff can establish minimum contacts—or has failed to establish minimum contacts—under both theories, making the choice between theories unnecessary. *AFTG-TG*, 689 F.3d at 1364. This Court holds that Purdue has failed to satisfy either *Asahi* theory.

The central premise of Purdue's stream-of-commerce theory is that STNV is allegedly responsible for the "design, development, testing, and quality control" over the Accused Products, which STNV manufactures overseas. ECF No. 47 at 5–6. Purdue proposes that STNV's wholly owned subsidiary ST-INTL ships the Accused Products to ST-INC, STNV's wholly owned subsidiary in the United States, before the Accused Products are "sold nationwide to customers through national distributors, retailers and other intermediaries, including in Texas and specifically in this District." *Id.* Purdue does not painstakingly cite the FAC or exhibits to its Motion in support of these contentions; it points only in the direction of scores of paragraphs in its FAC. *See id.* at 5 (citing ECF No. 27 ¶¶ 6–68).

The FAC cites STNV 2021 Form 20-F, filed with the SEC, as stating that STNV conducts its business through ST-INTL. ECF No. 27 ¶ 11. That form continues that STNV "provide[s] certain administrative, human resources, legal, treasury, strategy, *manufacturing*, marketing and other overhead services to our consolidated subsidiaries pursuant to service agreements for which we recover the cost." STNV Form 20-F at 29 (Feb. 14, 2021) (emphasis added), https://www.sec.gov/ix?doc=/Archives/edgar/data/932787/000156459021008102/stm-20f_20201231.htm; *see also* ECF No. 27 ¶ 19. The FAC forges ahead, citing *inter alia* Form 20-F and a company presentation branded with an "ST" logo, to allege that STNV together with its consolidated subsidiaries: "design and build semiconductors that address [customer] needs," ECF

No. 27 ¶ 15; sell and deliver products, *id.* ¶ 17; "engage distributors" to promote products, *id.* ¶ 16. None of these allegations are specific to the Accused Products.

Specific to the Accused Products, the FAC alleges that:

> By design and on purpose, STNV and certain of its wholly owned subsidiaries, acting in consort [sic], place SiC power MOSFETs, including the SCTW90N65G2V and SCTW70N120G2V, into the stream of commerce throughout the United States via an established distribution channel.

*Id.* ¶ 23. (The Court notes that the FAC does not explicitly identify SiC power MOSFET SCTW70N120G2V as an "Accused Product.") The FAC also alleges that the datasheets for SCTW90N65G2V and SCTW70N120G2V contain a notice stating that STNV and its subsidiaries "reserve the right to make changes, corrections, enhancements, modifications, and improvements to ST products and/or to this document." *Id.* ¶ 22.[2]

The FAC further alleges:

> Each of STNV and ST-INTL, acting alone and/or in concert with and/or at the direction and subject to the control of the other, directly and/or through its subsidiaries and agents (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce throughout the United States with the expectation that the products will be purchased and used by customers in this District. These infringing products have been and continue to be purchased and used by customers in this District. Each of STNV and ST-INTL has committed acts of patent infringement within the State of Texas and, more particularly, within this District.

*Id.* ¶ 66.

---

[2] Purdue argues that the Accused Products are "STNV's products" because "the copyright" appears on the packaging, manuals, and other product information relating to the Accused Products. ECF No. 47 at 6 (citing ECF No. 27 ¶¶ 22, 26–28, 46–48). Yet ST-INTL and ST-INC—not STNV— own the copyrights referenced in the FAC; the FAC acknowledges as much. ECF No. 27 ¶¶ 26–28, 46–48.

STNV contends that Purdue's stream-of-commerce theory is flawed because "STNV is a holding company and there has been no showing that it either placed the accused products into the stream of commerce or intended that any such products reach this District." ECF No. 38 at 6. In support, STNV cites testimony from STNV's Senior Legal Counsel that STNV "does not manufacture, market, distribute, offer to sell, sell, import, export, transport, service products, or provide services in or to Texas or anywhere else in the United States." ECF No. 38-1 ¶ 5. STNV argues that this declaration controverts Purdue's allegation that STNV "knowingly placed the accused products into established distribution channels for sale throughout the United States—including Texas." *See* ECF No. 50 at 2 (quoting ECF No. 47 at 1). The Court disagrees with that characterization. The declarant represents that STNV does not distribute the Accused Product to Texas—in this Court's judgment, that falls short of a declaration that STNV does not place the Accused Products into a distribution channel terminating in Texas. It is also a far cry from a representation that STNV "has no operations [and] does not develop, manufacture, sell, distribute, or export any products at all." *3G Licensing, S.A. v. Lenovo Grp. Ltd.*, No. CV 17-84-LPS, 2019 WL 3974539, at *6 (D. Del. Aug. 22, 2019) (internal quotations omitted) (finding insufficient plaintiff's allegations that defendant placed products into the stream of commerce), *R&R adopted*, No. CV 17-84-LPS, 2019 WL 7635823 (D. Del. Sept. 19, 2019).

In sum, the Court has before it: evidence, in the form of a Form 20-F and a ST-branded presentation (among other documents) showing a relationship between STNV and its subsidiaries to design, develop, deliver, and distribute products—though there is no suggestion of any particular distribution channel leading from STNV to Texas, let alone one carrying the Accused Products; conclusory allegations in the FAC that STNV "has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce throughout

the United States with the expectation that the products will be purchased and used by customers in this District," ECF No. 27 ¶ 66; an affidavit from STNV personnel that STNV does not engage in certain conduct like distributing the Accused Products to Texas. The Court finds that Purdue has not made a *prima facie* case that STNV has shipped any Accused Products to Texas through an established distribution channel. The FAC alleges the same, *id.*, but does so without any factual support; the Court is not bound to credit such bare allegations, even if uncontroverted, *see Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). Representations from STNV in SEC filings and publicly available presentations that STNV has a close business relationship with its subsidiaries and helps them develop technology and coordinate its sale and delivery is not sufficient factual support for the contention that STNV places *these Accused Products* into a distribution channel concluding in Texas.

## B. Agency Theory

Minimum contacts can also be imputed from one entity to another if an agency relationship exists between them. *Maxum Enters., LLC v. Auto. Fleet Enters., Inc.*, No. 3:18-CV-0687-B, 2018 U.S. Dist. LEXIS 116886, 2018 WL 3417234, at *3 (N.D. Tex. July 13, 2018). For an agency relationship to allow for imputation of contacts, "the 'evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task.'" *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) (emphasis omitted) (quoting *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008)). To succeed under this theory, the party invoking jurisdiction must show that the entity acted as the principal's agent "at the time of the relevant conduct." *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2018 U.S. Dist. LEXIS 1902, 2018 WL 315753, at *7 (W.D. Tex. Jan. 5, 2018). "An agency relationship must be affirmatively established and not presumed." *Horton v. Sunpath, Ltd.*, No. 3:20-CV-1884-

10

B-BH, 2021 U.S. Dist. LEXIS 50538, 2021 WL 982344, at *4 (N.D. Tex. Feb. 16, 2021), *R&R adopted*, 2021 U.S. Dist. LEXIS 48602, 2021 WL 977065 (N.D. Tex. Mar. 15, 2021).

Purdue gestured generally to 66 paragraphs in support of its stream-of-commerce theory; it gestures to 31 of those same paragraphs to support its agency theory. As Purdue puts it, "STNV directs or controls the making, shipment, and sale of the accused products in the United States, including in Texas, through its distribution channels, including its United States based affiliates." ECF No. 47 at 10 (citing ECF No. 27 ¶¶ 6, 9–18, 26, 29–35, 43–56, 68). Purdue points to the Form 20-F as describing STNV driving its "global business" from its headquarters. *Id.* at 10. Purdue alleges that STNV tacitly acknowledged that ST-INC sells products in the United States under what Purdue describes as "the common brand name 'ST.'" *Id.* There is, in Purdue's opinion, "little or no distinction between STNV and ST-INC in branding or marketing of the accused products." *Id.* at 10–11. It reasons, then, that ST-INC "operates in concert and at STNV's direction to sell the accused products in this country." *Id.* at 11.

STNV responds that the evidence Purdue adduces is insufficient to establish an agency relationship between STNV and ST-INC. *See* ECF No. 50 at 3. The Court agrees. Purdue has not offered sufficient evidence showing that ST-INC or any other STNV subsidiary is STNV's agent. To be sure, STNV has a close business relationship with its subsidiaries; Form 20-F leaves no doubt. But an agency relationship is not evidence from this record. Purdue has not offered proof that STNV, for example, assigns tasks and controls the means and details of the process by which ST-INC, or any other subsidiary, conducts its business. *Horton*, 2021 U.S. Dist. LEXIS 50538, 2021 WL 982344, at *4. The Court cannot, on this record, recognize an agency relationship between STNV and its subsidiaries—meaning that it will not impute STNV's subsidiaries'

contacts to STNV. *See In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 U.S. Dist. LEXIS 124918, at *16 (E.D. Tex. July 6, 2021).

Purdue's argument that ST-INC and STNV are actually operating "at less than arm's length" is unfounded. ECF No. 47 at 11. Purdue cites *Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) for support. *Id.* But the *Cephalon* court concluded that there was a less-than-arm's-length relationship between the principal and the agent based on its review of a sealed agreement relating to the accused product. *See Cephalon*, 629 F. Supp. 2d at 344 & n.9. Purdue has produced nothing akin to that agreement. Purdue further cites *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 531 (5th Cir. 2014), in which the U.S. Court of Appeals for the Fifth Circuit recognized a principal-agent relationship between a parent and its subsidiary where: the parent's employees were the subsidiaries' board members; the parent capitalized and staffed its subsidiary; the parent authorized the subsidiary to use the parent's brand names for free; the subsidiary's personnel continued to use email addresses associated with the parent, used business cards from the parent, and directed customers to the parent's website; the subsidiary held itself as the same entity as the parent. *Id.* at 532–33. Even when crediting the FAC's relevant allegations, Purdue has not come near matching this extensive evidence of an agency relationship.

Purdue's Rule 4(k)(2) argument depends on Purdue's insufficient agency theory. Specifically, Purdue argues: "Evidence that STNV's subsidiary overseas ships products to another subsidiary in the United States, that STNV uses its subsidiaries to distribute products through national distributors, retailers and other intermediaries, and that STNV touts those U.S. sales to its investors through SEC filings, further demonstrate STNV's minimum contacts with the United

States." ECF No. 47 at 11. Because the Court rejects STNV's agency theory, Purdue's Rule 4(k)(2) theory also fails.

### C. Jurisdictional Discovery

Jurisdictional discovery is appropriate if a party demonstrates factual issues related to jurisdictional allegations that it can supplement through discovery. *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005). This Court has held that "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Next Techs., Inc. v. ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)). Jurisdictional discovery is especially appropriate when the movant relies heavily on declaration testimony. *See Parus Holdings, Inc. v. Google LLC*, W-19-cv-00432-ADA, slip op. at 6 (W.D. Tex. Feb. 27, 2020) (explaining in the context of a venue motion that "the declarations that movants provide often raise more questions than they answer," and are "particularly problematic" with pre-discovery motions "because they are generally untested by cross-examination and uncorroborated by document production").

The Court is satisfied that the information Purdue has culled from STNV's Form 20-F and the ST-branded company presentation, both cited in its FAC, is sufficient to suggest with reasonably particularity the possibility that: STNV places Accused Products into a distribution channel terminating in Texas or the United States more broadly and that STNV could foresee the Accused Products ending up there; and/or STNV has sufficient authority over its co-defendants here such that the Court may impute their contacts to STNV. As alluded to above, the declaration STNV submitted in support of its Motion does not foreclose these possibilities.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

- Defendant STNV's Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 38, is **DISMISSED WITHOUT PREJUDICE** to refiling promptly following the close of limited jurisdictional discovery.

- Plaintiff Purdue may conduct limited jurisdictional discovery consistent with the scope identified in this Court's June 8, 2021 Amended Standing Order Regarding Venue and Jurisdictional Discovery Limits for Patent Cases with this addendum: limited jurisdictional discovery shall be completed no later than two months from the date of this Order. The discovery should also be limited in scope to the theories propounded in Purdue's opposition at ECF No. 47.

- All deadlines in this Action regarding Purdue's claims against Defendant STNV are **STAYED** pending resolution of any subsequent Rule 12(b)(2) motion STNV may file consistent with the order above. All deadlines in this Action regarding Purdue's claims against STNV's co-defendants will proceed as indicated in the scheduling order at ECF No. 45; the *Markman* hearing scheduled for April 29, 2022 will proceed without STNV.

SIGNED this 27th day of April, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE