| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| | WESTERN DISTRICT OF TEXAS |
| 2 | WACO DIVISION |

```
 3  THE TRUSTEES OF PURDUE   ) Docket No. WA 21-CA-727 ADA
    UNIVERSITY               )
 4                           )
    vs.                      ) Waco, Texas
 5                           )
    STMICROELECTRONICS N.V., )
 6  STMICROELECTRONICS, INC.,)
    STMICROELECTRONICS       )
 7  INTERNATIONAL N.V.       ) March 23, 2022
```

```
 8     TRANSCRIPT OF DISCOVERY HEARING VIA VIDEOCONFERENCE
            BEFORE THE HONORABLE ALAN D. ALBRIGHT
 9
```

```
10  APPEARANCES:

11  For the Plaintiff:      Mr. Raphael D.P. Chabaneix
                            Mr. Michael W. Shore
12                          Shore Chan DePumpo, LLP
                            901 Main Street, Suite 3300
13                          Dallas, Texas 75202

14                          Mr. Mark D. Siegmund
                            Stecker, Wayne, Cherry
15                          & Love, PLLC
                            8416 Old McGregor Road
16                          Waco, Texas 7671

17  For the Defendant:      Mr. Justin S. Cohen
                            Holland & Knight, LLP
18                          1722 Routh Street, Suite 1500
                            Dallas, Texas 75201
19
                            Mr. Massimo Ciccarelli
20                          Ciccarelli Law Firm
                            100 North 6th Street, Suite 502
21                          Waco, Texas 76701

22  Court Reporter:         Ms. Lily Iva Reznik, CRR, RMR
                            501 West 5th Street, Suite 4153
23                          Austin, Texas 78701
                            (512)391-8792

24

25  Proceedings reported by computerized stenography,
    transcript produced by computer-aided transcription.
```

| | |
|---|---|
| 15:29:47 | 1 |
| 15:29:49 | 2 |
| 15:29:50 | 3 |
| 15:29:52 | 4 |
| 15:29:59 | 5 |
| 15:30:01 | 6 |
| 15:30:04 | 7 |
| 15:30:06 | 8 |
| 15:30:08 | 9 |
| 15:30:11 | 10 |
| 15:30:15 | 11 |
| 15:30:17 | 12 |
| 15:30:22 | 13 |
| 15:30:23 | 14 |
| 15:30:26 | 15 |
| 15:30:28 | 16 |
| 15:30:30 | 17 |
| 15:30:31 | 18 |
| 15:30:35 | 19 |
| 15:30:38 | 20 |
| 15:30:39 | 21 |
| 15:30:42 | 22 |
| 15:30:51 | 23 |
| 15:30:53 | 24 |
| 15:30:54 | 25 |

THE COURT:  Welcome.  Suzanne, if you'd call the case, please.

THE CLERK:  Discovery hearing in Civil Action W-21-CV-727, styled, <u>The Trustees of Purdue University vs. STMicroelectronics N.V.</u> and others.

THE COURT:  Announcements from counsel, please.

MR. SIEGMUND:  Good afternoon, your Honor.

This is Mark Siegmund with Steckler, Wayne, Cherry & Love for Purdue University.  With me this afternoon is Michael Shore and Raphael Chabaneix with Shore Chan.  And Mr. Shore will be the main speaker this afternoon, your Honor.

MR. COHEN:  Good afternoon, your Honor.

Justin Cohen of Holland & Knight representing STMicroelectronics, Inc.  And also with me is Max Ciccarelli of the Ciccarelli law firm.  And I'll be the main speaker today.

THE COURT:  Happy to take up your issues.

MR. SHORE:  Your Honor, do you mind if I share my screen with the Court?

THE COURT:  Don't mind at all.

MR. SHORE:  Hopefully this will work.  Can you see the chart on the screen, your Honor?

THE COURT:  Yes, sir.

MR. SHORE:  All right.  So the Court's standing

15:30:58 1   orders don't really address the requirements for

15:31:03 2   disclosing an invalidity contentions a prior on-sale bar

15:31:10 3   defense.  So we have a disagreement today over what is

15:31:13 4   required in an invalidity contentions to assert an

15:31:17 5   invalidity defense based upon an earlier sale for use in

15:31:21 6   the United States.

15:31:23 7          It's our position that for our client, Purdue, to

15:31:28 8   determine the strength, weakness, or even good-faith basis

15:31:33 9   for the assertion of a prior on-sale bar defense, a couple

15:31:37 10  of things are absolutely necessary.  One, you have to

15:31:41 11  identify each individual product that you're claiming is

15:31:46 12  part of an on-sale bar defense.  Not classes of products,

15:31:52 13  not families of products.  Actual individual products.

15:31:57 14  You also have to provide exemplars of the products.  So,

15:32:03 15  in other words, for us to test whether or not the products

15:32:06 16  infringe, we need to be able to take the products,

15:32:09 17  reverse-engineer them and determine whether they are

15:32:13 18  actually infringing products.  Or would be infringing

15:32:16 19  products.  Of course, they can't infringe if they predate

15:32:19 20  the patent.  They're just products that would infringe if

15:32:21 21  they had come later.

15:32:23 22          The other thing you have to do to establish the

15:32:25 23  on-sale bar is, you have to establish a date a sale took

15:32:29 24  place.  That should be disclosed.  And because we might be

15:32:33 25  able to swear behind some of these sales, we don't know

15:32:35 1 the exact dates any of these sales took place, and you

15:32:38 2 have to disclose the customer in the United States to whom

15:32:41 3 you sold them and presumably delivered them in the United

15:32:46 4 States.

15:32:47 5        Now, for ST to -- in compliance with Rule 11, to

15:32:54 6 make an on-sale bar allegation, they have to have

15:32:58 7 investigated that a sale actually took place in the United

15:33:02 8 States of each part that they contend infringes.  So they

15:33:06 9 would have to verify the sale, the date of the sale, and

15:33:10 10 obviously know who the customer is that they sold it to.

15:33:13 11 That should be extremely easy information for them to

15:33:17 12 provide if they actually did a Rule 11 investigation in

15:33:20 13 support of this defense.

15:33:22 14        These parts that they have identified

15:33:26 15 generically, they have provided some process flows, many

15:33:31 16 of which have to do with parts that have nothing to do

15:33:35 17 with silicon carbide.  But they have provided some process

15:33:41 18 flows, but they provided the flows not for specific parts

15:33:44 19 that were sold in the United States but for families of

15:33:49 20 parts.  So we don't know what the exact part numbers,

15:33:53 21 exact part types are.  We don't know who the customers

15:33:56 22 are.  We don't know who the date of sale are.  We can't

15:33:59 23 match process flows to the individual parts so identified.

15:34:04 24        So what we've asked them for is simply to provide

15:34:07 25 for us as part of their invalidity contentions the bare

15:34:10  1  essential facts that would qualify these parts to be

15:34:15  2  infringing parts sold before the priority date.  We did

15:34:20  3  not think this should be that hard.

15:34:21  4         So now, in their invalidity contentions, they

15:34:25  5  have identified ten families.  When we went to investigate

15:34:33  6  -- you know, they asked us, well, you know, we're going to

15:34:36  7  produce these things in our offices.  Come and see them in

15:34:37  8  our offices.  We get to the office, they only have two

15:34:40  9  exemplars -- or from two families.  Four exemplars from

15:34:46  10  two of the families.  The actual part numbers for these

15:34:49  11  parts were not disclosed.  Of course, they're capped in

15:34:52  12  plastic, so it does absolutely no good.  I mean, it's like

15:34:56  13  holding up a piece of plastic and saying what's inside

15:34:58  14  this plastic infringes and was sold before the priority

15:35:03  15  date.  We can't verify anything.

15:35:05  16         So all we're asking the Court to do is for them

15:35:08  17  to fill in this chart and replace all the words that say

15:35:13  18  none with actual information.  We would like identified

15:35:19  19  product part numbers for each part they claim was sold in

15:35:22  20  advance of the priority date.  We'd like to have the

15:35:25  21  process flows that they have produced tied to the specific

15:35:30  22  part that they are claiming is an invalidating part.  We'd

15:35:34  23  like exemplars, four exemplars of each part that they're

15:35:39  24  going to claim is invalidating so we that could do our own

15:35:41  25  reverse-engineering to verify that the parts do or could

15:35:46  1   invalidate.

15:35:48  2          We'd like the evidence of the date of the

15:35:52  3   earliest U.S. sale so we could determine whether or not

15:35:54  4   they truly are prior art parts and whether or not there

15:35:57  5   was a sale in the United States, the identification of the

15:36:00  6   customer so, again, we can simply verify the basic facts

15:36:03  7   of the defense.

15:36:04  8          So to us, all of this information should be

15:36:08  9   readily available.  It should have, in our opinion, been

15:36:12  10  produced as part of their invalidity contentions.  They

15:36:15  11  didn't give us claim charts, you know, because if they had

15:36:19  12  given us claim charts with their own reverse-engineering

15:36:21  13  of all these parts and have these claim charts go through

15:36:26  14  the way we did it in our infringement contentions, but I

15:36:30  15  think that the best way for the Court to look at this is

15:36:33  16  imagine that we in our infringement contentions had done

15:36:37  17  what they did in these invalidity contentions.  No claim

15:36:40  18  charts, no evidence, no backing, they would be here

15:36:44  19  screaming bloody murder that our infringement contentions

15:36:47  20  were insufficient.  Their invalidity contentions for prior

15:36:52  21  on-sale bar parts should be just as comprehensive as the

15:36:57  22  plaintiff's invalidity contentions for infringing parts

15:36:59  23  because it's exactly the same information that each side

15:37:04  24  has to rely upon to conduct their investigation and to go

15:37:08  25  forward in the case.

| | | |
|---|---|---|
| 15:37:09 | 1 | And as far as the exemplar parts go, right now, |
| 15:37:12 | 2 | it is taking several weeks, if not months, to get time in |
| 15:37:17 | 3 | a lab to do reverse-engineering.  So their idea that we |
| 15:37:22 | 4 | could just wait and potentially get exemplary parts later, |
| 15:37:26 | 5 | that's fallacious.  That's wrong and I think they realize |
| 15:37:29 | 6 | that's wrong.  And then, the other position they take is, |
| 15:37:32 | 7 | they don't want to give us exemplars because we might |
| 15:37:35 | 8 | break them.  Of course we're going to break them.  These |
| 15:37:38 | 9 | are not expensive parts.  I don't think any of -- none of |
| 15:37:42 | 10 | them that we found cost more than $12. |
| 15:37:45 | 11 | So this is not like where we're doing destructive |
| 15:37:49 | 12 | engineering, you know, of a CT scanner or destructive |
| 15:37:52 | 13 | engineering of a transmission, you know, on a tank or |
| 15:37:55 | 14 | something like that.  These are -- these parts are made on |
| 15:37:58 | 15 | wafers on die where there's about 4 to 6,000 parts per |
| 15:38:03 | 16 | wafer.  They have sold millions and millions of these |
| 15:38:07 | 17 | parts around the world, some for 20 years.  Some of them |
| 15:38:11 | 18 | are still offered for sale, although we don't know if the |
| 15:38:14 | 19 | versions currently offered are the versions that were sold |
| 15:38:18 | 20 | before.  But again, we're just asking for some very basic |
| 15:38:22 | 21 | information.  We cannot evaluate their invalidity |
| 15:38:25 | 22 | contentions on prior on-sale bar without this information. |
| 15:38:30 | 23 | And again, if they did a Rule 11 investigation -- |
| 15:38:32 | 24 | and I'm sure Holland & Knight did because they're, you |
| 15:38:36 | 25 | know, a big law firm -- they wouldn't assert a defense |

15:38:38  1  like this without a Rule 11 investigation.  So they have
15:38:41  2  to have this information at their fingertips, and there's
15:38:46  3  no reason why they can't produce it.  And unless you have
15:38:49  4  any questions, your Honor, that's pretty much our
15:38:50  5  position.  And I could unshare my screen if you don't need
15:38:53  6  it anymore.
15:38:55  7          THE COURT:  A response.
15:38:58  8          MR. COHEN:  Thank you, your Honor.  And yes, Mr.
15:39:00  9  Shore, if you wouldn't mind unsharing your screen.  Thank
15:39:04  10  you very much.
15:39:04  11          And, your Honor, I apologize.  Christopher Ratway
15:39:06  12  is from our client, STMicroelectronics, Inc., is also on
15:39:10  13  today.  I missed him at introductions.
15:39:12  14          THE COURT:  Okay.  I appreciate him taking the
15:39:15  15  time to be here.
15:39:16  16          MR. COHEN:  Yes.  So to put this simply, your
15:39:18  17  Honor, what Purdue is asking for is all of the evidence
15:39:21  18  that they would be pursuing during discovery that they
15:39:25  19  claim should have been provided with our invalidity
15:39:27  20  contentions.  And that's just not the rule, that's not
15:39:30  21  what's required.  Notice is what's required.  Contrary to
15:39:32  22  what Mr. Shore said, we did provide claim charts.  And to
15:39:35  23  date, Purdue hasn't complained about the sufficiency of
15:39:38  24  our claim charts or the sufficiency that we've provided
15:39:42  25  notice of our theories of invalidity for these prior art

15:39:45   1   parts.

15:39:46   2          And, your Honor, I'd just like to step back for a

15:39:48   3   minute to give some context.  If you recall, the last time

15:39:50   4   we were before you, the Court had opened third-party

15:39:54   5   discovery.  ST had served third-party discovery on what

15:39:59   6   Purdue claimed were closely related entities.  And Purdue

15:40:03   7   refused and came to this court to basically quash any

15:40:05   8   attempts at early party discovery, and the Court agreed,

15:40:09   9   and no party discovery or closely related discovery has

15:40:13   10  taken place.  Now, what Mr. Shore's complaining of is the

15:40:16   11  inability to test our invalidity contentions is literally

15:40:20   12  the exact same position that ST finds itself with respect

15:40:24   13  to Purdue's infringement contentions.

15:40:26   14         As a matter of fact, we've actually produced

15:40:28   15  evidence, process flows, claim charts, to support our

15:40:32   16  invalidity theories on the prior art products.  Purdue has

15:40:35   17  not provided one piece of admissible evidence to support

15:40:39   18  its infringement contentions at this point and has

15:40:42   19  actually refused to provide any reverse-engineering that

15:40:45   20  would eventually be used to support its infringement

15:40:49   21  theories.  So just like Purdue, we cannot test the

15:40:51   22  sufficiency of their infringement theories because that's

15:40:56   23  the purpose of discovery.

15:40:57   24         And a couple other minor points, your Honor.  I

15:41:01   25  would say first is that there isn't a requirement to

15:41:05 1 provide and marshal all of your evidence at the contention

15:41:09 2 stage.  The requirement is notice, which we provided with

15:41:12 3 claim charts with supporting design documents, process

15:41:15 4 flows, masks.  That's what Mr. Shore was referencing that

15:41:18 5 he acknowledges was provided and produced.

15:41:21 6         Regarding reverse-engineering, destructive

15:41:27 7 testing, these aren't chips with unlimited supply, your

15:41:29 8 Honor.  These are chips that were manufactured some 20

15:41:32 9 years ago.  ST's supply is extremely limited, very

15:41:36 10 limited.  And so, if we're providing chips for destructive

15:41:40 11 testing, we are going to quickly, you know, basically run

15:41:44 12 out of prior art chips and samples; and that's not only

15:41:48 13 for Purdue to use but for ST to use itself in presenting a

15:41:52 14 defense.  And that prejudices ST not only in this case but

15:41:57 15 potentially future cases where this supply of chips won't

15:42:00 16 be available.

15:42:01 17         THE COURT:  Can you give me an idea what number

15:42:05 18 you're talking about?  Like for a specific chip that is

15:42:09 19 accused, you have one left, you have a dozen left, you

15:42:13 20 have a thousand left.  I mean, I get that the problem.

15:42:18 21 These are chips that are -- I'm assuming, Mr. Cohen, are

15:42:21 22 no longer being manufactured so the supply is whatever the

15:42:25 23 supply is left.

15:42:26 24         MR. COHEN:  Correct.

15:42:27 25         THE COURT:  But can you give me an idea of the

15:42:29  1  number of chip -- what we're talking about here?

15:42:33  2          MR. COHEN:  Yeah.  Probably in like the 20 to 40

15:42:35  3  range.  So.

15:42:39  4          THE COURT:  I apologize.  I interrupted you.

15:42:41  5          MR. COHEN:  No, no, no, your Honor.  Here to

15:42:43  6  answer your questions.  And I don't have good firm

15:42:45  7  numbers.  I know the supply is extremely limited for what

15:42:48  8  we do have.

15:42:49  9          THE COURT:  Okay.

15:42:52  10          MR. COHEN:  And, your Honor, the other point is,

15:42:53  11  what Mr. Shore's referencing is, of course, destructive

15:42:56  12  testing.  And this court held in Anaya vs. Tricam that

15:43:00  13  there's a heightened standard that a party needs to make

15:43:02  14  to demand destructive testing.  Purdue hasn't even tried

15:43:07  15  to make that.  They haven't complained about the

15:43:09  16  sufficiency of understanding our theories.  Everything Mr.

15:43:11  17  Shore went through is about testing the underlying

15:43:14  18  evidence, which is what party discovery is for, which will

15:43:17  19  open next month.

15:43:21  20          THE COURT:  I think you're done, but if you're

15:43:22  21  not, let me know.

15:43:25  22          MR. COHEN:  I am, your Honor.  I'm here to answer

15:43:27  23  any questions you may have.

15:43:27  24          THE COURT:  Mr. Shore.

15:43:28  25          MR. SHORE:  First of all, the idea that they have

```
15:43:33   1   40 parts left is ridiculous.  That is false.  They may --
15:43:38   2   they also have wafers that have thousands of die that are
15:43:41   3   sitting on them, and they have to have those wafers still.
15:43:44   4   And if they want to produce a wafer, instead of a
15:43:48   5   cut-and-package part, that's fine, too.  We'll take a
15:43:50   6   wafer.  A wafer has about 4,000 die on it, but this is a
15:43:54   7   die-level case.
15:43:55   8        We've only asked for four exemplars of each part.
15:43:58   9   And when you are claiming a part is an invalidating part
15:44:02  10   and it cost $4 retail, the idea that you can't provide the
15:44:07  11   other side four parts to allow them to test the
15:44:12  12   sufficiency of your contention is -- I don't even know how
15:44:17  13   to respond to that.  But he can't tell you that they only
15:44:19  14   have 40 left.  If he's saying they only have 40 left that
15:44:22  15   are packaged in like a TO220 or TO247 package, possible.
15:44:27  16   But they have wafers left and each of those wafers has 4
15:44:31  17   to 6,000 die on it.  So we have to get back to reality.
15:44:38  18        And the second thing is, if you look at the --
15:44:40  19   when we share the screen, again, I want you to take a look
15:44:43  20   at what they've said because it's important.  What they've
15:44:46  21   said here is that all products made with any of the MDxO
15:44:52  22   dies, including at least these two.  So unless we have the
15:44:56  23   exemplars of what they're actually going to present as
15:44:58  24   invalidating, we don't even know if all products made by
15:45:02  25   anything related to that.  That's what every single one of
```

| | |
|---|---|
| 15:45:07 | 1 |

these says, these are family of products.  And they say
all products made with any of the MDxN dies, including at
least.  So we don't even know if this is all of the parts
that they're going to claim are invalidating.

So what I -- to be fair, and what we're trying to
do here is be fair, make them tell us the exact parts.
Not families, not including but not limited to, not at
least.  They need to tell us exactly what parts they're
going to claim are invalidating, give us four exemplars of
those parts, give us the process flow for those parts, and
as part of the contention, they have to tell us when they
were sold and who they were sold to, otherwise, they don't
even qualify as invalidating parts.

And all of this information had to be reviewed
and verified by the Holland & Knight lawyers or they
couldn't have made the allegation.  But what we have
looking at that chart, your Honor, is we have 10 families,
and we don't even know which parts within the families
they're going to show up with at trial.  We don't know
which parts of the families they're relying upon because
they keep saying including but not limited to or at least
the following.

So what we are trying to do is nail them down to
specific parts, give us exemplars and prove their -- and
not prove.  Not marshal your proof.  I don't need expert

15:46:34  1  declarations.  I don't need expert depositions.  I don't

15:46:37  2  need any of that.  But what I do need for a prior art

15:46:40  3  product, I need the product and I need the basic proof

15:46:44  4  that it was prior.  The customer and the date of the sale.

15:46:46  5  That's it.  This should not be difficult.

15:46:53  6            THE COURT:  Mr. Cohen.

15:46:55  7            MR. COHEN:  Briefly, your Honor.  Everything Mr.

15:46:57  8  Shore asked for are discovery requests.  And all party

15:47:01  9  discovery is closed until it opens next month.  Purdue has

15:47:04 10  taken the position in this court and others that ST is not

15:47:08 11  entitled to any early party discovery.  And you've

15:47:11 12  noticed, your Honor, there aren't any discovery requests,

15:47:13 13  any Rule 34 requests, or samples.  But Mr. Shore is asking

15:47:18 14  for discovery for strictly party discovery before it's

15:47:23 15  opened and demanding that that is what's required when ST

15:47:26 16  provides its invalidity contentions, and that's just not

15:47:28 17  the case.

15:47:28 18            And, your Honor, we believe this actually has

15:47:31 19  broader implications, not just for this case but for this

15:47:34 20  court.  If defendants in order to provide sufficient

15:47:38 21  notice in their invalidity contentions of prior art

15:47:41 22  products and systems, then every defendant is going to be

15:47:45 23  required to basically marshal their evidence and provide

15:47:48 24  inspection and exemplars for any prior art device or

15:47:53 25  system at the preliminary invalidity contention stage,

15:47:56  1   before party discovery opens.  And that, your Honor, on

15:47:59  2   the flip side, the plaintiffs are not required to provide

15:48:02  3   any evidence whatsoever.  And Purdue in this case, has not

15:48:05  4   provided one shred of evidence that would allow ST to

15:48:09  5   evaluate their infringement contentions and their

15:48:11  6   infringement theories.

15:48:11  7          So we think fairness dictates that this wait

15:48:15  8   until party discovery, Purdue serves its document requests

15:48:19  9   and interrogatories, we will respond.  We plan on

15:48:21  10  providing all of the evidence possible to support our

15:48:24  11  invalidity theories.  And we've provided sufficient notice

15:48:28  12  thus far and will continue to do so when discovery opens.

15:48:34  13         MR. SHORE:  Your Honor, 30 seconds.

15:48:35  14         THE COURT:  Whatever time -- you're so engaging,

15:48:38  15  I would never put a time limit on you.

15:48:40  16         MR. SHORE:  I'll try to stay brief.

15:48:42  17         First, what you just heard was not true.  We

15:48:46  18  provided detailed claim charts with detailed reverse-

15:48:50  19  engineering, attached to our complaint.  We didn't even

15:48:54  20  wait for infringement contentions.  We literally provided

15:48:57  21  detailed reverse-engineering and claim charts attached to

15:49:01  22  the original complaint in our invalidity contentions.  We

15:49:05  23  provided detailed claim charts with detailed

15:49:08  24  reverse-engineering.

15:49:10  25         So they have everything they need to determine

15:49:13  1  whether or not they infringe.  And you know why we know

15:49:16  2  that?  Because they claim that what they have was

15:49:19  3  sufficient to show their parts infringe.  So again, I

15:49:23  4  didn't bring -- I'm not responding to his claims that we

15:49:26  5  haven't done what we're supposed to do.  If they want to

15:49:28  6  bring that up at a separate hearing, I'm happy to do it.

15:49:31  7         But what we have here, if you look at our chart,

15:49:33  8  again, all we're asking them to do for -- is to tell us

15:49:38  9  specifically what parts invalidate.  Not families, not

15:49:44  10  including but not limited to, not all products made by a

15:49:48  11  certain process.  Give us exact parts.  Give us exemplars.

15:49:54  12  Four.  Not many.  Four.  And to tell us when the sale took

15:49:57  13  place and who the customer was so that we can just verify

15:50:01  14  that they are prior sold parts.  That's not hard.  It's at

15:50:06  15  their fingertips.  They have to have it.  If they don't

15:50:09  16  have it, they couldn't have made the allegation.

15:50:16  17         THE COURT:  Anything else, Mr. Cohen?

15:50:18  18         MR. COHEN:  Just briefly, your Honor.  The

15:50:19  19  distinction between myself and Mr. Shore is that Mr. Shore

15:50:22  20  hasn't provided admissible evidence to support their

15:50:25  21  infringement contentions.  They've selected pictures from

15:50:28  22  their reverse-engineering that they had conducted, but

15:50:31  23  thus far, have refused to provide any of that.  It will

15:50:34  24  obviously be provided at some point during discovery or

15:50:35  25  what they select to use for their expert report.  But we

| | | |
|---|---|---|
| 15:50:38 | 1 | have actually provided evidence in terms of process flows |
| 15:50:42 | 2 | and mask documents, design files. |
| 15:50:44 | 3 | On the other side, Purdue has provided pictures |
| 15:50:48 | 4 | of stuff that they may use later but not evidence, your |
| 15:50:52 | 5 | Honor, because that's for party discovery. |
| 15:50:57 | 6 | THE COURT:  I'm not sure what your reluctance is |
| 15:51:00 | 7 | to -- and maybe I'm just not following -- your reluctance |
| 15:51:06 | 8 | is to being more specific, Mr. Shore said several times. |
| 15:51:10 | 9 | We are just asking them to identify the specific parts. |
| 15:51:13 | 10 | And I'm not sure what the reason is that could -- that |
| 15:51:18 | 11 | that couldn't be done now.  Maybe I'm just missing it. |
| 15:51:21 | 12 | MR. COHEN:  No, your Honor.  This is the first |
| 15:51:22 | 13 | time we've heard that complaint that our contentions |
| 15:51:25 | 14 | weren't specific enough down to the specific parts.  And |
| 15:51:29 | 15 | that's not in their dispute chart that they have even |
| 15:51:32 | 16 | asked for us to provide any additional identification or |
| 15:51:34 | 17 | be more specific on the part numbers.  That's an issue |
| 15:51:37 | 18 | that we would have a problem addressing it being more |
| 15:51:40 | 19 | specific if that were the only complaint. |
| 15:51:43 | 20 | THE COURT:  I think you said -- that's a problem |
| 15:51:46 | 21 | you wouldn't -- that's an issue you would not have a |
| 15:51:48 | 22 | problem addressing.  Okay. |
| 15:51:50 | 23 | MR. COHEN:  That's correct, your Honor. |
| 15:51:52 | 24 | THE COURT:  Mr. Shore, anything else? |
| 15:51:55 | 25 | MR. SHORE:  No, your Honor.  I think one of the |

| | | |
|---|---|---|
| 15:51:57 | 1 | things that we are kind of -- that is sort of the same is |
| 15:52:02 | 2 | in our infringement contentions that we have to provide a |
| 15:52:08 | 3 | priority date.  They haven't provided us any date for when |
| 15:52:11 | 4 | they made a sale.  All they say is before.  We don't know |
| 15:52:13 | 5 | when.  We don't know if we can swear behind it.  We don't |
| 15:52:17 | 6 | know anything.  But they have to know when the sale |
| 15:52:19 | 7 | occurred and what bought it.  They have to know that. |
| 15:52:24 | 8 | THE COURT:  Mr. Cohen, is there -- can you give |
| 15:52:27 | 9 | me an idea of the burden it would place on you to get more |
| 15:52:31 | 10 | specific dates? |
| 15:52:33 | 11 | MR. COHEN:  At this time, I don't know |
| 15:52:34 | 12 | specifically, your Honor, about the burden that would |
| 15:52:39 | 13 | take.  It's an investigation that was ongoing and will |
| 15:52:41 | 14 | continue to be ongoing.  But I will note that your OGP has |
| 15:52:48 | 15 | a specific rule for plaintiffs to provide a priority date |
| 15:52:52 | 16 | disclosure and supporting evidence.  On the other hand, |
| 15:52:53 | 17 | the invalidity contentions, there's not a requirement to |
| 15:52:56 | 18 | provide a specific date. |
| 15:53:00 | 19 | MR. SHORE:  Your Honor, that's because for 102 |
| 15:53:01 | 20 | and 103 art, the date is on publication.  This isn't 102 |
| 15:53:05 | 21 | or 103.  And this is -- I will say this is a problem with |
| 15:53:08 | 22 | the OGP and that if you are going to have a prior sale, |
| 15:53:13 | 23 | the OGP does not expressly say you have to say what's the |
| 15:53:16 | 24 | date of the sale and who'd you sell it to.  But that is |
| 15:53:19 | 25 | definitely a material part of any invalidity contention |

15:53:23   1   that something was sold previously in the United States.

15:53:28   2   So that's basic and they have to know it or they could not

15:53:35   3   have made the allegation.

15:53:36   4         No defense lawyer could make that allegation

15:53:38   5   without verifying that a sale took place in the United

15:53:42   6   States.  So he has to have that information at his

15:53:45   7   fingertips or he couldn't have made the allegation.

15:53:48   8         THE COURT:  Mr. Cohen, that's what's concerning

15:53:51   9   me, too, is that it seems to me that -- because I know you

15:53:57   10   and your firm.  I have great respect for you that it seems

15:54:03   11   to me, if you all were willing to put this information in

15:54:07   12   invalidity documents, contentions that you would have done

15:54:13   13   more than just figured it's gotta be before X date.

15:54:20   14   Again, I'm not sure -- in terms of burden, I'm not sure

15:54:23   15   under the rules -- we can go back and forth with who's

15:54:27   16   stumbling and all that -- whether or not it necessarily

15:54:29   17   has to be provided right now to Mr. Shore.  I'll figure

15:54:33   18   that out in a second.  But it does strike me that

15:54:37   19   something would -- that you had to have had that

15:54:40   20   information before you sent -- yes, sir.

15:54:43   21         MR. CICCARELLI:  Your Honor, this is Max

15:54:43   22   Ciccarelli.

15:54:45   23         I want to speak to that, if I could, because I do

15:54:47   24   have some knowledge about some of these since I was

15:54:49   25   involved in the collection of some of this information.

15:54:52    1   The parts for which ST has prior exemplars, the limited

15:54:59    2   number that Mr. Cohen was referring to are actually parts

15:55:01    3   from a case that involved Mr. Shore and STMicroelectronics

15:55:09    4   back in the year 2000.  And he might very well remember

15:55:11    5   these parts and these die names.  So these were parts that

15:55:14    6   were actually sold right around the 2000 timeframe.  The

15:55:19    7   problem is that the data, the information from that

15:55:23    8   timeframe that ST still has from that case shows that

15:55:27    9   there were sales prior to that time because the reports

15:55:30   10   were generated, but it doesn't have specific dates of

15:55:34   11   sale.

15:55:34   12           So Mr. Shore knows that they were right around

15:55:37   13   the year 2000.  1999, 2000.  There were exemplars that

15:55:42   14   were produced to him and his firm as part of that

15:55:45   15   litigation.  They conducted reverse-engineering as part of

15:55:47   16   that litigation because these were parts that he -- his

15:55:51   17   client had accused in that prior litigation.  So they were

15:55:54   18   on sale around that time.  We don't have access to the

15:55:58   19   data quite yet of exactly what days they were sold.  We

15:56:02   20   will obviously work on collecting that and providing that

15:56:05   21   to them.

15:56:06   22           Some of these parts are parts where we provided

15:56:09   23   Mr. Shore with the design files and information as

15:56:14   24   potentially invalidating product because we believe based

15:56:17   25   on the discovery that we have done that they were sold

15:56:21  1   prior to that date.  We have yet to be able to actually

15:56:25  2   track down actual sales.  That is part of what discovery

15:56:28  3   is about.  We will do that.  Our goal here was, we're

15:56:31  4   going to put Mr. Shore on notice as early as humanly

15:56:34  5   possible about all the prior art products that we intend

15:56:37  6   to potentially rely on.  Hence, these sort of generic

15:56:40  7   references.  But we have given him the design files for

15:56:44  8   each of the dies so that he has in his possession mask

15:56:48  9   sets, process flows for each of these 10 different dies.

15:56:52  10          In terms of the name of products, the names that

15:56:54  11  we're aware of we provided to him and he even listed them

15:56:58  12  in his chart.  So that's sort of where we are.  We have

15:57:01  13  given everything that we have that allows them to evaluate

15:57:03  14  the defense.  And during discovery, we will scour the

15:57:07  15  Earth, as your Honor probably imagines, for evidence of

15:57:10  16  the earliest possible sale.  I hope that helps.

15:57:14  17          THE COURT:  Mr. Shore.

15:57:16  18          MR. SHORE:  That's interesting because the parts

15:57:18  19  that were involved 22 years ago did not contain any

15:57:23  20  silicon carbide.  None.  They can't be -- they can't be

15:57:26  21  invalidating prior art parts because these are silicon

15:57:31  22  carbide patents and silicon carbide MOSFET.  So again,

15:57:36  23  that's the first I've heard this.  But what I just heard,

15:57:40  24  I believe, is they cannot put forward evidence today of

15:57:44  25  any specific sales in the United States of these parts

| | | |
|---|---|---|
| 15:57:48 | 1 | that they claim are invalidating parts.  That's a |
| 15:57:50 | 2 | violation of Rule 11. |
| 15:57:52 | 3 | So then, the other thing is, he does not explain |
| 15:57:56 | 4 | why they say all products made with, all products made |
| 15:58:00 | 5 | with.  We're entitled to specific parts, specific part |
| 15:58:04 | 6 | numbers.  They would not be able to walk into court and |
| 15:58:08 | 7 | say all products made with.  So again, our request is |
| 15:58:12 | 8 | very, very simple.  Give us the part numbers of the |
| 15:58:15 | 9 | products you claim are invalidating, give us the process |
| 15:58:18 | 10 | flows for each of those parts, give us four exemplars, and |
| 15:58:23 | 11 | give us the date of the first sale that you're going to |
| 15:58:24 | 12 | claim is an on-sale bar and the customer.  Very simple. |
| 15:58:28 | 13 | Very straightforward. |
| 15:58:30 | 14 | And I would think that maybe the Court might even |
| 15:58:32 | 15 | consider putting that in its OGP going forward so you |
| 15:58:35 | 16 | never have to deal with this issue again.  But if you're |
| 15:58:37 | 17 | going to claim a part is an on-sale bar part, you need to |
| 15:58:41 | 18 | be prepared to identify the part, identify the process |
| 15:58:44 | 19 | flow, identify the date of sale, identify the customer. |
| 15:58:48 | 20 | And that is basic.  It's very basic. |
| 15:58:57 | 21 | THE COURT:  Anything else? |
| 15:59:00 | 22 | MR. COHEN:  Briefly if I could, your Honor. |
| 15:59:02 | 23 | Today's the first time that Purdue's complained about sort |
| 15:59:05 | 24 | of the lack of disclosure to being specific to part |
| 15:59:08 | 25 | numbers and specific dates.  In the dispute chart, what |

15:59:13  1   they requested were exemplars, all engineering and design

15:59:16  2   files, all evidence of use and pre-use predating sales.

15:59:22  3   And without that supporting evidence, what they asked this

15:59:25  4   court to do is to strike our prior art products from the

15:59:27  5   invalidity contentions.

15:59:29  6          So before today, that was the dispute coming to

15:59:32  7   your Honor.  Had the dispute been we would like more

15:59:34  8   clarification on the part numbers or on a specific date, I

15:59:37  9   believe that's something the parties could have worked

15:59:40  10  out.  And one minor comment, your Honor, because I feel

15:59:43  11  compelled to address this.

15:59:45  12         Mr. Shore mentioned Rule 11.  In nearly every one

15:59:50  13  of my encounters so far in this case, we've received

15:59:53  14  accusations of failing to comply with the Court's orders,

15:59:55  15  the federal rules, Rule 11.  None of these accusations

15:59:58  16  have any basis in fact or law.  And, quite frankly, I

16:00:03  17  don't think it's appropriate to be hurling those types of

16:00:06  18  accusations back and forth, but I do feel the need to

16:00:09  19  address it.

16:00:11  20         THE COURT:  Okay.  I'll be back in a few seconds.

16:14:56  21         If we could go back on the record, please.  The

16:14:59  22  Court is going to deny the relief plaintiffs are seeking.

16:15:05  23         And so, is there anything else that we need to

16:15:07  24  take up?  Mr. Shore?

16:15:11  25         MR. SHORE:  No, your Honor.

16:15:13    1              THE COURT:  Mr. Cohen?

16:15:15    2              MR. COHEN:  Nothing from the defendant, your

16:15:17    3   Honor.   Thank you very much.

16:15:18    4              THE COURT:  Wish you guys a good afternoon.   Take

16:15:21    5   care.

            6              (End of proceedings.)

            7

            8

            9

           10

           11

           12

           13

           14

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25

```
 1                      *  *  *  *  *  *

 2

 3   UNITED STATES DISTRICT COURT  )

 4   WESTERN DISTRICT OF TEXAS)

 5

 6      I, LILY I. REZNIK, Certified Realtime Reporter,

 7   Registered Merit Reporter, in my capacity as Official

 8   Court Reporter of the United States District Court,

 9   Western District of Texas, do certify that the foregoing

10   is a correct transcript from the record of proceedings in

11   the above-entitled matter.

12      I certify that the transcript fees and format comply

13   with those prescribed by the Court and Judicial Conference

14   of the United States.

15      WITNESS MY OFFICIAL HAND this the 24th day of May,

16   2022.

17                            Lily Iva Reznik

18                            ~~~~~~~~~~~~~~~~~~~~~~~~
                              LILY I. REZNIK, CRR, RMR
19                            Official Court Reporter
                              United States District Court
20                            Austin Division
                              501 West 5th Street,
21                            Suite 4153
                              Austin, Texas 78701
22                            (512)391-8792
                              SOT Certification No. 4481
23                            Expires: 1-31-23

24

25
```