# EXHIBIT F

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOUGHT, INC.,

    Plaintiff,

v.

ORACLE CORPORATION, et al.,

    Defendants.

Case No. 12-cv-05601-WHO (MEJ)

**DISCOVERY ORDER**

Re: Dkt. No. 111

## BACKGROUND

The Court is in receipt of the parties' joint discovery dispute letter, filed August 6, 2014. Dkt. No. 111. Defendant Oracle Corporation Oracle challenges Plaintiff Thought, Inc.'s claims of privilege over communications with third-parties Acacia Research Corp. ("Acacia") and Rembrandt IP Management, LLC ("Rembrandt"). Acacia and Rembrandt are non-practicing entities ("NPEs") with business models directed at acquiring and licensing patents. Jt. Ltr. at 1. Thought negotiated with Acacia in 2009 to jointly monetize the patents-in-suit, signing a tentative agreement to assign the patents in exchange for $2.5 million, plus enforcement royalties. *Id.* Acacia, however, reserved the right to investigate the technical merits of the patents, and to terminate all obligations if it concluded that the patents were not viable. *Id.* After months of investigation and correspondence with Thought, Acacia terminated the deal. *Id.* The next year, Thought entered into a similar tentative assignment agreement with Rembrandt. *Id.* After conducting a due diligence evaluation of the patents, it appears that Rembrandt also terminated the agreement. *Id.*

Oracle served on Thought discovery requests that encompass all communications between Thought and the NPEs. *Id.*, Ex. A at Request Nos. 21, 30, 50, and 52. Thought produced some limited correspondence with the NPEs and a privilege log that identifies other responsive correspondence. *Id.*, Ex. B. Oracle asserts that all correspondence between Thought and the NPEs made pursuant to the respective due diligence evaluations is discoverable and seeks an order (1) compelling Thought to produce the correspondence and (2) permitting Oracle to question

Thought witnesses in deposition on the subject matter of the correspondence. Jt. Ltr. at 1. Thought resists production, claiming that this correspondence relates to joint litigation planning and is therefore protected under a common-interest privilege. *Id.*

In support of its request, Oracle argues that Thought voluntarily placed its patents on the intellectual property market, and Oracle should therefore be permitted to explore the market's reasons for rejecting them. *Id.* Oracle maintains that Thought's correspondence with the NPEs is highly relevant to Oracle's defenses. As examples, Oracle points to an email from John Garland of Rembrandt to Thought founder Ward Mullins in which he cautioned that the prior art was a "crowded field." *Id.* Another email between Mullins and Garland speculated whether the "Toplink product from 1997-8 has a specific feature" because of concerns about Toplink's status as prior art. *Id.* at 1-2. TopLink is asserted as both invalidating prior art and as an accused product. *Id.* at 2. There is also correspondence between Mullins and former Acacia Vice President Jeffrey Anderson that identified the "data packing" claim term of the asserted '197 Patent as potentially problematic, with Anderson expressing apprehension about "some terms in the claims and the equivalent terms in JPA." *Id.* Oracle argues that this correspondence is indicative of the invalidity of the patents-in-suit. *Id.*

Thought maintains that it has already produced all documents in its possession reflecting its commercial, arm's length communications with Acacia and Rembrandt, and has only withheld communications with Acacia and Rembrandt reflecting legal advice on the scope, validity and infringement of the patents-in-suit, based on the common interest doctrine, attorney-client privileged, and work product doctrine. *Id.* at 4. Thought argues that these communications were in furtherance of a common legal interest pursuant to a non-disclosure/purchase agreement between Thought on one hand and Acacia and Rembrandt on the other. It contends that such communications can be protected by the common-interest doctrine because the communications reflect a common goal and the withheld communications further that common goal. *Id.* at 4-5.

## LEGAL STANDARDS

### A. Discovery Generally

Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery regarding

2

any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "[T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). Rule 26 also provides that a party withholding information under a claim that it is privileged or subject to protection as trial preparation material must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. Fed. R. Civ. Proc. 26(b)(5)(A).

### B. Attorney-Client Privilege and Work Product Doctrine

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). The privilege attaches when "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.* (internal quotations omitted). The privilege is strictly construed. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).

The work product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Richey*, 632 F.3d at 567. The party seeking work product protection must show that the document was (1) prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative. *Id.* The doctrine provides an attorney working on a case "with a certain degree of privacy" so that he may "prepare his legal theories and plan his strategy

3

1 without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

2 **C. Common Interest Doctrine**

3 The common interest doctrine is a narrow exception to the general rule that disclosing information to a third party constitutes a waiver of privilege. *Integrated Global Concepts, Inc. v. j2 Global, Inc.*, 2014 WL 232211, at *2 (N.D. Cal. Jan. 21, 2014) (citing *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)). It applies where "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Pulse Eng'g, Inc. v. Mascon, Inc.*, 2009 WL 3234177, at *3 (S.D. Cal. Oct. 2, 2009). It applies "where allied lawyers and clients work together in prosecuting or defending a lawsuit so that they may exchange information among themselves without waving the privilege[.]" *Elan Microelectronics Corp. v. Apple, Inc.*, 2011 WL 3443923, at *2 (N.D. Cal. Aug. 8, 2011). "[A]lthough it may, in rare cases, be extended to situations where there is anticipated joint litigation, but nothing pending imminently," *Integrated Global*, 2014 WL 232211, at *2 (citing *Elan Microelectronics*, 2011 WL 3443923, at *2), it "does not extend to communications about a joint business strategy that happens to include a concern about litigation." *Elan Microelectronics*, 2011 WL 3443923, at *2 (citation omitted). "[T]he doctrine applies to cases where 'allied lawyers and clients' work together in prosecuting or defending a lawsuit so that they may exchange information among themselves without waving the privilege." *Id.* (quoting *United States v. Mass. Inst. of Tech.*, 129 F.3d 96, 100 (2d Cir. 1999)).

**DISCUSSION**

Here, there appears to be no dispute that the documents are relevant. Thus, as the party asserting the privilege, Thought has the burden of proving that the documents are indeed privileged. *MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 5594474, at *2 (N.D. Cal. Oct. 10, 2013). While Thought may be able to establish privilege for certain documents based on attorney-client or work product, it cannot rely on the common interest doctrine "to shield communications with two entities when it faced no litigation, no impending threat of litigation, and which do not provide any form of legal service as their business." *Integrated Global*, 2014

4

WL 232211, at *2. The decision to purchase (and therefore to sell) patents is "indisputably related to a business purpose." *MediaTek*, 2013 WL 5594474, at *2. Thought argues that the communications with Acacia and Rembrandt reflect "legal advice on the scope, validity and infringement of the patents-in-suit." Jt. Ltr. at 4. "Thus, the question is whether the privilege applies to so-called 'dual purpose' communications, documents which serve both legal and business purposes." *MediaTek*, 2013 WL 5594474, at *2.

"Although courts occasionally state that the client's communications to the attorney must be 'solely' for the purpose of seeking legal advice for the privilege to apply, there is general agreement that the privilege applies where the *primary or predominant purpose* of the attorney-client consultation is to seek legal advice or assistance." *Id.* (emphasis in original) (citing *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1127 (N.D. Cal. 2003)). A document should be "deemed prepared in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (citation omitted); *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 1699536, at *4 (N.D. Cal. June 16, 2006).

In this case, Thought has not met this burden. As Oracle points out, the contractual obligations that gave rise to the correspondence between Thought and the NPEs made no mention of litigation – they only called for patent background investigations or evaluations. Jt. Ltr. at 2. The Acacia agreement stated that "[Acacia] shall undertake a due diligence investigation of the patents" in order to determine whether "the Patents are acceptable[.]" *Id.* (quoting Acacia Agreement §§ 1.2, 1.3). The Rembrandt agreement called for a "pre-closing due diligence and analysis of the Assigned Patents." *Id.* (quoting Rembrandt Agreement § 2.5). Thus, the parties' communication appears to be primarily for business, not litigation, functions. This finding is supported by *Diagnostics Systems Corp. v. Symantec Corp.*, 2008 WL 9396387 (C.D. Cal. Aug. 12, 2008), *aff'd*, 328 F. App'x 621 (Fed. Cir. 2008). In that case, the court examined Acacia's patent acquisition process and found that "Acacia's business is to acquire rights and patents and monetize them." *Id.* at *5. As such, "evaluating patents to acquire and targets to assert those

5

1  patents against" are "clearly business functions, and documents resulting from these functions
2  cannot be categorized in sweeping assertions of privileges[.]" *Id.* at 6; *see also SanDisk Corp. v.*
3  *Round Rock Research LLC*, 2014 WL 691565, at *2-4 (N.D. Cal. Feb. 21, 2014). The Court must
4  draw the distinction between documents created when employees were functioning primarily as
5  attorneys and documents created when employees were functioning in the capacity of furthering
6  business goals. *Diagnostics Sys. Corp.*, 2008 WL 9396387, at *5 (C.D. Cal. Aug. 12, 2008).

Further, even if some of the NPE communications are privileged, the dominant interests between Thought and the NPEs were deciding whether to become business partners in monetizing the patent portfolio. As the negotiations were not made in an effort to formulate a joint defense, this is a non-privileged business decision. *See Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004). This is true even if the correspondence had potential relevance to a hypothetical litigation – such interest is secondary to the immediate business decision of whether to purchase the patents. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 580 (N.D. Cal. 2007) (no common interest in assessment of patent infringement claim where specifically used to further a potential commercial transaction rather than the joint defense of the actual litigation). The interests of the parties were thus commercial and not eligible for common-interest privilege.

## CONCLUSION

Based on this analysis, the Court GRANTS Oracle's request to compel Thought to produce the correspondence and permit Oracle to question Thought witnesses in deposition on the subject matter of the correspondence. However, as it appears that some correspondence listed in Thought's log may be subject to a privilege apart from the common interest doctrine, Thought shall serve on Oracle all non-privileged documents and a revised privilege log by September 2, 2014. If Oracle contends that any withheld documents are not privileged, the parties shall meet and confer in compliance with the undersigned's Discovery Standing Order.

**IT IS SO ORDERED.**

Dated: August 11, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge

6