IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **THE TRUSTEES OF PURDUE UNIVERSITY,**<br><br>Plaintiff,<br><br>v.<br><br>**STMICROELECTRONICS N.V.,** *et al.*,<br><br>Defendants. | § § § § § § § § § § § § | **Civil Action No. 6:21-cv-00727-ADA**<br><br>**JURY TRIAL DEMANDED** |

**THIRD PARTY GENERAL ELECTRIC COMPANY'S COMBINED OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF SUBPOENAED DOCUMENTS AND 30(b)(6) DEPOSITION WITNESS AND CROSS MOTION FOR <u>A PROTECTIVE ORDER TO PREVENT FURTHER DISCOVERY</u>**

Natalie A. Bennett
natalie.bennett@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, 7th Floor
Washington, DC 20004-2541
T. (202) 739-5559
F. (202) 739-3001

Jason C. White
jason.white@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
T. (312) 324-1000
F. (312) 324-1001

Susan K. Stradley
State Bar No. 24117102
susan.stradley@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana, Suite 4000
Houston, Texas 77002
T. (713) 890-5000
F. (713) 890-5001

*Attorneys for General Electric Company*

Third party General Electric Company ("GE") opposes Plaintiff The Trustees of Purdue University's ("Purdue") attempt to seek further discovery in an apparent effort to harass GE. GE requests that this Court deny Purdue's Motion (Dkt. 163) because there is no good-faith basis to subject GE to further discovery. Further, due to an ongoing campaign of egregious conduct by Purdue's counsel, GE also seeks affirmative relief to protect it from further litigation costs and harassment. GE moves this Court for a Protective Order under Federal Rule of Civil Procedure 26(c) and/or 30(d)(3): (1) terminating the deposition of GE; (2) declaring GE's discovery obligations under the parties' subpoenas complete; and (3) granting any other relief to which GE may be entitled.[1] In light of Mr. Shore's conduct leading up to, during, and after the deposition, the Court should deny the request for additional discovery or other relief and grant GE a Protective Order.

## FACTUAL BACKGROUND

**1. Overview of GE's Role as a Third Party**

GE is not a party to this action, which is a patent infringement lawsuit brought by Purdue against Defendants STMicroelectronics, Inc. and STMicroelectronics International N.V. (collectively, "STMicro" or "ST"). *See* Dkts. 1, 27. ST and Purdue sought discovery from GE ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████ *See* Ex. 1, █████████████████████████

---

[1] GE is unsure if Purdue's motion is properly filed, as it appears to violate the Court's requirement that discovery issues be addressed via the Court's summary email procedure. GE files the opposition and cross motion after meeting and conferring with Purdue's counsel about whether Purdue's motion is procedurally proper.

■ The '633 Patent, entitled "High-Voltage Power Semiconductor Device," relates generally to semiconductor devices for high-voltage power applications. *See id.*; *see also* Dkt. 27 ¶¶ 72, 74.

On July 7 and July 12, 2022, respectively, ST and Purdue served subpoenas on GE's registered agents noticing GE's deposition and requesting the production of documents. *See* Ex. 2 (ST's Amended Notice of Subpoena to General Electric Company) & Ex. 3 (Purdue's Cross-Notice of Subpoena to General Electric Company). After GE retained counsel and investigated the circumstances ████████████████████████████ GE indicated separately to counsel for ST and Purdue that the production of documents seemed unwarranted given that Purdue had access to all exchanges between the Purdue and GE ████████ ████████████████████████████ Yet, in order to assist the parties and discharge its discovery obligations, GE agreed to produce a corporate designee under Federal Rule of Civil Procedure 30(b)(6) to testify as to the nine general topics identified in the subpoenas. GE designated Dr. Ljubisa Stevanovic, ████████████████████ to answer questions as to the designated topics, which included: ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ and GE's communications with ST regarding this lawsuit. *See* Ex. 2 at Topic Nos. 1–6; *see also* Ex. 3 at Topic Nos. 1–3. Dr. Stevanovic is an electrical engineer and is not a lawyer, has no legal training, and was not designated nor prepared to assist the parties with issues of contract interpretation or other legal conclusions. *See* Ex. 4, October 10, 2022 Tr. of Stevanovic Dep. ("Stevanovic Tr.") at 14:21–17:4.

   2. **The Court's Previous Assistance Relating to the GE Deposition**

The Court is already familiar with the difficulties in scheduling Dr. Stevanovic's deposition. GE sought to complete Dr. Stevanovic's deposition in August prior to his scheduled travel to Europe, but, after Michael Shore (counsel for Purdue) sent a series of harassing emails and voicemail messages to Natalie Bennett (counsel for GE) relating to the scheduling of the deposition, GE appeared for a remote discovery conference on August 23, 2022. *See* Ex. 8, Excerpts of Aug. 23, 2022 Hearing Transcript ("Hrg. Tr."). During that conference, the Court resolved the details of the Stevanovic deposition, including imposing time limits (two-and-a-half hours per side for a total of five hours) and instructing Mr. Shore not to contact Ms. Bennett by email unless other designated counsel of record were also copied. *Id.* at 19:24–23:20. ST and Purdue discussed the scope of the GE deposition with the Court, and notably Purdue indicated that it already had access to documents it planned to use during the deposition, and neither party sought to compel documents from GE to move forward with questioning. *Id.* at 7:17–25, 18:12–19:23, 23:21–24:10. No party ever urged GE that documents were necessary for GE to provide discovery pursuant to the subpoenas.

### 3. Purdue's Counsel's Misconduct During the GE Deposition

Dr. Stevanovic's remote deposition proceeded on October 10. *See generally* Ex. 4, Stevanovic Tr. Because GE expected the parties would question Dr. Stevanovic about the sensitive details of ███████████████ GE's counsel designated the deposition transcript "Highly Confidential—Outside Attorneys' Eyes Only," as allowed under the Protective Order (Dkt. 65). *Id.* at 7:18–8:15. GE's counsel also noted the deposition testimony should not be shared with in-house representatives at Purdue or ST until further discussions could be undertaken to assess the appropriate confidentiality level(s) for the deposition testimony but GE envisioned working with the parties to ensure the testimony could be utilized during any trial. *Id.* During the course of the

deposition, both ST and Purdue's counsel utilized their allotted time questioning the witness based on documents already available through discovery in the underlying matter.

ST's counsel questioned Dr. Stevanovic first. *See generally id.* at 10:3–66:21. Purdue's counsel, Mr. Shore, then questioned Dr. Stevanovic and was hostile and unprofessional throughout the deposition, consistently treating Dr. Stevanovic in a harassing and belittling manner. Purdue counsel's questioning further exceeded the bounds of the designated topics, sought to coerce Dr. Stevanovic into providing legal conclusions ▮▮▮▮▮▮▮▮▮▮▮ and was calculated ▮▮▮▮▮▮▮▮▮▮▮ if the witness did not agree with Purdue's counsel's characterization ▮▮▮▮▮▮▮▮▮▮▮ *See, e.g., id.* at 75:6–77:17, 93:25–94:1, 104:6–106:20, 203:2–21, 209:15–21, 213:13–18, 214:23–215:11. Ultimately, Purdue's counsel used the GE deposition as an attempt to coerce testimony that is not relevant to the underlying patent infringement case.

Mr. Shore's misconduct during the deposition can only be described as uncivil and disrespectful.[2] He even went so far as to badger the witness about his language skills, remarking that Dr. Stevanovic was "multilingual" yet "can't seem to understand and respond" to questions, Ex. 4, Stevanovic Tr. at 119:3–8, condescendingly spelled out the word "current" during questioning, *id.* at 207:4–7 ("No, I'm asking you what the [word] current means, c-u-r-r-e-n-t"), and asked if Dr. Stevanovic "reads and speaks English," *id.* at 208:9–11. As cited and discussed below, Mr. Shore proceeded to: (1) threaten GE's counsel and Dr. Stevanovic with Rule 11

---

[2] In connection with its Motion, Purdue has provided the Court with video excerpts allegedly "showing some, but not all, of the misconduct that occurred" during Dr. Stevanovic's deposition. Dkt. 163 at 1 n.1. Not only are those excerpts absent of any misconduct by GE's counsel, they intentionally exclude any of the egregious conduct of Mr. Shore that dominated Mr. Shore's examination of the witness. GE is providing the Court with the remainder of the video files showing the harassment and abuse suffered by Dr. Stevanovic and GE's counsel during Mr. Shore's examination and re-examination of the witness. *See* Ex. 9.

sanctions (*id.* at 84:14–18, 110:17–21, 112:4–9, 122:23–123:17, 212:22–213:12); (2) threaten GE ▬▬▬▬▬▬▬▬ (*id.* at 93:25–94:1, 209:15–21, 213:13–18, 214:23–215:11); (3) threaten violations of the Protective Order (*id.* at 209:15–21); (4) exceed the court-imposed time limits (*id.* at 112:4–9, 123:7–17, 188:4–11, 205:22–206:6, 212:15–21); (5) baselessly proclaim that Dr. Stevanovic was not adequately prepared to testify as a 30(b)(6) witness (*id.* at 76:25–78:18, 86:15–23, 202:21–203:21, 212:22–213:12); (6) accuse Dr. Stevanovic, GE's counsel (Ms. Bennett), and ST's counsel (Max Ciccarelli) of collusion (*id.* at 76:18–21, 85:13–17, 90:19–91:16, 101:24–102:13, 122:7–11, 194:14–16, 196:19–20, 212:1–14, 213:7–12, 214:10–13, 215:10–17); (7) argue with and badger Dr. Stevanovic when his answers were not aligned with Purdue's proffered positions (*id.* at 75:6–76:7, 76:25–77:17, 84:14–18, 86:15–23, 180:6–25, 203:2–205:3, 207:4–7, 208:9–11); and (8) make sarcastic, threatening, and condescending remarks to Dr. Stevanovic and counsel (*id.* at 76:18–21, 85:13–17, 93:25–94:1, 101:21–102:13, 107:14–108:14, 119:3–8, 119:16–21, 180:6–25, 194:14–16, 196:19–20, 205:22–206:6, 207:4–7, 208:9–11, 210:13–19, 212:22–215:22).[3] The deposition ultimately ended with Mr. Shore indicating that he would be reconvening the deposition in Waco, threatening sanctions against Ms. Bennett and Dr. Stevanovic, and threatening GE ▬▬▬▬▬▬▬▬ *Id.* at 212:22–215:22.

### 4. Purdue's Counsel's Misconduct After the GE Deposition

Almost as soon as the deposition ended, Mr. Shore resumed sending unprofessional emails to Ms. Bennett in violation of the Court's instruction during the August 23 hearing that he not communicate without copying counsel for ST:

- Immediately following the deposition on October 10, 2022, Mr. Shore emailed Ms. Bennett "demand[ing] that GE produce a properly prepared Rule 30(b)(6) witness in Dallas or

---

[3] The conduct of Purdue's counsel was particularly remarkable given that Dr. Stevanovic was a third-party witness who voluntarily appeared for a deposition after GE spent the time and resources to provide discovery pursuant to subpoenas served by both parties.

6

- Waco within the next 60 days. . . . The responsibility to present a prepared GE witness was yours, and you failed miserably." Ex. 5, October 10, 2022 email, "Deposition."

- The following morning, Mr. Shore continued to harass Ms. Bennett via email (without copying counsel of record) and make threats against GE: "I also request a telephone conference with GE's in-house counsel. He/she needs to know what you got GE into by siding with ST and refusing to cooperate with Purdue…. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6, October 11, 2022 email, "Conference."

- Later that day, Mr. Shore again emailed Ms. Bennett without copying counsel of record in an apparent misogynistic effort to suggest Ms. Bennett was not an appropriate point of contact for him: "Natalie, Make sure you show this email to the senior partner at Morgan Lewis in charge of the GE relationship and show it to GE's in-house counsel in charge of patent litigation. They need to contact me about getting GE off the iceberg you directed it onto." Ex. 7, October 11, 2022 email, "RE: **ROUGH DRAFT** 10/10/2022 . . ."

Mr. Shore's egregious conduct alone warrants the Court denying Purdue's Motion.

## LEGAL STANDARD

Under Rule 26(c), a court, "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). A showing of "good cause" requires only that a sound basis or legitimate need to take judicial action exists. *Landry v. Airline Pilots Ass'n Int'l, AFL–CIO*, 901 F.2d 404, 435–436 (5th Cir. 1990). The court properly exercises its discretion to issue a protective order where the moving party demonstrates its necessity with "a particular and specific demonstration of fact" that rises above "stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Under Federal Rule of Civil Procedure 30(d)(3), "the court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c)" if the deposition "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A)–(B); *see also Soule v. RSC Equip. Rental, Inc.*, No. 11-2022, 2012 WL 5060059, at *2 (E.D. La. Oct. 18, 2012) ("A deposition is not to be used as a device to intimidate a witness or opposing counsel . . . .") (internal quotations omitted). Further, under Federal Rule of Civil Procedure 26(b)(2)(C), "the court must limit the frequency or

7

extent of discovery otherwise allowed by these rules or by local rule if it determines that…the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(1)-(2).

## DISCUSSION

1. **There is No Basis to Compel Further Discovery from GE**

    *a. Dr. Stevanovic was Prepared and Responsive to Questions Concerning the Designated Topics*

Purdue's Motion baselessly argues that Dr. Stevanovic "was unprepared to testify on the noticed topics" and refused to answer questions that "fell squarely within noticed deposition topics." Dkt. 163 at 4. Purdue's counsel apparently misconstrues the designated topics to include a wide variety of subjects unrelated to the underlying proceedings, such as the dates Dr. Stevanovic was available for deposition (Ex. 4, Stevanovic Tr. at 67:19–70:6), ▮▮▮▮ (*id.* at 78:20–80:8), the specific GE entity that pays Dr. Stevanovic's salary (*id.* at 83:15–86:20), ▮▮▮▮[4] (*id.* at 150:17–157:1) ▮▮▮▮ (*id.* at 75:6–76:7, 76:25–77:17, 104:6–106:20, 203:2–21). The noticed topics for GE's deposition generally focused on ▮▮▮▮ and GE's communications with ST regarding this lawsuit. *See* Ex. 2 at Topic Nos. 1–6; *see also* Ex. 3 at Topic Nos. 1–3. Dr. Stevanovic was prepared and able to answer questions pertinent to the designated topics, as evidenced by his

---

[4] ▮▮▮▮

answers to relevant questions from ST and GE.[5]  *See generally* Ex. 4, Stevanovic Tr. at 10:3–66:21.  A corporate witness is not required to be prepared to answer any questions that fall outside the scope of the matters set forth in the Rule 30(b)(6) notice or which are not identified with particularity.  *Rivas v. Greyhound Lines, Inc.*, No. EP-14-CV-166, 2015 WL 13710124, at *6 (W.D. Tex. Apr. 27, 2015).

Even accepting Purdue's interpretations of the designated topics, Dr. Stevanovic's could not have been expected to memorize all details related to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 75:6–78:18.  It is well-established that "Rule 30(b)(6) depositions are not intended to be memory tests in which a deponent is asked to recall every single detail related to a particular topic."  *See Gebremedhin v Am. Family Mut. Ins. Co.*, No. 113-CV-02813, 2015 WL 4272716, at *10 n.6 (D. Colo. July 15, 2015).

Purdue also argues that Dr. Stevanovic "refused to answer numerous questions," Dkt. 163 at 4, while ignoring that in each of Purdue's 18 cited examples, Dr. Stevanovic **either answered the question** or **answered that he did not know**, as they were beyond the scope of the deposition notices.  *See* Ex. 4, Stevanovic Tr. at 83:11–84:21 (answered), 88–89 ("I don't know the answer – how to answer your question."), 96:4–22 (answered), 100:16–102:25 (answered), 104:6–19 ("I gave you my answer . . . I don't know the definition of ▮▮▮▮▮▮▮▮ 105:3–18 ("Legally I do not understand."), 106:11–20 (refusing to speculate), 108:23–109:2 (answered), 128:8–21 ("I can't

---

[5] Purdue's counsel's contention that Dr. Stevanovic's answering of questions posed by ST's counsel somehow evinces a "strategy session" of collusion between ST and GE is without evidence or credibility.  That Dr. Stevanovic did not respond to Mr. Shore's improper or unfairly characterized questions with the answers Mr. Shore wanted indicates nothing more than Dr. Stevanovic's unwillingness to succumb to being bullied, badgered, and harassed by Purdue's counsel.  *See, e.g.*, Ex. 4, Stevanovic Tr. at 76:18–21, 85:13–17, 90:19–91:16, 101:24–102:13, 122:7–11, 194:14–16, 196:19–20, 212:1–14, 213:7–12, 214:10–13, 215:10–17.

legally weigh in on this."), 135:15–24 ("I don't know the answer to that."), 140:6–141:25 (repeatedly answering that he does not know), 166:13–19 ("I don't know what it means to respect patents, so I can't answer that question."), 168:2–22 (asks Mr. Shore to break down very long, argumentative question), 170:1–23 (answered), 176:11–177:13 (Mr. Shore interrupts the witness's answer, as noted by GE's counsel), 177:18–178:7 ("I think we answered that before."). While Purdue's counsel may be dissatisfied with Dr. Stevanovic's answers and refusal to capitulate to Mr. Shore's attempts to intimidate him into giving the answers he wanted, that is not a basis for relief under Rule 30. Dr. Stevanovic was prepared to testify on the designated subpoena topics— not irrelevant and harassing ancillary topics—and GE has satisfied its discovery obligations under the third-party subpoena as to both Purdue and ST through his testimony. The deposition should be terminated since GE has discharged his obligations and especially to protect Dr. Stevanovic and GE from further harassment.

        *b. Document Production is Unwarranted Because GE has Complied with Its Discovery Obligations Through Dr. Stevanovic's Testimony*

Contrary to the misleading arguments in Purdue's Motion, GE did not waive its objections to the document requests under the parties' subpoenas. As the Motion notes, there is no waiver of objections "where counsel for the nonparty and for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena."[6] Dkt. 163 at 3 n.2 (quoting *Bell Inc. v. GE Lighting, LLC*, No. 6:14–CV–00012, 2014 WL 1630754,

---

[6] Courts have also concluded that failure to serve timely written objections does not constitute waiver if the subpoena is overbroad or the producing party is acting in good faith. *State Farm Mut. Auto. Ins. Co. v. Hawkins*, No. 08–10367, 2010 WL 2287454, at *2 (E.D. Mich. June 4, 2010). Both additional exceptions are applicable here: (1) the document requests included broad categories ████████████████████████████████ but instead requested details related to ████████████████████████ generally; and (2) GE's initial lack of objections was not in bad faith because GE and the parties were in contact regarding GE's compliance with its discovery obligations under the subpoenas through the testimony of a corporate representative.

at *9 (W.D. Va. Apr. 23, 2014) (cleaned up)). Purdue argues that no such circumstances exist here because "GE never attempted to negotiate objections with Purdue," *id.*, while ignoring that Purdue had already represented to the Court and the Parties that it was relying on documents in its possession for the GE depositions. Ex. 8, Hrg. Tr. at 7:17–25, 18:12–19:23. GE's counsel also communicated to counsel for ST and Purdue as early as July that GE would not be providing documents and instead would be designating a 30(b)(6) witness, to which neither party objected. Purdue thus has no good-faith basis for seeking to compel these documents now. This Court has previously denied a motion to compel third-party discovery and awarded fees to the third party where the moving party "was on notice" that the third party did not have the requested information, but nonetheless sought to enforce 100% of its subpoena. *Fintiv, Inc. v. STMicroelectronics, Inc.*, No. 1:21-CV-00044-ADA, 2021 WL 2784560, at *2 (W.D. Tex. Apr. 20, 2021) ("The Court finds that [the moving party] made no effort to avoid imposing an undue burden on [the third party]."). The Court should do the same here.

### 2. There is No Basis to Reprimand GE

As discussed above, contrary to Purdue's assertions, GE's corporate deponent was prepared and responsive to questions directed to the designated topics. Purdue attempts to argue that GE's counsel "obstructed" the deposition by making improper objections, instructing Dr. Stevanovic not to answer, and "coaching" him throughout the deposition. Dkt. 163 at 6–9. GE's counsel properly sought to redirect Purdue's counsel so as not to harass the witness. "If counsel's questions go so far beyond the realm of possible relevance where the deposition is being conducted in an abusive manner," then a party is permitted to instruct a deponent not to answer and move for a protective order under Rule 30(d)(3). *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 591 (S.D. Tex. 2011). Further, "[r]epetitive questioning can evince bad faith or a motive to harass the

11

deponent if it is excessive." *Whiting v. Hogan*, No. 12-CV-08039, 2013 WL 1047012, at *6 (D. Ariz. Mar. 14, 2013); *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 584 (D. Md. 2010) ("[I]f the deponent answers a question completely, counsel should not repeatedly ask the same or substantially identical question.") (internal citation and quotation omitted); *Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 646 (N.D. Ind. 1991) (noting that "it would not be appropriate for counsel examining a deponent to repeatedly and deliberately duplicate questions" and such behavior "could support a motion to terminate a deposition . . . if employed to such an extent that bad faith or a motive to harass the deponent could properly be inferred").

Mr. Shore's examination of Dr. Stevanovic was conducted in bad faith and in an abusive manner, as Mr. Shore spent pages of the transcript repeatedly attempting to intimidate Dr. Stevanovic by posing irrelevant and ancillary questions and resorting to offensive, condescending, and sarcastic remarks when Dr. Stevanovic provided what Mr. Shore deemed unsatisfactory answers. What follows is a nonexhaustive list of Mr. Shore's misconduct during the deposition:

- Stevanovic Tr. at 76:18–21 ("Q [by Mr. Shore]. First of all, doctor, your attorney is really objecting a lot when I ask questions but she didn't at all when ST asked questions. I wonder why. Do you know?").
- Stevanovic Tr. at 84:14–18 (Mr. Shore threatened that GE's counsel is "going to get [her]self sanctioned" and claimed the witness "is refusing to say who he works for" despite the witness repeatedly answering the question)
- Stevanovic Tr. at 85:13–17 (Mr. Shore remarked that GE's counsel is "going crazy overboard to protect ST and to align [GE] with ST and against Purdue")
- Stevanovic Tr. at 86:15–23 (Mr. Shore remarked that the witness "doesn't know who he works for" and "I get it. I understand what I'm dealing with now.")
- Stevanovic Tr. at 93:25–94:1 (Mr. Shore remarked, "This is what I warned you about, Natalie."
- Stevanovic Tr. at 107:14–108:14 (Mr. Shore remarked that GE's counsel is "making a fool of [her]self" and accused ST's counsel of making "condescending comment[s]" when asked to be polite and professional)

- Stevanovic Tr. at 112:4–9 (Mr. Shore remarked that he will be going "way beyond" the allotted deposition time and threatened to sanction the witness if he attempts to leave)[7]

- Stevanovic Tr. at 119:3–8 (Mr. Shore remarked, "Dr. Stevanovic, you have a Ph.D. and a Masters degree, you're multilingual and I'm having a difficult time figuring out why you can't seem to understand and respond to my questions.")

- Stevanovic Tr. at 122:7–11 (Mr. Shore remarked that the witness "has been prepared not to cooperate with Purdue and there has been a strategy session between ST and GE not to cooperate with Purdue.")

- Stevanovic Tr. at 123:7–17 (Mr. Shore threatened to "haul [GE's counsel] before the Court")[8]

- Stevanovic Tr. at 180:6–25 (Mr. Shore refused to rephrase a question when asked by the witness and remarked, "I'll give it one more try. I realize [the witness] has a Masters and a Ph.D. and I was assuming maybe more than I should have.")

- Stevanovic Tr. at 194:14–16 (Mr. Shore remarked during ST's re-examination of the witness, "Let's see if Natalie objects when you ask him ▮▮▮▮▮▮▮▮▮▮▮▮ This ought to be good."), 196:19–20 ("Where is Natalie objecting that it calls for a legal conclusion when you ask, Max?")

- Stevanovic Tr. at 205:22–206:6 (Mr. Shore threatens GE's counsel and says "you have been the worst.")

- Stevanovic Tr. at 207:4–7 (Mr. Shore remarks to the witness, "No, I'm asking you what the [word] current means, c-u-r-r-e-n-t" after making multiple disparaging comments about the witness's intelligence, qualifications, and "multilingual" nature)

- Stevanovic Tr. at 208:9–11 (Mr. Shore remarks, "So no in the context as you understand it as a person who reads and speaks English, no means none or zero, correct?")

- Stevanovic Tr. at 209:15–21 (Mr. Shore threatened to share the deposition testimony with the parties and remarked to GE's counsel that she should "see what Purdue and the head people at GE think about what you've done because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮")

---

[7] Mr. Shore continued to threaten the witness and GE's counsel if they did not comply with his demands for more time on the record, but ultimately refused to agree to GE's counsel's offer of additional time. *See id.* at 188:12–189:12.

[8] Mr. Shore repeatedly threatened GE's counsel with sanctions throughout the deposition and at the close of questioning. *See id.* at 110:17–21, 212:22–25. Mr. Shore has carried through with his threats and continues to harass GE by seeking sanctions in connection with the instant Motion. Dkt. 163 at 6.

There is no basis to sanction GE or its counsel and instead the record illuminates the abuse that GE and its counsel withstood. It would be a drain on the party and likely judicial resources for this exercise to be repeated.

### 3. GE, Not Purdue, is Entitled to Relief Following the GE Deposition

This Motion is not calculated to lead to the discovery of admissible evidence in the case against ST. Purdue already had a full and fair opportunity to develop a record for trial. GE will have no role in the trial between these parties and therefore seeks relief from the Court.

Moreover, in light of Mr. Shore's egregious conduct leading up to, during, and after the deposition as set forth in detail above, GE seeks a Protective Order to protect against any further harassment. Courts regularly deem attorney conduct like that of Mr. Shore set forth above as harassing and in bad faith and grant protective orders under Rules 26(c) and 30(d)(3). *See Soule*, 2012 WL 5060059, at *3 (granting protective order terminating deposition where counsel yelled and pounded on the table during examination, was confrontational and argumentative to the witness, accused the witness of lying, providing false testimony, or providing testimony that is not true, and routinely disrupted and/or cut off the witness's responses); *see also United States ex rel. Baltazar v. Warden*, 302 F.R.D. 256, 264–67 (N.D. Ill. 2014) (granting protective order terminating deposition due to counsel's "hostile and confrontational" behavior, "disrespectful, sarcastic questions," and "aggressive and threatening behavior," including counsel's attempts to intimidate the witness into answering questions and opposing counsel into not making objections by making threats of Rule 11 sanctions). A Protective Order is necessary to protect third party GE from any further harassment by Purdue or its counsel.

## CONCLUSION

GE requests that this Court deny Plaintiff's Motion to Compel Production of Subpoenaed

Documents and 30(b)(6) Deposition Witness (Dkt. 163).  Additionally, GE respectfully requests entry of a Protective Order under Rules 26(c) and/or 30(d)(3): (1) terminating the deposition of GE; (2) declaring GE's discovery obligations under the parties' subpoenas complete; and (3) granting any other relief to which GE may be entitled.

Dated: November 7, 2022

Respectfully submitted,

/s/ *Susan K. Stradley*
Natalie A. Bennett
natalie.bennett@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, 7th Floor
Washington, DC 20004-2541
T. (202) 739-5559
F. (202) 739-3001

Jason C. White
jason.white@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
T. (312) 324-1000
F. (312) 324-1001

Susan K. Stradley
State Bar No. 24117102
susan.stradley@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana, Suite 4000
Houston, Texas 77002
T.  (713) 890-5000
F.  (713) 890-5001

***Attorneys for General Electric Company***

## CERTIFICATE OF CONFERENCE

Counsel for General Electric Company has conferred with counsel for Plaintiff. No agreement regarding the relief requested herein could be reached.

/s/ *Susan K. Stradley*
Susan K. Stradley

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2022, a true and correct copy of the foregoing was served upon all counsel for all parties via email.

/s/ *Susan K. Stradley*
Susan K. Stradley