IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| THE TRUSTEES OF<br>PURDUE UNIVERSITY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS<br>INTERNATIONAL N.V. and<br>STMICROELECTRONICS, INC.,<br><br>　　　　Defendants. | Civil Action No. 6:21-cv-00727-ADA<br><br>**PUBLIC VERSION**<br><br>JURY TRIAL DEMAND |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

　　Plaintiff, The Trustees of Purdue University ("Purdue"), urges the Court to deny Defendants' ("ST") request to compel the production of documents by third-party Rembrandt IP Management, LLC ("Rembrandt") because those documents (collectively, the "Rembrandt Documents") are both privileged and irrelevant. The Court's initial determination is sound and must be upheld. *See* Ex. 1 (Oct. 14, 2022 Hearing Tr.).

　　As evident from Rembrandt's privilege log (Dkt. 165-2), and the Rembrandt Documents which were submitted for *in camera* review on October 14, 2022, for the Court's convenience and to the extent necessary, all the communications include attorneys and relate to patent enforcement, including ***potential litigation and not just licensing***. *See also* Ex. 2; Declaration of Michael Johnson ("Johnson Decl.") (identifying Meredith L. Carter, a lawyer and member of Rembrandt's in-house business development team as the point of contact). Indeed, the Rembrandt Documents on their face indicate that the communications are privileged, and thus, exempt from discovery:

1

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

> This email is recognition of the fact that the PRF Enforcement has moved out of prospecting and into anticipated litigation and is now Prospecting. In connection with the foregoing, all conversations and work product are now prepared in anticipation of litigation and prepared under the direction of Rembrandt legal counsel.

*Id.*

The privilege log and the declaration of Rembrandt's President and Chief Executive Officer, Mr. Michael Johnson, also firmly establish that Rembrandt was not simply discussing a business relationship with Purdue Research Foundation ("PRF") but taking on a litigation project where Rembrandt would provide the Rule 11 investigation, locate outside counsel, manage the litigation process, and oversee any legal obligations of any resulting licensees.

Moreover, the Fifth Circuit has stated that the protection "can apply where litigation is ***not imminent***, 'as long as the primary motivating purpose behind the creation was to aid in possible future litigation.'" *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (citations omitted) (emphasis added). Accordingly, the fact that the discussions between Rembrandt and Purdue Research Foundation ("PRF") took place six years ago is irrelevant, contrary to ST's assertions.

Finally, it is undisputed that the Rembrandt Documents relate solely to U.S. Patent No. 8,035,112 ("'112 Patent"), which has been disclaimed in its entirety, ***and not*** actual the patent-in-suit—U.S. Patent No. 7,498,633 ("'633 Patent"). *See* Dkt. 164 at 1; *see also* Johnson Decl., ¶ 4. These are two separate patents with different scopes and directed to different inventions. Thus, none of the Rembrandt Documents are relevant to any party's claim or defense in this case.

## I.   BACKGROUND

Rembrandt is an entity that helps patent owners investigate intellectual property infringement and manage litigation against infringers. *See* http://www.rembrandtip.com/litigation-Management.php. Rembrandt role has included "identifying infringed patents that cover

fundamental technology in important markets, evaluation of intellectual property ("IP") for enforcement actions by Rembrandt's technical, legal, and financial in-house teams, and working closely with leading law firms and experts to plan and carry out a patent infringement lawsuit against alleged infringers." Johnson Decl., ¶ 3. Rembrandt's role also included "REDACTED ." *Id.*; *see also* Ex. 1 (Oct. 14, 2022 Hearing Tr.) at 18:19-20 (arguing "Rembrandt is also in the business of funding litigation, some joint ventures.").

## II. ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) permits discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party...." Fed. R. Civ. P. 26(b)(1). "Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." Similarly, under the attorney work product doctrine, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3) (A); *Hickman v. Taylor*, 329 U.S. 495, 509–12 (1947).

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. Fed. R. Evid. 401.

### A. The Rembrandt Documents are Privileged

It is indisputable that the relationship between Rembrandt and PRF was beyond just business. First, in his declaration, Mr. Johnson clearly states that Rembrandt's role included "REDACTED

[REDACTED].," Johnson Decl., ¶ 3 (emphases added). Second, in the NDA, PRF and Rembrandt defined Confidential Information to include legal documents, such as:

[REDACTED]

Dkt. 164, Ex. A (NDA, filed under seal) at 1 (emphasis added). Rather, the relationship is analogous to a potential client (PRF) meeting with potential counsel (Rembrandt) about a series of contemplated lawsuits, given that attorney functions—i.e., general due diligence and pre-suit investigations that may happen before there is an attorney-client agreement—are implicated. Nonetheless, preliminary communications between a potential client and a lawyer are normally subject to the attorney-client privilege. *See, e.g., In re Auclair*, 961 F.2d 65 (5th Cir. 1992). As the privilege log shows, PRF's main contact was Meredith L. Carter, a lawyer and member of Rembrandt's in-house legal team, further emphasizing that the communications were made for the purposes of obtaining legal advice, and more specifically for enforcement of the '112 Patent, including potential litigation and litigation management. Therefore, the Rembrandt Documents are clearly privileged.

Third, the Rembrandt Documents clearly state that the "all conversations and work product are now prepared in anticipation of litigation." *See, e.g*., Ex. 2. Thus, the Rembrandt Documents are also exempt from discovery under the work-product doctrine. And contrary to ST's arguments, the timing of PRF's discussions with Rembrandt and the filing of this lawsuit is irrelevant because Purdue ***did file*** suit. *See In re Kaiser Aluminum and Chem. Co*., 214 F.3d at 586) (confirming that litigation need not be ***imminent*** for this doctrine to apply); *see also Diversified Indus., Inc. v.*

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

*Meredith,* 572 F.2d 596, 603 (8th Cir.1977) (declaring that work product prepared in anticipation of litigation does not have to be prepared by an attorney. Indeed, while work product often is produced by an attorney, "the concept of 'work product' is not confined to information or material gathered or assembled by a lawyer."). Based on the evidence of record, Rembrandt and PRF's relationship was absolutely undertaken in contemplation of future litigation to be jointly managed.

The Rembrandt-PRF NDA also confirms that there was no waiver of work product. *See, e.g.*, *United States v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2016 WL 1031157, at *3 (E.D. Tex. Mar. 15, 2016) (declaring that "[l]itigation funders have an inherent interest in maintaining the confidentiality of potential clients' information, therefore, [Plaintiffs] had an expectation that the information disclosed to the litigation funders would be treated as confidential."). Since the parties executed an NDA, there was no likelihood that an adversary would come into possession of privileged materials. As such, the disclosures to Rembrandt did not constitute a waiver.

Finally, the interest doctrine also applies in this case. Although "[g]enerally, when privileged information is divulged to a third party, attorney-client and work-product protection cease to exist[,] . . . the common interest doctrine extends a recognized privilege—such as attorney-client or work-product privilege—to protect communications between two parties or attorneys that share a common legal interest." *Finalrod IP, LLC v. John Crane, Inc.*, 2019 WL 13074600, at *2 (W.D. Tex. Mar. 22, 2019). The common interest doctrine protects communications between potential co-parties and their counsel. *See id.* (citing *In re Sante Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)). Here, PRF and Rembrandt's goal was enforcement of the '112 Patent—i.e., a common legal interest.

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

To argue otherwise, ST relies entirely on *Thought, Inc. v. Oracle Corp.*, No. 12-CV-05601-WHO MEJ, 2014 WL 3940294 (N.D. Cal. Aug. 11, 2014). But this case is nonbinding on this Court and very distinguishable. In *Thought*, "the correspondence between Thought and the [other parties] made no mention of litigation – they only called for patent background investigations or evaluations." *Id*. at *3. Thus, the court concluded that "the parties' communication appear[ed] to be primarily for business, not litigation, functions" since the agreement was focused on "pre-closing due diligence and analysis of the Assigned Patents." *Id*. Here, as detailed above, PRF and Rembrandt's goal was patent enforcement, including potential litigation, as the privilege log demonstrates. Rembrandt's role included legal functions: "REDACTED." Johnson Decl., ¶ 3. Accordingly, the communications were not primarily for business.

### B. The Rembrandt Documents are Irrelevant

The Court should also decline to compel the production of the Rembrandt Documents because they are irrelevant. None of the Rembrandt Documents concern the '633 Patent, the sole asserted patent in this case. Instead, the Rembrandt Documents concern the '112 Patent, which has been disclaimed and no longer at issue in this case. *See* Dkt. 158 (order dismissing with prejudice all claims and counterclaims related to the '112 Patent). Whatever similarities in technology that the '633 patent and the '112 Patent share, they are two separate patents with different technology.

Further, it is well-settled that information regarding litigation funding is irrelevant and protected from discovery. *See Mullen Industries LLC v. Apple Inc.*, No. 6-22-cv-00145, Dkt. 64 (W.D. Texas Oct. 19, 2022) (Albright, J.) (quashing deposition notices to the extent they seek information regarding litigation funders and/or litigation investors); *MLC Intellectual Prop., LLC*

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

*v. Micron Tech., Inc.*, Case No. 14-cv-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (requiring the provision of a "specific, articulated reason to suspect bias or conflicts of interest"); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019), *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*, No. 2:17-CV-2349-KJD-NJK, 2020 WL 1042515 (D. Nev. Mar. 3, 2020)) (declaring that "[c]ourts will compel discovery into funding sources only upon the presentation of '*some objective evidence*' that the discovering party's 'theories of relevance are more than just theories.'") (emphasis added).

As one court has explained, "the real (not theoretical) significance and purpose of the inquiry [into litigation funding efforts] is to learn whether litigation funding is involved in the case." *Art Akiane LLC. v. Art & Soulworks LLC*, No. 19 C 2952, 2020 WL 5593242, *6 (N.D. Ill. Sep. 18, 2020). Such facts, however, are "'irrelevant' – and potentially harmful to the party obtaining litigation funding – without legitimately advancing the purposes of litigation or of defense one whit." *Id*. In this case, ST does not claim (nor can it) that any funding or business arrangement with Rembrandt relates to the '633 Patent.

Because ST cannot establish the requisite objective evidence to compel production of unrelated, privileged materials, the Motion must be denied.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny ST's Motion.

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

Dated: November 14, 2022          Respectfully submitted,

By: /s/ *Halima Shukri Ndai*
Mark D. Siegmund (SBN 24117055)
Craig Cherry (SBN 24012419)
STECKLER WAYNE CHERRY & LOVE PLLC
8416 Old McGregor Road
Waco, Texas 76712
Tel: (254) 651-3690
Fax: (254) 651-3689
mark@swclaw.com
craig@swclaw.com

Michael W. Shore (SBN 18294915)
Chijioke E. Offor (SBN 24065840)
Halima Shukri Ndai (SBN 24105486)
THE SHORE FIRM
901 Main Street, Suite 3300
Dallas, Texas 75202
Tel: (214) 593-9110
Fax: (214) 593-9111
mshore@shorefirm.com
coffor@shorefirm.com
hndai@shorefirm.com

Brian D. Melton (SBN 24010620)
John P. Lahad (SBN 24068095)
Hayley Stillwell (pro hac vice)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
bmelton@susmangodfrey.com
jlahad@susmangodfrey.com
hstillwell@susmangodfrey.com

***COUNSEL FOR PLAINTIFF
THE TRUSTEES OF PURDUE UNIVERSITY***

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

**CERTIFICATE OF SERVICE**

In accordance with Federal Rule of Civil Procedure 5 and Local Rule CV-5, I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system on November 14, 2022.

*/s/ Halima Shukri Ndai*
Halima Shukri Ndai