**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| THE TRUSTEES OF PURDUE UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS INTERNATIONAL N.V. and STMICROELECTRONICS, INC.,<br><br>Defendants. | Civil Action No. 6:21-cv-00727-ADA<br><br>**PUBLIC VERSION**<br><br>JURY TRIAL DEMAND |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO ADD CLAIM 10 OF THE PATENT-IN-SUIT**

Defendants' ("ST") Response (Dkt. 170) rests on the false premises that Purdue was not diligent in seeking to assert claim 10, and that as a result ST will suffer "incurable prejudice" if claim 10 is added to the case now. The inquiries for the Court are (1) whether Purdue's adding claim 10, which depends from claim 9, without timely seeking leave from the Court to do so for ***eight days*** caused ST material prejudice; and (2) will granting leave to add claim 10 necessitate further amendments to the schedule and delay the case. The answer to both inquiries is "No." Leave to add claim 10 should be granted.

## I. ARGUMENT

The Court extended the deadline to file final infringement contentions and amend the pleadings to October 13, 2022. *See* Dkt. 144. Purdue met that deadline as to both the infringement contentions and amending complaint, but did so without moving for leave to add dependent claim 10. Purdue's motion for leave to add claim 10 was subsequently filed on October 21, 2022, a mere eight days later. *See* Dkt. 159.

**A. Purdue has diligently pursued this case.**

Purdue sued ST for infringement of U.S. Patent No. 7,498,633 ("'633 Patent") on July 14, 2021 (Dkt. 1), and timely served its Preliminary Infringement Contentions ("PIC") on October 25, 2021.[1] *See* Dkt. 45 (setting PIC deadline). Claim 10, the single dependent claim Purdue seeks leave to assert now, applies only to accused products ST admits were first "announced" on December 9, 2021. *See* Dkt. 170 at 5 ("The products that Plaintiff accuses of infringing claim 10 are Defendants' third generation of SiC MOSFET products.").[2] Purdue could not have accused ST's "third generation" products in its preliminary infringement contentions on October 25, 2021[3] because those products did not exist for sale in the U.S.[4] There is no evidence of record when the ST third generation products were available for purchase in small quantities in the U.S.

January 14, 2022 was the deadline for ST to produce all relevant core technical documents.[5] ST failed and refused to meet this deadline. As a result, Purdue has been actively, diligently pursuing the ST core technical information related to SiC MOSFETs.[6]

---

[1]Purdue filed its First Amended Complaint on October 25, 2021. Dkt. 27. The First Amended Complaint further demonstrates Purdue's diligence as it includes detailed claim charts based on time-consuming and costly reverse-engineering. *See, e.g.*, Dkt. 27-1.

[2]The date ST's third generation topics were available in the United States will be a topic for the deposition of Arrow Electronics, one of ST's SiC MOSFET distributors whose deposition and documents ST is trying to suppress or obstruct. *See The Trustees of Purdue University v. STMicroelectronics N.V et al*, No. 6:22-mc-00852, Dkt. 14 (W.D. Tex. Nov. 9, 2022).

[3]Courts have routinely held that a patentee has good cause to amend its infringement contentions to include newly accused products that the defendant introduced to the market after the plaintiff served its initial infringement contentions. *See, e.g., GREE, Inc. v. Supercell Oy*, No. 219CV00310JRGRSP, 2020 WL 7396506, at *2 (E.D. Tex. Dec. 17, 2020). Here, claim 10 would not be at issue but for ST's new products.

[4]"Announcing" a product is not the equivalent of making available to purchase in small quantities. ST fails to state when its third-generation products were available in single unit quantities in the U.S. *See* Dkt. 170 at 5.

[5]Standing Order Governing Proceedings ("OGP") and the Scheduling Order (Dkt. 45).

[6]*See* Dkt. 139, 149, & 162 (Orders regarding discovery disputes); *see also* Dkt. 64 (demonstrating ST's attempt to limit Purdue's access to core technical documents from the outset of this case by seeking source code restrictions for semiconductor design and manufacturing information).

On October 25, 2022, ***after*** Purdue's extended deadline to file and serve an amended complaint and final infringement contentions, ST served a third supplemental response to Purdue's Interrogatory No. 3. In that supplementation, ST provided key correlation information for its technical materials, which have been the subject of numerous discovery hearings and broken promises from ST's counsel.[7]




Ex. A at 33-46. This is information, along with the corresponding documentation, firmly established infringement of claim 10 by the identified parts. Purdue should not be penalized for ST's gamesmanship.[8]

[7] *See* Ex. B (September 20, 2022 email from ST's stating correlation materials will be provided "this week"); *see also* Declaration of Halima Shukri Ndai, ¶ 2 (discussing ST's production of technical materials, including CAD (computer-aided design) files for accused products related to REDACTED as late as ***September 19, 2022***); Ex. C (establishing that recently produced materials confirmed infringement of claim 10).

[8] ST's reliance on a TechInsights report in its Response only highlights its gamesmanship because Purdue requested such materials on June 20, 2022, but ST has not produced them in this case despite promises to do so. *See* Exs. D (Request for Production 10), E, & F.

On October 13, 2022, Purdue timely filed its Second Amended Complaint and served its Final Infringement Contentions ("FIC").[9] Thus, there were no "missed deadlines" as to serving or filing anything necessary to place ST on notice of Purdue's claims within the deadlines set by the amended Scheduling Order. On October 21, 2022, ***a mere eight (8) days later***, Purdue sought leave to add claim 10.[10] Because Purdue complied with the Court's Scheduling Order as to putting ST on notice of the claims at issue, i.e., filing its Second Amended Complaint and serving its FICs by the required October 13, 2022 deadline, Purdue's eight-day tardy attempt to seek leave to add dependent claim 10 is a textbook example of excusable neglect, which includes "late filings that were due to mistake, inadvertence, or carelessness but not bad faith." *See Turk v. Somervell Cty. Hosp. Dist.*, No. 6:15-cv-00231-ADA-JCM, Dkt. 157 at 2 (W.D. Tex. Nov. 9, 2018) (Albright, J.) (permitting Rule 12(c) motion filed one year after dispositive motion deadline).[11]

**B. ST will not be prejudiced by the addition of dependent claim 10.**

The absence of prejudice, by itself, can support granting leave to amend. *See Kinetic Concepts, Inc. v. BlueSky Med. Corp.*, No. SA-08-CV-102-RF, 2009 WL 10664413, at *2–3 (W.D. Tex. Dec. 21, 2009). It is undisputed that dependent claim 10 adds no new subject matter to the

[9] Dkt. 144 at 1.

[10] The OGP expressly states that leave is required for the Court to determine if the schedule would be impacted. Here, there is no impact on the schedule. ST is not seeking any change in the schedule should the Court grant Purdue's Motion for Leave.

[11] *See also Mass Engineered Design, Inc. v. Ergotron, Inc.*, 206 CV 272, 2008 WL 1930299, at *3 (E.D. Tex. Apr. 30, 2008) (granting leave to amend infringement contentions to address new accused products where plaintiff showed good cause based on defendant's delay in providing discovery and the defendant would not suffer prejudice); *Wisk Aero LLC v. Archer Aviation Inc.*, 3:21-CV-02450-WHO, 2022 WL 5007912, *1–*6 (N.D. Cal. 2022) (granting leave to serve amended infringement contentions where the patentee "does not assert new theories of infringement, and because it filed its amendments within two or three months of receiving relevant and previously nonpublic information"); *see also North Cypress Med. Center Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018) (declaring that "[i]n reviewing the timeliness of a motion to amend, delay alone is insufficient: 'The delay must be undue, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court"' and finding denial of leave to amend to be an abuse of discretion).

case, but only further ***limits*** the width of the claimed JFET region.[12] In particular, claim 10 specifies that "the JFET region has a width of about one micrometer" where independent claim 9 allows JFET regions "less than about three micrometers."

ST is not prejudiced in presenting its invalidity case. ST has already challenged the validity of claim 10 in IPR2022-00252 (the "ST IPR") at the Patent Trial and Appeal Board ("PTAB") and lost (twice). The ST IPR specifically argued that the prior art, Ryu (US 2004/0119076 A1), disclosed the limitation of claim 10:

**2. Dependent Claim 10**

***"The double-implanted metal-oxide semiconductor field-effect transistor of claim 9, wherein the JFET region has a width of about one micrometer."***

*Ryu* in view of *Williams* renders obvious claim 9, as discussed above. *Ryu* discloses the additional limitation of claim 10. For example, *Ryu* discloses that "if the gap [between the p-wells 20] is too narrow, the resistance of the **JFET region**

80

Case 6:21-cv-00727-ADA Document 56-1 Filed 12/20/21 Page 85 of 95

Petition for *Inter Partes Review*
of U.S. Patent No. 7,498,633

**21** may become very high," and thus "gaps of from about 1 μm to about 10 μm are preferred." EX1003, ¶44; *see also ClearValue*, 668 F.3d, 1345. Therefore, *Ryu* discloses the **JFET region 21** may have a width of about one micrometer. EX1002, ¶140.

Thus, *Ryu* in view of *Williams* renders claim 10 obvious. *Id.*, ¶141.

[12] *See* '633 Patent, claims 9 and 10; *see also* Dkt. 159-2 (PTAB decision denying IPR institution) at 8 ("Claims 10 and 11 depend from claim 9 and impose additional limitations on the JFET region.").

Dkt. 56-1 at 80-81.[13] The same arguments ST made in the ST IPR can be asserted in ST's final invalidity contentions because the ST IPR was not instituted.[14]

ST does not seek a continuance of this case. Dkt. 170 at 7-8. Instead, ST argues it suffers prejudice because it is "barred from filing ***additional*** IPR petitions." Dkt. 170 at 8 (emphasis added). This argument is nonsensical because ST would have been time-barred on October 13, 2022 if the motion for leave had been timely filed.[15] ST challenged claim 10 in an IPR ***long before*** Purdue even sought to assert it in this case, likely because ST knew its third generation products infringed claim 10 at the time the IPR was filed.[16]

**C. Claim 10 matters.**

Purdue is already asserting independent claim 9, from which narrower claim 10 depends, against the same third generation SiC MOSFET products. As such, to fully present its infringement theory, Purdue seeks to add claim 10. The ability to present a comprehensive infringement theory weighs significantly in favor of granting Purdue's Motion. *See MV3 Partners LLC v. Roku, Inc.*, Case No. 6:18-cv-00308-ADA (W.D. Tex. Mar. 23, 2020) (Albright, J.), at 3 (finding "amendment is important because it allows MV3 to fully present its infringement theory").

---

[13] On November 8, 2022, the PTAB denied ST's request for rehearing. Dkt. 180-1.

[14] ST has already had over a month to find more prior art to assert in its final invalidity contentions since the filing of the Second Amended Complaint and service of the Final Infringement Contentions on October 13, 2022.

[15] When opposing Purdue's request for an extension of deadlines, ST did not make this same "too late for more IPRs" argument. *See* Dkt. 130.

[16] Notably, Wolfspeed, Inc. ("Wolfspeed") also challenged the validity of claim 10 of the '633 Patent in an IPR, which included Ryu and two additional prior art references: U.S. Patent Nos. 6,043,532 and 5,171,705. On November 8, 2022, the PTAB denied Wolfspeed's petition. *See* Dkt. 180-3. Thus, ST's notion that "no one can say what additional prior art [it] might have found and put forth" is baseless since both ST and Wolfspeed failed separately and used separate art to attack the same claims, including dependent claim 10.

**D. ST's caselaw is distinguishable and inapplicable.**

ST relies on *U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003) for the proposition that "failure to obtain leave" to file an amended complaint "results in an amended complaint having no legal effect." But this principle as laid out by Charles Alan Wright and Arthur R. Miller and approvingly quoted by the Fifth Circuit in *HealthSouth* contains an exception: "an untimely amended pleading served without judicial permission may be considered as properly introduced ***when leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change***." *Id*. at 295 (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1484 (3d ed. 1990) (emphasis added)).

In *Mathews*, the plaintiff submitted an amended complaint without first requesting leave of court. *Id*. at 294. By the time the plaintiff later re-delivered the amended complaint with a proper request for leave, the statute of limitations on the plaintiff's newly added age discrimination claim had expired. *Id*. On appeal, the Fifth Circuit held that the newly added claim was barred by the statute of limitations because the amended complaint was only deemed filed after it was resubmitted with a request for leave. *Id*. at 296–97. Thus, the exception did not apply in *Mathews* "because the loss of the affirmative defense of statute of limitations would prejudice" the defendant if the court considered the amended complaint filed without leave of court. *Id*. at 297.

Here, on the other hand, there is no defense lost to ST by allowing the amended complaint adding dependent claim 10.

## II. CONCLUSION

Because "[a]ny amendment to add patent claims requires leave of court so that the Court can address any scheduling issues" and because the Court modified the Scheduling Order (Dkt. 144) on September 7, 2022, Purdue respectfully requests that the Court grant its Motion and

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

Order ST to file ST's Answer to Purdue's Second Amended Complaint and serve its Final invalidity Contentions within 7 days of the Court's Order granting this Motion.

Dated: November 14, 2022

Respectfully submitted,

By: /s/ *Halima Shukri Ndai*

Mark D. Siegmund (SBN 24117055)
Craig Cherry (SBN 24012419)
STECKLER WAYNE CHERRY & LOVE PLLC
8416 Old McGregor Road
Waco, Texas 76712
Tel: (254) 651-3690
Fax: (254) 651-3689
mark@swclaw.com
craig@swclaw.com

Michael W. Shore (SBN 18294915)
Chijioke E. Offor (SBN 24065840)
Halima Shukri Ndai (SBN 24105486)
THE SHORE FIRM
901 Main Street, Suite 3300
Dallas, Texas 75202
Tel: (214) 593-9110
Fax: (214) 593-9111
mshore@shorefirm.com
coffor@shorefirm.com
hndai@shorefirm.com

Brian D. Melton (SBN 24010620)
John P. Lahad (SBN 24068095)
Hayley Stillwell (pro hac vice)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
bmelton@susmangodfrey.com
jlahad@susmangodfrey.com
hstillwell@susmangodfrey.com

***COUNSEL FOR PLAINTIFF***
***THE TRUSTEES OF PURDUE UNIVERSITY***

**CERTIFICATE OF SERVICE**

In accordance with Federal Rule of Civil Procedure 5 and Local Rule CV-5, I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system on November 14, 2022.

*/s/ Halima Shukri Ndai*
Halima Shukri Ndai