-1-

1                 IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
2                            WACO DIVISION

3    THE TRUSTEES OF PURDUE   *
        UNIVERSITY            *      November 21, 2022
4                             *
     VS.                      *
5                             * CIVIL ACTION NO. W-21-CV-727
     STMICROELECTRONICS, INC.*
6       ET AL                 *

7           BEFORE THE HONORABLE ALAN D ALBRIGHT
                      DISCOVERY HEARING
8
     APPEARANCES:
9
     For the Plaintiff:   Michael W. Shore, Esq.
10                        Shore Chan DePumpo LLP
                          901 Main Street, Suite 3300
11                        Dallas, TX 75202

12                        John P. Lahad, Esq.
                          Susman Godfrey, L.L.P.
13                        1000 Louisiana Street, Suite 5100
                          Houston, TX 77002
14
     For the Defendant:   Justin S. Cohen, Esq.
15                        Dina W. McKenney, Esq.
                          Bruce S. Sostek, Esq.
16                        Thompson & Knight, LLP
                          1722 Routh Street, Suite 1500
17                        Dallas, TX 75201

18                        Massimo Ciccarelli, Esq.
                          Ciccarelli Law Firm
19                        750 N. St. Paul St., Suite 200
                          Dallas, TX 75201
20
     Court Reporter:      Kristie M. Davis, CRR, RMR
21                        PO Box 20994
                          Waco, Texas 76702-0994
22                        (254) 340-6114

23      Proceedings recorded by mechanical stenography,

24   transcript produced by computer-aided transcription.

25

2

| | | |
|---|---|---|
| 10:59 | 1 | (Hearing begins.) |
| 10:59 | 2 | THE BAILIFF:  All rise. |
| 10:59 | 3 | DEPUTY CLERK:  A Civil Action in Case |
| 10:59 | 4 | 6:21-CV-727, the Trustees of Purdue University versus |
| 10:59 | 5 | STMicroelectronics, Incorporated, et al.  Case called |
| 10:59 | 6 | for a discovery hearing. |
| 10:59 | 7 | THE COURT:  Plaintiff's counsel? |
| 11:00 | 8 | MR. LAHAD:  Good morning, Your Honor. |
| 11:00 | 9 | John Lahad of Susman Godfrey for the plaintiff. |
| 11:00 | 10 | Your Honor, my colleague Mr. Brian Melton |
| 11:00 | 11 | does send his regrets and hopes that you'll excuse him |
| 11:00 | 12 | from this hearing.  My colleague Hayley Stillwell |
| 11:00 | 13 | became a mom for the first time last week and also |
| 11:00 | 14 | hopes that you'll excuse her from this hearing. |
| 11:00 | 15 | THE COURT:  She has a better excuse than |
| 11:00 | 16 | Mr. Melton does, is my guess. |
| 11:00 | 17 | MR. SHORE:  Michael Shore, Your Honor, |
| 11:00 | 18 | for Purdue University. |
| 11:00 | 19 | THE COURT:  Mr. Ciccarelli? |
| 11:00 | 20 | MR. CICCARELLI:  Your Honor, good |
| 11:00 | 21 | morning.  Max Ciccarelli for the defendants. |
| 11:00 | 22 | I guess why don't you do -- we also have |
| 11:00 | 23 | two client representatives on the line.  One is on the |
| 11:00 | 24 | line.  Sorry.  It's Katherine Chambers. |
| 11:00 | 25 | And then the other client representative |

| | | |
|---|---|---|
| 11:00 | 1 | is in the courtroom and it's Christopher Ratway. |
| 11:00 | 2 | THE COURT:  Very good. |
| 11:00 | 3 | MR. COHEN:  Good morning, Your Honor. |
| 11:00 | 4 | Justin Cohen of Holland & Knight for the defendants. |
| 11:00 | 5 | THE COURT:  Mr. Sostek? |
| 11:00 | 6 | MR. SOSTEK:  Good morning, Your Honor. |
| 11:00 | 7 | Bruce Sostek for the defendants. |
| 11:00 | 8 | THE COURT:  Pleasure to have you here. |
| 11:00 | 9 | MR. SHORE:  Your Honor, Kenneth Waite |
| 11:00 | 10 | from Purdue is on the Zoom call. |
| 11:00 | 11 | THE COURT:  Okay.  Very good. |
| 11:01 | 12 | MR. CICCARELLI:  Your Honor, one more |
| 11:01 | 13 | thing. |
| 11:01 | 14 | We also have some additional lawyers |
| 11:01 | 15 | since the Court said all counsel.  We had one of our |
| 11:01 | 16 | lawyers, Rich Wynne, excused already by the Court.  And |
| 11:01 | 17 | then with us here today is Katherine Reynolds and Dina |
| 11:01 | 18 | McKenney.  And also counsel of the record is Mr. Thom |
| 11:01 | 19 | Tarnay who's also here today. |
| 11:01 | 20 | And that should be all of us. |
| 11:01 | 21 | THE COURT:  Okay.  And my understanding |
| 11:01 | 22 | is you all were able to work out everything with the |
| 11:01 | 23 | exception of some scheduling of some depositions in |
| 11:01 | 24 | Italy; is that correct? |
| 11:01 | 25 | MR. COHEN:  That's correct, Your Honor. |

4

| | | |
|---|---|---|
| 11:01 | 1 | THE COURT: Okay. I think maybe what we |
| 11:01 | 2 | ought to do is maybe I ought to have to be there for |
| 11:01 | 3 | these depositions to make sure they go off okay. |
| 11:01 | 4 | At any rate, I'm happy to hear from |
| 11:01 | 5 | either side as to what the issues are. |
| 11:01 | 6 | MR. SHORE: Your Honor, Purdue University |
| 11:01 | 7 | is a nonprofit research university. We have been |
| 11:01 | 8 | seeking the Rule 30(b)(6) corporate representatives |
| 11:01 | 9 | from ST for months. |
| 11:01 | 10 | We've actually had to have two orders |
| 11:02 | 11 | from Judge Gilliland. The last order was that they |
| 11:02 | 12 | were to designate all of their -- every corporate |
| 11:02 | 13 | representative possible on every topic possible by |
| 11:02 | 14 | October 28th. |
| 11:02 | 15 | They have still not designated all of the |
| 11:02 | 16 | corporate representatives even now. |
| 11:02 | 17 | THE COURT: Where are we at? What -- how |
| 11:02 | 18 | many have they done? What are we lacking? |
| 11:02 | 19 | MR. SHORE: Well, they've designated |
| 11:02 | 20 | four. I don't know how many more there will be |
| 11:02 | 21 | because -- |
| 11:02 | 22 | THE COURT: In terms of topics, how many |
| 11:02 | 23 | topics have they covered? |
| 11:02 | 24 | MR. SHORE: I'd say probably 80 to |
| 11:02 | 25 | 90 percent. |

5

| | | |
|---|---|---|
| 11:02 | 1 | THE COURT:  Okay. |
| 11:02 | 2 | MR. SHORE:  A majority. |
| 11:02 | 3 | THE COURT:  Okay. |
| 11:02 | 4 | MR. SHORE:  Now, they are a Delaware |

11:02   5   corporation.  They are headquartered in Coppell, Texas.

11:02   6   So we are taking the deposition of a Coppell, Texas

11:02   7   resident.  We are not taking the deposition of any

11:02   8   individuals.  These are a deposition of the

11:02   9   corporation.

11:02   10   So far they have given us four

11:02   11   locations -- I'm sorry -- three locations.  Two in

11:02   12   Dallas, which are fine because they're in Coppell,

11:03   13   Texas.  A third one --

11:03   14   THE COURT:  That sounds a lot less

11:03   15   attractive for me to attend than Italy.

11:03   16   MR. SHORE:  I'm sorry?

11:03   17   THE COURT:  That location, which I'm not

11:03   18   really familiar with, sounds less attractive.  I might

11:03   19   send Judge Gilliland to attend that one.

11:03   20   MR. SHORE:  So, anyway, there's -- so

11:03   21   there's two in Dallas.  Then there's one in a small

11:03   22   town in Massachusetts which we also believe is improper

11:03   23   for a Texas corporation, to make us go to Massachusetts

11:03   24   to take the deposition of a corporation in Coppell.

11:03   25   But worse, they've designated one witness

| 11:03 | 1 | in Italy.  In Sicily.  And to give you an idea, the law |
| 11:03 | 2 | on this is clear.  We cited the precedential case, the |
| 11:03 | 3 | Kia case. |
| 11:03 | 4 |                     We're not taking depositions of people in |
| 11:03 | 5 | Italy.  We're taking depositions of a U.S. corporation. |
| 11:03 | 6 | The law is we're supposed to do that at their principal |
| 11:03 | 7 | place of business or some other place "convenient to |
| 11:03 | 8 | the forum" which would be Waco. |
| 11:03 | 9 |                     THE COURT:  Or Dallas, I think. |
| 11:04 | 10 |                     MR. SHORE:  Or Dallas.  Yes. |
| 11:04 | 11 |                     So here's the problem:  Sicily does not |
| 11:04 | 12 | have court reporters.  So we have to fly in a court |
| 11:04 | 13 | reporter.  Sicily does not have translators, so we have |
| 11:04 | 14 | to fly in a translator.  Sicily does not have |
| 11:04 | 15 | videographers, so we have to fly in a videographer. |
| 11:04 | 16 |                     It is not easy to get to Sicily.  There |
| 11:04 | 17 | are no direct flights from Dallas or Houston, so you |
| 11:04 | 18 | either have to fly through Rome or London or Geneva or |
| 11:04 | 19 | some other place.  It takes two days to get there with |
| 11:04 | 20 | the connections.  You have to fly overnight.  And then |
| 11:04 | 21 | to get home sit again another two days. |
| 11:04 | 22 |                     And you have to have, of course, hotel |
| 11:04 | 23 | rooms for the interpreters, hotel rooms for all of |
| 11:04 | 24 | these other people.  And you have to have two |
| 11:04 | 25 | interpreters because they will only work in certain |

11:04  1  shifts for certain amounts of time because they get

11:04  2  tired.

11:04  3           There has never been a case, and we've

11:04  4  looked, and I'm sure they have too, where a federal

11:05  5  district court has ruled that a U.S. company can just

11:05  6  designate people 7,000 miles away to be their corporate

11:05  7  representative.  Especially in a case right here.

11:05  8  There's only one of them.

11:05  9           They've -- after we sent the chart saying

11:05  10  we should not have to go to Italy to take a Coppell

11:05  11  company's deposition, they designated a second person

11:05  12  in Italy on prior art.  Which obviously you do not need

11:05  13  to have an Italian testify on prior art as an -- you

11:05  14  can prepare somebody to do that here.  I think they did

11:05  15  that just as a -- so they could try to say that there's

11:05  16  more than one there.

11:05  17           Worse, they have also not only said that

11:05  18  they want us to go to Sicily to take one deposition

11:05  19  effectively.  They are also refusing to even give us a

11:05  20  location for the deposition.

11:05  21           So they have a big facility there, a huge

11:05  22  factory there.  And they're saying that we have to also

11:05  23  rent out a hotel conference room.  So not only do we

11:05  24  have to fly to Sicily for the convenience of them, they

11:05  25  will not even give us a conference room to be in.

| 11:06 | 1 | They're not willing to pay for any of the |
|---|---|---|

11:06  1        They're not willing to pay for any of the
11:06  2    costs of the court reporter, of the videographer, of
11:06  3    anything else.
11:06  4        They're basically saying, if you want to
11:06  5    take the deposition of a U.S. company based in Coppell,
11:06  6    you have to fly to Sicily and spend basically, between
11:06  7    time and money, $100,000 to take a deposition.
11:06  8        It's unprecedented.  It's unsupported by
11:06  9    the law.  It's unsupported by the rules.  And nothing
11:06  10   in their presentation to the Court where they're saying
11:06  11   this is a patent case, not a personal injury case,
11:06  12   there's not a separate set of rules for patent cases
11:06  13   when it comes to Rule 30(b)(6).
11:06  14       And they can't -- and they don't have a
11:06  15   good excuse.  The Kia Motors case, they actually had to
11:06  16   bring three witnesses from Korea because in that case
11:06  17   the Court said, there's only three witnesses --
11:06  18       THE COURT:  What year was that case?  I'm
11:06  19   just curious.  Was it pre-COVID?
11:06  20       MR. SHORE:  It was.  And I can get you
11:06  21   the cite here.
11:07  22       Pre-COVID.  Yes.  Pre-COVID.
11:07  23       THE COURT:  Okay.
11:07  24       MR. SHORE:  But then, again, these are
11:07  25   not depositions.  These are the critical, technical

| | | |
|--|--|--|
| 11:07 | 1 | topics.  This is not a deposition that should be taken |
| 11:07 | 2 | remotely.  It's not a deposition -- |
| 11:07 | 3 | THE COURT:  Well, tell me why that is. |
| 11:07 | 4 | Because that was where I was going.  Tell me why these |
| 11:07 | 5 | couldn't be taken by Zoom. |
| 11:07 | 6 | MR. SHORE:  There's going to be a lot of |
| 11:07 | 7 | exhibits.  And there's going to be a lot of technical |
| 11:07 | 8 | documents that are going to be needed to go back and |
| 11:07 | 9 | forth. |
| 11:07 | 10 | And I've been doing this a long time, and |
| 11:07 | 11 | when you have highly technical documents with a court |
| 11:07 | 12 | reporter who's going to be sitting there remote from |
| 11:07 | 13 | the lawyer -- from the lawyers... |
| 11:07 | 14 | And it's also going to be a foreign |
| 11:07 | 15 | language.  They're saying they're going to do it in a |
| 11:07 | 16 | foreign language.  So we have to have an interpreter, a |
| 11:07 | 17 | check interpreter.  So every interpreter has -- so it |
| 11:07 | 18 | is going to be a slog. |
| 11:07 | 19 | It's going to be a slog under the best of |
| 11:07 | 20 | circumstances since they picked a witness who can only |
| 11:07 | 21 | supposedly testify in Italian.  But this -- these are |
| 11:08 | 22 | the most important depositions for us. |
| 11:08 | 23 | THE COURT:  So tell me at a high level, |
| 11:08 | 24 | you mentioned one was on validity.  What are the -- and |
| 11:08 | 25 | I'm not sure why that's so highly technical, but -- |

```
11:08   1                    MR. SHORE:  That's not.  That's not.
11:08   2   And, in fact, it's a deposition that probably doesn't
11:08   3   even have to be taken on that topic.  And we can
11:08   4   probably wait for their expert witness.  Because their
11:08   5   expert witness is going to have to opine on validity
11:08   6   anyway.
11:08   7                    THE COURT:  Right.
11:08   8                    MR. SHORE:  But what we'd asked about was
11:08   9   one of the topics was prior art products.  That
11:08  10   deposition, I know exactly what products they're
11:08  11   talking about.  I'm very familiar with them.  That
11:08  12   deposition is not important.  I think that's why they
11:08  13   tossed it in as a second deposition.
11:08  14                    THE COURT:  Got it.
11:08  15                    MR. SHORE:  But the other one goes to --
11:08  16   it goes to -- it goes to the process flows.  It goes to
11:08  17   the nuances and different --
11:08  18                    THE COURT:  Well, help me out here.  Just
11:08  19   these are the people who understand -- are going to
11:08  20   speak for the company about how, technically, their
11:09  21   products work?
11:09  22                    MR. SHORE:  How they're made.
11:09  23                    THE COURT:  Okay.
11:09  24                    MR. SHORE:  Why they're made the way
11:09  25   they're made.  How easy it was to develop them.
```

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
| 11:09 | 1  | THE COURT:  Uh-huh. |
| 11:09 | 2  | MR. SHORE:  How easy it was to develop |
| 11:09 | 3  | them.  What the development process was.  How they've |
| 11:09 | 4  | gone from yields.  Whether or not their pricing is |
| 11:09 | 5  | based upon yields. |
| 11:09 | 6  | There's just a myriad of topics that go |
| 11:09 | 7  | into the manufacturing process, the design process, |
| 11:09 | 8  | computer-assisted design files, process flows.  And I |
| 11:09 | 9  | believe there's about 20 different die or types. |
| 11:09 | 10 | And although we have asked them to |
| 11:09 | 11 | designate or agree to a representative part so that we |
| 11:09 | 12 | could simplify this down to only doing maybe one or two |
| 11:09 | 13 | or three parts, they have not agreed to do that. |
| 11:09 | 14 | So it's going to be a very long, |
| 11:09 | 15 | detailed, highly technical talking about machinery, |
| 11:09 | 16 | talking about implantation dosages, talking about |
| 11:09 | 17 | dopant profiles, talking about a lot of technical |
| 11:09 | 18 | detail that we need to be there so that we can |
| 11:10 | 19 | literally reach out and point to things and show the |
| 11:10 | 20 | witness things and do things that you just can't do on |
| 11:10 | 21 | a Zoom.  You just can't do it remotely, especially when |
| 11:10 | 22 | it's translated. |
| 11:10 | 23 | And, again, it's only one witness.  It's |
| 11:10 | 24 | one witness.  And have him fly over here and give a |
| 11:10 | 25 | deposition for a couple of days and fly home.  It's |

11:10  1    very simple.  We have court reporters, videographers,

11:10  2    translators.  We have everything here.  There's no

11:10  3    reason to have an army of -- well, not an army -- to

11:10  4    have a couple of lawyers and a paralegal to handle

11:10  5    exhibits fly to Italy and spend probably two or three

11:10  6    days in a hotel, along with all these other people, and

11:10  7    then spend two days flying back.

11:10  8                    It's unprecedented.  No court's ever

11:10  9    ruled it.  The rules don't support it.  And we,

11:10  10   frankly, think the two things we want them to do is

11:10  11   designate 30(b)(6) witnesses, preferably in one

11:10  12   location in the United States.  If it's two, we'll

11:10  13   handle two, I guess, if we have to.

11:10  14                    But to do it -- and also the other thing

11:11  15   is to give us these depositions this year.  The dates

11:11  16   they gave us were late January, February, almost at the

11:11  17   close of the discovery period.  Which means anything

11:11  18   you find out in your party depositions you're not going

11:11  19   to have time to follow up on.

11:11  20                    Because, again, we started asking for

11:11  21   30(b)(6) deponents in August.  We sent a formal notice

11:11  22   in September.  We moved to compel because they refused

11:11  23   to give us dates.  We have an order for them to give us

11:11  24   dates that they still have not complied with.

11:11  25                    And I think, you know, all the factors

| | | |
|---|---|---|
| 11:11 | 1 | that support having them provide a witness, either |
| 11:11 | 2 | close to the venue of the dispute or close to their |
| 11:11 | 3 | principal place of business, there are no exceptions |
| 11:11 | 4 | that they can identify that would justify forcing us to |
| 11:11 | 5 | go to that type of trouble and effort to depose a U.S. |
| 11:11 | 6 | corporation 5,876 miles away. |
| 11:11 | 7 | THE COURT:  Anything else? |
| 11:11 | 8 | MR. SHORE:  No, Your Honor. |
| 11:11 | 9 | THE COURT:  Thank you, sir. |
| 11:11 | 10 | Yes, sir. |
| 11:11 | 11 | MR. CICCARELLI:  Thank you, Your Honor. |
| 11:12 | 12 | So there's at least five reasons why it |
| 11:12 | 13 | would be reasonable for the deposition to take place in |
| 11:12 | 14 | Italy, and I'd like to go through those briefly and |
| 11:12 | 15 | then also address the other points by Mr. Shore, if I |
| 11:12 | 16 | could. |
| 11:12 | 17 | The first is, it's standard practice, at |
| 11:12 | 18 | least as far as I've known for the last almost |
| 11:12 | 19 | 30 years, for -- in patent litigation for lawyers to go |
| 11:12 | 20 | to where the witnesses are, even if it's a 30(b)(6). |
| 11:12 | 21 | If the witness works and lives somewhere, |
| 11:12 | 22 | you usually go.  There it's standard practice.  This is |
| 11:12 | 23 | not a personal injury case, like the case that they |
| 11:12 | 24 | rely on, in which case I would understand the facts are |
| 11:12 | 25 | a little bit different. |

| | | |
|---|---|---|
| 11:12 | 1 | THE COURT:  Let me ask you this:  I don't |
| 11:12 | 2 | think Mr. Shore favored me with -- and maybe he doesn't |
| 11:12 | 3 | know.  But the person who's selected I'm assuming is |
| 11:12 | 4 | the person -- I'm assuming while the -- if this is an |
| 11:12 | 5 | American company, is the work done in Italy? |
| 11:12 | 6 | MR. CICCARELLI:  Yes, Your Honor.  It's |
| 11:12 | 7 | in Italian subsidiary that designed the products, |
| 11:12 | 8 | created the products, makes the products. |
| 11:13 | 9 | THE COURT:  So the person, unlike -- for |
| 11:13 | 10 | example, if it were a production of business records, |
| 11:13 | 11 | it could be pretty much anyone who could be the |
| 11:13 | 12 | 30(b)(6). |
| 11:13 | 13 | MR. CICCARELLI:  Yes. |
| 11:13 | 14 | THE COURT:  Tell me, if you would, who |
| 11:13 | 15 | the person or persons are that you selected and why you |
| 11:13 | 16 | selected them as the 30(b)(6). |
| 11:13 | 17 | MR. CICCARELLI:  Absolutely, Your Honor. |
| 11:13 | 18 | So the primary person is Mario Saggio, |
| 11:13 | 19 | M-a-r-i-o S-a-g-g-i-o.  He is the lead of the team that |
| 11:13 | 20 | designed the products.  So he is the guy when it comes |
| 11:13 | 21 | to working on these products and knowing these |
| 11:13 | 22 | products. |
| 11:13 | 23 | One of the reasons we're having the |
| 11:13 | 24 | deposition in Italy is that as much as he knows by |
| 11:13 | 25 | having lived through the whole process and as much work |

11:13  1   as he has done and will do to get ready, there may be

11:13  2   some questions that come up at the deposition where he

11:13  3   needs his team.  If he does that and he's here in the

11:13  4   U.S. and his team is asleep, that won't work very well.

11:13  5               By being in Italy, he will have his team

11:13  6   available in case he needs to follow up with them to

11:13  7   answer some questions.  That was one of the reasons.

11:13  8               So that was one person.

11:13  9               The other person is Mr. -- I know his

11:14  10  name well and now I forget it.  But in any event, he is

11:14  11  a designer of the prior art products.

11:14  12              There's two types of prior art products.

11:14  13  There's MD mesh, which Mr. Saggio is very familiar with

11:14  14  and he will be addressing, and then there are the other

11:14  15  products, which this other witness was involved in and

11:14  16  actually worked on designing.

11:14  17              So we're talking about the two people

11:14  18  that are the two people that have the knowledge that

11:14  19  Purdue is seeking.

11:14  20              And that's why, as much as we would like

11:14  21  to get somebody else prepared in the U.S., it would be

11:14  22  impossible to prepare somebody else to answer these

11:14  23  things like Mr. Saggio can, who actually designed the

11:14  24  products.

11:14  25              And we believe in preparing witnesses.

| | | |
|---|---|---|
| 11:14 | 1 | We think we need to put up that witness.  So in |
| 11:14 | 2 | addition to the standard practice, the notice is also |
| 11:14 | 3 | to two companies.  It's not just to ST, Inc., the |
| 11:14 | 4 | American company.  It is also to ST International which |
| 11:14 | 5 | is a company from the Netherlands. |
| 11:14 | 6 | So they're going to have to travel to |
| 11:15 | 7 | Europe anyhow if they want that deposition.  They have |
| 11:15 | 8 | joined the notice together.  What we're doing to try to |
| 11:15 | 9 | make it more convenient is we are putting up the same |
| 11:15 | 10 | person to address the topics for both companies. |
| 11:15 | 11 | And so he's getting to do this in one |
| 11:15 | 12 | shot rather than two separate depositions for the |
| 11:15 | 13 | hundred or so topics that they have.  So that is |
| 11:15 | 14 | another reason why it's perfectly okay for it to be in |
| 11:15 | 15 | Italy. |
| 11:15 | 16 | In terms of the location in Italy, we |
| 11:15 | 17 | have presented witnesses for this company before in |
| 11:15 | 18 | Sicily.  And it's not that big of a deal to get court |
| 11:15 | 19 | reporters and videographers over.  Flights are a dime a |
| 11:15 | 20 | dozen with easyJet and other airlines to get people |
| 11:15 | 21 | from Europe to Sicily to do this. |
| 11:15 | 22 | We actually even have our own check |
| 11:15 | 23 | interpreter.  And if -- we can also share the check |
| 11:15 | 24 | interpreter if the interpreters want to trade on and |
| 11:15 | 25 | off.  We've done that before. |

| | | |
|---|---|---|
| 11:15 | 1 | So it's not uncommon for other plaintiffs |
| 11:15 | 2 | to go to Sicily to take 30(b)(6) depositions. |
| 11:15 | 3 | THE COURT:  And there's no shortage of |
| 11:16 | 4 | translators there? |
| 11:16 | 5 | MR. CICCARELLI:  I beg your pardon? |
| 11:16 | 6 | THE COURT:  There's no shortage of |
| 11:16 | 7 | court -- certified -- |
| 11:16 | 8 | MR. CICCARELLI:  In Sicily proper, no. |
| 11:16 | 9 | But in mainland in Europe there are. |
| 11:16 | 10 | THE COURT:  Okay. |
| 11:16 | 11 | MR. CICCARELLI:  And in England there's a |
| 11:16 | 12 | bunch of them.  In Germany and France there are some. |
| 11:16 | 13 | THE COURT:  I took a deposition once in |
| 11:16 | 14 | Scotland and felt the whole time like I needed an |
| 11:16 | 15 | interpreter. |
| 11:16 | 16 | (Laughter.) |
| 11:16 | 17 | MR. CICCARELLI:  Yeah. |
| 11:16 | 18 | The other reason, Your Honor, is all |
| 11:16 | 19 | along there's -- the parties have contemplated doing |
| 11:16 | 20 | depositions in Sicily.  And these issues were raised |
| 11:16 | 21 | before Judge Gilliland, so I should probably address |
| 11:16 | 22 | them briefly for you, Your Honor. |
| 11:16 | 23 | And that is Purdue had noticed |
| 11:16 | 24 | depositions in Sicily.  We actually gave them dates. |
| 11:16 | 25 | They had dates, they accepted the dates.  They gave us |

```
11:16    1    notices.
11:16    2                   We went down there on multiple trips to
11:16    3    prepare these witnesses.  And I was down there
11:16    4    preparing the witness when they canceled the remaining
11:16    5    depositions.  And we had the check interpreter that we
11:16    6    had hired that had a non-refundable fee because she
11:17    7    dropped other work to be there.
11:17    8                   So we were in Sicily ready -- one of the
11:17    9    witnesses was Mr. Saggio that they had noticed.  And
11:17   10    this other witness that's going to talk about the other
11:17   11    prior art products, he was one of the other witnesses.
11:17   12    Mr. Shore canceled Mr. Saggio's deposition in part
11:17   13    because he didn't want to be there for two weeks, he
11:17   14    said.
11:17   15                   So the complaint now that these
11:17   16    depositions are taking place late, they had them on the
11:17   17    calendar and scheduled to take place in September and
11:17   18    they decided not to take them.
11:17   19                   Additionally, Judge Gilliland also ruled
11:17   20    at the October 14th hearing that he was not going to
11:17   21    order the witnesses to go to -- to come to the U.S., at
11:17   22    least at that time, unless something else developed.
11:17   23                   He said, y'all work this out.  Try to get
11:17   24    witnesses on the same schedule.  Which we did.  We're
11:17   25    trying to put witnesses on the same schedule so they
```

11:17   1    only make one trip down to Sicily.  They have not made

11:17   2    a trip to Sicily.

11:17   3                On the other hand, we have incurred

11:17   4    expenses going to Sicily for nothing because they

11:18   5    withdrew those notices.

11:18   6                And then, Your Honor, the remote

11:18   7    deposition, you mentioned Judge Gilliland actually

11:18   8    raised it for the first time.  I believe the Kia Motors

11:18   9    case was pre-COVID.  The world has changed.  And going

11:18   10   through technical documents is actually probably easier

11:18   11   on a screen than it is leaning over a conference room

11:18   12   table pointing over.

11:18   13               Mr. Shore mentioned the conference room.

11:18   14   I explained to him we would love to host them.  The

11:18   15   problem is there aren't enough conferences rooms.

11:18   16   There's a lot of construction going on.  If he wants,

11:18   17   we can rent the hotel room and provide a conference --

11:18   18               THE COURT:  I'm sure we've all had the

11:18   19   experience of getting to sit in the embassy in Japan

11:18   20   having to take depositions.  So I get that.

11:18   21               MR. CICCARELLI:  And with respect to

11:18   22   representative parts, Your Honor, what we've told

11:18   23   Mr. Shore is:  Make us a proposal and we will look at

11:18   24   it.  He has not yet made a proposal.  And --

11:18   25               THE COURT:  What is the earliest -- I

| | | |
|---|---|---|
| 11:18 | 1 | think Mr. Shore said late January, but he might have |
| 11:19 | 2 | said February.  I don't remember. |
| 11:19 | 3 | When is the earliest your folks could be |
| 11:19 | 4 | made available? |
| 11:19 | 5 | MR. CICCARELLI:  So, Your Honor, the |
| 11:19 | 6 | schedule that we have given them includes depositions |
| 11:19 | 7 | that were scheduled for tomorrow, but we found out |
| 11:19 | 8 | after presenting the date that the witness had a |
| 11:19 | 9 | medical procedure that went even more invasively than |
| 11:19 | 10 | expected.  And so we are moving tomorrow's deposition |
| 11:19 | 11 | and we've already communicated.  That's going to be |
| 11:19 | 12 | moved to December 30th. |
| 11:19 | 13 | So we have one on -- |
| 11:19 | 14 | THE COURT:  Is that a Dallas deposition? |
| 11:19 | 15 | MR. CICCARELLI:  That is in Austin. |
| 11:19 | 16 | THE COURT:  Okay.  But local? |
| 11:19 | 17 | MR. CICCARELLI:  Yes.  Local. |
| 11:19 | 18 | Then we have Mario Saggio on January 25th |
| 11:19 | 19 | and 26th.  And then we have Antonio Grimaldi, who's the |
| 11:19 | 20 | other gentleman that's going to address the prior art |
| 11:19 | 21 | parts on the 27th.  So January 25th, 26th and 27th are |
| 11:19 | 22 | the dates that they are slotted. |
| 11:19 | 23 | And then we have a licensing person on |
| 11:19 | 24 | January 20th and a -- |
| 11:20 | 25 | THE COURT:  Where is that? |

21

| | | |
|---|---|---|
| 11:20 | 1 | MR. CICCARELLI:  Sorry? |
| 11:20 | 2 | THE COURT:  Where? |
| 11:20 | 3 | MR. CICCARELLI:  That one is in Dallas. |
| 11:20 | 4 | THE COURT:  Okay. |
| 11:20 | 5 | MR. CICCARELLI:  And then we have a |
| 11:20 | 6 | damages, like sales numbers, guy on February 2nd in |
| 11:20 | 7 | Dallas. |
| 11:20 | 8 | THE COURT:  And when is the -- when does |
| 11:20 | 9 | fact discovery end? |
| 11:20 | 10 | MR. CICCARELLI:  February 21st. |
| 11:20 | 11 | So there's holidays here, Your Honor, |
| 11:20 | 12 | right?  There's Thanksgiving.  There's Christmas.  I've |
| 11:20 | 13 | made already five trips to Italy trying to get these |
| 11:20 | 14 | witnesses ready, to get documents for Mr. Shore. |
| 11:20 | 15 | We're at a stage now where there's no |
| 11:20 | 16 | complaint at all about the technical documents that we |
| 11:20 | 17 | produced.  We would like, though, some time to prepare |
| 11:20 | 18 | these witnesses the way that they need to be prepared |
| 11:20 | 19 | so we don't have disputes later.  And that's why we |
| 11:20 | 20 | came up with the schedule. |
| 11:20 | 21 | We have a schedule ready so we can get |
| 11:20 | 22 | them prepped by those days.  And so we'd ask the Court |
| 11:20 | 23 | to not alter that schedule that we've been operating |
| 11:20 | 24 | under to get these guys ready. |
| 11:20 | 25 | THE COURT:  Thank you.  One second. |

11:21  1              MR. CICCARELLI:  And that's it.

11:21  2              THE COURT:  Yes, sir?

11:21  3              MR. SHORE:  Just quickly.

11:21  4              I've never in 35 years had someone stop

11:21  5      in the middle of a deposition and do a phone a friend

11:21  6      or check with the team.  And they can do that, by the

11:21  7      way, by phone.  They don't need to walk out of the

11:21  8      factory or whatever.

11:21  9              And by the way, they won't be in the

11:21  10     factory.  We'll be at a hotel.  So they'd have to call

11:21  11     anyway.  So they can call -- if they can call from the

11:21  12     hotel, then they can call from here.

11:21  13             THE COURT:  I think you're -- are you

11:21  14     saying if they're here they can call from the hotel?

11:21  15             MR. SHORE:  If they're here, they can

11:22  16     call just like they would --

11:22  17             THE COURT:  But I think the point is -- I

11:22  18     may be missing this, but if they -- if it's 4 o'clock

11:22  19     here, I think the point is -- and it'll be midnight or

11:22  20     1:00 there.  I don't think the problem is the

11:22  21     communicating.  I think the problem is that if --

11:22  22             I think what Mr. Ciccarelli was telling

11:22  23     me was it'll be easier if you're taking the deposition

11:22  24     at 3 o'clock there and the person they have to call is

11:22  25     at 3 o'clock there, that they'll be able to get the

| | | |
|---|---|---|
| 11:22 | 1 | person.  That was what I took that to mean. |
| 11:22 | 2 | MR. SHORE:  Yeah.  That eliminates any |
| 11:22 | 3 | Zoom depos then.  Unless we're going to do Zoom depos |
| 11:22 | 4 | in the middle of the night. |
| 11:22 | 5 | THE COURT:  Well, I don't think it does. |
| 11:22 | 6 | I mean, I -- you know, Mr. Shore, maybe -- and I never |
| 11:22 | 7 | thought I would say this about you being someone who's |
| 11:22 | 8 | kinder and gentler and having a hard time.  But I mean, |
| 11:22 | 9 | I'm trying to think of the depositions I took at 3:00 |
| 11:22 | 10 | in the morning of Asian companies. |
| 11:22 | 11 | I get your point is this is an American |
| 11:22 | 12 | company, bring them here.  But I'm thinking of the |
| 11:23 | 13 | times I sat in the U.S. embassy in Japan because you |
| 11:23 | 14 | can't take them there.  I've taken depositions in Macao |
| 11:23 | 15 | because you can't take them in China. |
| 11:23 | 16 | I'm just -- I'm not fully understanding |
| 11:23 | 17 | your unhappiness -- the level of your unhappiness here. |
| 11:23 | 18 | MR. SHORE:  The level of my unhappiness |
| 11:23 | 19 | is I've done the same thing.  But when I'm taking a |
| 11:23 | 20 | deposition in Japan, it's a 30(b)(1) deposition or a |
| 11:23 | 21 | 30(b)(6) of a Japanese company. |
| 11:23 | 22 | It's not an -- and it's not a company in |
| 11:23 | 23 | Coppell.  We are -- we did not -- this would be like us |
| 11:23 | 24 | saying we're going to have Purdue choose a researcher |
| 11:23 | 25 | at the arctic lab and you can go to Antarctica to |

11:23  1   depose them because that's where he works.

11:23  2                     That is not the -- that's not the test

11:23  3   for a 30(b)(6).  It's principal place of business of

11:23  4   the company or a place convenient to the forum.  Which

11:23  5   they have not expressed a single exception to the rule

11:23  6   that they can.

11:23  7                     THE COURT:  Okay.

11:23  8                     MR. SHORE:  The other thing that I think

11:24  9   is strange is they're saying that we canceled depos in

11:24  10  Sicily.  First of all, those were --

11:24  11                    THE COURT:  I don't pay any attention --

11:24  12  I'm -- if I can't make this clear enough, I'm here to

11:24  13  fix this.

11:24  14                    MR. SHORE:  Right.

11:24  15                    THE COURT:  I'm here to -- I'm an ER doc.

11:24  16  What someone was doing on their motorcycle when they

11:24  17  had the accident, I don't care about.  I'm just -- I

11:24  18  just need to fix the patient right now.  I just need

11:24  19  to -- I just want to figure out what to do with this

11:24  20  depo.

11:24  21                    MR. SHORE:  Here's what I think would

11:24  22  be -- and, again, we believe we already have to go to

11:24  23  Massachusetts, Austin, Dallas, we've already got three

11:24  24  locations for one company.

11:24  25                    Now they're trying to set up a fourth in

| 11:24 | 1 | Sicily.  None of these defendants are in Sicily, none |
| 11:24 | 2 | of them.  The STNV is not in Sicily, none of them are |
| 11:24 | 3 | in Sicily.  Sicily is a particularly inconvenient forum |
| 11:24 | 4 | because you have to fly in everybody. |
| 11:24 | 5 | Now, if they want to pay for our flights, |
| 11:25 | 6 | if they want to pay for the court reporter, if they |
| 11:25 | 7 | want to pay for the videographer, if they want to pay |
| 11:25 | 8 | for the translator, if they want to pay for our hotels, |
| 11:25 | 9 | and they want to do it -- and so it's no more expensive |
| 11:25 | 10 | for us than it is taking it where they reside, that |
| 11:25 | 11 | would be one thing.  They're not offering anything. |
| 11:25 | 12 | They're -- |
| 11:25 | 13 | THE COURT:  I assume your -- it doesn't |
| 11:25 | 14 | make a great difference to you with the -- your |
| 11:25 | 15 | concerns aren't the Austin and Dallas depos, I take it? |
| 11:25 | 16 | MR. SHORE:  My concerns are not the |
| 11:25 | 17 | Austin and Dallas depo, and I'll even go to |
| 11:25 | 18 | Massachusetts to take the guy and just -- |
| 11:25 | 19 | THE COURT:  Who is the 30(b)(6) in |
| 11:25 | 20 | Massachusetts?  What topics is he or her? |
| 11:25 | 21 | I guess -- it doesn't matter.  What |
| 11:25 | 22 | topics will the Massachusetts witness be? |
| 11:25 | 23 | MR. CICCARELLI:  He's one witness I |
| 11:25 | 24 | forgot, and it's Alfredo Arno.  He's on some marketing |
| 11:25 | 25 | topics. |

|       |    |                                                         |
|-------|----|---------------------------------------------------------|
| 11:25 | 1  | THE COURT:  And is there a reason he                    |
| 11:25 | 2  | couldn't be done by Zoom?                                |
| 11:25 | 3  | MR. SHORE:  I'm not going to take that                  |
| 11:25 | 4  | deposition, so I don't know.  That's going to be        |
| 11:26 | 5  | handled by Susman Godfrey, the one in Massachusetts.    |
| 11:26 | 6  | THE COURT:  Well, they're, you know, and                |
| 11:26 | 7  | they're -- they've got someone -- my favorite law clerk |
| 11:26 | 8  | works in their New York office.  He probably shouldn't  |
| 11:26 | 9  | work on this, but I know they're close.                 |
| 11:26 | 10 | But it seems to me that you don't have                  |
| 11:26 | 11 | the same concerns with the Massachusetts inconvenience  |
| 11:26 | 12 | on a marketing deal because that's something that could |
| 11:26 | 13 | easily be done by Zoom, I would think, probably even    |
| 11:26 | 14 | preferably.                                             |
| 11:26 | 15 | MR. SHORE:  The -- yeah.  The technical                 |
| 11:26 | 16 | aspect of this depo in Sicily, especially with it being |
| 11:26 | 17 | interpreted and extremely document intensive -- and     |
| 11:26 | 18 | yes.  We did already provide them an exemplar part      |
| 11:26 | 19 | number weeks ago, which they have not responded to.     |
| 11:26 | 20 | So we're going to have to take this                     |
| 11:26 | 21 | deposition on all of the die, all of the accused parts. |
| 11:26 | 22 | It is going to be a long slog of a deposition, and it's |
| 11:26 | 23 | going to be one where, when you're dealing with a lot   |
| 11:26 | 24 | of technical terms, there's a lot of ability for        |
| 11:27 | 25 | misunderstanding.                                       |

```
11:27    1                    THE COURT:  Got it.
11:27    2                    MR. SHORE:  And so that's why, again,
11:27    3    they haven't set out any of the reasons to deviate from
11:27    4    the rule.  And the rule is not where the witness
11:27    5    provides.  The rule is -- in the rule, it's where the
11:27    6    principal place of business of the corporation is.
11:27    7                    And they've offered no accommodations.
11:27    8    And literally it would cost us more than $125,000 to go
11:27    9    take a deposition in Sicily that could be taken for
11:27   10    1/10 of that amount if it was taken in the United
11:27   11    States.
11:27   12                    And he's an employee.  I mean, this is
11:27   13    not a third party that is being inconvenienced.  This
11:27   14    is someone they chose.
11:27   15                    THE COURT:  I got it.
11:27   16                    Anything else, Mr. Ciccarelli?
11:27   17                    MR. CICCARELLI:  We're giving him the
11:27   18    person that has the knowledge they want on behalf of
11:27   19    two companies to make it easier on them.
11:27   20                    That's it, Your Honor.
11:27   21                    THE COURT:  Okay.  Here's what I'm going
11:27   22    to do.  I'm going to allow the deposition to be taken
11:27   23    in Italy.
11:27   24                    But here's -- Mr. Shore did raise
11:28   25    something that I have some concern about.  Which is it
```

| 11:28 | 1 | does seem to me that if possible that an effort should |
| 11:28 | 2 | be made to find an exemplar part.  So if the parties -- |
| 11:28 | 3 | I'll give y'all -- it's Thanksgiving.  So let's forget |
| 11:28 | 4 | next week.  But I'll give y'all three weeks to try and |
| 11:28 | 5 | figure out what to do about that, to try and see if you |
| 11:28 | 6 | can work that out. |
| 11:28 | 7 | Mr. Shore, if you -- if you all can't |
| 11:28 | 8 | work that out, then set a hearing with either me or |
| 11:28 | 9 | Judge Gilliland and I'll find out what I can do to help |
| 11:28 | 10 | in that regard. |
| 11:28 | 11 | Also, what I would suggest you do -- I've |
| 11:28 | 12 | made this suggestion in the past.  You're free to |
| 11:28 | 13 | reject it, but I find with 30(b)(6) depositions, unlike |
| 11:28 | 14 | 30(b)(1) depositions, that it's very helpful to send to |
| 11:29 | 15 | the other side -- with respect to the exhibits you |
| 11:29 | 16 | intend to use, I find it's very helpful to send the |
| 11:29 | 17 | exhibits well ahead of time.  And actually say these |
| 11:29 | 18 | are going to be the exhibits we want to cross-examine |
| 11:29 | 19 | the -- it's not expert -- the 30(b)(6) on.  And here |
| 11:29 | 20 | are the questions we intend to ask. |
| 11:29 | 21 | Now, you're not limited to those |
| 11:29 | 22 | questions in any way.  I see it as something very |
| 11:29 | 23 | prophylactic.  Because if you send to the defendant, |
| 11:29 | 24 | I'm going to ask the following 16 questions about |
| 11:29 | 25 | Exhibit 12 to this witness, then it will be incumbent |

| | | |
|---|---|---|
| 11:29 | 1 | upon the people preparing the witness to either prepare |
| 11:29 | 2 | them or let you know in advance they think for some |
| 11:29 | 3 | reason it would be -- it -- there's some reason they |
| 11:29 | 4 | shouldn't have to be prepared on it.  Or the witness |
| 11:29 | 5 | can go find out early what the information is and they |
| 11:30 | 6 | can be prepared to go. |
| 11:30 | 7 | And I will tell -- since it's the |
| 11:30 | 8 | plaintiff in this case that's taking the deposition |
| 11:30 | 9 | that if you have forwarded to Mr. Ciccarelli and team |
| 11:30 | 10 | 300 questions that are all cricket and that you think |
| 11:30 | 11 | should be answered and you've told them what exhibits |
| 11:30 | 12 | you intend to ask them about, you will find a great |
| 11:30 | 13 | friend in the Court if they provide someone to you who |
| 11:30 | 14 | says, I don't know.  That will be very unfortunate. |
| 11:30 | 15 | Now, "I don't know" is different than "I |
| 11:30 | 16 | don't know and nobody knows."  I mean, if -- you know, |
| 11:30 | 17 | if you ask a question and the answer is we don't have |
| 11:30 | 18 | any and I've checked and no one else knows either, you |
| 11:30 | 19 | know, that's -- then -- and you exhausted it. |
| 11:30 | 20 | What I'm saying is they don't get to say, |
| 11:30 | 21 | oh, I didn't know that that was the topic that you were |
| 11:30 | 22 | being asked -- I was being asked about.  Or I didn't -- |
| 11:30 | 23 | I would -- that's Joe.  We should have talked to Joe. |
| 11:31 | 24 | I want -- given the expense that'll be |
| 11:31 | 25 | involved here, I propose -- I will suggest to the |

| | |
|---|---|
| 11:31 | 1 |
| 11:31 | 2 |
| 11:31 | 3 |
| 11:31 | 4 |
| 11:31 | 5 |
| 11:31 | 6 |
| 11:31 | 7 |
| 11:31 | 8 |
| 11:31 | 9 |
| 11:31 | 10 |
| 11:31 | 11 |
| 11:31 | 12 |
| 11:31 | 13 |
| 11:31 | 14 |
| 11:31 | 15 |
| 11:31 | 16 |
| 11:31 | 17 |
| 11:31 | 18 |
| 11:32 | 19 |
| 11:32 | 20 |
| 11:32 | 21 |
| 11:32 | 22 |
| 11:32 | 23 |
| 11:32 | 24 |
| 11:32 | 25 |

plaintiff that you be as fulsome --

I did this.  I mean, when I had --
especially if I had depositions in Asia, I sent on
anything -- I sent all the exhibits ahead early.  I
sent all the questions I was going to ask.  And I
expected the person who showed up to be able to answer
those questions.  Because there's no mystery here what
you're trying to -- the information you're trying to
get.

I'm not telling the defendant you have to
answer every question that you get sent if for some
reason you believe it's not an appropriate question.
But if you do get a question you think's inappropriate,
you need to give the plaintiff advance notice of that.
And either you all work it out and there's an agreement
that they will change the question or you will answer
the question or whatever.

And if you can't, then set another
hearing.  And if there are enough of those, I'll go
through them and I'll -- I will rule on which questions
are and are not appropriate.

So the plaintiff in my -- it would be
very helpful for the plaintiff to let the defendant
know as many questions and issues as you hope the
witness would be prepared for at a 30(b)(6) because

| | | |
|---|---|---|
| 11:32 | 1 | it's the corporate knowledge, not the individual's |
| 11:32 | 2 | knowledge. |
| 11:32 | 3 | And I would -- I would hope that the |
| 11:32 | 4 | defendant would be as cooperative as possible and |
| 11:32 | 5 | answer as much of that information, regardless of |
| 11:32 | 6 | whether you think it's relevant or not.  Relevance |
| 11:32 | 7 | would not be a great test -- would not be a great |
| 11:32 | 8 | objection.  If the plaintiff says they want it, then I |
| 11:32 | 9 | probably will be pretty -- I will probably be pretty |
| 11:32 | 10 | easy to convince that they should get it because I |
| 11:32 | 11 | won't understand why -- what the relevance is at this |
| 11:32 | 12 | point. |
| 11:32 | 13 | Is there -- oh, timing.  Let me take up |
| 11:32 | 14 | timing. |
| 11:32 | 15 | I understand why there are problems. |
| 11:32 | 16 | It's that time of the year.  It seems to me what would |
| 11:33 | 17 | be fair to both sides is to push back the deadline for |
| 11:33 | 18 | the discovery deadline so that -- and since, to some |
| 11:33 | 19 | extent, I am disadvantaging the plaintiff by allowing |
| 11:33 | 20 | the deposition to take place later in January -- not |
| 11:33 | 21 | unfairly, I don't think there's anything unfair about |
| 11:33 | 22 | this.  I'm just saying, I understand a late January |
| 11:33 | 23 | deposition and an early February deadline might be |
| 11:33 | 24 | tight. |
| 11:33 | 25 | Mr. Shore, when would you suggest I make |

```
11:33   1    the discovery deadline?
11:33   2                   MR. SHORE:  Your Honor, I have a trial
11:33   3    for the University of Texas starting January 23rd.
11:33   4                   THE COURT:  Who's it in front of?
11:33   5                   MR. SHORE:  In front of Judge Williams, a
11:33   6    new judge in Delaware.
11:33   7                   THE COURT:  Oh, great.
11:33   8                   MR. SHORE:  So yes.  He took the bench
11:33   9    and Judge Noreika handed him a trial.  And --
11:33   10                   THE COURT:  She is so -- she's just a
11:33   11   great judge, and I think I would have done the same
11:34   12   thing.
11:34   13                   MR. SHORE:  Well, we were supposed to
11:34   14   go --
11:34   15                   THE COURT:  I'm glad -- I'd not heard
11:34   16   he'd gotten confirmed.  I think that's wonderful.  I
11:34   17   sent him a note when he got nominated.  His -- he's got
11:34   18   sterling credentials.  I hope he does great.  So I'm
11:34   19   very excited.
11:34   20                   MR. SHORE:  So far he's been wonderful to
11:34   21   us.  So --
11:34   22                   THE COURT:  Not as good as I am, I'm
11:34   23   certain.  But still he looked like -- I'll have to send
11:34   24   him another note now that I know he's on the bench and
11:34   25   wish him well.
```

| | | |
|---|---|---|
| 11:34 | 1 | And so again you just -- you just tell me |
| 11:34 | 2 | what date you think is appropriate, and I will -- and |
| 11:34 | 3 | especially since you have -- and by the way, let me say |
| 11:34 | 4 | also, I don't know your role in the depositions, but if |
| 11:34 | 5 | your role in the trial and your necessity in the |
| 11:34 | 6 | depositions requires it be some other date, you guys |
| 11:34 | 7 | work out those dates and you guys work out the deadline |
| 11:34 | 8 | for discovery. |
| 11:34 | 9 | Because if you have a trial already set |
| 11:34 | 10 | in Delaware, I'm not -- that, to me, trumps getting |
| 11:34 | 11 | this done.  You need to get that done. |
| 11:35 | 12 | You guys -- we don't need to do that |
| 11:35 | 13 | here.  You guys figure out the dates and just let us |
| 11:35 | 14 | know what they'll be. |
| 11:35 | 15 | MR. SHORE:  Right.  And the only thing |
| 11:35 | 16 | that Purdue would request is that there be some sort of |
| 11:35 | 17 | burden shifting.  If they are going to be allowed to |
| 11:35 | 18 | pick someone in Sicily, we would ask -- we think, in |
| 11:35 | 19 | fairness and equity, they should have to pay all of the |
| 11:35 | 20 | extra costs -- |
| 11:35 | 21 | THE COURT:  I think I heard you say that |
| 11:35 | 22 | earlier.  I didn't miss it, and I'm not going to do |
| 11:35 | 23 | that. |
| 11:35 | 24 | Now, at the end of the trial, you know, |
| 11:35 | 25 | you know, if you win, these will be costs. |

| | | |
|---|---|---|
| 11:35 | 1 | So I think that's the way it works, |
| 11:35 | 2 | right? |
| 11:35 | 3 | MR. SHORE:  Well, not for the travel and |
| 11:35 | 4 | hotels.  I'm not sure -- |
| 11:35 | 5 | THE COURT:  Well, I think I can, you |
| 11:35 | 6 | know -- |
| 11:35 | 7 | MR. SHORE:  But we'll ask. |
| 11:35 | 8 | THE COURT:  No.  I'm saying.  If in this |
| 11:35 | 9 | case -- you know, most cases don't go through trial. |
| 11:35 | 10 | I've been blessed that many have.  Some -- one with you |
| 11:35 | 11 | on it. |
| 11:35 | 12 | If -- I won't forget this.  If you all |
| 11:36 | 13 | have to go to trial and you all are successful and you |
| 11:36 | 14 | think this is something that your client should be |
| 11:36 | 15 | appropriately, you know, taken care of for, I will |
| 11:36 | 16 | absolutely consider it. |
| 11:36 | 17 | MR. SHORE:  And would you at least order |
| 11:36 | 18 | them to provide a conference room at their facility so |
| 11:36 | 19 | that we don't have to rent a hotel room for it? |
| 11:36 | 20 | THE COURT:  You know, the problem with |
| 11:36 | 21 | that is I don't think it's fair.  I understand what |
| 11:36 | 22 | you're saying, but I don't -- whether we like it or |
| 11:36 | 23 | not, in my opinion, you all -- you all being the |
| 11:36 | 24 | plaintiff's counsel -- get an unfair advantage by |
| 11:36 | 25 | getting to go on their campus when otherwise you |

| | | |
|---|---|---|
| 11:36 | 1 | wouldn't.  And I just -- I've never thought that was |
| 11:36 | 2 | fair. |
| 11:36 | 3 | And so but I'll tell you what.  Let's do |
| 11:36 | 4 | this:  I'll give the defendant the option.  Since |
| 11:36 | 5 | defendant does have facilities there, if the defendants |
| 11:36 | 6 | decide that they don't want to allow depositions to |
| 11:36 | 7 | take place on their facilities, then I will require |
| 11:36 | 8 | them to pay for facilities for the depositions to be |
| 11:37 | 9 | taken at. |
| 11:37 | 10 | So they can -- they have the choice.  If |
| 11:37 | 11 | they would like to spare the expense and have -- and |
| 11:37 | 12 | provide a place on their facilities which they have, |
| 11:37 | 13 | they can do that.  If they refuse to do that, then I |
| 11:37 | 14 | will have them pay for the expense of the facilities |
| 11:37 | 15 | for the depositions.  I think -- I do think that's |
| 11:37 | 16 | fair. |
| 11:37 | 17 | MR. SHORE:  And then the last, I guess, |
| 11:37 | 18 | two things.  Since these depositions are going to be |
| 11:37 | 19 | translated and that means it's going to be double time |
| 11:37 | 20 | to take them, if they are going to produce this other |
| 11:37 | 21 | witness in Sicily, can we ask that they produce them at |
| 11:37 | 22 | the same time and that we double track those so that we |
| 11:37 | 23 | don't end up having to spend all that extra time? |
| 11:37 | 24 | Because they're totally unrelated |
| 11:37 | 25 | depositions.  One of them is this prior art thing.  And |

| 11:37 | 1 | we'd like to just double track them so that we don't |
|---|---|---|

11:37  1   we'd like to just double track them so that we don't

11:37  2   end up having to spend an extra two days in Sicily.

11:37  3          THE COURT:  But I don't know which

11:37  4   lawyers are planning to defend the depositions and

11:37  5   which lawyers need to prepare them.  So I'm not going

11:38  6   to order that either.

11:38  7          MR. SHORE:  All right.  And then the last

11:38  8   thing is if we decide to forego --

11:38  9          THE COURT:  You see, the problem you all

11:38  10  have as a group, for better or worse, many say worse,

11:38  11  I've read.  I did all this.  I mean, I've -- you know,

11:38  12  when you're saying this, I mean, I'm sure there is a

11:38  13  judge, a wonderful judge in Nebraska who never had to

11:38  14  go to Macao to take a deposition.  And, you know, all

11:38  15  this stuff, you know.  He's thinking, gosh, why do

11:38  16  these guys fight over all this?

11:38  17         I have been through -- everything you're

11:38  18  saying I've been on both sides of.  So I'm doing my

11:38  19  very best to be fair to both sides, because I've been

11:38  20  on both sides of this.

11:38  21         MR. SHORE:  I understand.

11:38  22         And but the last thing is if we decide to

11:38  23  forego the trip and take it by Zoom, it will be during

11:38  24  office hours in the United States that we take the

11:38  25  deposition of a United States company.

—37—

| | | |
|---|---|---|
| 11:38 | 1 | THE COURT:  I will agree to that too, to |
| 11:38 | 2 | save the expense. |
| 11:38 | 3 | Now, let me say this:  But you need to -- |
| 11:38 | 4 | I'll pick you.  By you I mean the plaintiff's counsel |
| 11:39 | 5 | this time. |
| 11:39 | 6 | Well, the parties need to come up with a |
| 11:39 | 7 | date.  And then the burden will be on the plaintiff for |
| 11:39 | 8 | you to decide by when you have to say we're going to do |
| 11:39 | 9 | it by Zoom.  In other words, because I don't want the |
| 11:39 | 10 | defendant to incur expense that they have to eat |
| 11:39 | 11 | because you change your mind past a certain date. |
| 11:39 | 12 | So huddle with defense counsel before you |
| 11:39 | 13 | leave here today and give them a date.  Y'all work out |
| 11:39 | 14 | a date by when you will tell them whether or not you're |
| 11:39 | 15 | going to do it by Zoom. |
| 11:39 | 16 | I personally think Zoom is great for |
| 11:39 | 17 | these depositions.  I think it's one of the best things |
| 11:39 | 18 | that's happened. |
| 11:39 | 19 | Again, the way I would do them is I would |
| 11:39 | 20 | send to their corporate witness, here's the question |
| 11:39 | 21 | I'm going to ask you on this exhibit.  So when you're |
| 11:39 | 22 | asking that witness by Zoom, please turn to Exhibit 13, |
| 11:39 | 23 | the witness will already have had it.  He'll already |
| 11:39 | 24 | have that page.  He will know what the question is. |
| 11:40 | 25 | And you can say, tell me what this is. |

11:40  1          Because most of what you're trying to do

11:40  2   is just to get him to verify under oath something that

11:40  3   you know is true so you can hand it to his -- your

11:40  4   experts.  And also at trial you both -- it's both

11:40  5   admissible and you know they won't come in and say

11:40  6   something that screws you when you're -- during trial.

11:40  7          That's why I think Zoom is great for this

11:40  8   type of stuff, and that's why I think it would be great

11:40  9   to take it by Zoom in this case.

11:40  10          I'm -- where you find yourself behind the

11:40  11   eight ball here is, if this were a 30(b)(1) witness, I

11:40  12   would be more sympathetic about doing it in person.

11:40  13          I get why you want to take the CEO's

11:40  14   deposition with him sitting there in person when you're

11:40  15   asking him, why didn't you do this deal?  I get that.

11:40  16          But for a 30(b)(6), there's really, in my

11:40  17   opinion, nothing you're asking them that should be a

11:40  18   surprise.  If it's a surprise, then you screwed up by

11:40  19   not letting them know what the topic was.

11:41  20          And so -- but you all come up with a

11:41  21   date.  This is the group, you all come up with a date

11:41  22   by when the plaintiff will decide whether to do it in

11:41  23   person or by Zoom and plan on doing it in person until

11:41  24   that date.  That's the drop-dead date.  And then

11:41  25   whatever y'all do is absolutely fine with me.

| | | |
|---|---|---|
| 11:41 | 1 | But also come up with dates by when the |
| 11:41 | 2 | depositions will take place, and also what -- let us |
| 11:41 | 3 | know what the discovery deadline is and whether we need |
| 11:41 | 4 | to have any adjustments in our schedule. |
| 11:41 | 5 | MR. SHORE:  Thank you, Your Honor. |
| 11:41 | 6 | THE COURT:  Anything else? |
| 11:41 | 7 | MR. CICCARELLI:  No, Your Honor.  Thank |
| 11:41 | 8 | you. |
| 11:41 | 9 | THE COURT:  Okay.  I wish you the best of |
| 11:41 | 10 | luck with Judge Williams.  And please let me know -- |
| 11:41 | 11 | report back.  I'll let Judge Noreika know how happy you |
| 11:41 | 12 | are that you got off of her docket and onto Judge |
| 11:41 | 13 | Williams'. |
| 11:41 | 14 | MR. SHORE:  Judge Williams is so far so |
| 11:41 | 15 | good. |
| 11:41 | 16 | THE COURT:  But she's one of my best |
| 11:41 | 17 | friends too, so... |
| 11:41 | 18 | MR. SHORE:  Well, she always ruled for us |
| 11:41 | 19 | across the board.  So we weren't thrilled about losing |
| 11:42 | 20 | her, but now that he's come in, he's done a great job. |
| 11:42 | 21 | THE COURT:  Well, I had the great good |
| 11:42 | 22 | fortune to go on the bench about the same time she did |
| 11:42 | 23 | and even greater fortune that she actually knows what |
| 11:42 | 24 | she's doing in the IP world. |
| 11:42 | 25 | And so whenever I have a hard question, |

11:42  1   she's sort of my go-to, someone who is also a judge

11:42  2   that really knows what they're doing who can give me

11:42  3   good advice.  So I think she's all aces.

11:42  4                    So y'all have a great Thanksgiving.

11:42  5                    THE BAILIFF:  All rise.

11:42  6                    (Hearing adjourned.)

1 | UNITED STATES DISTRICT COURT )

2 | WESTERN DISTRICT OF TEXAS      )

3

4

5              I, Kristie M. Davis, Official Court

6 Reporter for the United States District Court, Western

7 District of Texas, do certify that the foregoing is a

8 correct transcript from the record of proceedings in

9 the above-entitled matter.

10              I certify that the transcript fees and

11 format comply with those prescribed by the Court and

12 Judicial Conference of the United States.

13              Certified to by me this 23rd day of

14 November 2022.

15                         /s/ Kristie M. Davis
16                         KRISTIE M. DAVIS
                           Official Court Reporter
17                         800 Franklin Avenue
                           Waco, Texas 76701
18                         (254) 340-6114
                           kmdaviscsr@yahoo.com
19

20

21

22

23

24

25