# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

|  |  |
|---|---|
| THE TRUSTEES OF PURDUE UNIVERSITY, | |
| Plaintiff, | |
| vs. | NO. 6:21–CV–727–ADA |
| STMICROELECTRONICS INTERNATIONAL N.V., ET AL., | |
| Defendants. | |

## ST'S CUSTOMERS' REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENAS[1]

---

[1] In its response, Purdue improperly refers to ST's Customers as "Tesla Customers," despite the fact that Tesla is not a defendant in this case.

In their Motion to Quash [ECF 213], non-parties Tesla, Inc., Tesla's contract manufacturer Sanmina Corporation, and Space Exploration Technologies ("SpaceX") (collectively, "ST's Customers") explained how the subpoenas served by Plaintiff the Trustees of Purdue University ("Purdue") sought irrelevant information, were facially overbroad, and sought information that could be obtained from ST. Purdue's Response does not change these fundamental facts. Notably, Purdue's response confirms that Purdue is pressing overbroad subpoenas on ST's Customers as a harassment tactic to pressure Defendants to enter into a stipulation that foreign sales by non-Defendants are somehow U.S. sales attributable to the Defendants.

Tesla, SpaceX, and Sanmina *are not* defendants in this case, nor should they be subjected to duplicative discovery, essentially abusing the Rule 45 subpoena processes. More importantly, Purdue *still* cannot describe with any particularity the supposedly relevant documents that *would not already* be in the possession of ST and would also be relevant to Purdue's claims.

Peppered throughout Purdue's Response are self-serving and conclusory statements about the "narrow scope of the discovery sought," Resp. at 9, and yet in a previous breath, Purdue argues it is "entitled" to *seven years* of discovery about ST's parts from Tesla, including (but not limited to) sales, importation, use, the "various steps in the sales cycles," and so on. *Id.* at 5. Similarly, Purdue declares it has "ample reason to obtain it may obtain a more complete sales record" from ST's Customers without providing any basis for why, let alone the specific relevance.[2] Accordingly, the Court should grant the Motion and quash the subpoenas to ST's Customers in their entirety.

---

[2] Similarly, Purdue seemingly concedes that it has suffered no prejudice from the roughly 9-hour delay in Tesla's objections. The only reference in Purdue's response states, "Tesla failed to timely object to the subpoena," but offers nothing beyond that. Resp. at 3. This acquiescence reflects the relevant caselaw and Tesla's communicated objections prior to the deadline.

**1.      Purdue is abusing the discovery process in an attempt to improperly strong-arm ST into stipulating to U.S. sales.**

Purdue's conduct with regard to the subpoenas has made one thing perfectly clear: Purdue is pressuring ST's Customers to attempt to force ST to enter into a stipulation that foreign sales by non-Defendants are somehow U.S. sales attributable to the Defendants. Indeed Purdue initially sent its dispute chart to ST's Customers about the subpoenas *without first even attempting to meet and confer*—a tactic that has become unfortunately common in this litigation). Mot. at Ex. E. At the subsequent meet-and-confer, counsel for Purdue *repeatedly* stated that the subpoenas could be resolved with a stipulation from the Defendants that foreign sales can be considered U.S. sales for purposes of the litigation. Counsel for Purdue refused to provide specific categories of documents that it sought, instead stating that—absent a stipulation from the ST Defendants—ST's Customers must produce all documents responsive to the subpoena.

Counsel for ST's Customers has repeatedly asked Purdue what—if anything—Purdue actually needed from ST's Customers that it could not receive from ST directly. *Id*. For example, after receiving Purdue's response to the Motion, ST's Customers again reached out regarding Purdue could provide a narrower set of materials that could resolve the subpoena. Counsel for Purdue responded: "Resolve it by stipulating the parts are US sales."  Ex. A.

Whether the sales at issue are in fact U.S. sales for purposes of this litigation is a question of law. It is the ST Customers' understanding that ST has already provided worldwide sales info along with shipping terms and standard terms and conditions of sale. Purdue complains about ST not providing certain discovery, such as the agreement with Tesla. Yet Purdue then admits that ST has already produced the Tesla master agreement. Purdue omits that ST has already provided or is working to provide exemplary purchase orders and invoices for SpaceX and Sanmina since those documents govern sales of the products at issue in this case. So although Purdue complains in its

Response that ST has not provided certain additional information, Purdue has either (1) already received or will soon receive the discovery that it is complaining about or (2) chosen not to pursue this discovery from ST.

Indeed, Purdue has been enthusiastic to submit discovery dispute charts to the Court. Yet, none of the outstanding dispute charts between Purdue and ST—and there are many—address any of the materials that Purdue now maintains are so vital to its case. Accordingly, Purdue is incorrect to argue that it "has shown unavailability of the requested information." Resp. 8. Simply, Purdue is pursuing a facially-overbroad subpoena, seeking irrelevant or redundant information, merely as a means of harassing ST's customers in a thinly veiled attempt to pressure ST to enter into a damages-related stipulation regarding non-U.S. sales. This tactic is inappropriate. Further, as ST's Customers pointed out in their motion to quash, there is no information that Purdue claims it needs from ST's Customers that Purdue has not already obtained or cannot obtain directly from, the Defendants.

## 2.       The subpoenas are facially overbroad.

Purdue maintains that ST's Customers have not established that the subpoenas impose an undue burden. Resp. 8–9. But Purdue ignores the Fifth Circuit's dictate that "[a] court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). And the subpoenas to ST's customers are just that: Purdue served non-parties with facially overbroad subpoenas directed to 7 years of discussions, purchases, and usage of ST's SiC MOSFET products.

Further, responding to the requests would require extensive email discovery on broad swaths of information. For example, Purdue incredibly seeks:

> ***All Documents exchanged between Tesla and ST*** that ***mention, refer or relate to ST SiC MOSFETs and ST Modules***, including supply agreements, NRE agreements, NRE output, purchase orders,

> capacity reservations, capacity allocations, prices, deliveries, qualification, testing, importation documentation, bills of lading, shipping receipts, warehousing, the provision of samples, the Design Win process, testing, costs, negotiations, and deliveries.

But courts routinely determine that requests for all documents "relating" to broad categories are facially overbroad, vague, and ambiguous. *See TIC Park Ctr. 9, LLC v. Cabot*, 2017 WL 3034547, at *5 (S.D. Fla. July 18, 2017) (recognizing that courts "nearly always" find requests using "vague terms such as 'concerning' or 'relating to'" to be inappropriately overbroad); *Great Lakes Transp. Holding LLC v. Yellow Cab Serv. Corp. of Fla.*, 2010 WL 5093746, at *6 (S.D. Fla. Dec. 8. 2010) (noting that document requests using the terms "relate to" or "concerning" are by their nature overbroad, vague, and ambiguous); *Carter v. Archdale Police Dep't*, 2014 WL 1774471, at *5 (M.D.N.C. May 2, 2014) ("'[a] request for all documents 'relating to' a subject is usually subject to criticism as overbroad since . . . all documents 'relate' to all others in some remote fashion.'"); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) (holding that request for production seeking "all documents that relate to or concern" a particular topic was "overly broad on its face"). Simply put, Purdue's requests far exceeded the scope of even arguably relevant information and are facially overbroad and therefore necessarily impose an undue burden.

3.      **Purdue cannot seek 7 years of discovery regarding its inducement claim.**

Purdue attempts to justify the facial over-breadth of the subpoenas by claiming a theory of inducement against the Defendants. Inducement cannot begin until there is actual notice of the alleged infringement, which did not occur until the date the complaint in this litigation was filed in July 2021. And Purdue has offered no basis by which the Court could assume notice occurred before that date. Accordingly, Purdue is not entitled to any pre-suit inducement evidence such as communications between ST's Customers and ST.

Finally, in light of the facial over breadth of the subpoena, ST's Customers have repeatedly attempted to confer with Purdue regarding what narrow set of documents Purdue actually needs. Those attempts have been repeatedly rebuffed. Purdue's repeated refusal to meaningfully engage in the meet and confer process has (needlessly) caused countless disputes charts to be dumped at the Court's footsteps. The Court should not reward Purdue's abusive discovery tactics.

**4.      The requests are duplicative.**

Seeking to justify duplicative discovery from third parties, Purdue cites and misreads an unreported Delaware Court of Chancery case (that has never been cited in Texas) for the proposition that duplicative requests, no matter how broad and burdensome, are permissible. *Hamilton P'rs v. Highland Cap. Mgmt. L.P.*, 2016 WL 612233, *6 (Del. Ch. Feb. 2, 2016). But this position is at odds with both common sense and the relevant case law.

Along similar lines, Purdue describes *Haworth, Inc. v. Herman Miller, Inc.,* 998 F.2d 975, 978 (Fed. Cir. 1993) as "inapposite" but summarizes the case as follows: "[T]he plaintiff aggressively pursued discovery exclusively against non-parties, even though the exact same information was available from the defendant." *Id.* Here, Purdue can scarcely claim to be doing anything different. Purdue also insists that it "has shown the unavailability of the requested information" when attempting to distinguish *Rembrandt Pat. Innovations v. Apple, Inc.*, No. 1:15-CV-438-RP, 2015 WL 4393581 at *2 (W.D. Tex. July 15, 2015). But Purdue has not shown that the discovery it seeks is unavailable from ST. Instead, it appears to argue throughout its response that it needs redundant discovery to confirm ST's sales data. Yet Purdue fails to explain how or why it would need 7 years of additional documents, communications between ST and the ST Customers, or technical info about how ST's Customers use the accused products.

The Court should quash the Subpoenas Purdue served on ST's Customers in their entirety.

6

Dated: December 21, 2022

Respectfully submitted:

By: */s/ Justin S. Cohen*

**Justin S. Cohen**
  SBN 24078356
  Justin.Cohen@hklaw.com

**HOLLAND & KNIGHT LLP**
  One Arts Plaza
  1722 Routh St., Suite 1500
  Dallas, Texas 75201
  214.969.1700

**ATTORNEY FOR
NON-PARTIES SANMINA CORPORATION,
SPACE EXPLORATION TECHNOLOGIES CORP.,
AND TESLA, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 21, 2022, a true and correct copy of the foregoing was

served upon all counsel for all parties via email.

*/s/Justin Cohen*
Justin S. Cohen
