IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| THE TRUSTEES OF PURDUE UNIVERSITY, <br><br> Plaintiff, <br><br> v. <br><br> STMICROELECTRONICS INTERNATIONAL N.V. AND STMICROELECTRONICS, INC. <br><br> Defendants. | Civil Action No. 6:21-cv-00727-ADA <br><br> ▮▮▮▮▮▮▮▮ <br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S RESPONSE TO TESLA, INC., SANMINA CORPORATION, AND SPACE EXPLORATION TECHNOLOGIES' MOTION TO QUASH SUBPOENAS

ST has sold nearly ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—to just three companies: Tesla Inc. ("Tesla"), Sanmina Corporation ("Sanmina") and Space Exploration Technologies ("SpaceX") (collectively, the "Tesla Customers").[1] Despite the significance of these sales to Purdue's damages model, ST refused for months to produce the Tesla Supply Agreement. ST refuses to stipulate that sales to the Tesla Customers are subject to royalties.

When ST refused to provide the discovery or a stipulation, Purdue sought the information from the Tesla Customers directly. Without a stipulation, Purdue must determine which entity imports the ST SiC MOSFETs into the United States, where the sales of the ST SiC MOSFETs covered by the '633 Patent take place, and how those ST SiC MOSFETs are used by the Tesla Customers once in the United States. In response to the subpoenas, the Tesla Customers—represented by ST's lawyers—provided only boilerplate objections. Now, the Tesla Customers

---

[1] Sealed Ex 1.

███████████████████████████

argue that Purdue should have obtained this information directly from ST. But Purdue has already

tried that route for months—unsuccessfully. The Court should not condone the cross-finger

pointing approach. The Tesla Customers have not shown that the requested discovery imposes any

burden on them, let alone an undue one considering the issue impacts ██ of the past damages

recoverable in this action.

The Motion to Quash should be denied and the Court should order the Tesla Customers to

provide the requested documents.[2]

---

[2] Purdue requested the same categories of documents from Tesla, Sanmina, and SpaceX from
January 1, 2015 to the present:

- Bills of Materials, or BOMs for Tesla Customer products that include ST
  SiC MOSFETs or ST Modules
- Documents sufficient to identify Tesla Customer inverter suppliers
- Documents sufficient to identify contract manufacturers, suppliers, or
  designers of components, systems, assemblies, or discreet devices
  incorporated into Tesla Customer products that are or include ST SiC
  MOSFETs or ST Modules
- Documents sufficient to identify Tesla Customer products sold, offered for
  sale, made, used, or imported that include ST SiC MOSFETs or ST Modules
- Documents exchanged between Tesla Customers and ST related to ST SiC
  MOSFETs and ST Modules
- Documents evidencing the component identifiers assigned to ST SiC
  MOSFETs and SiC Modules used or incorporated in Tesla Customer
  products
- Documents sufficient to disclose the unit volume of ST SiC MOSFETs and
  ST Modules included in Tesla Customer products and the dollar value of
  ST SiC MOSFETs and ST Modules purchased, provisioned, imported, or
  included in Tesla Customer products
- Documents sufficient to identify 5 Tesla Customer representatives who
  were the most involved in negotiating capacity reservations/allocations,
  forecasts, pricing, delivery, and other terms of agreements regarding ST SiC
  MOSFETs and ST Modules with ST.
- Documents sufficient to identify applications and design engineers
  employed by Tesla Customers or who were acting on behalf of Sanmina in
  procuring, selecting, testing, and placing on BOMs ST SiC MOSFETs and
  ST Modules.

Exs. 2, 3, 4.

████████████████████████████████████

### ARGUMENT

Federal Rule of Civil Procedure 34(c) provides that "a nonparty may be compelled to produce documents" as provided in Rule 45. "Rule 45 explicitly contemplates the use of subpoenas in relation to non-parties." *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009). The party moving to quash a subpoena as unduly burdensome has the burden of proof to show "that compliance with the subpoena would be 'unreasonable and oppressive.'" *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation." *Id.* (citation omitted). In assessing the undue burden, the court considers: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.*

The Motion to Quash should be denied because Purdue has shown that discovery about the Tesla Customers' sales is critical to proving ████ of the damages recoverable in this case. ST has refused to provide this information. The Tesla Customers have not shown that compliance with the subpoena would impose an undue burden on them. Additionally, Tesla failed to timely object to the subpoena.

### I.     Purdue is entitled to the requested discovery to prove damages.

Requests 1, 4, 6, 7, and 8 seek materials concerning Tesla Customers' products that have or had as components the ST SiC MOSFETs or ST Modules at issue in this case. Requests 2, 3, 5, 9, and 10 trace those sales—seeking information regarding where the accused products were

sampled, analyzed, and tested in application, what orders were invoiced, where products were shipped, and where, and by whom terms of the orders were negotiated.

These Requests are directly relevant to Purdue's damages for both its direct and indirect infringement claims. To prove direct infringement, Purdue must show that ST made, used, **sold**, or **offered** for sale within the United States, or that ST imported the accused products into the United States.  35 U.S.C. § 271(a). To prove that ST induced infringement by the Tesla Customers in violation of 35 U.S.C. § 271(b), Purdue must prove that there has been direct infringement **by the Tesla Customers**, and "that the alleged infringer [ST] knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (cleaned up).  Thus, whether (1) ST's sales to the Tesla Customers involved design win or sales process activity that took place in the United States and (2) ST's sales to the Tesla Customers involved goods that were imported into the United States is information directly material to damages.

Likewise, Purdue is entitled to discover whether the Tesla Customers were the record importers rather than ST, such that ST induced infringement (importation and use) by the Tesla Customers. 35 U.S.C. § 271(a).  *See California Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 993 (Fed. Cir. 2022) (upholding jury instruction that "sales cycle leading to design wins could trigger a United States sale") (cleaned up); *Bel Power Solutions Inc. v. Monolithic Power Systems, Inc.*, No. 6-21-cv-00655, Dkt. No. 29 at 12:16–13:17 (W.D. Tex. Dec. 10, 2021) ("design win" activities in the U.S. are relevant). Unless ST stipulates that the almost ███████ in Tesla Customers' sales are part of the royalty base (assuming infringement is proven), Purdue is entitled to the information necessary to trace every act of direct infringement (offers to sell, sales, importation, and use) by the Tesla Customers to determine when and how the accused products entered the United States

4

███████████████████████████████████

and what was done with them. This requires discovery from the Tesla Customers to determine which products have ST SiC MOSFETs or ST Modules as components, where the various steps in the sales cycles for those products took place, what entity imported the ST SiC MOSFETs, and how they were used and resold by the Tesla Customers. Moreover, "liability for induced infringement under § 271(b) can be imposed based on extraterritorial acts" so the requested discovery is undoubtedly relevant to Purdue's induced infringement case. *See Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 408 (Fed. Cir. 2018).

The Tesla Customers complain that Purdue is seeking seven years' worth of information.[3] As the Court knows, Purdue is entitled to damages going back six years from the date of the complaint, making the request completely appropriate. The Tesla Customers cite no support for their argument that Purdue somehow conceded no notice before July 2021. Mot. at 6–7. The Tesla Customers appear to be using ST's flawed marking defense to oppose *discovery*. Asserting a defense is not a basis to refuse or deny discovery. The ST marking defense is without merit. Purdue is entitled to the information necessary to compile its model for the entire damages period regardless of what defenses ST asserts. Tailoring discovery around a defense at this stage would requiring assuming that ST's marking defense is meritorious. ST is not entitled to that assumption.

The Tesla Customers objected to *every single discovery request* as irrelevant. Exs. 5, 6, and 7. The Tesla Customers' objections are boilerplate and not credible. The requested discovery is both relevant and necessary to prove Purdue's damages of its direct and indirect infringement claims in this case.[4] But even if the Court concludes that any of the requests are overbroad, the

---

[3] There is no way to know if the information actually goes back seven years. ST has not provided any proof of when it began supplying Tesla, Samina or SpaceX. It is highly doubtful it has been seven years based upon media reports.

[4] Sanmina's argument that it "does not have much of the requested information" is insufficient to meet its burden for a motion to quash. *See* Mot. at 7. Indeed, if Sanmina has only a small number

████████████

proper remedy is modification, not quashing the subpoenas. *Wiwa*, 392 F.3d at 818

("[M]odification of a subpoena is preferable to quashing it outright.").[5]

## II.     ST has refused to provide the requested information.

Nearly five months have passed since ST agreed in open court to produce the sales

agreements with the ST Customers. The Tesla Customers now argue that Purdue needed to request

the sales information directly from ST. On July 11, 2022, ST represented to the Court that ST

would produce customer agreements and purchase orders for customers accounting for ST's top

████████ of revenues:

> We're going to get [Purdue] contracts, if we have them, with those customers. And
> if we don't have a contract with a customer, … we will get [Purdue] a purchase
> order so [they] can see what the purchase orders for that customer generally look
> like.
> …
> That's where we are on that. ***And as soon as we generate the sales report***, we'll
> know who the customers are and ***we'll start pulling those agreements*** and get them
> to [Purdue].

Ex. 8 at 28:18-29:13 (emphases added). ST merely produced one Tesla customer agreement, a

purchase order, and an invoice on December 9, 2022, but refuses to stipulate that the sales to the

Tesla Customers are included in the royalty base.[6] ST has not provided verified sales data. Ex. 9.

---

of responsive documents, the burden imposed by the subpoena is close to zero. Sanmina still must
respond to the subpoena.

[5] SpaceX argues that the risk of inadvertent disclosure of technical information would allow
competitors to take advantage of SpaceX's work. This argument lacks merit. This risk is present
in every technical case. If that were sufficient to show an undue burden, nothing would ever get
produced in technical cases. Further, the Protective Order in this case specifically permits third-
parties to obtain the confidentiality benefits available to the parties. *See* Dkt. 65 ¶ 20. However,
SpaceX can protect its sensitive business information by stipulating to a list of products that have
ST SiC MOSFETs or ST Modules as components.

[6] Purdue has identified discrepancies between ST's sales information and those received from at
least one ST distributor. The documents produced by ST appear to be files prepared for this
litigation rather than reports or data kept in the regular course of ST's business. ST unilaterally
cancelled the deposition of the ST corporate representative on the subject of sales accounting.

Even if ST eventually provides verified requested sales information, Purdue is entitled to confirm

the accuracy and completion of ST's production based on documents from the Tesla Customers.

*See Hamilton Partners, L.P. v. Highland Cap. Mgmt., L.P.*, No. CV 6547-VCN, 2016 WL 612233,

at *6 (Del. Ch. Feb. 2, 2016) ("submitting the same requests to different individuals might allow

Plaintiff to test the truth, accuracy and completeness of extant and forthcoming production")

(cleaned up).

Surprisingly, the Tesla Customers rely on authority that *approved of* discovery to non-

parties who "ha[ve] some affinity to the allegedly infringing party in the litigation." *Sky Techs.*

*LLC v. IBM, Inc.*, No. 2:03-Cv-454, 2005 U.S. Dist. LEXIS 47687, *8-9 (E.D. Tex. July 20, 2005).

The court in *Sky Techs* explained that "the parties should not resort to non-parties for discovery

that is obtainable elsewhere," but rejected a categorical rule that discovery "related to a defendant's

alleged direct and contributory infringement in a patent infringement suit [is] not relevant when it

involves non-parties." *Id.* at *6, *8.  The court concluded that third-party discovery was permitted

in that case because the non-party was closely affiliated with the infringing party.  *Id.* at 10.  *Sky*

*Tech* thus counsels in favor of allowing discovery from the Tesla Customers,

especially when ST has refused to provide the

discovery itself, and the Tesla Customers have hired the same lawyers to aid in the obstruction.

The other cases relied on by the Tesla Customers are inapposite. In *Haworth, Inc. v.*

*Herman Miller, Inc.*, the plaintiff aggressively pursued discovery exclusively against non-parties,

although the exact same information was available from the defendant. 998 F.2d 975, 978 (Fed.

Cir. 1993) ("[A]t the time that Herman Miller invoked the coercive authority of the Illinois district

court to compel production from Allsteel, it had not invoked similar authority to compel production

7

████████████████████████

from its opponent Haworth."). That is not the case here, where Purdue unsuccessfully, repeatedly tried to obtain the information from ST. Purdue has ample reason to believe it may obtain a more complete sales record from the Tesla Customers directly.  In *Positive Black Talk Inc. v. Cash Money Recs., Inc.*, the information sought "was not only available from other sources, it was actually provided at trial."  394 F.3d 357, 377 (5th Cir. 2004), *abrogated by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). Critically, in *Rembrandt Pat. Innovations v. Apple, Inc.*, the plaintiffs had not shown that they could not obtain the requested information from the defendant, and the court acknowledged that "this Court's ruling contemplates revisiting the issue upon a showing by Plaintiffs that such information is unavailable." No. 1:15-CV-438-RP, 2015 WL 4393581, at *2 (W.D. Tex. July 15, 2015). Purdue has shown unavailability of the requested information.

### III.     The ST Customers have not shown that the subpoenas impose an undue burden.

The Tesla Customers have not provided any evidence of undue expense or inconvenience. "[I]f the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Wiwa*, 392 F.3d at 818. The Tesla Customers' conclusory argument that "***most*** of the information Purdue seeks is readily obtainable from a party defendant," Mot. at 4 (emphasis added), is insufficient to show that any burden is undue. The Tesla Customers fail to mention what "most" means, and which information sought is unavailable from ST.  "A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006)). *Hume v. Consol. Grain & Barge, Inc.*, the authority relied on by the Tesla Customers, further supports that they needed to provide specific evidence of the purported burden. No. CV 15-935, 2016 WL 7385699, at *4 (E.D. La. Dec. 21, 2016)

███████████████████████████

("The evidence submitted by Consolidated is precisely the kind of particular and specific demonstration of fact that results in the carrying of the burdens under Fed. R. Civ. P. 45(d)(1) and 26(b)(1) to show that the subpoena duces tecum imposes undue burden and expense that outweigh its likely benefit to the case.") (emphasis in original). The Tesla Customers have made no showing as to the time and expense involved in responding to the subpoenas. This is not surprising given the narrow scope of the discovery sought, i.e., information related only to SiC MOSFET products from ST over a limited period of time.

## CONCLUSION

Purdue is entitled to discovery regarding ███ of ST's sales at issue to prepare its damages model. ST has not provided this promised information after ample time to do so and efforts to agree to a stipulation have been unsuccessful; thereby forcing Purdue to seek discovery from the Tesla Customers to prove ST's acts of infringement, ST's actions that induced the Tesla Customers to infringe, the Tesla Customers' acts of infringement induced by ST, and Purdue's damages. The evidence is not just relevant, but critical to Purdue's case at all levels. No evidence of an undue burden has been offered.  The Motion to Quash should be denied, and the court should order the ST Customers to respond to the subpoenas within 7 days.

███████████████████

Dated: December 14, 2022

Respectfully submitted,

*/s/  Michael W. Shore*_____
Michael W. Shore (SBN 18294915)
Chijioke E. Offor (SBN 24065840)
Halma Shukri Ndai (SBN 24105486)
**The Shore Firm**
901 Main Street, Suite 3300
Dallas, Texas 75202
Tel: (214) 593-9110
Fax: (214) 593-9111
mshore@shorefirm.com
coffor@shorefirm.com
hndai@shorefirm.com

Brian D. Melton (SBN 24010620)
John P. Lahad (SBN 24068095)
Abbey McNaughton (SBN 24116751)
**Susman Godfrey L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Tel: (713) 651-9366
Fax: (713) 654-6666
bmelton@susmangodfrey.com
jlahad@susmangodfrey.com
amcnaughton@susmangodfrey.com

COUNSEL FOR PLAINTIFF
THE TRUSTEES OF PURDUE UNIVERSITY

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on December 14, 2022, all counsel of record who are deemed to have consented to electronic service were served with a copy of Plaintiff's Response to Third Party Motion to Quash, which was filed under seal, via email on December 14, 2022.

*/s/  Michael W. Shore*
Michael W. Shore

10