IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| THE TRUSTEES OF<br>PURDUE UNIVERSITY,<br><br>        Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS, INC., and<br>STMICROELECTRONICS<br>INTERNATIONAL N.V.<br><br>        Defendants. | Civil Action No. 6:21-cv-00727-ADA<br><br>JURY TRIAL DEMAND |

**ORDER DENYING MOTION TO COMPEL**

Before the Court is Defendants STMicroelectronics, Inc. and STMicroelectronics International N.V. (hereinafter "ST") motion to compel the production of communications and documents withheld by third-party Rembrandt IP Management, LLC ("Rembrandt") (ECF No. 164). Having considered the parties' briefing, arguments made at the December 29, 2022 hearing (ECF No. 234) and an *in camera* review of the documents, it is hereby ORDERED that the motion be **DENIED** for the following reasoning.

I. **BACKGROUND**

The materials being withheld relate to discussions from 2015 with the former owner of the Patent-in-Suit, the Purdue Research Foundation ("PRF"). ECF No. 164 at 1. Rembrandt argues that the discussions with PRF were related to potentially asserting one of the two patents that was originally asserted in this litigation (U.S. Patent No. 8,035,112), which was also asserted against the same products accused of infringing the lone remaining Patent-in-Suit. *Id.*

In discovery, Purdue produced a Confidential Non-Disclosure Agreement ("NDA") between Rembrandt IP Management, LLC ("Rembrandt") and Purdue Research Foundation dated October 21, 2015. *Id*. at 2. Rembrandt is "an entity that helps patent owners investigate intellectual property infringement and manage litigation against infringers." ECF No. 168 at 2. The NDA defined Confidential Information to include legal documents, such as "claim charts," "an attorney's analysis or assessment of a party's position with respect to third parties in an anticipated or ongoing litigation or administrative proceeding," "legal research and comments on technical information, prepared by or at the direction of outside patent counsel or in-house attorneys in connection with an anticipated or ongoing litigation or administrative proceeding." ECF No. 164, Ex. A at 1.

Defendants subpoenaed Rembrandt "[b]ecause the existence of the NDA suggested that Rembrandt and Purdue engaged in some sort of communications relating to the Patents-in-Suit." *Id*. Rembrandt (through Purdue's counsel) withheld all of the documents as privileged, and produced a privilege log running from 2004 to 2021. *Id*. at 3. Importantly, Purdue and Rembrandt never actually consummated any agreement relating to the '112 (or any other) patent asserted in this case, nor did their discussions progress significantly beyond the signing of the NDA.

While ST acknowledges that courts are "understandably reluctant to require a patentee to produce communications with potential or actual litigation funders related to a present litigation," it argues that the circumstances here are unique. *Id*. at 1. ST argues that because the discussions occurred six years before the filing of the present lawsuit, they wouldn't concern the present suit, and the documents are particularly relevant because they would have been from around the time of the hypothetical negotiation, and "not tainted by rose-colored glasses of a party just about to file suit." *Id*. at 2. ST also argues relevancy because "Purdue *likely discussed* ST given that ST was selling the accused product" at the time of the communications (emphasis added) and could "disclose Purdue's business model of working with industry and licensing Purdue technology." *Id*. Finally, even if the

documents are relevant, Defendant argues that the documents are not privileged because there is no "common legal interest" between Purdue and Rembrandt. *Id*. Importantly, Purdue and Rembrandt never actually consummated any agreement relating to the '112 (or any other) patent asserted in this case.

The Court made an initial determination at the October 14, 2022 hearing, and the parties subsequently submitted the documents for *in-camera* review, as well as this more fulsome briefing on the issue.

## II. ANALYSIS

### a. The Rembrandt Documents are Protected From Discovery

Purdue argues that "Rembrandt was not simply discussing a business relationship with Purdue Research Foundation ("PRF") but taking on a litigation project where Rembrandt would provide the Rule 11 investigation, locate outside counsel, manage the litigation process, and oversee any legal obligations of any resulting licensees." ECF No. 186 at 2. Purdue provided a declaration of Rembrandt's President and Chief Executive Officer, Michael Johnson, who stated that Rembrandt's role generally is not simply litigation funding, but also "litigation management, which has included identifying infringed patents that cover fundamental technology in important markets, evaluation of intellectual property ("IP") for enforcement actions by Rembrandt's technical, legal, and financial in-house teams, and working closely with leading law firms and experts to plan and carry out a patent infringement lawsuit against alleged infringers." ECF No. 186-1 at ¶ 3. As for the relationship at issue, Johnson stated that "Rembrandt's relationship with Purdue Research Foundation (PRF) included evaluation and possible enforcement (i.e., potential litigation) of U.S. Patent No. 8,035,112." *Id*. at ¶ 4. The privilege log shows that "PRF communicated directly with Meredith L. Carter, a lawyer and member of Rembrandt's in-house business development team. As of June 19, 2015, all communications with

PRF were prepared in anticipation of litigation and prepared under the direction of Rembrandt legal counsel, as provided on the face of the documents." *Id*.

After an *in-camera* review of the communications, the Court finds that the documents at issue are indeed privileged. The Court finds that Rembrandt was offering to provide significant legal services that included analysis into all aspects of a patent infringement case—such as Rule 11 pre-suit investigations of infringement, invalidity, and potential damages. The Court agrees with Plaintiff that this situation is akin to a potential client meeting with potential counsel, something that is generally protected by an attorney-client privilege. *See, e.g., In re Auclair*, 961 F.2d 65 (5th Cir. 1992).

The Court also finds that these documents would be protected under the work product doctrine. The work product privilege applies to documents "prepared in anticipation of litigation." Fed.R.Civ.P. 26(b)(3). These communications were clearly created with an eye towards a patent infringement lawsuit. The fact that Purdue didn't file a lawsuit immediately thereafter meeting with Rembrandt does not waive the privilege. A litigation need not be imminent for this doctrine to attach. *See In re Kaiser Aluminum & Chem. Co*., 214 F.3d 586, 593 (5th Cir. 2000) ("The law of our circuit is that the [work product] privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'"). Furthermore, the Court does not find that the parties have waived any work product, as the parties entered into an NDA that encompassed the exchange of legal documents. *See United States v. Ocwen Loan Servicing, LLC,* No. 4:12-CV-543, 2016 WL 1031157, at *3 (E.D. Tex. Mar. 15, 2016) ( "[l]itigation funders have an inherent interest in maintaining the confidentiality of potential clients' information, therefore, [Plaintiffs] had an expectation that the information disclosed to the litigation funders would be treated as confidential.").

    b.  **The Rembrandt Documents are Not Relevant**

Additionally, the Court finds that the Rembrandt documents are not responsive nor are proportional to the needs of the case. Courts, in this district and elsewhere, have routinely held that information about litigation funding is largely irrelevant and thus beyond the scope of discovery absent a compelling showing of a legitimate concern (such as standing or conflicts of interest). *See, e.g., Mullen Industries LLC v. Apple Inc.*, No. 6-22-cv-00145, Dkt. 64 (W.D. Texas Oct. 19, 2022) (Albright, J.) (quashing deposition topics seeking information regarding litigation funders and/or litigation investors); *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, Case No. 14-cv-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (requiring the showing of a "specific, articulated reason to suspect bias or conflicts of interest"); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019), *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*, No. 2:17-CV-2349-KJD-NJK, 2020 WL 1042515 (D. Nev. Mar. 3, 2020)) ("[c]ourts will compel discovery into funding sources only upon the presentation of 'some objective evidence' that the discovering party's 'theories of relevance are more than just theories.'"). Additionally, this Court routinely has found that the production of documents (and communications relating to) unconsummated licensing negotiations are not discoverable. *See Daedalus Blue, LLC v. Microsoft Corp.*, No. W-20-CV-01152-ADA, 2022 WL 3031076, at *3 (W.D. Tex. Aug. 1, 2022) (citing *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *5 (E.D. Tex. May 4, 2011)). In *Daedalus*, this Court held that "unconsummated negotiations are not discoverable because they are 'unreliable absent a final decision.'" 2022 WL 3031076, at *3. "Quite simply, the communications have less context and therefore less probative value." *Id*. Most importantly, production of such documents creates significant "concerns about the chilling effects of ongoing negotiations." *Id*. The Court find this situation no different from communications with a litigation funder that do not result in an agreement. Similarly, the documents are largely irrelevant to the primary issues in a patent case—infringement, invalidity, and damages, and thus not relevant nor proportional to the needs of the case.

### c. The Rembrandt Documents are Irrelevant

Finally, after an *in-camera* reviewing of the withheld documents, the Court finds that the documents do not go to any of the issues postulated by Defendants at the oral argument, and would be of no use to Defendants in this case. Defendants of course did not have the benefit of knowing what the documents did (or did not) say, but the Court now confirms that none of Defendants' assumptions are born out by the documents.

## II. CONCLUSION

The Court hereby finds that conversations with Rembrandt, an entity offering significant legal services that go beyond merely litigation funding, are privileged. The Court also finds that the documents and communications pertaining to an unconsummated agreement with Rembrandt are largely irrelevant to the issues in a patent litigation and therefore not within the scope of discovery. Finally, an in-camera review of the documents confirm that the documents are nonetheless wholly irrelevant and (even if not privileged) would not be of help.

SIGNED this 18th day of January 2023.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE