# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| THE TRUSTEES OF<br>PURDUE UNIVERSITY,<br><br>      Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS<br>INTERNATIONAL N.V.<br>AND STMICROELECTRONICS, INC.<br><br>      Defendants. | Civil Action No. 6:21-cv-00727-ADA<br><br>JURY TRIAL DEMANDED |

**MOTION TO STRIKE DEFENDANTS' INEQUITABLE CONDUCT DEFENSES**

Inequitable conduct is a serious allegation that a patentee intentionally deceived the Patent Office. Courts have repeatedly (and rightly) noted that the party asserting inequitable conduct assumes a "heavy burden" to prove the charge. *See, e.g.*, *Vandenberg v. Dairy Equipment Co.*, 740 F.2d 1560, 1568 (Fed. Cir. 1984); *Lipocine Inc. v. Clarus Therapeutics, Inc.*, 2020 WL 4794576, at *3 (D. Del. Aug. 18, 2020) (Bryson, J., by designation) ("The burden of proving inequitable conduct is a heavy one."). It is then no surprise that this defense—like other fraud allegations—is subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b).

In this case, Defendants STMicroelectronics, Inc. and STMicroelectronics International N.V.'s (collectively "ST") provide nothing more than general, conclusory allegations that fall far well short of the heightened pleading standard and are insufficient as a matter of law. Accordingly, Plaintiff, The Trustees of Purdue University ("Purdue"), moves to strike ST's deficient inequitable conduct defenses (Docs. 225 & 226) under Federal Rule of Civil Procedure 12(f), *Exergen Corp.*

*v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), and this Court's recent decision in *Flypsi, Inc. v. Dialpad, Inc.*, No. 6:21-CV-0642-ADA, 2022 WL 3593132 (W.D. Tex. Aug. 22, 2022).[1]

**I.     Background**

ST alleges that the named inventors, James A. Cooper, Ph.D. and Asmita Saha, Ph.D., along with the Purdue Research Foundation (the "Patentees") "knew of specific prior art disclosures, knowledge of a person of ordinary skill in the art ("POSITA"), and their specific materiality to one or more aspects of the claimed inventions and/or the reasons for allowance," failed to disclose these references to the Examiner, and misrepresented a POSITA's knowledge to the Examiner. (Doc. 225 at 13, Doc. 226 at 13). ST acknowledges that Dr. James Cooper "is a prolific writer who has authored or co-authored numerous technical publications, including, at one point, reportedly over 250 technical papers and conference presentations, five book chapters, 18 U.S. patents, and a textbook on silicon carbide (SiC) technology." (Doc. 225 at 13, Doc. 226 at 13–14). ST alleges that Dr. Cooper's prior writings "disclose similar structures in silicon-carbide to those that were at issue during prosecution of the '633 Patent." (Doc. 225 at 17, Doc. 226 at 18).

The crux of ST's defense is that the Patentees made a misrepresentation to the Examiner "that it would not be obvious to modify the silicon substrate devices disclosed in the cited references to include those structures in silicon-carbide," while the Patentees "were aware of prior art publications disclosing very similar structures in silicon-carbide." (Doc. 225 at 15–16, Doc. 226 at 16–17). ST cites six publications that it alleges should have been disclosed to the Examiner because they "discuss[] similar silicon-carbide structures." (Doc. 225 at 17, Doc. 226 at 18). ST

---

[1] ST filed its amended answer and counterclaims on December 16, 2022 and Purdue responded to ST's counterclaims on January 6, 2023. (Docs. 225, 226, 239 & 240). Purdue moved for leave to file this Motion to Strike on February 22, 2023. As detailed in Purdue's Motion for Leave, Purdue requests that the Court consider this motion on the merits because ST's inequitable conduct defense is insufficient as a matter of law.

does not point to any particular language in any of these references or describe the particular structures taught in any of these references. ST does not identify which claim limitations are relevant to the prior art references. ST makes only the general allegation that "[a]ll of the claims of the '633 Patent are unenforceable due to inequitable conduct." (Doc. 225 at 11, Doc. 226 at 11).

## II.     The Legal Standards

"'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)." *Exergen*, 575 F.3d at 1326 (citing *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). This is because, in the Federal Circuit's view, inequitable conduct has been "the 'atomic bomb' of patent law, and . . . has "plagued not only the courts but also the entire patent system[,] [b]ecause allegations of inequitable conduct are routinely brought on 'the slenderest grounds.'" *Therasense*, 649 F.3d at 1288–89. *Cf. id.* at 1290. ("This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public.").

An affirmative defense for inequitable conduct must meet the same heightened pleading requirements as a claim of inequitable conduct. *See Flypsi,* 2022 WL 3593132, at *11 (applying the same analysis to the counterclaim and affirmative defense); *Resonant Sensors Inc. v. SRU Biosystems, Inc.*, No. 08-CV-01978-M, 2010 WL 11530761, at *2 (N.D. Tex. June 8, 2010) ("A motion to strike pursuant to Rule 12(f) tests the legal sufficiency of the claims asserted in the [pleading], much like a motion to dismiss pursuant to Rule 12(b)(6).").

A motion to strike a defense under Federal Rule of Civil Procedure 12(f) should be granted "when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). "What constitutes an insufficient

3

defense depends upon the nature of the claim for relief and the defense in question." *EEOC v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980). Although "a court must accept as true all of the allegations contained in a [pleading]," legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.   Argument

ST has offered only threadbare recitals of the elements of an inequitable conduct claim. An inequitable conduct claim requires showing: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information, and (2) the individual did so with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327 (Fed. Cir. 2009). ST's conclusory and vague allegations lack the required specificity for an inequitable conduct claim, do not include any allegations satisfying the but-for materiality test, and do not plausibly suggest that any of the Patentees made a deliberate decision to withhold a known material reference.

**A.   ST's allegations as to the "what, where and how" lack the required specificity as to how the withheld references relate to the patent.**

"[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific **who, what, when, where, and how** of the material misrepresentation or omission committed before the USPTO. *Flypsi*, 2022 WL 3593132, at *3 (quoting *Exergen*, 575 F.3d at 1328–29) (emphasis added). To meet the "what" and "where" prongs, the pleading must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Exergen*, 575 F.3d at 1329.

ST alleges that the inventors, Drs. Cooper and Saha, along with the Purdue Research Foundation, misrepresented during the prosecution of the '633 Patent "that it would not be obvious to modify the silicon substrate devices disclosed in the cited references to include those structures in silicon-carbide." (Doc. 225 at 15, Doc. 226 at 16). ST points to the Patentees' Response to the October 12, 2007 Final Rejection as the source of the misrepresentation and argues that when this statement was made, "the Patentees (including Dr. Cooper, in particular) were aware of prior art publications disclosing very similar structures in silicon-carbide." (Doc. 225 at 15; Doc. 226 at 16). ST cites to six "examples" of publications that "discussed similar silicon-carbide structures" and argues that "[a]ll of the claims of the '633 Patent are unenforceable due to inequitable conduct." (Doc. 225 at 15–17, Doc. 226 at 16–18).

ST's vague allegations are insufficient to allege the "what" and the "where" elements under *Exergen*. ST has not alleged what qualifies—in its view, let alone in the view of a POSITA—as a "similar structure[] in silicon-carbide," such that a POSITA would have considered any of the prior art references with a "similar structure[] in silicon-carbide," to render any of the claims in the '633 Patent obvious. ST has not pointed to *any* specific claim language for which the allegedly withheld prior art references are relevant nor cited to any language in the prior art references. ST has done this before and should know better. "The fact that the required information may exist *somewhere* in the record in no way excuses STMicro from its obligations under Rule 9(b) to plead that information specifically in its answer." *Rambus, Inc. v. STMicroelectronics N.V.*, No. C 10-05449, 2013 WL 12343708, at *3 (N.D. Cal. Mar. 18, 2013). ST's failure to allege which specific claim limitations are practiced by each of the prior art references is fatal to its defense. *Cf. Mosaid Techs. Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-CV-00173, 2012 WL 12898419, at *4 (E.D. Tex. Sept. 27, 2012) (pleading was insufficient where it alleged that the prior art was relevant to every

5

claim in the patent but "pleadings [did] not include which specific claim limitation(s) of the [] Patent the [referenced] feature practices.").

Given ST's failure to plead the "what" and "where," ST's allegations also fail the "why" and "how" requirements of an inequitable conduct claim. *See Flypsi*, 2022 WL 3593132, at *10 ("Given [the defendant's] failure to plead the particular "what" and "where," it cannot plead the "how" or "why.'"). ST must allege facts showing "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329–30. "Without understanding the underlying material information, *i.e.*, the specific claims and claim limitations, [the defendant] cannot sufficiently plead 'why' the information was material or 'how' it would have impacted the USPTO's decision to grant the '585 Patent." *Flypsi*, 2022 WL 3593132, at *10. ST has not provided any specific allegations as to the specific claims and claim limitations, and therefore, has failed to allege how the Examiner would have used any of its cited references in evaluating the claims.

**B.     ST's allegations additionally fail the but-for materiality test.**

ST fails to allege that "the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim." *See SAP Am., Inc. v. Purple Leaf, LLC*, No. C 11-4601 PJH, 2012 WL 2237995, at *6 (N.D. Cal. June 15, 2012) (citation omitted). Materiality in the inequitable conduct context is measured by a "but-for" analysis. *Flypsi*, No. 6:21-CV-0642-ADA, 2022 WL 3593132, at *3 (W.D. Tex. Aug. 22, 2022) (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011)). "Pleading inequitable conduct based on nondisclosure of prior art and other misconduct requires specific allegations focused on the USPTO's decisions." *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 163 F. Supp. 3d 938, 985 (D.N.M. 2016). "[T]he court

6

must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Id.* at 984 (citing *Therasense*, 649 F.3d at 1292). Courts should give claims "their broadest reasonable construction," and "us[e] a preponderance of the evidence standard," when assessing patentability. *Id.* (citing *Therasense*, 649 F.3d at 1292).

ST has not alleged any facts showing that the prior art references are material, let alone how the cited "examples" would have impacted the USPTO's decision to grant the '633 Patent. ST has only alleged that the prior art is "regarding similar structures in silicon-carbide," and that the references are "material" or showed "clear materiality" to the claims of the '633 Patent. In *Exergen*, the court concluded that the defendant's answer was insufficient when it alleged "generally that the withheld references are 'material' and 'not cumulative to the information already of record,'" but did not "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." *Exergen*, 575 F.3d at 1329. ST's conclusory description of the references as "material" based solely on unexplained similarity is just as deficient. ST does not plead facts from which one could plausibly conclude that the references were prior art to the '633 Patent and, without that, ST has not alleged that there was a duty to disclose those references.

Even if a cited reference seems material in isolation, a reference that is cumulative with others before the Patent Office is not material. *See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007) ("Information cumulative of other information already before the Patent Office is not material."); *St. Jude Medical*, 2014 WL 2622240, at *1 (citing *Exergen*, 575 F.3d at 1329–30) (pleading inequitable conduct requires showing "that the omitted information is not cumulative of the information already on the record by identifying the particular claim limitations that are absent from the record."). Without allegations identifying the omitted

7

information, ST cannot show the allegedly withheld references are not cumulative to the cited references.

Tellingly, ST filed two *inter partes* review petitions (the "ST IPRs"). Both ST IPRs failed to cite **any** of the references ST now claims would have been material to the issuance of at least one (as yet unidentified) '633 Patent claim.[2] Another *inter partes* review filed by Wolfspeed, Inc. (the "WS IPR") also failed to cite **any** of the references cited by ST in its inequitable conduct affirmative defense.[3] The ST IPRs and WS IPR were all filed ***after*** ST and Wolfspeed had raised affirmative defenses alleging inequitable conduct. None of the allegedly material prior art ST claims was intentionally withheld by Dr. Cooper, Dr. Saha, the Purdue Research Foundation, or prosecution counsel to defraud the USPTO into granting the '633 Patent is cited in the ST IPRs or WS IPR ***because ST and Wolfspeed knew none of it was material to patentability***. The ST IPRs and WS IPR were all rejected by the Patent Trial and Appeal Board.[4]

ST's inequitable conduct defense fails as a matter of law.

### C. ST has not alleged a specific intent to deceive.

An inequitable conduct pleading "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation and (2) withheld or misrepresented this information with a specific intent to deceive the USPTO." *Exergen*, 575 F.3d at 1328–29). ST must allege "scienter of the withheld material information." *Flypsi, Inc.*, 2022 WL 3593132, at *10 (citing *Exergen*, 575 F.3d at 1327 at n.3). "A reasonable inference [of intent]

---

[2] Doc. 180.
[3] Doc. 180.
[4] Doc. 180.

is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n.5.

ST's conclusory allegations that the Patentees "were aware of" various prior art references do not show or even lead to a reasonable inference of any specific intent to deceive. "A reference may be many pages long, and its various teachings may be relevant to different applications for different reasons. Thus, one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material *information* contained in that reference." *Id.* at 1330. "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Therasense*, 649 F.3d at 1290. *See also Front Row Techs.,* 163 F. Supp. 3d at 985 (D.N.M. 2016) ("failures to disclose material prior art, on the other hand, do not generally rise to" inequitable conduct).

ST has alleged only that the Patentees "were aware of" six publications that discuss "similar structures in silicon-carbide," these references were material, the Patentees did not submit them to the Examiner, and that this failure to disclose the "material prior art" was "done with specific intent to deceive the PTO." (Doc. 225 at 16–17, Doc. 226 at 17–18). These allegations are the type of naked recitals of claim elements that do not pass muster under the generic *Twombly-Iqbal* standard, let alone the higher Rule 9(b) standard.

A specific intent to deceive does not flow logically from the allegation that an esteemed professor has written extensively on topics in the same broad general field as one of his many patents. In fact, ST's allegation suggests that a POSITA would not consider the reference material. These facts, without more, do not give rise to an inference of specific intent for any particular individual, nor plausibly suggest a "deliberate decision to withhold a known material reference" or knowingly make a false misrepresentation. *See Exergen*, 575 F.3d at 1331. Such allegations are

9

a necessary predicate for inferring deceptive intent. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995) (to prevail on the merits "[i]n a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference").

Finally, even if the Court credits ST's allegations as to materiality, "intent and materiality are separate requirements." *Therasense*, 649 F.3d at 1290. The court "may not infer intent solely from materiality." *Id.* ST's defense fails, on independent grounds, to allege both intent and materiality.

## IV.   Conclusion

The facts alleged by ST are flimsier and more conclusory than those the Court found insufficient in *Flypsi*. ST's inequitable conduct defense fails as a matter of law. Accordingly, Purdue respectfully requests that the Court grant this Motion to Strike.

Dated: February 22, 2023                     Respectfully submitted,

                                                Michael W. Shore (SBN 18294915)
Chijioke E. Offor (SBN 24065840)
Halma Shukri Ndai (SBN 24105486)
THE SHORE FIRM
901 Main Street, Suite 3300
Dallas, Texas 75202
Tel: (214) 593-9110
Fax: (214) 593-9111
mshore@shorefirm.com
coffor@shorefirm.com
hndai@shorefirm.com

/s/ *John P. Lahad*
Brian D. Melton (SBN 24010620)
John P. Lahad (SBN 24068095)
Abbey McNaughton (SBN 24116751)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096

Tel: (713) 651-9366
Fax: (713) 654-6666
bmelton@susmangodfrey.com
jlahad@susmangodfrey.com
amcnaughton@susmangodfrey.com

*COUNSEL FOR PLAINTIFF*
*THE TRUSTEES OF PURDUE UNIVERSITY*

### CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system on February 22, 2023.

/s/ *John P. Lahad*
John P. Lahad

### CERTIFICATE OF CONFERENCE

The parties have conferred regarding the substance of Plaintiff's Motion to Strike and Defendants oppose the relief sought.

/s/ *John P. Lahad*
John P. Lahad