IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

THE TRUSTEES OF PURDUE          )          Case No. 6:21-CV-727-ADA-DTG
UNIVERSITY,                     )
                                )
          Plaintiff,            )
                                )
     v.                         )
                                )
STMICROELECTRONICS, INC.,       )
*et al.*,                       )
                                )
          Defendants.           )
                                )          Friday, March 3, 2023
_____   )          2:30 P.M.


TRANSCRIPT OF DISCOVERY HEARING
**BEFORE THE HONORABLE DEREK T. GILLILAND**
**UNITED STATES MAGISTRATE JUDGE**


APPEARANCES ON NEXT PAGE.


Deputy Clerk:                   Melissa Copp
                                United States District Court
                                800 Franklin Avenue, #380
                                Waco, Texas 76701



Transcription Service By:       Dipti Patel, CET-997
                                Liberty Transcripts
                                7306 Danwood Drive
                                Austin, Texas 78759
                                (847) 848-4907
                                www.libertytranscripts.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

APPEARANCES:

For the Defendants:              Sidley Austin LLP
                                 BY: MICHAEL D. HATCHER, ESQUIRE
                                 2021 McKinney Avenue, Suite 2000
                                 Dallas, Texas 75201

                                 Ciccarelli Law Firm
                                 BY: MASSIMO CICCARELLI, ESQUIRE
                                 750 North Street Paul Street
                                 Suite 200
                                 Dallas, Texas 75201

APPEARANCES VIA ZOOM TELECONFERENCE:

For the Plaintiff:               The Shore Firm
                                 BY: MICHAEL W. SHORE, ESQUIRE
                                 Bank of America Plaza
                                 901 Main Street, Suite 3300
                                 Dallas, Texas 75202

                                 Susman Godfrey, L.L.P.
                                 BY: ABBEY MCNAUGHTON, ESQUIRE
                                 1000 Louisiana, Suite 5100
                                 Houston, Texas 77002

3

INDEX

| | PAGE |
|---|---|
| Case called | 4 |
| Court's Ruling on Discovery Dispute | 17 |
| End of Proceedings | 20 |
| Certificate of Transcriber | 21 |

4

1    **Waco, Texas - Friday, March 3, 2023**          (2:30 p.m.)

2                    **P R O C E E D I N G S**

3                        ---O0O---

4         THE COURT:  Please be seated.

5         Ms. Copp, will you please call the case?

6         THE CLERK:  Yes, Your Honor.

7         Calling Case Number WA:21-CV-727, styled The Trustees

8    of Purdue University vs. STMicroelectronics, Inc., *et al.*, called

9    for a discovery hearing.

10         THE COURT:  All right.  Could I get announcements

11   starting with the plaintiff?

12         MR. SHORE:  Michael Shore for the Trustees of Purdue

13   University, Your Honor.

14         THE COURT:  All right.  Good to see you, Mr. Shore.

15         And for defendant?

16         MR. CICCARELLI:  Good afternoon, Your Honor.

17         Max Ciccarelli and Mike Hatcher for the defendants.

18   And also on the Zoom is Mr. Andrew Mayo who is an in-house

19   counsel for ST.

20         THE COURT:  All right.  Very good.  Well, good to see

21   you, Mr. Ciccarelli and Hatcher.

22         I guess this is ST's motion or request so why don't I

23   turn it over to you, Mr. Hatcher.

24         MR. HATCHER:  Mike Hatcher on behalf of the defendants,

25   ST Companies.  We only have one issue today, Your Honor, the

5

production of the prosecuting attorney and his law firm for

deposition.

        Plaintiff previously agreed that it would provide

discovery from them as if they were a party so we don't have any

subpoena issues here today.  Rather, plaintiff makes two

arguments opposing their deposition.

        First, plaintiff argues that it should not have to

provide the depositions until after its recently filed untimely

motion to strike the inequitable conduct defense is decided upon.

        And then, second, plaintiff argues that even if its

motion to strike is not granted, the scope of the deposition

should be limited to just the specific prior art references that

are explicitly listed in the current ST answers.  Plaintiff has

no support for either of its positions.

        Regarding timing, there is no reason to delay the

depositions until after the Court addresses and decides

plaintiff's motion to strike.  That motion is untimely in the

extreme.  ST pled inequitable conduct in its original answer in

October of 2021 16 months ago.  And plaintiff never moved to

strike it.  It was only after ST requested dates for these

depositions that plaintiff suddenly decided to file a motion to

strike the defense from ST's answers to the second amended

complaint, answers that were filed in December of 2022.

        So even as to those answers, the motion to strike is

untimely so plaintiff had to file a motion for leave to get

6

1    permission to even file the motion to strike, a motion for leave

2    that hasn't been acted upon yet.  That motion for leave should be

3    denied for the reasons in our opposition.  But in any event, even

4    if plaintiff is allowed to file it untimely motion to strike,

5    there is no reason to put discovery on pause.

6            This Court regularly allows discovery to proceed as

7    motions challenging the pleading such as motions to dismiss or

8    strike are pending.  Otherwise, discovery could never be timely

9    completed.  Indeed, one of the cases plaintiff itself cites

10   confirms this.  And if, Your Honor, may I approach and hand you a

11   case?

12           THE COURT:  Certainly.

13           All right.  And for the record, I've got the Vita-Mix

14   Corp. v. Basic Holdings Inc., 2007 WL 2344750.

15           MR. HATCHER:  Thank you, Your Honor.

16           And, yes, that's the Vita-Mix case that -- one of the

17   two cases that plaintiff cited at the end of its discovery chart.

18   And the Vita-Mix case, and if you look, if you turn it over to

19   the last page, Footnote 4 at the end of the decision, the Court

20   notes, and I quote,

21               "Plaintiff also argues that the subpoena should be

22               quashed because discovery on defendant's inequitable

23               conduct counterclaim has been automatically stayed by

24               the pendency of plaintiff's motion to dismiss the

25               counterclaim."

7

1          So this is a case in which a patentee filed a motion to

2     quash a subpoena to the prosecuting attorney.  And the Court

3     notes, "The Court finds this argument to be without merit."

4          And the outcome of the Vita-Mix case, was that the

5     Court denied the motion to quash and ordered the deposition of

6     the prosecuting attorney to proceed.  The Mann case we provided

7     the Court ahead of the hearing is also instructive.

8          May I approach and hand you that case, as well, Your

9     Honor?

10          THE COURT:  Certainly.  Or hand it to Mr. Scott, if you

11     don't mind.

12          MR. HATCHER:  And there, in the Mann case, Your Honor,

13     the patentee made the same type of arguments as does the

14     plaintiff here, alleging that inequitable conduct was a

15     disfavored defense and the defendant had not properly pled it or

16     pled it in good faith.

17          Now if you look at Footnote 1 spanning Pages 6 and 7,

18     and I've put a tab there, Your Honor, the Court says, and I

19     quote,

20               "While the Court notes the Federal Circuit's general

21               disdain for pleading inequitable conduct as a defense,

22               and Mann's claim that IFF has not properly pled

23               inequitable conduct and that IFF's affirmative defense

24               was not made in good faith, all that is relevant to the

25               current motion is that inequitable conduct was pled as

8

1       an affirmative defense and IFF is entitled to discovery

2       to support that defense."

3   And the outcome of Mann just like Vita-Mix was that the

4   court denied the motion to quash and ordered the deposition of

5   the prosecuting attorney to proceed.  Just like in Vita-Mix and

6   Mann, the Court here should order the prosecuting-attorney

7   depositions to proceed.  We've requested dates in early April,

8   and that is more than reasonable.

9       Now regarding the scope of the depositions, there

10  should be no artificial limits on their scope.  Rather, ST should

11  be allowed to explore the full scope of the prosecuting

12  attorney's personal knowledge regarding the asserted patent and

13  the prosecution thereof and should be allowed to explore the full

14  scope of its 30(b)(6) topics to his law firm.

15      Now plaintiff's only argument is that the scope should

16  be limited to the current pleading.  But it has no support for

17  that position.  In fact, the Vita-Mix case it cites stands for

18  the opposite proposition.

19      If you look at the Vita-Mix case again, Your Honor, and

20  I've put a couple of tabs there, at the beginning of the

21  discussion, the patentee there asked in the alternative -- it

22  moved to quash, but in the alternative, it asked the Court to

23  "that all discovery from attorney Grieve be limited to whether

24  the alleged prior art identified in Back to Basics' inequitable

25  conduct counterclaim was both material and non-cumulative and

1   whether Mr. Grieve intended to deceive the United States Patent

2   and Trademark Office."

3           So in the alternative, they asked that it be limited,

4   the scope be limited to the pleading.  The court denied that

5   request, noting that the deposition did not even need to be

6   limited to inequitable conduct, much less just what was in the

7   pleadings.

8           Per the court, and if you look at the next page,

9   there's another yellow tab there, the court said, "Such

10  depositions" -- talking about the prosecuting attorney deposition

11  -- "need not be limited to issues relevant to inequitable

12  conduct, as Vita-Mix contends."

13          Now plaintiff's other cited case does it no good.

14  That's the LG case, and I have a copy of that if you want to see

15  it, Your Honor.  But --

16          THE COURT:  I think I have it electronically here, so.

17          MR. HATCHER:  Okay.

18          In that case, the court granted a motion to compel the

19  deposition of a prosecuting attorney.  Plaintiff focuses on the

20  fact that the court ordered the deposition on a "narrowly-

21  tailored topic."  But if you look at that opinion, Your Honor,

22  for whatever reason, the defendant there, who was requesting the

23  deposition, only requested the deposition as to that "narrowly-

24  tailored topics."

25          At the end of the deposition -- I'm sorry, at the end

1   of the decision, the court notes that the defendant was pursuing

2   a 30(b)(6) deposition against a firm as to other topics about

3   inequitable conduct.  LG, thus, does not stand for the

4   proposition that the prosecuting attorney's deposition's scope

5   should be narrowed over the taking party's object.  For whatever

6   reason, the taking party only asked for that narrow scope and

7   they got that narrow scope.

8           And I note that the main case allowed that deposition

9   to go forward without limits as to scope, as well.  And, Your

10  Honor, this all makes sense because ST, like any defendant, needs

11  discovery to flesh out and develop its defenses.  If ST was

12  limited to just what's already in its pleading, fact discovery

13  would be effectively useless.  That's what it's for, to discover

14  additional facts to support claims and defenses.

15          So, Your Honor, we'd ask that you per the relief

16  requested to order the plaintiff to produce the prosecuting

17  attorney and his law firm for deposition per our notices.

18          THE COURT:  Okay.  Thank you, Mr. Hatcher.

19          Mr. Shore.

20          MR. SHORE:  Well, first, we have never said that we

21  would not allow the deposition.  So that's a red herring.  It is

22  not before the Court.  We never said that.

23          Second, I just found out from the law firm, Barnes &

24  Thornburg, we're going to be filing a motion to quash the Rule

25  30(b)(6) deposition.  There is no reason to take a corporate

11

1    deposition of a law firm.  They can take the deposition of the

2    counsel who did the prosecution, but there's no reason to take

3    the deposition of a law firm based upon something that happened

4    17 years ago.

5            There is no case, none of the cases they cite, allow a

6    corporate representative deposition of a law firm, and there's no

7    basis for that.  And there's no reason to take two depositions on

8    this issue from the law firm.  So that motion to quash is going

9    to be filed.  They did not agree, the law firm did not agree to

10   do this on a 500-word chart.  The lawyer, we agree, that if the

11   inequitable conduct allegation is not struck, he will appear

12   before the deadline for fact discovery.

13           The Court may recall that when we came to the Court and

14   asked for corporate representative depositions to be compelled in

15   December, the Court found it acceptable that they did not have to

16   give us depositions until March.  They asked for these

17   depositions, these are third-party depositions, they are not --

18   we have not taken one single ST corporate representative

19   deposition yet.  Not one.  The first one will happen next Tuesday

20   or Wednesday, more than almost two years into the case.

21           And so what they're trying to do is they're trying to

22   rush these depositions because they know that their allegations

23   of inequitable conduct do not come close to meeting the pleading

24   standards as announced by this Court recently in the <u>Flipsis</u>

25   (phonetic) case.

1          Now they said, well, we're entitled to flesh out our

2    allegations.  They've had an opportunity for the last almost two

3    years to do that, and they didn't even try.  They took the

4    deposition of one of the inventors, Dr. Shah or Saha (phonetic),

5    and they didn't ask her a single question about inequitable

6    conduct.  And they took that deposition months ago, didn't ask a

7    single question.

8          And so what they've done, which is different than

9    what's in the case before the Court, they wait until months after

10   the pleading deadline.  They don't even have the ability to amend

11   their pleading at this point.  They waited until months after the

12   pleading deadline to even start taking discovery on inequitable

13   conduct when they can't change the allegations.  The allegations

14   are fixed.

15         So I guess what they want to do is instead of being

16   limited to the allegations in their pleadings, which are grossly

17   insufficient, they want to try to ambush the prosecution counsel

18   with unpled allegations that they can't change and they can't

19   amend because the pleading deadline has passed.  And to tell you

20   how weak these allegations are, and the reason why we want to

21   wait and see if they even survive, these allegations are so weak

22   that this art that they claimed was material, they didn't cite it

23   in their IPR at the PTAB.

24         Wolfspeed, who has co-authors on some of these

25   articles, Wolfspeed did not cite a single one of these articles

1   to the PTAB in their IPR.  These articles are not relevant.

2   They're not material.  They're cumulative of the art cited in the

3   specification, and they know that.  This is harassment.

4          And so what we have asked is very simple.  We said,

5   Judge, we would like -- and the standards for granting leave to

6   file a motion to strike in an inequitable conduct claim are low.

7   It's a low standard, and that's outlined in our brief, because

8   when you have an allegation that -- there's no chance that these

9   allegations survive under the Flipsis standard that Judge

10  Albright just announced a few months ago, a couple of months ago

11  in this Court, I think it was in January.  That Flipsis standard,

12  there's no way they comply with it, and they know it.

13         So all we're asking is let's get that ruled on.  If the

14  Court doesn't rule on it by the time the deposition, the

15  discovery deadline is coming up, we'll give them the deposition

16  of the prosecuting attorney.  That's fine.  It will happen before

17  the discovery deadline.  It will happen within two months of the

18  request which is we didn't get our deposition that we requested

19  for three months.  So we're actually giving it to them two months

20  quicker than what the Court gave it to us when we had the same

21  issue asking for deposition dates.

22         So if the motion is granted, there is no deposition.

23  It saves everybody time and money.  We don't have to pay the

24  lawyers at Barnes & Thornburg to appear.  We don't have to

25  prepare them.  We don't have to fly to Indianapolis and do the

1    deposition.  It saves everybody a lot of time and money if that

2    motion is granted.  If it's not granted, they still get the

3    deposition of the prosecuting counsel before the discovery

4    cutoff.

5           There's two other problems here.  We got dates from the

6    Barnes & Thornburg lawyer.  He's available in May.  That's when

7    he's available.  I have a trial in April, and Mr. Lahad has a

8    trial in April.  So we are going to be scrambling to get all of

9    the ST corporate representative depositions done, to get the

10   Purdue corporate representatives done, to get the Purdue fact

11   witnesses done that they've asked for, and to date, we're

12   probably unfortunately going to get another one of these charts

13   next week because they haven't even provided us deponents or

14   dates for more than 25 topics in our 30(b)(6) notice.

15           And that 30(b)(6) notice has been outstanding since

16   September.  So we've had notice to them since September where

17   we're still waiting on deponents and dates.  They haven't given

18   us anything, and we're going to have to move to compel that.  We

19   have a limited amount of time in April, we have a limited amount

20   of time in March.  Those depositions are much more important than

21   these depositions, probably that won't even go forward at all

22   because their inequitable conduct allegations are likely going to

23   be struck if the Court applies the same standard in this case as

24   it applied in Flipsis.

25           So to cut this short, we'll give them the deposition of

1    the prosecuting attorney if the allegations survive or if they

2    are not ruled on.  And we will give them these depositions before

3    the discovery cutoff.  But if they have dates that they can give

4    us to take these depositions in April, then they need to give us

5    those dates to take the ST corporate representative depos that

6    we've been waiting on since last September.

7          So we're not trying to hide anything.  We're not

8    denying them access to take the deposition of the prosecuting

9    counsel.  We're saying you can take his deposition, but you need

10   to take it when we're available, the lawyers are available, those

11   dates are in May.  We provided those dates to them.  They just

12   don't like them because they want to bum-rush us and use the

13   limited time that we have in March and April to take these

14   depositions instead of the depositions that we want to take that

15   we've been asking for since September.

16         We're not being unreasonable.  We're not trying to

17   block the discovery.  We're trying to prioritize it and

18   potentially avoid it because it may be discovery that is

19   completely unnecessary because it will be on an issue that's

20   struck from the case.  And if they wanted this testimony so

21   badly, they should have asked for it six months ago.

22         And if they'd asked for it six months ago, it probably

23   would have stirred in our minds the motion to strike it because,

24   again, this is a junk harassing terroristic allegation of

25   inequitable conduct, exactly the type of thing that the Federal

1    Circuit doe not like and exactly the type of thing that this

2    Court or Judge Albright struck in the Flipsis case just in

3    January.  That's our position, Your Honor.

4            THE COURT:  Okay.  When is the discovery cutoff?

5            MR. SHORE:  May 22nd.  And we offered them dates more

6    than a week or two before that cutoff.  But I've got a trial in

7    Wichita Falls in April, and Mr. Lahad has a trial in Delaware in

8    April.  So we are going to really be scrambling to get all of the

9    party depositions, including deposition -- I mean we have Dr.

10   Cooper, the lead inventor's deposition, we have a deposition of

11   the Purdue Research Foundation licensing people, we have 20 -- we

12   have at least two or three depositions set of ST corporate

13   representatives, and we have more than I think it's 25 or more

14   topics that they're refusing to give us deponents or dates for

15   that we I guess are going to have to have another chart next week

16   because they won't give us any.

17           So there is a lot of work to be done in March and April

18   on party depositions, party discovery on issues that we know are

19   going to be in the case.  And, again, if the Court doesn't get to

20   ruling on the motion for leave and the motion to strike the

21   inequitable conduct allegations, if there's not time for the

22   Court to do it, we'll give them this deposition, this one

23   deposition of the attorney who is actually involved.  But that

24   can happen in May.

25           There's no reason for it to happen any sooner and,

17

1    frankly, we don't have any dates to give them earlier for the

2    lawyer earlier than the date we gave them in May.

3              THE COURT:  Okay.

4              Mr. Hatcher, go ahead.

5              MR. HATCHER:  Just to respond briefly, Your Honor.

6              The story keeps changing.  Now it's they don't have any

7    dates before May.  They've never said that before.  They refused

8    -- they first refused to -- their first position was that they

9    weren't going to produce them until after expert reports were

10   submitted.  Then, we get end of discovery.  Now he's saying we

11   can't do it any earlier.

12             Your Honor, they need to go back.  If it's not April, I

13   can do late March.  But this deposition is important to us and

14   the development of our case just like other depositions are

15   important to Mr. Shore in the development of his case.  There's

16   no reason to put it off simply because he thinks he's going to

17   win a motion to strike, which he's not.

18             But more to the point, even if he had a meritorious

19   motion to strike, which is untimely, we'd still be entitled to

20   the deposition to develop the defense and see if we could then

21   identify additional facts and evidence to replead the defense.

22   There's simply no point.  There's no reason to put off this

23   deposition.

24             THE COURT:  Okay.  So here's what I'm going to do is

25   I'm going to grant the request for the depositions.  I'm not

18

1    going to -- well, I'll put it this way.  I'm going to grant the

2    request for the depositions and that the witness be presented at

3    least one week before the current fact discovery cutoff.  I don't

4    really want to wade into the April versus May versus March issue.

5         But this is, in my view, analogous to willful

6    infringement allegations.  And my understanding is the practice

7    in this district is even if those sort of allegations are struck

8    from the pleading, you're still allowed discovery on them.  And

9    this is just sort of the flipside of that coin being inequitable

10   conduct allegations.  So I find that it's permissible discovery,

11   so I'm going to grant plaintiff's request, order Mr. Shore make

12   both the individual and the 30(b)(6) witness available.  And if

13   you file the motion to quash and seek a protective order to stay

14   it, absent that and a granting of that motion to quash, we'll

15   order you to make those people available, as well.

16        But without that motion in front of the Court, I'm not

17   going to pre-rule on that.  So that will be the order is to make

18   the -- both the individual and the 30(b)(6) witnesses available

19   at least one week before the current close of fact discovery.

20   And then we'll deal with motions to quash and we've got the

21   motion to strike.  I think the leave has been filed, but the time

22   for a response hasn't passed yet, so we'll deal with that once it

23   ripens, as well.

24        So I think that's everything.  Mr. Hatcher, is there

25   anything else?

1          MR. HATCHER:  The only thing I would say, and maybe

2    this will help with the 30(b)(6) versus individual depositions,

3    is we'd certainly be willing to have Mr. Kellett who is the

4    prosecuting attorney, who was noticed individually, to sit

5    simultaneously as the 30(b)(6) for the firm, too.  And we'd take

6    effectively one deposition for both.  Frankly, that's what I

7    thought the response was going to be.

8          Mr. Kellett is the one that actually did all of the

9    prosecuting, but I don't know to the extent to which he had help

10   from others in the firm.  So notice him individually, notice the

11   firm for a 30(b)(6), take one together, kill two birds with one

12   stone.

13         THE COURT:  And that I will let you see if perhaps you

14   can work that out with Mr. Shore.

15         MR. SHORE:  (Indiscernible), Your Honor, as long as the

16   deposition still, you know, seven hours.  I don't want him to

17   have to take back-to-back seven-hour depos.  But as long as it's

18   one deposition limited to seven hours, I'll tell Barnes &

19   Thornburg to please don't make me file a motion to quash that's

20   going to be denied.  I understand the Court would deny it if we

21   filed it.  So as long as it's one deposition limited to seven

22   hours, that's totally reasonable.

23         THE COURT:  Okay.

24         MR. HATCHER:  I would anticipate that would be the

25   case.

1          THE COURT:  Okay.  Well, I'll let y'all meet and

2    confer.  I'm not going to rule on that.  But that all, it sounds

3    like everybody's being more than reasonable with the request on

4    both sides.

5          And so that will be the ruling regarding the

6    deposition.  Let me give Mr. Shore a chance, is there anything

7    else that you need to take up with the Court today?

8          MR. SHORE:  No, Your Honor.

9          THE COURT:  Okay.  And Mr. Ciccarelli?

10          MR. CICCARELLI:  Your Honor, there was a lot of

11    comments made about what ST refused to do in discovery that had

12    no relevance to this hearing by Mr. Shore.  I'm not going to

13    address them.  I didn't want the Court to think that we agree

14    with it by remaining silent.  So I just wanted to make that clear

15    for the record.

16          THE COURT:  I understand.  And especially I know you've

17    got I think client representatives on, so rather than have this

18    digress into things that I don't think are pertinent for the

19    present issue before the Court, I appreciate the representation.

20    Nobody's waived anything by failing to respond to them.

21          MR. CICCARELLI:  Thank you.

22          THE COURT:  And with that, we will be adjourned.

23          MR. HATCHER:  Thank you, Your Honor.

24          MR. SHORE:  Thank you, Your Honor.

25          (Proceedings adjourned at 2:54 p.m.)

21

1                          ---oOo---

2                  **C E R T I F I C A T E**

3        I, DIPTI PATEL, court approved transcriber, certify that the

4    foregoing is a correct transcript from the official electronic

5    sound recording of the proceedings in the above-entitled matter.

6

7    *Dipti Patel*

8    _____

9    DIPTI PATEL, CET-997

10   LIBERTY TRANSCRIPTS                    Date: March 10, 2023

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25