IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| THE TRUSTEES OF PURDUE UNIVERSITY, Plaintiff, | ) | Case No. 6:21-CV-727-ADA-DTG |
| v. | ) | |
| STMICROELECTRONICS, INC., et al., Defendants. | ) | Wednesday, March 8, 2023 2:30 P.M. |

TRANSCRIPT OF DISCOVERY HEARING
**BEFORE THE HONORABLE DEREK T. GILLILAND**
**UNITED STATES MAGISTRATE JUDGE**

APPEARANCES ON NEXT PAGE.

Deputy Clerk: Melissa Copp
United States District Court
800 Franklin Avenue, #380
Waco, Texas 76701

Transcription Service By: Dipti Patel, CET-997
Liberty Transcripts
7306 Danwood Drive
Austin, Texas 78759
(847) 848-4907
www.libertytranscripts.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

For the Defendants: Sidley Austin LLP
BY: MICHAEL D. HATCHER, ESQUIRE
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201

APPEARANCES VIA ZOOM TELECONFERENCE:

For the Plaintiff: Susman Godfrey, L.L.P.
BY: JOHN P. LAHAD, ESQUIRE
1000 Louisiana, Suite 5100
Houston, Texas 77002

For the Defendants: Ciccarelli Law Firm
BY: MASSIMO CICCARELLI, ESQUIRE
750 North Street Paul Street
Suite 200
Dallas, Texas 75201

INDEX


| | PAGE |
|---|---|
| Case called | 4 |
| Court's Ruling on Discovery Dispute | 16 |
| End of Proceedings | 18 |
| Certificate of Transcriber | 18 |

**Waco, Texas - Wednesday, March 8, 2023** **(10:49 a.m.)**

**P R O C E E D I N G S**

---OOO---

THE CLERK: All rise.

THE COURT: Ms. Copp, would you call the case, please?

THE CLERK: Yes, Your Honor.

Calling Case Number WA:21-CV-727, styled The Trustees of Purdue University vs. STMicroelectronics, Inc., *et al.*, called for a discovery hearing.

THE COURT: Can I get announcement starting with the plaintiff? Sorry.

MR. LAHAD: Good morning, Your Honor. John Lahad of Susman Godfrey for the plaintiff.

THE COURT: All right. Good to see you, Mr. Lahad.

And for defendant?

MR. HATCHER: Your Honor, Mike Hatcher of Sidley Austin on behalf of the ST defendants. And with me on Zoom is Max Ciccarelli.

THE COURT: All right. Very good. Good to see you, Mr. Hatcher, Mr. Ciccarelli.

Okay. So I've looked at the chart, but I'll turn it over to you, Mr. Hatcher, to explain -- I assume you'll be addressing it to explain to the Court what's missing and what you need.

MR. HATCHER: Yes, Your Honor. Thank you.

Mike Hatcher on behalf of ST.

Your Honor, I'm here today in person to address a very important issue to the ST defendants. Plaintiff's supplemental interrogatory response regarding the purported oral agreement transferring the assert patent from Purdue Research Foundation, or PRF, to the Trustees of Purdue shortly before this lawsuit raises serious questions regarding who is or are the proper plaintiffs in this case and standing.

As I argued to the Court at the January 10th discovery hearing, whatever the eventual outcome of this case, ST should at least be asserted it will not have to face another plaintiff in the future asserting that it also has rights in the asserted '633 Patent despite not being a plaintiff in this case.

Now following that January 10th discovery hearing, the Court ordered plaintiff to supplement its responses to ST Interrogatories Numbers 2 and 3 regarding the alleged oral transfer to, and I quote, "identify who orally agreed" and "describe the formal approval process followed." That order is at Docket 248, and I quoted from Page 2.

In response, plaintiff supplemented. That supplement is on Pages 4 and 5 of Exhibit DEX-1 that we submitted with the dispute chart. Plaintiff supplemented this date and I quote,

"The only discussions regarding the assignment involved Kenneth Waite, Esquire, or PRF and Steven Schultz, Esquire. No others were involved. Both Mr. Waite and

Mr. Schultz had the requisite authority to agree on the assignment and neither had to obtain authority or consent from their respective boards or wait for a board meeting.

"Accordingly, neither Mr. Waite or Mr. Schultz were required or did inform their respective boards about the assignment before obtaining it. There was no formal approval process and no trustee or PRF board member was required or did approve of the assignment."

Now, importantly, the Court's order at Docket 248 from the January 10th discovery hearing also ordered "produce all corresponding documents with that supplemental response." I'm quoting from Page 2 of the Court's order at Docket 248. But plaintiff produced no such documents with its supplemental response that I just read to Your Honor.

Now both plaintiff and PRF are corporate entities. And, thus, corporate bylaws and other document govern who has the authority to do what within those organizations. We simply want the documentation that supports or refutes the position The Trustees of Purdue are taking in their response.

And, indeed, the Court already ordered it produced. In opposition, The Trustees do not take the position that there are no such documents. They just don't want to provide them. But ST has RFPs, specifically RFPs Numbers 1 through 3 which were also at issue at the January 10th hearing and part of the Court's

order at Docket 248 that clearly call for the documents. And ST should not be forced to simply accept the Trustees' position unchallenged by further discovery, especially after the Court explicitly ordered it.

This Court places limits on the number of RFPs served, and this issue was important enough to ST that ST devoted three of its RFPs to it, its first three.

Now plaintiff also contends in opposition that ST is relying on, quote, rank speculation. But even the limited publicly available documents support a finding that neither Mr. Waite nor Mr. Schultz had the authority plaintiff claims in its response.

Specifically, The Trustees bylaws are available online, so we have them. And they state on Page 8 of Exhibit 2 -- excuse me, Exhibit DEX-3 that we submitted with the discovery chart, that the board of trustees must approve "all other contracts imposing financial obligations on the part of the university or the corporation in excess of $2 million." Now that's in Article 7, Section 1(e) of Exhibit DEX-3.

Indeed, even for contracts imposing financial obligations of two million or less, the treasurer must approve them and must report them to the Finance Committee if they're between one million and two million dollars. That's all in Article 7, Section 1(e) of the Trustees own bylaws.

Clearly, the oral transfer agreement imposed financial

obligations on the Trustees sufficient to require board approval. The assignment, the only written portion of the oral transfer, specifies that Trustees obtained the rights and responsibilities to, among other things, and I quote, "defend including in any interparty's review the asserted patent" and "sue in Trustees' own name and recover damages for past and future infringement of the asserted patent."

That's in Exhibit DEX-2 that we submitted with the dispute chart at Page 3. Those are financial obligations, as is the obligation to pay portion of the proceeds to the named inventors, which is also referenced in plaintiff's supplemental response.

Now in its portion of the dispute chart, plaintiff argues that the agreement imposed no financial obligation on the Trustees whatsoever. Then they point to the contract approval, the residual contract approval section of the Trustees bylaws as purported support for Mr. Schultz having the claimed authority. But even if the Court were inclined to accept the argument that the agreement imposed no financial obligations on the Trustees, and we don't believe that's correct, that section does not allow Mr. Schultz, the general counsel to enter into the agreement himself.

And the section that they're referring to is Section 2, Article 7, Section 2 on Page 9 of DEX-3. And if we look at that, it says and I quote, "Such other instruments shall be executed if

in the name of the corporation" -- earlier in the document, Your Honor, corporation is defined as The Trustees of Purdue, so they're referring to The Trustees of Purdue there.

"Such instrument shall be excused if in the name of the corporation by the chairman, the vice-chairman, the treasurer, the assistant treasurer, or a person duly authorized by the treasurer."

Their general counsel is not mentioned at all. And plaintiff cannot contend the treasurer duly authorized Mr. Schultz given that in the supplemental response, they have already said Mr. Schultz did it himself. To quote their response, "No others were involved." That's their response.

Now given the above, ST asked plaintiff to supplement its response and production to produce and identify PRF's bylaws and all other documents from Trustees and PRF relating to the authority or lack thereof of Mr. Waite and Mr. Schultz to enter into this contract for the transfer of the asserted patent. Plaintiff refused, so we're here before you, Your Honor.

ST requests that the Court order that document production, reiterate its order actually because it's already ordered it. And, frankly, ST believes that this new information warrants revisiting the Court's prior ruling that plaintiff need not produce a trustee for deposition.

THE COURT: Okay. Excuse me. Have you deposed Mr. Waite yet?

MR. HATCHER: Mr. Waite was deposed in his individual capacity before I was involved in the case. He was scheduled for his 30(b)(6) deposition, and that deposition where he reportedly covered the topics about authorization. And that deposition was on the calendar and then it got taken off. And we're in the process now, the two sides, of negotiating deposition dates. We actually have a meet and confer tomorrow on that.

THE COURT: Okay. Okay.

Let me hear from Mr. Lahad. Thank you, Mr. Hatcher.

MR. LAHAD: Good morning, Your Honor.

THE COURT: Good morning.

MR. LAHAD: John Lahad of Susman Godfrey for the plaintiff.

Purdue answered this interrogatory in full. The answer is complete, and it complies with the Court's order. The order identifies the information that needed to be in the supplemental response, and we addressed each point. And it's worth noting that the order itself was drafted by Mr. Hatcher. So essentially, he said here's what I want, and we answered. There is nothing left to say, and there are no additional documents to produce.

Now, notably, Counsel did not identify a single actual deficiency in the response. Defendants simply don't like the answer. They don't like the answer because it's inconsistent with what their view of the facts should be. They've go some

theory that the assignment was invalid or that Purdue lacks standing. Counsel for defendants even disparaged that two Purdue lawyers is acting as rogue agents.

The facts aren't lining up with their theory, so they are demanding additional discovery. And putting this theory aside, this discovery is not relevant to anything in this case. it's not relevant to infringement, invalidity, or damages. And there's no argument that it is. And it's not even relevant to some putative theory about ownership or standing or proper plaintiff.

Defendants have cited no law or documents or anything else stating that some allegedly *ultra vires* act nullifies this transfer. And to be clear, it was not an oral transfer, right. There was a written assignment that was recorded with the PTO that transferred the patent from PRF to plaintiff. The negotiations and discussions behind it, those were oral, I agree. And that's what we described in the interrogatory response.

And putting aside the irrelevance of this discovery, unhappiness or disagreement with the response is not grounds to compel discovery. And, again, defendants cite no authority that it is. So what we have here is defendants making up stuff to try to shoehorn it into their view.

Number one, they argue that Purdue has undertaken significant financial obligations. There is no evidence of that. That's mere conjecture. They don't know what financial

obligations Purdue has taken on. Any agreement about haring proceeds or potential proceeds with the inventors was already in place according to university policy before this lawsuit. There's no evidence of Purdue paying for or PRF paying for IPRs.

And their argument about the bylaws overlooks the plain language of Article 7, Section 2. And Counsel referred to it. There are instances in which authority can be delegated to a person authorized by the treasurer or a person authorized by the president of the university. And they cite no authority for the notion that it has to be transaction-specific or there must be some approval process.

Defendants are fishing. We know they're fishing because there's no basis for this demand. As the Court alluded to, what they should have done and what they should do is depose Mr. Waite on this assignment. He's the designee. And they can ask about this transaction. They can ask him about his authority. They can ask him about what he did. They can cross-examine him on the interrogatory response. And what they can do is actually obtain facts as opposed to relying on speculation. That's what you do to flesh out a claim or defense.

Given this approach and the lack of evidentiary basis for this discovery request, again, it's merely fishing and I think it's designed to harass and burden Purdue and that's especially true here. We gave them exactly what they asked for.

And my concern is that this entire dispute is pretext

in a thinly availed attempt to get a deposition of one of the trustees. It seems like that's what they really are looking for. Again, there is no evidence that any one of the trustees has any relevant knowledge for this case, including with respect to the assignment. And you don't get to argue that an interrogatory response is deficient so you get a deposition, again, especially if someone who wasn't involved in the subject matter of the interrogatory or the discovery request.

Again, Mr. Waite has the most knowledge on this, and he will be deposed in this case on this subject matter. At the end of the day, Your Honor, the response is 100 percent compliant with the Court's order, the one that ST's counsel drafted. There is nothing new to say or produce, certainly nothing that has any relevance to the issues in this case. Accordingly, Your Honor, defendants' request for relief should be denied.

That's all I've got, Your Honor, unless the Court has any questions.

THE COURT: Yeah. I guess the only question I had was in the chart, defendants identify a request for PRF's bylaws as opposed to I guess the ones that have been produced as to Purdue University's bylaws. So have you produced PRF's bylaws? Do they exist, and can they be --

MR. LAHAD: Candidly, Your Honor, I don't know if they exist. To the extent that there was a request for production on those, at least it wasn't teed up as a highlight. If the Court

is -- if that's what the Court's thinking, I'm happy to search for it and produce PRF's bylaws so that they have them for Mr. Waite's deposition if that's what they need. But, again, I doubt they'll have any real relevance. But I'm happy to produce them if (indiscernible).

THE COURT: Excuse me. That was the only thing that jumped out at me in looking at the chart is I guess it's ST's position that Requests For Productions 1 through 3, one of those would have caught PRF's bylaws. But --

MR. LAHAD: Well, candidly, Your Honor, I didn't focus on the request for production. I'll take a look at them. And to the extent they fall within the scope of those requests, I'll endeavor to search for and produce those documents. If they don't, if I feel that they don't fall within the scope of those requests, I may go ahead and search for and produce them anyway just to avoid any additional issues.

THE COURT: Understood. Well, I'd appreciate it, I guess.

Mr. Hatcher, that was in looking at the chart, the PRF bylaws, excuse me, seem to be the only specifically identified document that you were missing. Is that correct or is there some -- I know you've got suppositions and beliefs that there must have been some other documents, but at this point, we don't have any actual evidence of the existence of such documents.

Now I understand you've got your view of the lack of

such documents and the legal implications of that, and I'm sure Mr. Lahad has his view. But right now, we're just talking about whether there's evidence that something is being withheld that should have already been produced.

MR. HATCHER: Well, certainly, Your Honor, the PRF bylaws are the specific document that I say it must exist. It would certainly seem like a corporate entity must have bylaws that govern, and if it's not called bylaws, if it's called their policies and procedures, whatever it's called, the corresponding document on the PRF side to the Trustees' bylaws that are available publicly, so that.

And then, the other thing is that I would specifically request if they have it is whatever written authorization that they're now going to contend that the treasurer authorized the general counsel on the Trustees' side, that -- and there are any written documents along those lines, that those be produced, as well.

And then if I'm going to end up with a similar situation for the PRF bylaws where they don't identify Mr. Waite specifically and they are going to take the position that somebody -- something in the bylaws with the treasurer, you know, if it's the same as the Trustees, the treasurer had the authority to duly appoint somebody else, and their position is that you duly appointed Mr. Waite and there are written documents regarding that, we'd request those, as well.

THE COURT: Okay. So here's -- excuse me, and I don't have -- I've looked at Interrogatory Number 2 and 3 and the supplementations. And I think those supplementations are clear that they describe what happened and identify what documents they think are relevant.

I do not have the specific RFPs in front of me. But I will grant ST's requested relief to the extent that Mr. Lahad looked for, as they put it, the PRF bylaws or we'll say governing documents and documents from the Trustees and PRF that address the authority or lack thereof, as it's worded, of Mr. Waite and Mr. Schultz, if there are such documents.

Since I don't have those RFPs specifically in front of me, I don't -- I'm not going to rule on whether those call for this information. If you get it and you want me to look at them and y'all want to argue about it, we can address those specific RFPs. But I'm going to instruct plaintiff to look for and gather the PRF bylaws and documents that relate to Mr. Waite and Mr. Schultz's authority to enter into the transfer and assignment.

And then if those RFPS, if you agree, Mr. Lahad, plaintiff agrees that they call for those documents, I'll order you to produce them. If you dispute that, let's identify the documents and then we'll discuss whether there's an RFP that specifically requires their production.

But I'm going to deny the request for an additional answer to the interrogatory. I think they're as clear as they

can be at this point. And I'm going to also deny the request for the deposition of a Purdue trustee. And I'll say -- so that's going to be the ruling on the chart.

And as always, I'll ask the parties to submit an order within seven days that we can into the record to document that. And then just as a bit of dicta, the effect of the existence or non-existence of the documents, that's not anything I'm addressing today. That's something that the parties are free to move on at the appropriate time. But for now, I think the interrogatory is sufficiently answered, and if there are documents called for by the RFPs, then those documents as we've identified need to be produced. And then the chips falls where they may based on that information.

So with that, Mr. Hatcher, is there anything else for ST?

MR. HATCHER: No, Your Honor. Thank you very much.

And I'll note that for the interrogatory response, we weren't looking for anything more from them other than just identifying by Bates number the documents that they produced, if they need to produce more.

THE COURT: Understood.

MR. HATCHER: So I just didn't clear that up.

THE COURT: Okay. Understood.

And, Mr. Lahad, anything else for Purdue?

MR. LAHAD: No. Just to confirm, Your Honor, Purdue --

excuse me, the PRF bylaws and documents related to authority, if they exist, correct?

THE COURT: Correct.

MR. LAHAD: Thank you.

THE COURT: Yeah. Obviously, not requiring anybody to create a document, so. All right.

MR. LAHAD: Thank you, Your Honor.

THE COURT: All right. With that, we'll be adjourned. Thank you.

MR. HATCHER: Thank you.

MR. LAHAD: Thank you, Your Honor.

THE CLERK: All rise.

THE COURT: Thank you.

(Proceedings adjourned at 11:12 a.m.)

---000---

**C E R T I F I C A T E**

I, DIPTI PATEL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dipti Patel

______________________________

DIPTI PATEL, CET-997

LIBERTY TRANSCRIPTS Date: March 13, 2023