IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| THE TRUSTEES OF<br>PURDUE UNIVERSITY,<br><br>          Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS<br>INTERNATIONAL N.V., and<br>STMICROELECTRONICS, INC.,<br><br>          Defendants. | Civil Action No. 6:21-cv-00727-ADA<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO STRIKE SUPPLEMENT TO
PLAINTIFF'S LEAVE TO FILE
MOTION TO STRIKE INEQUITABLE CONDUCT DEFENSE**

**Table of Contents**

**Page**

I.   Local Rule CV-7(e) Does Not Preclude Consideration of the Supplement..........................1

II.  The Supplement Bears on the Lack of Prejudice................................................................2

III. Defendants' Arguments Prove that the Inequitable Conduct Defense Lacks
     Merit...................................................................................................................................3

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cator v. DXP Enterprises, Inc.*,
  2016 WL 11580735 (W.D. Tex. May 19, 2016) ........................................................................2

*Popal V. Reliable Cargo Delivery, Inc.*,
  2021 WL 1100095 (W.D. Tex. Jan. 20, 2021) ..........................................................................1

*Rivas v. Greyhound Lines, Inc.*,
  2016 WL 11164796 (W.D. Tex. Jan. 11, 2016) ........................................................................1

*Salts v. Epps*,
  676 F.3d 468 (5th Cir. 2012) ....................................................................................................2

*Spiegel Development, Inc. v. U.S. Bank Nat. Association*,
  216 WL 3542435, at *2 n.4 (E.D. Tex. June 29, 2016) ............................................................2

*Therasense, Inc. v. Becton, Dickinson and Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) .............................................................................................1, 2

*Tijerna-Salazar v. Venegas*,
  2022 WL 1750474 (W.D. Tex. May 31, 2022) ........................................................................1

Plaintiff the Trustees of Purdue University ("Purdue") oppose Defendants' Motion to Strike (Dkt. 328, "Motion") Purdue's short supplement ("the Supplement") to its pending motion for leave. Even more than the Supplement itself, Defendants' Motion underscores that their inequitable conduct defense is more baseless now—after discovery and expert reports—than it was months ago when Defendants first alleged it. Since then, Defendants have (1) refused to provide further support for their defense, responding to discovery requests with recycled versions of their superficial allegations, (2) declined to serve an inequitable conduct expert report despite representing that they would, (3) backtracked on the need for expert testimony despite objecting on that basis, and (4) asserted allegedly "material" references that were not pleaded with specificity in their Answer.

Defendants' approach to their inequitable conduct defense questions whether it was even brought in good faith and is reminiscent of the "plague" of hollow inequitable conduct allegations that the Federal Circuit hoped to cure with its *Therasense* decision. The Supplement describes significant developments material to Purdue's motion for leave regarding a serious allegation, *i.e.*, fraud, lodged by Defendants and provides relevant context regarding the flimsiness of the inequitable conduct defense.

**I.    Local Rule CV-7(e) Does Not Preclude Consideration of the Supplement**

Defendants cite Local Rule CV-7(e) as grounds to strike the Supplement. Dkt. 328 at 2. But as several courts have held, Local Rule CV-7(e) is more properly applied to preclude sur-replies because such filings "usually are a strategic effort by the nonmovant to have the last word on a matter." *Tijerna-Salazar v. Venegas*, 2022 WL 1750474, at *2 (W.D. Tex. May 31, 2022); *see also Popal V. Reliable Cargo Delivery, Inc.*, 2021 WL 1100095, at *3 (W.D. Tex. Jan. 20, 2021) (finding that the Local Rule "contemplates the filing *sur-replies* absent leave of court")

1

(emphasis in original); *Rivas v. Greyhound Lines, Inc.*, 2016 WL 11164796, at *7 n.5 (W.D. Tex. Jan. 11, 2016) (considering sur-reply because it was "not merely an attempt to have the last word in response to a motion a compel"); *Cator v. DXP Enters., Inc.*, 2016 WL 11580735, at *1 n.16 (W.D. Tex. May 19, 2016) (refusing to consider sur-reply because "the Court prefers to give the 'last word' on a motion to the party who filed the motion"); *Spiegel Development, Inc. v. U.S. Bank Nat. Assoc.*, 216 WL 3542435, at *2 n.4 (E.D. Tex. June 29, 2016) (refusing to consider sur-replies under the Rule). Purdue's Supplement is not a sur-reply. Purdue is not a non-movant seeking to have the "last word" on the subject. Rather, the Supplement addresses developments in the case since Purdue filed its reply—developments highly material to the decision before the Court. The Court should decline Defendants' invitation to have blind technicality dictate the Court's docket.

## II.     The Supplement Bears on the Lack of Prejudice

Defendants argue that the Supplement should be struck because it addresses their discovery failures after Purdue's motion for leave was filed. Dkt. 328 at 3. According to Defendants, that is irrelevant to the "excusable neglect" standard. *Id*. But Defendants ignore that one of the factors courts use in determining excusable neglect—as set forth in the same case they cite—is "the possibility of prejudice to the other parties." *Salts v. Epps*, 676 F.3d 468, 474 (5th Cir. 2012). The Supplement explains how Defendants have approached what is a very serious fraud allegation against a leading research institution and one of its professors, *i.e.*, by refusing to provide discovery, failing to offer an expert opinion as promised, and deviating from their inadequate pleading. Given Defendants lackadaisical approach, it is clear they are simply "going through the motions" and asserting inequitable conduct in precisely the way that *Therasense* was intended to curtail. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011)

2

("Inequitable conduct 'has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system.'" (quoting *Kimberly–Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1454 (Fed. Cir. 1984))). Purdue does not take the allegations lightly, and as the Supplement demonstrates, Defendants would suffer no prejudice if Purdue were granted leave to strike a baseless and unsupportable inequitable conduct defense.

### III.     Defendants' Arguments Prove that the Inequitable Conduct Defense Lacks Merit

Defendants try to explain away their discovery tactics and cast aspersions about Purdue's description of them, but in doing so, Defendants further confirm that their discovery responses were deficient and that their inequitable conduct defense never had merit.

Defendants argue that Purdue misrepresented their response to Interrogatory No. 29, claiming they answered the interrogatory by incorporating the allegations in their Answer that identified allegedly material prior art. Dkt. 328 at 4. But those allegations are merely that— allegations. And they are conclusory allegations at best—merely listing claim elements without explaining how the prior art before the examiner compares to the art cited in the Answer does not transform allegations into evidence. Defendants state in even more conclusory fashion that "the Patent Office would not have allowed the claims had it been aware" of this art. There is absolutely no support for this in their interrogatory response. Notably, Defendants have no rebuttal to Purdue's argument that Defendants' interrogatory response does not support their assertion that the single most reasonable inference is that Purdue and Dr. Cooper intended to deceive the Patent Office. Regurgitating deficient allegations from an Answer is no substitute for evidence, and hardly qualifies as a substantive response to the interrogatory.

Defendants' supplemental response on the last day of discovery, May 22, 2023, does not fix the problem. To the contrary, the May 22, 2023, supplemental response is even *less* substantive,

3

merely citing documents and deposition transcripts, some of which have little to nothing to do with inequitable conduct.[1] The May 22 response does not identify what in the documents and transcripts would have been material to patentability or reflect an intent to deceive.[2] Defendants simply failed to provide a meaningful response to Interrogatory No. 29.

Defendants likewise shirked their discovery obligations with respect to designating a Rule 30(b)(6) witness. In attempting to excuse their decision, Defendants now argue that (1) they probably did not have facts in their possession and (2) Purdue should have followed up and demanded specific facts. First, Rule 30(b)(6) notices do not cover facts—they cover topics. Under Rule 30(b)(6), all that is required is a description with reasonable particularity of "the matters for examination," which is precisely what was served. To the extent that Defendants had any facts in their possession, it was incumbent on them to produce a witness. Instead, they refused, telling Purdue that all would be revealed in an expert report.

Defendants add that "[i]f there were facts within ST's possession that Plaintiff thought a witness should be designated on, Plaintiff should have identified such and ST would have

---

[1] This is the entirety of Defendants' May 22 second supplemental response:

> Based on its investigation to date and subject to and without waiving its objections, ST Inc. further responds as follows:
>
> In addition to the evidence and contentions referenced in Defendant's Amended Answers (ECF 225-226) and prior responses to this Interrogatory, Defendants identify the following evidence: the deposition transcripts of Dr. Cooper, Dr. Saha, Mr. Kellett, and Mr. Waite, and all exhibits to each of those depositions; PU00004632; PU00004858; PU00004887; PU00005027; PU00005654; PU00010087, PU00010095, PU00010103, PU00010371, PU00010419; PU00035484; PU00039183, PU00039228, PU00039282, PU00039336; PU00041680.

Exhibit 2 to Dkt. 328 at 19.

[2] This is not to mention that the cited documents and testimony were not identified in Defendants' Answer nor were they the subject of any opinion as to materiality.

4

considered the request." Dkt. 328 at 5. But Purdue should not have to identify the "facts" that might be in Defendants' possession to support *Defendants'* allegations of fraud. Defendants turn the entire notion of depositions, Rule 30(b)(6) or otherwise, on its ear. Defendants cannot shift the burden to Purdue because Purdue cannot be charged with knowledge of what "facts" are in Defendants' possession (and must be pleaded with specificity).

Defendants likewise try to walk back their statement that they need not designate a witness and would rely on expert testimony instead. Defendants now take the position that they did not say that the "facts and information were *solely* within the purview of experts." *Id*. This is revisionist history. Defendants did not parse their words so carefully when refusing to designate a witness. They stated that this topic was within the purview of expert testimony as grounds for their objection to designating a corporate witness on the topic.

Defendants did not provide an expert report on inequitable conduct.[3] Instead, they had their invalidity expert opine on the materiality of certain references and statements, and now engage in even more crawfishing by arguing that the "intent to deceive" prong "is not particularly susceptible to expert testimony." *Id*. at 7. Defendants' position must be rejected.

As a threshold point, a passing reference by an expert that her opinions are relevant to other issues, such as inequitable conduct, is not an expert report on inequitable conduct. Dkt. 328 at 6 (citing ¶ 418 n.1 of the Lipkin Report). Defendants cite three paragraphs in Dr. Lipkin's report offering "opinions regarding three primary references anticipating or rendering the asserted claims obvious," which according to Defendants, establishes the but-for materiality of each of the three references." *Id*. at 6. Defendants cite no authority for the proposition that expert testimony that

---

[3] Out of an abundance of caution, Purdue served the expert report of Teresa Rea on the issue of inequitable conduct.

5

references asserted as invalidating under §102 or §103 establishes "but-for materiality" of those references, as required for inequitable conduct. But even if that were the law, ***the three primary references on which Dr. Lipkin opines were not pleaded in Defendants' Answer or identified in their interrogatory response***. Dr. Lipkin provides "materiality" opinions on the following three references:

- Conference paper entitled "Design and Process Issues for Silicon Carbide Power DiMOSFETS" given during Symposium H4.5 of the November 2000 Silicon Carbide-Materials, Processing, and Devices Conference held November 27-29, 2000 in Boston, Massachusetts ("the 2000 Boston Paper");

- U.S. Patent Application Publication No. 2002/0038891Al to Sei-Hyung Ryu, Anant Agarwal, Mrinal Das, Lori Lipkin, John Palmour, and Ranbir Singh, entitled "Silicon Carbide Power Metal-Oxide Semiconductor Field Effect Transistors Having A Shorting Channel And Methods Of Fabricating Silicon Carbide Metal-Oxide Semiconductor Field Effect Transistors Having A Shorting Channel" ("the 2002 Patent Publication"); and

- A. Agarwal, S.H. Ryu, and J. Palmour, "Power MOSFETS in 4HSiC: Device Design and Technology" in SILICON CARBIDE: RECENT MAJOR ADVANCES (ADVANCED TEXTS IN PHYSICS) 2004th Edition (Springer, October 8, 2003) ("the 2003 Book").

*See id.* at 6 (citing Lipkin Report ¶¶ 276, 325, 361). These three references do not appear in Defendants' December 16 Answers. *See* Dkt. Nos. 239 and 240. Defendants' laying behind the log underscores why inequitable conduct must be pleaded with particularity. Defendants cannot allege inequitable conduct based on certain references and then after the close of discovery, raise previously undisclosed references as material. The Court should consider this bait and switch in determining, among other things, whether Defendants face any prejudice in granting leave.[4]

Defendants also point to Dr. Lipkin's opinion that certain arguments made during prosecution were inconsistent with materials in Dr. Cooper's possession, and that such arguments are "*per se* material under *Therasense*." Dkt. 328 at 6. Putting aside that Defendants omit salient

---

[4] Purdue reserves the right to strike these improper opinions and any reliance on these references for purposes of inequitable conduct.

portions of the prosecution arguments (that undermine their position), Defendants fail to cite any authority for this proposition of *per se* materiality and overlook that (as Dr. Lipkin acknowledges), the examiner did not rely on these arguments. Lipkin Report ¶ 246 ("The Examiner was not persuaded by applicant's argument…"). Neither Defendants nor their expert explain how statements can be material absent the examiners' reliance on them.

In the Motion, Defendants flip-flop and argue intent to deceive is not within the purview of expert opinion. Dkt. 328 at 7. If the about-face were not enough, Defendants merely invoke "documentary and testimonial fact evidence, including the testimony of Dr. Cooper and his prosecuting attorney Mr. Kellett" and various exhibits. *Id*. But Defendants have never articulated the "what, how, and why" of the testimony and materials. They did not do so during discovery, nor did they have Dr. Lipkin opine on them. And they certainly did not raise them in their Answer. The heightened pleading requirements are designed to prevent this type of trial by ambush.

\*\*\*

Purdue took the claim of fraud on the Patent Office seriously. It sought discovery and expected an expert report (and served one of its own). Defendants' failure to comply with its pleading and discovery obligations compelled Purdue to file the Supplement. The purported explanations in the Motion do not excuse Defendants' attempts to backfill the record, cure discovery deficiencies, and raise new art. Purdue's Motion for Leave to strike the inequitable conduct defense should be granted.

Dated: July 19, 2023

Respectfully submitted,

By: /s/John P. Lahad
Michael W. Shore (SBN 18294915)
Chijioke E. Offor (SBN 24065840)
Halima Shukri Ndai (SBN 24105486)
THE SHORE FIRM
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone: (214) 593-9110
Fax: (214) 593-9111
mshore@shorefirm.com
coffor@shorefirm.com
hndai@shorefirm.com

Brian D. Melton (SBN 24068095)
John P. Lahad (SBN 24068095)
Abbey McNaughton (SBN 24116751)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
bmelton@susmangodfrey.com
jlahad@susmangodfrey.com
amcnaughton@susmangodfrey.com

**COUNSEL FOR PLAINTIFF**
**THE TRUSTEES OF PURDUE UNIVERSITY**

## **CERTIFICATE OF SERVICE**

In accordance with Federal Rule of Civil Procedure 5 and Local Rule CV-5, I hereby certify that a true and correct copy of the foregoing has been served on counsel for Defendants VIA ECF and email on July 19, 2023.

/s/ John Lahad