# EXHIBIT 2

```
            IN THE UNITED STATES DISTRICT COURT

           FOR THE WESTERN DISTRICT OF TEXAS

                      WACO DIVISION


THE TRUSTEES OF PURDUE           )
UNIVERSITY,                      )
                                 )  Case No.
           Plaintiff,            )  6:21-CV-00727
                                 )  -ADA
v.                               )
                                 )
STMICROELECTRONICS INTERNATIONAL )
N.V., AND STMICROELECTRONICS,    )
INC.,                            )
                                 )
           Defendants.           )
_____)


         Videotaped Deposition of LORI LIPKIN PH.D.

                    (Given Remotely)

                 Friday, July 21, 2023

                    9:05 a.m. Eastern




Reported by:  Karen Kidwell, RMR, CRR
```



Case 6:21-cv-00727-ADA-DTG   Document 365   Filed 08/08/23   Page 3 of 12

PURDUE UNIVERSITY vs STMICROELECTRONICS INTERNATIONAL N.V. et al. Page 2
LORI LIPKIN PH.D., 07/21/2023

```
 1   REMOTE APPEARANCES:

 2   On Behalf of Plaintiff:

 3        JOHN P. LAHAD, ESQ.
          Susman Godfrey L.L.P.
 4        1000 Louisiana
          Suite 5100
 5        Houston, TX  77002
          713.653.7859
 6        jlahad@susmangodfrey.com

 7


 8   On Behalf of Defendants:

 9         THOMAS N. TARNAY, ESQ.
           THOMAS TARNAY PLLC
10         2103 Virginia Place
           Plano, TX  75094-3859
11         214.395.8212

12         for

13         Sidley Austin, LLP
           2021 McKinney Avenue
14         Suite 2000
           Dallas, TX  75201
15         214.772.1224
           ttarnay@sidley.com

16


17


18


19


20   Also Remotely Appearing:

21        Christopher Ratway, In-house Counsel
            STMicroelectronics
22
          Amanda Rodriguez, In-house Counsel
23           STMicroelectronics

24        Jeremy Gilliam, Videographer

25
```



```
 1   that.
 2          Q.    Which expert?
 3          A.    What was his name?  I don't recall his
 4   name.  Sorry.  I'm bad with names.
 5          Q.    Have you been asked to respond to some
 6   expert of Purdue outside of this report?
 7          A.    I have not been asked to respond at this
 8   time.
 9          Q.    Let me go back and make sure I get the
10   record clean.
11                You -- you agree, if I -- and let me know
12   if I got it wrong:  You agree that you're not relying
13   on the Lu thesis to show -- on its own, to show
14   anticipation of Claims 9 or 10 of the '633 patent,
15   correct?
16          A.    In this report, I am not relying on the
17   Lu thesis to prove invalidity.
18          Q.    Likewise, you're not combining the Lu
19   thesis with other work to show obviousness of
20   Claims 9 or 10 in this report, correct?
21          A.    Agreed.  In this report, I am not using
22   Lu's thesis in combination with other work to prove
23   invalidity.
24          Q.    You do not rely or consider -- let me
25   strike that.
```



```
 1    that what you're asking me about?  Because I --
 2         Q.    No.
 3         A.    I don't understand --
 4         Q.    No, I'm asking about --
 5         A.    -- what you're asking.
 6         Q.    I'm interested in what's in your report,
 7    what you have, as you said, taken, you know, a lot of
 8    time to put pen to paper or dictate to somebody who
 9    typed it out.
10               You -- in your report, there is no -- you
11    do not offer the results of any kind of independent
12    investigation, on your own, as to the public
13    accessibility of the 2003 book, right?
14         A.    That's correct.
15         Q.    Okay.
16         A.    In my report, I did not offer my own
17    independent opinion on the public date of the 2003
18    book.
19         Q.    Likewise, in your report, you do not offer
20    the results of your own independent investigation on
21    the public accessibility of the Lu thesis, correct?
22               MR. TARNAY:  Object to the form of the
23         question.
24               THE WITNESS:  That's correct.  In the
25         report, I do not state an opinion of my own
```



```
 1        research based on its public availability.
 2   BY MR. LAHAD:
 3        Q.   All right.  If you go to paragraph 43 of
 4   your report --
 5        A.   Um-hmm.
 6        Q.   -- you talk about the legal standards.
 7   You see that?
 8        A.   I do.
 9        Q.   And the last paragraph of that -- excuse
10   me, the last sentence of that paragraph says:  "As
11   such, I understand that at least the following
12   qualify as prior art under pre-AIA 35 USC
13   Section 102.
14        A.   Uh-huh.
15        Q.   And so on the next page -- it's
16   paragraph 44 --
17        A.   Sure.
18        Q.   -- you say, "The claimed invention was
19   known or used by others in the United States, or
20   patented or described in a printed publication in
21   either the United States or a foreign country, before
22   the date of the invention."  See that?
23        A.   I do.
24        Q.   Okay.  What date of invention are you
25   using?
```

```
 1   BY MR. LAHAD:
 2        Q.   You're not asserting the Lu -- well, you
 3   testified earlier, you're not asserting the Lu --
 4        A.   You changed the words.
 5             I'm sorry.  I interrupted you.
 6        Q.   You testified earlier that you are not
 7   citing the Lu thesis, on its own, as grounds to show
 8   anticipation of Claim 9 or 10 of the '633 patent,
 9   correct?
10        A.   I don't remember the exact words.  I don't
11   remember the use of the word "citing," and that's
12   what I'm objecting to.
13             But I -- you know, it's been an hour.
14   I -- I might be misremembering.  The Lu thesis is
15   certainly cited in my report.
16        Q.   But you're not basing an anticipation
17   argument on the Lu thesis on its own, correct?
18        A.   That's correct.
19        Q.   And likewise, you're not combining the
20   Lu thesis with any other works to show obviousness of
21   Claims 9 and 10, right?
22        A.   That's correct.
23             I'm sorry if I'm misunderstanding your use
24   of the word "citing."  I'm just -- I want to be
25   clear.
```



```
 1   exception of the 2003 book, none of the island art
 2   describes silicon carbide devices, correct?
 3        A.   Can you restate that?
 4        Q.   Sure.  With the exception of the 2003
 5   book, none of the island art describes silicon
 6   carbide devices, correct?
 7        A.   With the exception of the 2003 book, I
 8   agree that none of what I am referring to as island
 9   art, those five references, it's my recollection that
10   they were in silicon.  But I can look at them again
11   and refresh my memory to be sure.
12        Q.   The -- the -- a couple of the,
13   quote/unquote, island art references are
14   ST references, right?  There's the application note
15   and the AD6A art, right?
16        A.   Sure.
17        Q.   The 2003 book, that's not an ST reference,
18   right?
19        A.   Right.  The 2003 book was part of a -- it
20   was a chapter in a published book.
21        Q.   Yeah, but none of the authors in that
22   chapter are -- are or were ST employees, right?
23        A.   I -- I really don't know what Dr. Agrawal
24   did before he came to Cree.  I have no way of
25   knowing.  To my knowledge, I don't think he was at
```



```
 1   paragraph 395, please, of your report.
 2           All right.  In this paragraph 395, you're
 3   referring to the ST System art AD6A, correct?
 4       A.  Uh-huh.  Yes.
 5       Q.  And you are relying on Exhibit 633-B24 to
 6   ST's final invalidity contentions, correct?
 7           MR. TARNAY:  Object to the form of the
 8       question.
 9           THE WITNESS:  I'm sorry, what's your
10       question?
11   BY MR. LAHAD:
12       Q.  Sure.  There's a reference here to
13   "Exhibit 633-B24 to ST's final invalidity
14   contentions."  Do you see that?
15       A.  I do.
16       Q.  You're relying on that in support of your
17   opinions regarding the AD6A art, correct?
18           MR. TARNAY:  Objection to the form of the
19       question.
20           THE WITNESS:  Yeah, I don't -- I don't
21       know what you mean by "relying on."
22   BY MR. LAHAD:
23       Q.  Well, how are you using Exhibit 633-B24?
24       A.  That exhibit gives drawings of the device
25   that they were selling.  And the drawings identify
```



```
 1    spaced apart base contacts that were being used or
 2    sold in the year 2003.
 3         Q.    Sold by whom?
 4         A.    It's my understanding ST sold them.
 5         Q.    To whom?
 6         A.    I don't know.  I didn't ask that.
 7         Q.    When were they sold, allegedly?
 8         A.    It's my understanding that they were sold
 9    in the year 2003.
10         Q.    What's that based on?
11         A.    I spoke with their sales manager, and he
12    confirmed that they had been sold in 2003.  My
13    recollection is --
14         Q.    When in 2003?
15         A.    -- he may have provided a specific date.
16    I don't recall that date offhand.
17         Q.    You don't know specifically when in 2003
18    these products were allegedly sold?
19         A.    Off -- offhand, I don't.  I'm happy to
20    review my report and see what it says, because I
21    don't recall offhand what the exact date was.
22         Q.    Is that date in your report?
23         A.    I can look.
24         Q.    Yeah.  Go ahead.
25         A.    I -- I don't see an exact date.
```



```
 1        Q.   Is it your view that this alleged sale by
 2   ST triggers the "on sale" bar of Section 102?
 3             MR. TARNAY:  Object to the form of the
 4        question.
 5             THE WITNESS:  I'm sorry.  What are you
 6        asking?
 7   BY MR. LAHAD:
 8        Q.   Sure.  Is it your view that the sale by
 9   ST -- strike that.
10             Is it your view that this alleged sale by
11   ST triggers the "on sale" bar of Section 102(b)?
12             MR. TARNAY:  Object to the form of the
13        question.
14             THE WITNESS:  If they were -- it's my
15        understanding that the products had actually
16        been sold, not just on sale.  And that if they
17        were sold in the United States prior to a year
18        before the priority date, that would make them
19        prior art.
20   BY MR. LAHAD:
21        Q.   Do you know whether these sales were
22   public?
23        A.   My understanding that they were publicly
24   being offered for sale, yes.
25        Q.   Do you know if these sales were subject to
```



```
 1   STATE OF NORTH CAROLINA
     COUNTY OF MECKLENBURG
 2

 3            I, Karen K. Kidwell, RMR, CRR, Stenographic

 4   Court Reporter and Notary Public, the officer before

 5   whom the foregoing proceeding was conducted according

 6   to the emergency video notarization requirements

 7   contained in G.S. 10B-25, do hereby certify that the

 8   witness whose testimony appears in the foregoing

 9   proceeding was duly sworn by me; that the testimony of

10   said witness was taken by me to the best of my ability

11   and thereafter transcribed by me; and that the

12   foregoing pages, inclusive, constitute a true and

13   accurate transcription of the testimony of the witness;

14   that I was located in Mecklenburg County and the

15   witness stated they were located in Wake County at the

16   time of the deposition.

17            I further certify that I am neither attorney

18   or counsel for, nor related to or employed by, any

19   attorney or counsel employed by the parties hereto or

20   financially interested in the action.

21            This the 22nd day of July, 2023.

22
                        _____
23
                         Karen K. Kidwell, RMR, CRR
24                       Notary Public #19971050142

25
```

