**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| THE TRUSTEES OF PURDUE UNIVERSITY,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS INTERNATIONAL N.V., and STMICROELECTRONICS, INC,<br><br>　　　　　Defendants. | CIVIL ACTION NO. 6:21-CV-00727-ADA<br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE**
**EXPERT REPORT AND TESTIMONY OF TERESA REA**

## TABLE OF CONTENTS

I.      Introduction ........................................................................................................... 1

II.     Background ............................................................................................................ 1

III.    Argument ............................................................................................................... 4

        A.      Ms. Rea is Not Offering Opinions on "Patent Law" ................................. 4

        B.      Ms. Rea's Opinions are Relevant and Helpful ......................................... 6

IV.     Conclusion ........................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES:</u>

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
  2010 WL 1170148 (E.D. Tex. 2010) ...................................................................9

*Aevoe Corp. v. AE Tech. Co., Ltd.*,
  2014 WL 4182343 (D. Nev. Aug. 20, 2014) .........................................................5

*Applied Capital, Inc. v. ADT Corp.*,
  2021 WL 1339379 (D.N.M. Apr. 9, 2021) ............................................................6

*Armament Sys. & Proc., Inc. v. IQ Hong Kong Ltd.*,
  2007 WL 1267877 (E.D. Wis. Apr. 24, 2007).......................................................6

*Barry v. Medtronic, Inc.*,
  No. 1:14-cv-104, Dkt. 334, (E.D. Tex. Sept. 20, 2016)....................................7, 9

*Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*,
  2010 WL 3907490 (D. Del. Sept. 21, 2010) .........................................................6

*Fan Company, LLC v. Pepco Licensed Products, Inc.*,
  2011 WL 13269084 (W.D. Tex. Apr. 27, 2011) ....................................................6

*General Electro Music Corp. v. Samick Music Corp.*,
  19 F.3d 1405 (Fed. Cir. 1994)...............................................................................4

*GREE, Inc. v. Supercell Oy*,
  Case No. 2:19-v-00700-JRG-RSP, 2020 WL 4288350 (E.D. Tex. July 27, 2020) ......................8

*Morgan v. Commercial Union Assur. Cos.*,
  606 F.2d 554 (5th Cir. 1979).................................................................................7

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
  2017 WL 4173468 (E.D. Tex. Sept. 21, 2017).....................................................8

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
  2019 WL 5206273 ...................................................................................................5

*Phillip M. Adams & Associates, LLC v. Winbond Elecs. Corp.*,
  2010 WL 3791970 ...................................................................................................5

*Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V.*,
  528 F.3d 1365 (Fed. Cir. 2008).............................................................................4

*Shire Viropharma Incorporated v. CSL Behring LLC*,
  2021 WL 1227097 (D. Del. Mar. 31, 2021) ....................................................................6

*The Medicines Co. v. Mylan, Inc.*,
  2014 WL 1758135 (N.D. Ill. May 2, 2014) .......................................................4, 5, 8, 9

*Therasense, Inc. v. Becton, Dickinson and Co.*,
  2008 WL 2037 732 (N.D. Cal.  May 12, 2008) ....................................................4, 5, 8

**<u>REGULATIONS:</u>**

37 C.F.R. §1.56 ....................................................................................................................2

## I.      Introduction

Plaintiff, the Trustees of Purdue University ("Purdue"), respectfully submits its response to Defendants' Motion to Strike the Expert Report and Testimony of Plaintiff's Purported Patent Law Expert Teresa Rea ("Motion to Strike"). Defendants made unfounded and unsupported allegations of inequitable conduct by Purdue—allegations that are tantamount to alleging fraud against one of the preeminent research institutions in this country. Purdue retained Ms. Rea, a world-class expert, to analyze and offer expert opinions to counter these reckless allegations.  In their motion, Defendants mischaracterize Ms. Rea's report and the scope of her opinions. Ms. Rea is not opining on "patent law," as Defendants wrongly contend. Instead, Purdue is offering her testimony to rebut Defendants' allegations of inequitable conduct—specifically on the *factual* considerations related to the "intent to deceive" prong. Such testimony is routinely permitted by Courts. Indeed, Defendants offer flimsy and inapposite authority to try and show otherwise.  Accordingly, Defendants' Motion to Strike should be denied.

## II.     Background

Defendants served their Amended Answers on December 16, 2022. Dkts. 225 and 226. Among the dozens of defenses asserted, Defendants alleged—albeit insufficiently and without the required specificity—that Purdue engaged in inequitable conduct. In particular, Defendants alleged that "the Patentees knew of specific prior art disclosures, knowledge of a person of ordinary skill in the art (PHOSITA), and their specific materiality to one or more aspects of the claimed invention and/or the reasons for allowance" but "did not disclose the material references and also misrepresented the PHOSITA's knowledge to the Examiner." Dkt. 225 at ¶ 81.

Defendants further alleged that had the "Patentees disclosed the material prior art references that they were aware of to the PTO during the prosecution of the '633 Patent, the claims would not

have issued." *Id.* at ¶ 97. Defendants also stated that "the Patentees' misrepresentations regarding similar structures in silicon carbide, as well as the nondisclosure of material prior art, were a breach of the duty of candor and good faith because at least Dr. Cooper knew that such information was material to the application that ultimately issued as the '633 Patent." *Id.* at ¶ 98. Notably, as to intent, Defendants did not allege any particular facts. They merely stated "on information and belief" that the misrepresentations and omissions were done with specific intent to deceive. *Id.* at ¶ 99.

As detailed in Purdue's Motion to Strike the Expert Opinions of Dr. Lori Lipkin Regarding Materiality, Dkt. 358, Defendants shirked their discovery obligations as to their inequitable conduct defense. Most relevant here, Defendants did not serve an expert report on inequitable conduct even though they objected to discovery on grounds that the facts and information underlying their defense were within "the purview of expert testimony" and that "ST's expert will include the relevant information in his or her expert report." Ex. 1 (Defendants' Objs. and Resp. to Purdue's Rule 30(b)(6) Notice) at 23.  Instead, Defendants purported to have their technical expert, Dr. Lori Lipkin, opine that certain references were not cumulative (but did so as to references Defendants did not plead in their Answer as undisclosed). Dr. Lipkin did not opine—because she is unqualified to do so—on the duty of candor and good faith even though Defendants raised it in their Answer.

On July 14, 2023, Purdue served the expert report of Ms. Teresa Rea. *See* Ex. 3 to Motion to Strike. Ms. Rea's report summarizes her opinions regarding the "intent to deceive" prong of inequitable conduct. Ms. Rea described the scope of her work as follows:

> In particular, I have been asked to opine on the "intent to deceive" prong of inequitable conduct. While "intent" is within the purview of the fact finder, I provide my opinions based on the evidence currently in the record. I have also been asked to opine on the duties of candor, good faith, and disclosure as set forth in 37 C.F.R. §1.56, which may intersect with the inequitable conduct analysis. In conjunction with my opinions on these two issues, I offer expert testimony with regard to the rules, practices, and procedures for examination of patent applications by the U.S. Patent and Trademark

Office ("USPTO") and compliance with those rules, practices, and procedures during
the examination of the patent asserted in this case.

*Id*. at ¶ 3.[1]

Ms. Rea gives background information regarding the procedures of the PTO, the
prosecution of the '633 Patent, Defendants' discovery on their defense (or lack thereof), and then
opines that "[u]nder the current record, it would be reasonable for the fact finder to conclude that
there was no intent to deceive the USPTO. That is, any conclusion that the intent to deceive was
not the single most reasonable inference would be consistent with the evidentiary record." *Id*. at
¶ 79. Ms. Rea then walks through the evidence—like any expert—citing deposition testimony and
rebutting Dr. Lipkin's opinions that certain arguments made during prosecution rise to the level of
deceptive intent. *Id*. at ¶¶ 80-83. For example, she states: "Such characterizations about the prior
art more properly are considered advocacy rather than evidence of intent to deceive. Indeed,
applicants routinely attempt to distinguish the prior art, and if differences in opinion about the
characterization were enough for deceptive intent, applicants would cease making such
characterizations to avoid creating a potential inequitable conduct issue." *Id*. at ¶ 83.

Ms. Rea then responds to Defendants' allegation that Purdue breached its duty of candor
to the PTO. *Id*. at ¶ 87. Based on those allegations and what little discovery Defendants provided,
Ms. Rea states that "the individuals involved in prosecution of the '633 Patent did not breach their

---

[1] Ms. Rea notes as well that her "analysis is limited however by the fact that ST has not provided
an expert report on inequitable conduct" and that "this is the first instance I have encountered—
over a decade of serving as an expert on the issue of inequitable conduct—in which a party alleging
inequitable conduct has not served a report by a person qualified to render opinions regarding
inequitable conduct, e.g., a patent prosecution expert or similar practitioner. In all my previous
responsive reports, I have been able to address specific opinions regarding intent, the duties of
candor, good faith, and disclosure or other alleged deficiencies. In this case, I am left to anticipate
on what ST may argue given what little detail it has provided during discovery." *Id*. at ¶ 4.

duties of candor, good faith, and disclosure to the PTO." *Id*. at ¶87. Again, Ms. Rea cited the evidentiary record (and the absence of evidence) to reach her conclusion, just like any expert.

## III.   <u>Argument</u>

### A.   <u>Ms. Rea is Not Offering Opinions on "Patent Law"</u>

Ms. Rea is not explaining the law to the Court. She is not merely offering her interpretation of statute and case law, nor is she offering "legal conclusions" or "invading the court's province," as Defendants wrongly suggest. Inequitable conduct is not a purely legal issue. To the contrary, it implicates several underlying factual determinations. *See General Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1408 (Fed. Cir. 1994) ("The disputed issues of fact underlying the issue of inequitable conduct are not jury questions, the issue being entirely equitable in nature."); *Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V.*, 528 F.3d 1365, 1374 (Fed. Cir. 2008) ("Both intent and materiality are questions of fact, and must be proven by clear and convincing evidence."). Ms. Rea is using the law to guide her analysis of the facts and evidence—just like any other expert—on an issue with *factual* disputes that will be tried to the bench.

Further, it is abundantly proper for an expert to testify regarding the legal standards upon which she relies for her opinions. *The Medicines Co. v. Mylan, Inc.*, 2014 WL 1758135, at *6 (N.D. Ill. May 2, 2014) ("Citing to statutes, legal definitions, and cases is acceptable when a legal expert is explaining the bases of how she arrived at her opinions."). Citing case law and statute, such as the C.F.R., does not transform Ms. Rea into a "patent law expert." The law provides the backdrop for her opinions, again, as it does with any expert.

Finally, courts routinely hear from experts on inequitable conduct, especially because the issue is tried to the bench. In *Therasense, Inc. v. Becton, Dickinson and Co.*, 2008 WL 2037732, at *2 (N.D. Cal.  May 12, 2008), the court denied motions to exclude the testimony of inequitable conduct experts described as alleged "patent law experts." The court stated:

> Since, however, both side's views of the inequitable conduct issue rests on a mix of
> fact and duty, it would be useful to hear the precise statement of the alleged duty so
> that the Court may discount the experts' opinions if excessive views of the legal duty
> have been assumed. This issue is for the judge, so no harm will be done in hearing out
> the legal regulatory framework supposedly behind the experts' testimony.

*Id.*; *see also The Medicines*, 2014 WL 1758135, at *4 ("Here, preclusion of Ms. Linck's testimony is unnecessary because the Court is the trier of fact, with the capability of curtailing her opinions if necessary at trial.").

In *Aevoe Corp. v. AE Tech. Co., Ltd.*, 2014 WL 4182343, at *2 (D. Nev. Aug. 20, 2014), the court refused to strike expert opinion on inequitable conduct because the materiality prong is analyzed from the perspective of the PTO and "an appropriate expert on this topic could be an individual who has knowledge of and experience with the procedures of the PTO. Often, such an individual will be an attorney with experience practicing before the PTO." The court added that "[a] full understanding of inequitable conduct requires an understanding of the PTO procedures that govern the patent application process" and permitted testimony by an expert who "has been a practicing patent attorney for more than twenty-five years and is even a long-time instructor of a study course for the PTO registration exam." *Id*.

Similarly, in *Phillip M. Adams & Associates, LLC v. Winbond Elecs. Corp.*, 2010 WL 3791970, at * (D. Utah Sept. 21, 2010), the court permitted expert opinion on why the applicant's "alleged conduct before the USPTO would be important to a reasonable examiner", as well as on "USPTO policies and procedures, the rules and procedural requirements governing the filing and prosecution of patent applications in the USPTO and the grant of U.S. patents by the USPTO, the duty of candor and good faith and disclosure that those substantively involved in the preparation and prosecution of a patent application owe to the USPTO, and the requirements for establishing equitable conduct." *See also Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2019 WL 5206273, at * (N.D. Ill. Mar. 13, 2019) (permitting testimony regarding the "duty of candor for persons practicing before

the Patent and Trademark Office" as "admissible circumstantial evidence of regarding Oil-Dri's intent"); *Armament Sys. & Proc., Inc. v. IQ Hong Kong Ltd*., 2007 WL 1267877, at *1 (E.D. Wis. Apr. 24, 2007) (permitting "an undoubted expert not only in patent law but in the workings of the Patent and Trademark Office," to offer "some factual context for why Parsons' behavior would have been inequitable").[2]

Ms. Rea's testimony fits neatly within the scope of the testimony accepted by these courts. Her opinions regarding the workings of the PTO, the duty of candor for persons practicing before the PTO, and the requirements for establishing equitable conduct, as well as the underlying factual considerations, as discussed below, bear directly on disputed issues before the Court. Ms. Rea is not merely a rote "patent law expert."

### B.    Ms. Rea's Opinions are Relevant and Helpful

After wrongly accusing Ms. Rea of trying "explain patent law" to the Court and usurping the Court's role, Defendants next attempt to argue that her opinions are irrelevant and unnecessary. Defendants first argue that her report is improper because there is nothing to rebut. Motion to Strike at 3-4. But Defendants overlook that Purdue must be permitted to rebut the allegations stated in Defendants' Answer.

In *Fan Company, LLC v. Pepco Licensed Products, Inc.*, 2011 WL 13269084, at *6 (W.D. Tex. Apr. 27, 2011), the court explained that "a defense witness whose purpose is to contradict an

---

[2] Defendants quote the broad prohibition in *Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc*. 2010 WL 3907490, at *2 (D. Del. Sept. 21, 2010), but (1) that case is not binding on this Court and (2) at least one court from the same district has permitted expert testimony on inequitable conduct since that case. S*ee Shire Viropharma Incorporated v. CSL Behring LLC*, 2021 WL 1227097, at *30-31 (D. Del. Mar. 31, 2021). Defendants also cite *Applied Capital, Inc. v. ADT Corp*., 2021 WL 1339379, at *8 (D.N.M. Apr. 9, 2021), but that case merely involved precluding an inequitable conduct expert from testifying before the jury. Indeed, the court noted that the expert's "opinions on intent and materiality go to the issue of inequitable conduct that will be tried to the Court." *Id*. That case is inapposite.

expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything analogous to one." (Quoting *Morgan v. Commercial Union Assur. Cos*. 606 F.2d 554, 556 (5th Cir. 1979). In this case, Ms. Rea's purpose is to contradict an anticipated portion of the Defendants' case.

Further, Defendants promised an expert report on inequitable conduct to avoid fully complying with their discovery obligations and to its detriment, Purdue believed Defendants and anticipated an expert report on inequitable conduct. When Defendants did not provide the promised inequitable conduct expert report, Purdue was left to rebut the only thing it could, Defendants' allegations of inequitable conduct set forth in their Answer (and recycled in their interrogatory responses).

It should be non-controversial that Purdue is entitled to rebut Defendants' allegations that "the Patentees' misrepresentations regarding similar structures in silicon carbide, as well as the nondisclosure of material prior art, were a breach of the duty of candor and good faith," Dkt. 225 at ¶ 98, using the testimony of an expert. In this case, the expert has spent decades prosecuting patents and served as Acting Director of the PTO. Likewise, Ms. Rea is entitled to give her opinions based on the evidence that undermines Defendants' "information and belief" that any alleged misrepresentations and omissions were done with "specific intent to deceive," *Id*. at ¶ 99. And, again, Ms. Rea is not merely explaining patent law to the Court in a vacuum divorced from the evidentiary record. Accordingly, Defendants' argument that there is nothing to rebut is demonstrably false.[3]

---

[3] Defendants cite *Barry v. Medtronic, Inc*., No. 1:14-cv-104, Dkt. 334, (E.D. Tex. Sept. 20, 2016), for the proposition that once an expert has been struck, any rebuttal expert should also be struck. Motion to Strike at 4. But in this case, there are no dueling experts. Defendants did not offer an expert report. And because they did not serve an expert report does not mean that Purdue is precluded from rebutting Defendants' allegations. Defendants cannot frustrate Purdue's efforts to respond to allegations of fraud on the PTO simply because they could not find a qualified expert to support their defense.

Defendants then argue that Ms. Rea's opinions on USPTO procedures relating to the "intent to deceive" and the "duty of candor" are unnecessary and unhelpful. Motion to Strike at 4. First, Defendants argue that Ms. Rea speculates to what she thinks the '633 Patent examiner "believed." *Id.* This is another misrepresentation. At no point does Ms. Rea opine as to what she thinks the examiner believed. She never opines that the examiner would have allowed the patent despite the arguments. Nor does she opine on how the examiner would have responded to certain prior art. Rather, she cites and relies on the examiner's comments set forth in Office Actions of the '633 Patent—the same comments that Defendants' own expert Dr. Lipkin relies on. *See* Ex. 3 to Motion to Strike at ¶ 83.

Second, Defendants argue that any opinions about the evidence related to "intent" have no probative value and that the record will not be fully developed until the trial concludes. While an expert cannot opine on what a party "intended," Courts permit expert testimony on *evidence* related to intent. For example, in *GREE, Inc. v. Supercell Oy*, Case No. 2:19-v-00700-JRG-RSP, 2020 WL 4288350, at *3 (E.D. Tex. July 27, 2020) (Payne, J.), the Court permitted expert testimony on facts related to a party's intent in the context of indirect infringement: "Experts can opine, however, on the underlying facts that may show a party's state of mind." Likewise, in *Therasense*, the court ruled that while experts cannot "speculate as to anyone's subjective intent" as it relates to inequitable conduct, the "experts can point to evidence of bearing on these issues, such as a deposition admission or smoking-gun memo to file." 2008 WL 2037732, at *4; *see also Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc*., 2017 WL 4173468, at *6 (E.D. Tex. Sept. 21, 2017) (ruling that an expert "may explain and point to the underlying factual record and other bearing on issues of intent and knowledge"); *The Medicines Co*., 2014 WL 1758135, at *5 (an expert "may identify certain facts from the file history and record to support an inference that the applicants acted with an intent to deceive").

Ms. Rea's report is rife with citations to the evidentiary record and likewise identifies gaps in the record, such as no smoking-gun document showing that the applicants sought to hide anything from the PTO. *See, e.g.*, Ex. 3 to Motion to Strike at ¶ 79. She cites testimony from the inventor and prosecution counsel confirming that they were aware of and attempted to comply with their duties to the PTO. *Id.* at ¶¶ 80-81. She also addresses from a factual perspective how the allegation that the applicants made inaccurate arguments to the PTO and the examiner's response rejecting those arguments bear on the issue of intent. *Id.* at ¶ 83. Ms. Rea also exposes the deficiencies in Defendants' allegations that the applicants breached their duties of candor and good faith. *Id.* at ¶¶ 89-91. Contrary to Defendants' argument, Ms. Rea does not attempt to read anyone's mind on what he or she intended (or did not intend) to do. Rather, she is providing her opinion on the underlying facts that bear on inferences that may be drawn regarding a party's state of mind. This is completely proper under the case law.[4]

In *The Medicines Co*., 2014 WL 1758135, at *5, the court permitted an expert to "identify certain facts from the file history and record to support an inference that the applicants acted with an intent to deceive." By the same token, Ms. Rea should be permitted to identify certain facts from the record to support an inference that the applicants did <u>not</u> act with an intent to deceive.

---

[4] Defendants again cite *Barry v. Medtronic* as support, but in that case, the court struck opinions about what a PTO examiner would or would not have done. As discussed above, Ms. Rea does not offer such opinions. Defendants also cite *Advanced Tech. Incubator, Inc. v. Sharp Corp*., 2010 WL 1170148 (E.D. Tex. 2010) to support its argument that Ms. Rea's background demands that her opinions be struck. But in that case, the court struck the expert's opinions because he "made his own materiality determinations even though he is not qualified as a person of ordinary skill in the art." *Id.* at *4. As Defendants acknowledge, Ms. Rea is not making materiality determinations. She has left that to the technical expert. Defendants' case is inapposite.

## IV.   <u>Conclusion</u>

For at least the foregoing reasons, the Court should deny Defendants' Motion to Strike Ms. Rea's report and opinions. Court's routinely permit opinions based on the evidence and offered to rebut Defendants' inequitable conduct defense. And given that the issue will be tried to the bench, there is even less reason to strike her opinions. The Court may weigh Ms. Rea's opinions accordingly at trial after hearing her testimony.


Dated: August 22, 2023                              Respectfully submitted,

                                                    By: */s/ John P. Lahad*
                                                    Michael W. Shore (SBN 18294915)
                                                    Chijioke E. Offor (SBN 24065840)
                                                    Halima Shukri Ndai (SBN 24105486)
                                                    THE SHORE FIRM LLP
                                                    901 Main Street, Suite 3300
                                                    Dallas, Texas 75202
                                                    Telephone: (214) 593-9110
                                                    Fax: (214) 593-9111
                                                    mshore@shorefirm.com
                                                    coffor@shorefirm.com
                                                    hndai@shorefirm.com

                                                    Brian D. Melton (SBN 24068095)
                                                    John P. Lahad (SBN 24068095)
                                                    Abbey McNaughton (SBN 24116751)
                                                    SUSMAN GODFREY L.L.P.
                                                    1000 Louisiana Street, Suite 5100
                                                    Houston, Texas 77002
                                                    Tel: (713) 651-9366
                                                    Fax: (713) 654-6666
                                                    bmelton@susmangodfrey.com
                                                    jlahad@susmangodfrey.com
                                                    amcnaughton@susmangodfrey.com

                                                    ***COUNSEL FOR PLAINTIFF***
                                                    ***THE TRUSTEES OF PURDUE UNIVERSITY***

**CERTIFICATE OF SERVICE**

In accordance with Federal Rule of Civil Procedure 5 and Local Rule CV-5, I hereby certify that a true and correct copy of the foregoing has been served on counsel for Defendants VIA ECF and email on August 22, 2023.

*/s/ John Lahad*