# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| THE TRUSTEES OF<br>PURDUE UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS<br>INTERNATIONAL N.V., and<br>STMICROELECTRONICS, INC.,<br><br>Defendants. | Civil Action No. 6:21-cv-00727-ADA<br><br>JURY TRIAL DEMANDED |

## [JOINT PROPOSED] REQUESTED JURY INSTRUCTIONS

Plaintiff The Trustees of Purdue University ("Purdue") together with Defendants STMicroelectronics, Inc. and STMicroelectronics International N.V. (collectively "ST") hereby propose the following final jury instructions.

Where the parties have been unable to reach an agreement, Purdue's position is indicated in red text and ST's position is indicated in blue text.

The parties reserve the right to revise these proposed instructions or propose additional instructions in accordance with the schedule ordered by the Court. The parties also reserve the right to revise these proposed instructions, including but not limited to deleting certain instructions or adding additional instructions, in response to any decision by the Court on pending motions for summary judgment, motions to strike, motions *in limine*, or other pretrial motions decided by the Court.

# Jury Panel Instructions
# (Before *Voir Dire*)

## JURY INSTRUCTION NO. 1: INSTRUCTIONS FOR BEGINNING OF TRIAL[1]

Members of the jury panel, if you have a cell phone, PDA, smart phone, iPhone, or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends, and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about that has been presented here in court. If you do any research, investigation, or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also

---

[1] *Source*: Fifth Circuit Pattern Jury Instructions (Civil Cases), § 1.1, 2020 Ed. (with revisions through June 2020); *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 159 at 2 (W.D. Tex. Apr. 4, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 170 at 3-4 (W.D. Tex. Sept. 27, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, at 2-3 (W.D. Tex.) (Preliminary Instructions).

be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

# Preliminary Jury Instructions

**PRELIMINARY JURY INSTRUCTION NO. 1: INTRODUCTION[2]**

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony and evidence.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss it with you or in your presence. This includes your spouse, children, relatives, friends, coworkers, and anyone that you deal with during the day. During your jury service, you may not communicate any information about this case by any means, by or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, LinkedIn, Snapchat, Instagram, or X (formerly known as Twitter), or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss this case amongst yourselves or with other jurors until the end of the case when I release you to begin to deliberate. It is unfair to discuss the case before then because you won't have all the evidence and you must never become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not permitted to communicate with you. So do not think that they are being impolite. They are simply following my instructions. Do not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not conduct any independent investigation of this case. You must make your decision on your verdict exclusively from what you see and hear within this courtroom. Do not try to obtain information from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue that might be related to this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony.

---

[2] ***Source***: Fifth Circuit Pattern Jury Instructions (Civil Cases), § 1.1, 2020 Ed. (with revisions through June 2020); *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 159 at 3-4 (W.D. Tex. Apr. 4, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 170 at 6 (W.D. Tex. Sept. 27, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, at 5-6 (W.D. Tex.) (Preliminary Instructions).

In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

Do not consider the fact that either I permit a conference to happen or I do not, or the fact that we had a conference, to influence you in any way about how I might feel about this case. In fact, do not let anything I do or say from now through the end of the trial, when I give you permission to begin deliberating, give you any indication about how I feel about the case.

You are the judges of the facts. My opinion does not matter at all.

Finally, keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

**PRELIMINARY JURY INSTRUCTION NO. 2: THE NATURE OF THE ACTION AND THE PARTIES** [3]

This is a patent case.

The plaintiff is seated most closely to you. That is plaintiff The Trustees of Purdue University. You will probably hear them referred to throughout the course of the trial as Purdue for short. [**Purdue's proposal**: Purdue is the owner of the patent in this case which is identified as U.S. Patent Number 7,498,633.] [4] [**ST's Proposal**: Purdue contends that it is the owner of the patent in this case which is identified as U.S. Patent No. 7,498,633.] [5] For your convenience, the parties and I will often refer to U.S. Patent Number 7,498,633 by the last three numbers of the patent number, namely, as the '633 Patent.

The '633 Patent relates generally to semiconductor devices, and more particularly to semiconductor devices for high-voltage power applications. The patent will be explained in much greater detail by the witnesses, and the opening statements and closing arguments that you will hear. You may also hear the '633 Patent referred to as the "asserted patent" or the "patent-in-suit." For your convenience, the parties have also prepared a Glossary of some of the technical terms to which they may refer during the trial, which will be distributed to you.

The defendants who are seated a little bit further over to my left are STMicroelectronics, Inc. and STMicroelectronics International N.V., or ST for short.

---

[3] *Source*: AIPLA's Model Patent Jury Instructions, 2019 Ed., § 1; *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 159 at 5 (W.D. Tex. Apr. 4, 2022) (with modifications); *VLSI Technology LLC v. Intel Corp.*, No. 6:21-cv-00057 (W.D. Tex.), 2021-02-22 Trial Tr. 185:13-186:8 (with very slight modifications); *see also MV3 Partners, LLC v. Roku, Inc*., No. 6:18-cv-00308-ADA (W.D. Tex.), 2020-10-05 Trial Tr. Dkt. 389 at 30:15-31:4 (with modifications).

[4] Purdue disagrees that Defendants' claim that Purdue does not own the '633 Patent has any merit. Given that patent ownership is a legal question, if the Court denies Defendants' pending motion to dismiss regarding standing, the issue is resolved in Purdue's favor and should not be presented to the jury. *Kahn v. Gen. Motors Corp*., 77 F.3d 457, 459 (Fed.Cir.1996) ("The ownership of patent property is a matter of law, the decision of which may entail underlying factual inquiries.").

[5] ST proposes the language above because the patent's ownership is disputed. *See Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012) (explaining that the plaintiff bringing a patent infringement action "has the burden to show necessary [patent] ownership rights to support standing to sue"). If necessary, the jury should resolve the "underlying factual inquiries," *see Kahn v. Gen. Motors Corp*., 77 F.3d 457, 459 (Fed. Cir. 1996), and apply the law articulated in these instructions to the facts to settle the ownership dispute, *see Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 423-24 (2015) (explaining that juries resolve mixed questions of law and fact based on "careful jury instructions that make [the] standard clear"); *see also BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 28 F.4th 1247, 1269 (Fed. Cir. 2022) ("We ask whether, under a proper contract interpretation, substantial evidence allowed the jury, if reasonable, to reach its [ownership] verdict on each patent.").

**PRELIMINARY JURY INSTRUCTION NO. 3: UNITED STATES PATENTS[6]**

This case involves a dispute relating to United States patent. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO" or "USPTO"). A valid United States patent gives the patent holder the [**ST's Proposal**: limited] [7] right for 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be

---

[6] *Source:* Federal Circuit Bar Association Model Patent Jury Instructions § A.1 (2020); *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 156 at 7-8 (W.D. Tex. Apr. 4, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 170 at 7-8 (W.D. Tex. Sept. 27, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, at 7-8 (W.D. Tex.) (Preliminary Instructions).

[7] *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 374–75 (2017) ("What a patent adds—and grants exclusively to the patentee—is a limited right to prevent others from engaging in . . . practices" including "us[ing], sell[ing], or import[ing] an item").

patentable and, thus, whether it will be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do and no process is perfect. Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not ST has proven that the patent is invalid.

**PRELIMINARY JURY INSTRUCTION NO. 4: PATENT LITIGATION[8]**

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the claimed invention, as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, to attempt to stop the alleged infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts.

A party accused of infringing a patent may deny infringement and/or prove that the asserted claims of the patent are invalid. A patent is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.

---

[8] *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 159 at 10 (W.D. Tex. Apr. 4, 2022).

**PRELIMINARY JURY INSTRUCTION NO. 5: SUMMARY OF CONTENTIONS**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

[**Purdue's proposal**: Purdue filed suit in this court seeking money damages from ST for allegedly infringing the '633 Patent by making, using, selling, offering for sale, supplying, or causing to be supplied in or from the United States, or importing into the United States, certain silicon carbide metal-oxide-semiconductor field-effect transistors ("SiC MOSFETs"). The parties and I will often refer to these products as "ST's SiC MOSFETs" or the "Accused Products." [9] Purdue argues that the Accused Products are covered by claims 9 and 10 of the '633 Patent (the "Asserted Claims"). Purdue also alleges that ST has willfully infringed the '633 Patent and actively induced infringement of the Asserted Claims by others including their customers, resellers, and/or distributors.] [10] [11]

[**ST's Proposal**: Purdue filed suit in this court seeking money damages from ST for allegedly infringing the '633 patent by making, using, selling, and offering for sale within the United States products that Purdue argues are covered by claims 9 and 10 (the "Asserted Claims") of the '633 patent.] [12]

ST contends that Purdue does not own the '633 patent. ST also denies that it has infringed the Asserted Claims of the '633 patent. And ST argues that the Asserted Claims are invalid and that other defenses apply. I will instruct you later as to the defenses and ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time.

---

[9] ST opposes Purdue's use of open-ended shorthand for the accused products. At this stage of the case, Purdue must identify specific products by part numbers—in an exhibit, if necessary. *See* Federal Circuit Bar Association Model Patent Jury Instructions § A.2 (2020) ("The [products] . . . that are alleged to infringe are [list of accused products or methods].").

[10] *Source*: Federal Circuit Bar Association Model Patent Jury Instructions § A.2 (2020); *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 156 at 15 (W.D. Tex. Apr. 4, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 170 at 9 (W.D. Tex. Sept. 27, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, at 9 (W.D. Tex.) (Preliminary Instructions). Purdue opposes the inclusion of an instruction regarding ownership for the reasons stated above, *i.e.*, the issue is a question of law that will be resolved in Purdue's favor if the Court denies Defendants' pending motion to dismiss.

[11] ST opposes Purdue's induced infringement instruction because Purdue has not alleged sufficient facts to support an inducement claim. ST also opposes Purdue's willfulness instruction because Purdue has not alleged sufficient facts to support a willfulness claim.

[12] ST's proposed language throughout the instruction above is adapted from *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 170 at 9 (W.D. Tex. Sept. 27, 2021). *See also Abbott Point of Care Inc. v. Epocal, Inc.*¸ 666 F.3d 1299, 1302 (Fed. Cir. 2012) (explaining that the plaintiff bringing a patent infringement action "has the burden to show necessary [patent] ownership rights to support standing to sue").

[**Purdue's proposal**: Your job will be to decide whether or not the Asserted Claims of the '633 Patent have been infringed and whether or not those claims are invalid. If you decide that any Asserted Claim of the '633 Patent has been infringed and is not invalid, you will then need to decide how much to award Purdue to compensate it for the infringement.] [**ST's Proposal**: Your first job will be to decide whether Purdue owns the '633 patent. If you decide Purdue owns the '633 patent, you must then decide whether or not the Asserted Claims of the '633 patent have been infringed, whether or not those claims are invalid, and whether ST's other defenses apply. If you decide that any claim of the '633 patent has been infringed and is not invalid or subject to another defense, you will then need to decide any money damages to be awarded to Purdue to compensate it for the infringement (assuming you found that it owns the '633 patent).] [13] [**Purdue's proposal**: You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.] [14]

---

[13] ST's proposal for this paragraph offers a more systematic, step-by-step account of the issues the jury will have to decide.

[14] ST opposes Purdue's willfulness instruction because Purdue has not alleged sufficient facts to support a willfulness claim.

**PRELIMINARY JURY INSTRUCTION NO. 6: OVERVIEW OF APPLICABLE LAW**

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

[**ST's Proposal**: The first issue you will be asked to decide is whether Purdue owns the '633 patent. In order to sue for patent infringement, Purdue must prove by a preponderance of the evidence that it was the sole owner of the '633 patent when it filed its complaint. Thus, you must determine whether Purdue has carried its burden to prove ownership of the '633 patent. In order to satisfy this requirement, Purdue must prove by a preponderance of the evidence that the '633 patent was assigned to it.] [15] [16]

[**Purdue's proposal**: The first issue] you will be asked to decide is whether ST has infringed any of the Asserted Claims of the '633 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. To prove infringement of a claim, Purdue must prove by a preponderance of the evidence that ST made, used, sold, or offered for sale in the United States, or imported into the United States, a product meeting all the requirements of that claim of the '633 Patent. I will provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

[**Purdue's proposal**: To prove induced infringement, Purdue must prove by a preponderance of the evidence that ST actively induced someone else to make, use, sell, or offer for sale in the United States, or import into the United States, a product meeting all the requirements of a claim of the '633 Patent and did so with specific intent to induce infringement. I will provide you with more detailed instructions on the requirements for inducement of infringement at the conclusion of the case.] [17] [18]

Another issue you will be asked to decide is whether each asserted claim of the '633 Patent is invalid. A patent when issued is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But the presumption of validity can be overcome if there is clear and convincing evidence presented in court that proves that the patent is invalid.

---

[15] *See Abbott Point of Care Inc. v. Epocal, Inc.,* 666 F.3d 1299, 1302 (Fed. Cir. 2012) (explaining that the plaintiff bringing a patent infringement action "has the burden to show necessary [patent] ownership rights to support standing to sue").

[16] Purdue opposes the inclusion of an instruction regarding ownership for the reasons stated above, *i.e.*, the issue is a question of law that will be resolved in Purdue's favor if the Court denies Defendants' pending motion to dismiss.

[17] ***Source***: Federal Circuit Bar Association Model Patent Jury Instructions § A.4 (2020) (with modifications); *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 156 at 16-17 (W.D. Tex. Apr. 4, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 170 at 11 (W.D. Tex. Sept. 27, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, at 11 (W.D. Tex.) (Preliminary Instructions).

[18] ST opposes Purdue's induced infringement instruction because Purdue has not alleged sufficient facts to support an inducement claim.

A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious. For a claim to be invalid because it is not new, ST must show, by clear and convincing evidence, that all of the elements of a claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent. We call these "prior art." If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious. Even if every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it is shown by clear and convincing evidence that it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the invention(s) of the Asserted Claims are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

A patent may also be invalid if its description in the specification does not meet certain requirements. To be valid, a patent must meet the "written description" requirement. In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as claimed in the claims of the issued patent. The disclosure of a patent must also meet the "enablement" requirement. To meet this requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the invention without undue experimentation, at the time the patent application was originally filed.

If you decide that any claim of the '633 patent has been infringed and is not invalid or subject to another defense, you will then need to decide any money damages to be awarded to Purdue to compensate it for the infringement. A damages award should put Purdue in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Purdue would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate Purdue and not to punish ST. You may not include in your award any additional amount as a fine or penalty in order to punish ST. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

**PRELIMINARY JURY INSTRUCTION NO. 7: PATENT CLAIMS**

[**Purdue's proposal**: Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. Therefore, what a patent covers collectively or as a whole depends on what each of its claims cover.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case.

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements. For example, a claim to "a table comprising a tabletop, legs, and glue" would cover a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.] [19] [20]

I have already determined the meaning of the claims of the '633 patent. You will be given a document reflecting those meanings. For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent. You are

---

[19] **Source**: Federal Circuit Bar Association Model Patent Jury Instructions § B.2 (2020); *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 156 at 9-10 (W.D. Tex. Apr. 4, 2022).

[20] ST opposes Purdue's proposal as too long and unnecessary, particularly given the agreed language in Preliminary Instruction No. 7 combined with Preliminary Instructions Nos. 3 and 4 and Final Instruction No. 15. Other cases show Purdue's language is not needed. *See, e.g.*, *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 170 at 10 (W.D. Tex. Sept. 27, 2021).

to apply my definitions of the terms I have construed throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

**PRELIMINARY JURY INSTRUCTION NO. 8: OUTLINE OF TRIAL**

The trial will begin shortly. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, Purdue will present its evidence in support of its contention that certain claims of the '633 Patent have been infringed by ST [**Purdue's proposal**: and that the infringement has been and continues to be willful]. To prove infringement of any claim, Purdue must persuade you that it is more likely than not that ST has infringed that claim. [**Purdue's proposal**: To persuade you that any infringement was willful, Purdue must also prove that it is more likely than not that the infringement was willful.]

ST will then present their evidence that the claims of the '633 Patent are invalid. To prove invalidity of any claim, ST must persuade you by clear and convincing evidence that the claim is invalid. In addition to presenting its evidence of invalidity, ST will put on evidence responding to Purdue's evidence of infringement [**Purdue's proposal**: and willfulness]. [21]

[**Purdue's proposal**: Purdue may then put on additional evidence responding to ST's evidence that the claims of the '633 Patent are invalid, and to offer any additional rebuttal evidence regarding infringement and willfulness. This is referred to as "rebuttal" evidence.] [22]

---

[21] ST opposes Purdue's willfulness instruction because Purdue has not alleged sufficient facts to support a willfulness claim.

[22] *Source*: Federal Circuit Bar Association Model Patent Jury Instructions § A.5 (2020); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 170 at 9 (W.D. Tex. Sept. 27, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, at 12-13 (W.D. Tex.) (Preliminary Instructions).

[**ST's proposal**: Purdue may then put on additional evidence responding to ST's evidence that the claims of the '633 patent are invalid. This is referred to as "rebuttal" evidence.] [23]

[**Purdue's proposal**: During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show. The attorneys' comments are not evidence, and the attorneys are being allowed to comment solely for the purpose of helping you to understand the evidence.] [24] [25]

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.

---

[23] Adapted from *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 170 at 12 (W.D. Tex. Sept. 27, 2021).

[24] Purdue submits that transitional statements help the jury follow along the trial presentation.

[25] ST opposes this proposed paragraph because, aside from opening and closing statements, attorneys are not "allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show." The proposed language is imprecise and confusing.

## PRELIMINARY JURY INSTRUCTION NO. 9: EVIDENCE[26]

The evidence you will hear consists of the testimony of the witnesses, the documents, and other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven. Nothing else is evidence.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you will hear in this case, whether direct, circumstantial, or any combination.

In judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you will receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

Objections to questions are not evidence. The attorneys that are seated in front of you may object if they believe that documents or testimony that is attempted to be offered into evidence are improper under the rules of evidence. My legal rulings are not evidence. My comments and questions are not evidence. The notes taken by any juror are not evidence.

You should never be influenced by my ruling on any objection. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here, and nothing else.

---

[26] **Source**: Fifth Circuit Pattern Jury Instructions (Civil Cases), § 3.3, 2020 Ed. (with revisions through June 2020); *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 156 at 18-19 (W.D. Tex. Apr. 4, 2022); *EcoFactor. Inc. v. Google LLC*, No. 6:20-cv-00075-ADA, Dkt. 169-7 at 17 (W.D. Tex. Jan. 7, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 170 at 13 (W.D. Tex. Sept. 27, 2021).

**PRELIMINARY JURY INSTRUCTION NO. 10: WITNESSES AND WITNESS CREDIBILITY**

[**Purdue's proposal**: You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some time the witness said or did something or failed to say or do something that was different from the testimony given at trial.

A simple mistake by a witness does not necessarily mean that a witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness has made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. This instruction applies to the testimony of all witnesses.][27]

[**ST's Proposal**: No jury instruction at this time.][28]

---

[27] ***Source***: Fifth Circuit Pattern Jury Instructions (Civil Cases), § 3.4, 2020 Ed. (with revisions through June 2020); *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 156 at 20 (W.D. Tex. Apr. 4, 2022).

[28] ST opposes this instruction as too long and unnecessary. The jurors do not need to be preconditioned about judging credibility; proposed Final Instruction No. 3 is enough.

**PRELIMINARY JURY INSTRUCTION NO. 11: DEPOSITION TESTIMONY**[29]

Certain testimony may be presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers may be shown to you.

Deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

---

[29] ***Source***: Fifth Circuit Pattern Jury Instructions (Civil Cases), § 2.13, 2020 Ed. (with revisions through June 2020); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 170 at 14 (W.D. Tex. Sept. 27, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, at 19 (W.D. Tex.) (Preliminary Instructions).

**PRELIMINARY JURY INSTRUCTION NO. 12: EXPERT TESTIMONY**

[**Purdue proposal:** Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.] [30]

[**ST's Proposal**: No jury instruction at this time.] [31]

---

[30] **Source**: *EcoFactor. Inc. v. Google LLC*, No. 6:20-cv-00075-ADA, Dkt. 209 at 8 (W.D. Tex. Feb. 10, 2022); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 6 (W.D. Tex. Oct. 14, 2020). The jury should be instructed on expert testimony at this stage given that many experts will be testifying over the course of trial.

[31] ST opposes this instruction as unnecessary. Final Instruction No. 5 is enough.

**PRELIMINARY JURY INSTRUCTION NO. 13: JURY NOTEBOOKS[32]**

I will now instruct the court security officer to pass out your juror notebooks. I ask that you write your name on your notebook. It is important that we not get them confused. As you leave to take a break or at the end of the day, please leave your notebook in the jury room. I ask you to do that because I do not want anyone losing their notebook.

Your juror notebook is to assist in your deliberation. Inside, you will find:

- Paper for notes;
- A copy of the '633 Patent;
- The Court's claim constructions for certain claim terms;
- Glossary of patent terms; and
- Witness photographs on pages with space to take notes.

These materials have been jointly submitted by the parties. Please refer to these materials to assist you during trial. If you have not done so already, please ensure that you have written your name on your jury notebook.

---

[32] **Source**: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 159 at 25 (W.D. Tex. Apr. 4, 2022); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, at 5 (W.D. Tex.) (Preliminary Instructions); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, at 5 (W.D. Tex.) (Preliminary Instructions).

# Final Jury Instructions

**FINAL JURY INSTRUCTION NO. 1: JURY CHARGE**[33]

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

Each of you is going to have your own printed copy of these final jury instructions that I am giving you now, so there is really no need for you to take notes unless you want to.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for Purdue or ST in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

---

[33] *Source*: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 2 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 2 (W.D. Tex. Oct. 6, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 2-3 (W.D. Tex. Jun. 22, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 3 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 1-2 (W.D. Tex. Apr. 9, 2021).

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result.

Again, your answers and your verdict must be unanimous.

**FINAL JURY INSTRUCTION NO. 2: EVIDENCE**[34]

The evidence you are to consider consists of the testimony of the witnesses, the documents, and other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven. Nothing else is evidence.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you hear in this case, whether direct, circumstantial, or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

The lawyers' statements and arguments are not evidence. The lawyers' questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence. The notes taken by any juror are not evidence.

During the trial I may not have let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. Further, sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record. You must follow my rulings and completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

You should never be influenced by my ruling on any objection. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

---

[34] **Source**: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 4-5 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 3 (W.D. Tex. Oct. 6, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 5-6 (W.D. Tex. Jun. 22, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 4 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 4-5 (W.D. Tex. Apr. 9, 2021).

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here, and nothing else.

**FINAL JURY INSTRUCTION NO. 3: WITNESSES AND WITNESS CREDIBILITY**[35]

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some time the witness said or did something or failed to say or do something that was different from the testimony given at trial.

A simple mistake by a witness does not necessarily mean that a witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness has made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. This instruction applies to the testimony of all witnesses.

---

[35] **Source**: *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 4 (W.D. Tex. Oct. 6, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 7-8 (W.D. Tex. Jun. 22, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 5 (W.D. Tex. May 19, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 4-5 (W.D. Tex. Oct. 14, 2020).

**FINAL JURY INSTRUCTION NO. 4: DEPOSITION TESTIMONY[36]**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you. This deposition testimony is entitled to the same consideration and is weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

---

[36] *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 5 (W.D. Tex. Oct. 6, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 8-9 (W.D. Tex. Jun. 22, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 9 (W.D. Tex. Apr. 9, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 6-7 (W.D. Tex. Oct. 14, 2020).

**FINAL JURY INSTRUCTION NO. 5: EXPERT TESTIMONY**[37]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

---

[37] **Source**: *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 6 (W.D. Tex. Oct. 6, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 10 (W.D. Tex. Jun. 22, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 6 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 10 (W.D. Tex. Apr. 9, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 6 (W.D. Tex. Oct. 14, 2020).

**FINAL JURY INSTRUCTION NO. 6: NO INFERENCE FROM FILING SUIT**[38]

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

---

[38] *EcoFactor. Inc. v. Google LLC*, No. 6:20-cv-00075-ADA, Dkt. 209 at 9 (W.D. Tex. Feb. 10, 2022).

**FINAL JURY INSTRUCTION NO. 7: STIPULATIONS OF FACT**[39]

A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

---

[39] **Source**: *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 8 (W.D. Tex. Oct. 6, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 7 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 11 (W.D. Tex. Apr. 9, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 8 (W.D. Tex. Oct. 14, 2020).

**FINAL JURY INSTRUCTION NO. 8: LIMITING INSTRUCTION**[40]

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

---

[40] **Source**: *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 2 (W.D. Tex. Oct. 6, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 8 (W.D. Tex. May 19, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 8 (W.D. Tex. Oct. 14, 2020).

**FINAL JURY INSTRUCTION NO. 9: CHARTS AND SUMMARIES**[41]

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts unless I specifically admit a chart or summary into evidence. You should determine the facts from the evidence.

---

[41] ***Source***: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 5 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 10 (W.D. Tex. Oct. 6, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 9 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 6 (W.D. Tex. Apr. 9, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 8-9 (W.D. Tex. Oct. 14, 2020).

**FINAL JURY INSTRUCTION NO. 10: DEMONSTRATIVE EXHIBITS**[42]

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence. We call these types of exhibits "demonstrative exhibits." Demonstrative exhibits are a party's description, picture, or model used to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.

---

[42] ***Source***: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 5 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 11 (W.D. Tex. Oct. 6, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 10 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 7 (W.D. Tex. Apr. 9, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 9 (W.D. Tex. Oct. 14, 2020).

**FINAL JURY INSTRUCTION NO. 11: BIAS—CORPORATE PARTY INVOLVED**

[**ST's proposal**: Do not let bias, prejudice, or sympathy play any part in your deliberations. Whether you are familiar with one party or the other should not play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.] [43]

[**Purdue's proposal:** Purdue submits that this instruction is not necessary.] [44]

---

[43] ST proposes this instruction as an appropriate reminder to be impartial. *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA, Dkt. 215 at 12 (W.D. Tex. Sept. 23, 2022).
[44] Purdue submits that this instruction is unnecessary and risks commenting on the parties and/or evidence.

**FINAL JURY INSTRUCTION NO. 12: BURDENS OF PROOF**

[**Purdue's proposal** (one instruction covering both burdens):

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on Purdue for some issues and on ST for other issues. There are two burdens of proof that you will apply in this case. One is the preponderance of the evidence, and the other is clear and convincing evidence.

Purdue has the burden of proving patent infringement, willfulness, [45] and damages by a preponderance of the evidence.

A preponderance of the evidence means to prove something is more likely than not – i.e., evidence that persuades you that a claim is more likely true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony. You may think of this preponderance of the evidence standard as slightly greater than 50%.

ST has the burden of proving invalidity by clear and convincing evidence.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established. It is evidence so clear, direct, weighty, and convincing as to enable you to come to a clear conviction without hesitancy.

These standards are different from what you have heard about in criminal proceedings, where a fact must be proven beyond a reasonable doubt. On a scale of the various standards of proof, as you move from preponderance of the evidence where proof need be only sufficient to tip the scales in favor of the party proving the fact, to at the other end, beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you can think of clear and convincing evidence as being between those two standards.] [46]

[**ST's Proposal** (two instructions + ownership):

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof."

Purdue has the burden of proving ownership of the '633 patent, patent infringement, and damages by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

---

[45] ST opposes Purdue's willfulness instruction because Purdue has not alleged sufficient facts to support a willfulness claim.

[46] *Source*: *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 13-14 (W.D. Tex. Oct. 6, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 12 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 13-14 (W.D. Tex. Apr. 9, 2021).

ST has the burden of proving patent invalidity by clear and convincing evidence.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established. It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy.

The "clear and convincing evidence" standard is different from what you have heard about in criminal proceedings, where a fact must be proven beyond a reasonable doubt. On a scale of the various standards of proof, as you move from preponderance of the evidence where proof needs to be sufficient to tip the scales in favor of the party proving the fact, to at the other end, beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you can think of clear and convincing evidence as being between these two ends of the spectrum or these two different standards.] [47]

---

[47] ST contends that it is helpful to separate out these important standards into two separate instructions. *See EcoFactor. Inc. v. Google LLC*, No. 6:20-cv-00075-ADA, Dkt. 209 at 16 (W.D. Tex. Feb. 10, 2022) (clear-and-convincing evidence instruction separate from immediately preceding preponderance instruction); *see also Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA, Dkt. 215 at 13 (W.D. Tex. Sept. 23, 2022) (source of preponderance instruction proposed above).

**FINAL JURY INSTRUCTION NO. 13: SUMMARY OF CONTENTIONS**[48]

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Purdue seeks money damages from ST for allegedly infringing the '633 Patent by making, using, selling, offering for sale, or importing products that Purdue argues are covered by claims 9 and 10 of the '633 Patent. These are the "Asserted Claims" of the '633 Patent.

[**Purdue's proposal**: Purdue also argues that ST have willfully infringed the '633 Patent and actively induced infringement of the Asserted Claims by others including their customers, resellers, and/or distributors. [49]

The products that are alleged to infringe are ST's SiC MOSFETs. [50]

ST denies that they have infringed the Asserted Claims of the '633 Patent and argue that the Asserted Claims are invalid.

Your job is to decide whether ST has infringed the Asserted Claims of the '633 Patent and whether any of the Asserted Claims of the '633 Patent are invalid. If you decide that an Asserted Claim of the '633 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Purdue to compensate it for ST's infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.] [51]

[**ST's proposal**: ST contends that Purdue does not own the '633 patent because the patent was not properly assigned to Purdue. ST also denies that it has infringed the Asserted Claims of the '633 patent and argues that the Asserted Claims are invalid and that other defenses apply.

---

[48] *Source*: *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 15 (W.D. Tex. Oct. 6, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 13 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 16-17 (W.D. Tex. Apr. 9, 2021).

[49] ST opposes Purdue's induced infringement instruction because Purdue has not alleged sufficient facts to support an inducement claim. ST also opposes Purdue's willfulness instruction because Purdue has not alleged sufficient facts to support a willfulness claim.

[50] ST opposes Purdue's use of open-ended shorthand for the accused products. At this stage of the case, Purdue must identify specific products by part numbers—in an exhibit, if necessary. *See* Federal Circuit Bar Association Model Patent Jury Instructions § A.2 (2020) ("The [products] . . . that are alleged to infringe are [list of accused products or methods].").

[51] *Source*: *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 15 (W.D. Tex. Oct. 6, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 13 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 16-17 (W.D. Tex. Apr. 9, 2021).

You must first decide whether Purdue owns the '633 patent. If you decide Purdue owns the '633 patent, then you must decide whether ST has infringed the Asserted Claims of the '633 patent, whether any of the Asserted Claims of the '633 patent are invalid, and whether ST's other defenses apply. If you decide that any claim of the '633 patent has been infringed and is not invalid or subject to another defense, you will then need to decide any money damages to be awarded to Purdue to compensate it for the infringement (assuming you decided that it owns the '633 patent).]
[52]

---

[52] Adapted from *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 15 (W.D. Tex. Oct. 6, 2021). *See also Abbott Point of Care Inc. v. Epocal, Inc.¸* 666 F.3d 1299, 1302 (Fed. Cir. 2012) (explaining that the plaintiff bringing a patent infringement action "has the burden to show necessary [patent] ownership rights to support standing to sue").

ST's proposal offers a more systematic, step-by-step account of the issues the jury will have to decide, including the key issue of patent ownership.

**JURY INSTRUCTION NO. 14: PATENT OWNERSHIP**

[**Purdue's proposal** (to the extent one is needed): You must decide in this case is whether Purdue has proven by a preponderance of evidence that it is the sole owner of the '633 patent. In order to meet this requirement, Purdue must prove by a preponderance of evidence that the '633 patent was assigned to it.

A person or entity may purchase or obtain a patent from another, making them a successor-in-title. A patent can only be assigned by a written instrument. A transfer of the "entire interest" of a patentee in a patent is well known to mean a full assignment of the patent—i.e., transfer of title. Under general contract principles, an agreement to assign a patent is created if the patentee expresses a clear intent to assign its rights to another. In an assignment such as this, the assignor is the only party making representations, warranties, covenants, and the like. In other words, the only party that needed to have signed the assignment is the party making the assignment. In this case, Purdue Research Foundation was the assignor and Purdue University is the assignee.][53]

[**ST Proposal:** The first issue you must decide in this case is whether Purdue has proven by a preponderance of evidence that it is the sole owner of the '633 patent. In order to meet this requirement, Purdue must prove by a preponderance of evidence that the '633 patent was assigned to it.

A person or entity may purchase or obtain a patent from another, making them a successor-in-title. A patent can only be assigned by a written instrument. The written assignment must be signed by the assignor or otherwise show clear consent by the assignor to give its patent rights to the successor-in-title.

When employees and/or officials of a state or local governmental body, including public educational institutions created pursuant to Indiana law such as Purdue University, enter into a contract without the authority to do so, the contract is void.][54]

---

[53] *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1370 (Fed. Cir. 2008); *Patriot Universal Holdings, LLC v. Formax, Inc.*, 24 F. Supp. 3d 802, 804 (E.D. Wis. 2014); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 198 F. Supp. 3d 366, 377 (D. Del. 2016). Further, standing is a question of law. If the Court denies ST's Motion to Dismiss, the issue is resolved in Purdue's favor as a matter of law and need not be sent to the jury. Sending the issue to the jury requires discussion of Indiana law. Purdue reserves the right to propose such a jury instruction.

[54] Adapted from *Abbott Point of Care Inc. v. Epocal, Inc.¸* 666 F.3d 1299, 1302 (Fed. Cir. 2012) (explaining that the plaintiff bringing a patent infringement action "has the burden to show necessary [patent] ownership rights to support standing to sue"); *Zeiss v. Nikon Corp.*, No. 2:17-cv-07083, Dkt. 511 at 12, 13, 18 (C.D. Cal. Dec. 13, 2018); 35 U.S.C. § 261; *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 198 F. Supp. 3d 366, 377 (D. Del. 2016); *cf. Banks v. Unisys Corp.*, 228 F.3d 1357, 1359–60 (Fed. Cir. 2000). Sources of third paragraph: *Froeschke v. City of Vincennes*, No. 42C01 1105 PL 246, 2012 WL 8133613, at *3–4 (Ind. Cir. Dec. 20, 2012) (when city official without authority enters into contract with company, contract is void); *Rockwell v. MSD Southwest Allen Cnty.*, 737 N.E.2d

**FINAL JURY INSTRUCTION NO. 15: PATENT CLAIMS**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim- by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid (for instance, because it only involves elements that were well-understood, routine, and conventional). [55]

 The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. [**Purdue's proposal**: It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.] [56] [**ST's proposal**: It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and whether the

---

[55] Purdue opposes any instructions related to whether the patents are "well-understood, routine, or conventional" because Defendants have no evidence, including expert testimony, regarding any Section 101 defense.

829, 832–34 (Ind. Ct. App. 2000) (when school official without authority enters into contract with individual, contract is void); *Peck-Williamson Heating & Ventilating Co. v. Steen Sch. Tp. of Knox Cnty.*, 66 N.E. 909, 910 (Ind. Ct. App. 1903) (when township trustee without authority enters into contract with company, contract is void).

[56] **Source**: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 8-10 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 16-17 (W.D. Tex. Oct. 6, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 14-15 (W.D. Tex. May 19, 2021).

claims are invalid (for instance, because the claims are well-understood, routine, and conventional).] [57] [58]

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

[**Purdue's proposal**: The use of the terms "a" or "an" in a claim is a term of art, which has a special meaning in the context of a patent claim. When used in a claim, the terms "a" or "an" mean "one or more."]. [59]

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, [**Purdue's proposal**: such as infringement and invalidity] [60] [**ST's proposal**: such as infringement and invalidity, including patent eligibility.] [61] [62]

These issues are yours to decide.

[Purdue's proposal:

| Term | Construction |
|------|-------------|
| "double-implanted metal-oxide semiconductor field effect transistor" | The preamble is limiting. |

---

[57] Adapted from *VideoShare, LLC v. Google LLC et al.*, No. 6:19-cv-663-ADA, Dkt. 215 at 18–19 (W.D. Tex. Nov. 15, 2021).

[58] Purdue opposes any instructions related to whether the patents are "well-understood, routine, or conventional" because Defendants have no evidence, including expert testimony, regarding any Section 101 defense. Defendants have not adduced any facts or testimony to support a Section 101 defense.

[59] ST opposes this paragraph as unnecessary.

[60] The jury has not been instructed thus far on conventionality. It would be confusing at this point. Further, the Court's constructions should be stated verbatim as they were ordered, without the parties' gloss or "construction of the construction."

[61] Adapted from *VideoShare, LLC v. Google LLC et al.*, No. 6:19-cv-663-ADA, Dkt. 215 at 18–19 (W.D. Tex. Nov. 15, 2021). ST also proposes a separate instruction on patent eligibility, which addresses conventionality.

[62] Purdue opposes any instructions related to patent eligibility because Defendants have no evidence, including expert testimony, regarding any Section 101 defense. Defendants have not adduced any facts or testimony to support a Section 101 defense.

| Term | Construction |
|---|---|
| '633 Patent, Cl. 9 | |
| "less than about three micrometers"<br><br>'633 Patent, Cl. 9 | Plain and ordinary meaning. |

[ST's proposal

| Term | Construction [63] |
|---|---|
| "double-implanted metal-oxide semiconductor field effect transistor" | This language specifies the type of device that claim 9 covers |

---

[63] ST contends that Purdue's proposal regarding "less than about three micrometers" is unnecessary. ST contends that its proposal on "double-implanted metal-oxide semiconductor field effect transistor" reflects the Court's claim construction opinion and will be clearer to the jury. *See Trs. of Purdue Univ v. STMicroelectronics N.V.*, No. 6:21-cv-00727-ADA, Dkt. 220 at 21–22, 31–32 (W.D. Tex. Dec. 14, 2022).

**FINAL JURY INSTRUCTION NO. 16: INDEPENDENT AND DEPENDENT CLAIMS[64]**

This case involves two types of patent claims: independent and dependent claims.

An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim 9 of the '633 Patent is an independent claim.

Claim 10 is a "dependent claim." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

---

[64] **Source**: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 7 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 19 (W.D. Tex. Oct. 6, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 16 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 20 (W.D. Tex. Apr. 9, 2021).

**FINAL JURY INSTRUCTION NO. 17: INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not Purdue has proven that ST has infringed the '633 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

A patent owner has the right to prevent others from using the invention covered by his or her patent claims in the United States during the life of the patent. If any person makes, uses, sells, or offers to sell within the United States or imports into the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have defined each of them, to the accused system or process, and determine whether or not there is infringement. You should not compare the accused system or process with any specific example set out in the patent or with the prior art in reaching your decision on the issue of infringement. The only correct comparison is with the language of a claim itself, as I have explained its meaning to you. You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

[**Purdue's proposal**: In this case, there are two possible ways that a claim may be infringed: (1) direct infringement; and (2) active inducement. Inducement is referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. In this case, Purdue alleges that ST-International and ST-Inc directly infringe the '633 Patent. In addition, Purdue alleges that ST-International actively induces others, including ST-Inc and ST's distributors, to directly infringe the '633 Patent.

In order to prove infringement, Purdue must prove that the requirements for one or more types of infringement are met by a preponderance of the evidence; that is, that it is more likely than not that all of the requirements of infringement have been proven.

I will now explain direct infringement and inducement in more detail.] [65] [66]

[**ST's proposal**: In this case, Purdue alleges that ST directly infringed the '633 patent.

In order to prove infringement, Purdue must prove that the requirements for direct infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of infringement have been proved.

---

[65] ***Source***: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 12 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 20 (W.D. Tex. Oct. 6, 2021); *MV3 Partners, LLC v. Roku, Inc*., No. 6:18-cv-00308-ADA, Dkt. 379 at 17-19 (W.D. Tex. Oct. 14, 2020).
[66] ST opposes Purdue's induced infringement instruction because Purdue has not alleged sufficient facts to support an inducement claim.

I will now explain direct infringement in more detail.] [67]

---

[67] Adapted from *VideoShare, LLC v. Google LLC et al.*, No. 6:19-cv-663-ADA, Dkt. 215 at 21 (W.D. Tex. Nov. 15, 2021) and *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 20 (W.D. Tex. Oct. 6, 2021). *See also Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 374–75 (2017) ("What a patent adds—and grants exclusively to the patentee—is a limited right to prevent others from engaging in . . . practices" including "us[ing], sell[ing], or import[ing] an item").

**FINAL JURY INSTRUCTION NO. 18: DIRECT INFRINGEMENT—LITERAL INFRINGEMENT[68]**

In order to prove direct infringement by literal infringement, Purdue must prove by a preponderance of the evidence, *i.e.*, that it is more likely than not, that ST made, used, sold, or offered for sale within the United States a product that meets all of the requirements of a claim and did so without the permission of Purdue during the time the '633 patent was in force. For each Asserted Claim, you must compare the Accused Products with each and every one of the requirements of that claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each Asserted Claim, whether or not there is infringement. There may be infringement as to one claim but no infringement as to another claim. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed.

---

[68] **Source**: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 13 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 21 (W.D. Tex. Oct. 6, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 16 (W.D. Tex. Jun. 22, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 26 (W.D. Tex. Apr. 9, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 19-21 (W.D. Tex. Oct. 14, 2020).

**FINAL JURY INSTRUCTION NO. 19: DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**[69]

If a company makes, uses, sells, offers to sell within, or imports into the United States a product that does not meet all of the requirements of a claim and thus, does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim "under the doctrine of equivalents."

Under the doctrine of equivalents, a product infringes a claim if the accused products contain elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused products. You may find that an element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement for the claim that is not literally present. [**Purdue's Proposal**: Known interchangeability of the claim element is a factor that can support a finding of infringement under the doctrine of equivalents.] [**ST's proposal**: In order for the structure to be considered interchangeable, the structure must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient.] [70] In order to prove infringement by "equivalents," Purdue must prove the equivalency of the structure to the claim element by a preponderance of the evidence.

---

[69] Adapted from *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 21–22 (W.D. Tex. Oct. 14, 2020).

[70] ST's proposal adds important detail. Adapted from *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 21–22 (W.D. Tex. Oct. 14, 2020). ST opposes Purdue's addition because it does not appear in this Court's instruction in *MV3*.

**FINAL JURY INSTRUCTION NO. 20: INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT**

**[Purdue's proposal:** Purdue alleges that ST is liable for infringement by actively inducing their customers, resellers (including ST-Inc) and/or distributors to directly infringe the '633 Patent. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

ST is liable for active inducement of a claim only if Purdue proves by a preponderance of the evidence:

(1) that the acts are actually carried out by ST-International and ST-Inc' s customers, resellers and/ or distributors directly infringe that claim;

(2) that ST-International and ST-Inc took action that was intended to cause and led to the infringing acts by their customers, resellers and/or distributors; and

(3) that ST-International and ST-Inc were aware of the '633 Patent and knew that the acts, if taken, would constitute infringement of that patent, or that ST-International and ST-Inc believed there was a high probability that the acts by their customers, resellers and/or distributors infringed the '633 Patent and took deliberate steps to avoid learning of that infringement, in other words, willfully blinded themselves to the infringing nature of the direct infringers' acts.

In order to establish active inducement of infringement, it is not sufficient that ST-International and ST-Inc's customers, resellers and/or distributors themselves directly infringe the claim. Nor is it sufficient that ST-International and ST-Inc were aware of the act(s) by their customers, resellers and/or distributors that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that ST-International and ST-Inc specifically intended their customers, resellers and/or distributors to infringe the '633 Patent or that ST-International and ST-Inc believed there was a high probability that their customers, resellers and/ or distributors would infringe the '633 Patent, but deliberately avoided learning the infringing nature of those customers, resellers and/or distributors' acts. The mere fact, if true, that ST-International and ST-Inc knew or should have known that there was a substantial risk that their customers, resellers and/ or distributors' acts would infringe the '633 Patent would not be sufficient to support a finding of active inducement of infringement.] [71]

**[ST's proposal:** No instruction.] [72]

---

[71] ***Source***: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 14 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 22 (W.D. Tex. Oct. 6, 2021); *MV3 Partners, LLC v. Roku, Inc*., No. 6:18-cv-00308-ADA, Dkt. 379 at 22-23 (W.D. Tex. Oct. 14, 2020).
[72] ST opposes Purdue's induced infringement instruction because Purdue has not alleged sufficient facts to support an inducement claim.

**FINAL JURY INSTRUCTION NO. 21: WILLFUL INFRINGEMENT**

[**Purdue's proposal**: In this case, Purdue argues that ST willfully infringed claims 9 and 10 of the '633 patent. If you have decided that ST has infringed the Asserted Claims, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether Purdue proved that it is more likely than not that ST knew of the '633 patent and that ST infringed intentionally. That is, you may find ST's infringement was willful if it knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid patent. You may not determine that the infringement was willful just because ST was aware of the '633 patent and you found infringement.

To determine whether ST acted willfully, consider all facts and assess ST's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited to:

(1) whether or not ST acted consistently with the standards of behavior for its industry;

(2) whether or not ST intentionally copied a product of Purdue that is covered by the Asserted Claims of the '633 patent;

(3) whether or not ST reasonably believed they did not infringe or that the patent was invalid;

(4) whether or not ST made a good-faith effort to avoid infringing the Asserted Claims of the '633 patent, for example, whether ST attempted to design around the Asserted Claims of the '633 patent; and

(5) whether or not ST tried to cover up their infringement.] [73]

[**ST's proposal:** No instruction.] [74]

[73] **Source**: *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 23 (W.D. Tex. Oct. 6, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 18 (W.D. Tex. Jun. 22, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 19 (W.D. Tex. May 19, 2021).
[74] ST opposes Purdue's willfulness instruction because Purdue has not alleged sufficient facts to support a willfulness claim.

**FINAL JURY INSTRUCTION NO. 22: INVALIDITY GENERALLY[75]**

I will now instruct you on the rules you must follow in deciding whether or not ST has proven that the asserted patent claims are invalid. To prove that any claim of a patent is invalid, ST must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid. As I explained to you before, the clear and convincing standard is a higher burden of proof than a preponderance of the evidence, but lower than the reasonable doubt standard in criminal cases.

---

[75] Adapted from *NCS Multistage Inc. v. TCO AS*, No. 6:20-cv-00622-ADA, Dkt. 272 at 16 (W.D. Tex. Aug. 25, 2022).

**FINAL JURY INSTRUCTION NO. 23: PRIOR ART[76]**

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the Asserted Claims are anticipated or obvious, [**ST's proposal**: and whether the '633 patent failed to claim patent-eligible subject matter].[77] [**ST's proposal**: Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

In this case, the parties agree that some but not all of ST's references constitute prior art to the '633 patent. A complete list of ST's references appears in Exhibit A.][78]

The parties dispute whether the following are prior art:

- A book entitled *Power MOSFETs in 4HSiC: Device Design and Technology* by A. Agarwal, S.-H. Ryu, and J. Palmour, called the 2003 Book for shorthand

- ST's silicon MOSFET products that included ST's AD6A die, called ST's AD6A products for shorthand.

You must determine whether each of the above is prior art that can be considered in determining whether the Asserted Claims of the '633 Patent are anticipated or obvious.

ST contends that the 2003 Book is prior art because it was described in a printed publication anywhere in the world more than a year before the priority date of the invention (discussed below in the date of invention instruction) [**ST's proposal**: January 23, 2006].[79] A description is a "printed publication" only if it was publicly accessible. **[Purdue's proposal:** The date on a publication, such as the copyright date, does not identify the date on which that publication was publicly accessible. ST bears the burden of proving by clear and convincing the date a prior art reference was publicly accessible.][80]

---

[76] ***Source***: Federal Circuit Bar Association Model Patent Jury Instructions § B.4.3a-2 (2020); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 25 (W.D. Tex. Oct. 6, 2021).

[77] Purdue opposes any instructions related to patent eligibility because Defendants have no evidence, including expert testimony, regarding any Section 101 defense. Defendants have not adduced any facts or testimony to support a Section 101 defense.

[78] ST proposes this language as helpful background. Adapted from *Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*, No. 6:20-cv-00018-ADA, Dkt. 226 at 21–22 (W.D. Tex. Nov. 4, 2021).

[79] ST proposes that the Court should decide the priority date, making Final Instruction No. 25 unnecessary.

[80] ST opposes Purdue's proposal. The end of this instruction already states that ST must prove by clear and convincing evidence that the 2003 Book and AD6A products are prior art. Moreover, because the public accessibility standard "consider[s] all of the facts and circumstances

[**Purdue's Proposal**: ST also contend that the AD6A system art is prior art because it was publicly used, sold, or offered for sale in the United States more than one year prior to the priority date of the invention. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.] [81]

[**ST' proposal**: ST contends that the AD6A products are prior art because they were publicly known or were used, sold, or offered for sale in the United States more than a year before the priority date of the invention (January 23, 2006). An invention is known when the information about it was reasonably accessible to the public on that date. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, *i.e.*, it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.] [82]

[**Purdue proposal**: In this case, you must determine the date of invention for the claimed invention. The date of invention is either when the invention was reduced to practice or when conceived, provided the inventors were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. A claimed invention is "reduced to practice" when it has been constructed, used,

---

surrounding the disclosure," *In re Lister*, 583 F.3d 1307, 1312 (Fed. Cir. 2009), the jury may consider the date on a publication, including the copyright date. Purdue's proposal wrongly suggests the jury should disregard the date on a publication.

[81] ***Source***: Federal Circuit Bar Association Model Patent Jury Instructions § B.4.3a-2 (2020); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 25 (W.D. Tex. Oct. 6, 2021).

[82] ST's proposal addresses the AD6A products being "known." ST also adds the following sentence: "An invention is known when the information about it was reasonably accessible to the public on that date." ST's proposed language is adapted from Federal Circuit Bar Association Model Patent Jury Instructions § B.4.3a-2 (2020) and *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 25 (W.D. Tex. Oct. 6, 2021).

or tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application that fully describes the invention.][83] [84]

ST must prove by clear and convincing evidence that the 2003 Book and AD6A products are prior art.

---

[83] Federal Circuit Bar Association Model Patent Jury Instructions § B.4.3a-2 (2020).

[84] ST opposes this paragraph based on ST's position to the Court that the priority date is January 23, 2006. All of ST's prior art is from more than one year before the 2006 date (*see* 35 U.S.C. § 102(b)), and any 2004 conception and reduction to practice is irrelevant.

**FINAL JURY INSTRUCTION NO. 24: PRIOR ART NOT CONSIDERED BY THE PTO**

[ST's proposal: When a party challenging the validity of a patent presents evidence that was not considered by the Patent Office examiners during the prosecution of the application and not cumulative of other evidence that was considered which resulted in the issued patent or claim affirmance on reexamination, such new evidence may be given more weight and may make it easier to satisfy the party's clear-and-convincing evidence burden.] [85]

[**Purdue's proposal**: Purdue objects to this instruction as prejudicial, confusing, misleading, and an inaccurate statement of the law. The clear and convincing evidentiary standard of proof applies irrespective of whether the prior art offered to invalidate the patent was considered by the PTO during the prosecution of the patent. That the evidence makes meeting the burden "easier" is confusing, misleading, and prejudicial.] [86]

---

[85] ST's proposed instruction is perfectly valid, as the Court recognized in *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, Dkt. 687 at 32 (W.D. Tex. Nov. 15, 2022). *See also NCS Multistage Inc. v. TCO AS*, No. 6:20-cv-00622-ADA, Dkt. 272 at 23–25 (W.D. Tex. Aug. 25, 2022).

[86] *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305, 86 U.S.P.Q.2d 1385, 1389 (Fed. Cir. 2008)

**FINAL JURY INSTRUCTION NO. 25: DATE OF INVENTION—PRIORITY TO PROVISIONAL APPLICATION[87]**

[**ST's proposal**: No instruction.][88]

A patent application can be provisional or nonprovisional. A provisional application is a temporary placeholder for a more substantive nonprovisional application to follow. The provisional application serves the purpose of setting a priority date for the claimed invention provided it contains a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the claimed invention. [**Purdue's proposal**: This priority date is then used to determine what qualifies as prior art for evaluating the question of whether the '633 Patent claims are invalid.] [**ST's alternative proposal (if there is an instruction)**: This priority date is then used to determine what qualifies as prior art for evaluating the question of whether the '633 patent claims are invalid (for instance, because they involve only technology that was well-understood, routine, and conventional).] [89] [90]

In this case, the nonprovisional application filing date for the '633 patent was January 23, 2006. Purdue also claims priority to a provisional application filed on January 21, 2005.

[**Purdue's proposal:**
In this case, the parties dispute the priority date of the '633 Patent. Specifically, ST contends that the priority date for the Asserted Claims of the '633 Patent is the filing date of its nonprovisional application, January 23, 2006, and that the Asserted Claims are not entitled to the filing date of the provisional application. Purdue contends that the priority date for the Asserted Claims is February 27, 2004 based on prior conception and reduction to practice, but in no event later than the filing date of the provisional application, January 21, 2005.]

[**ST's alternative proposal**: The parties agree that the priority date for the Asserted Claims is no later than the date of the January 23, 2006 application. Purdue contends that the priority date is the filing date of the earlier filed provisional application, January 21, 2005.] [91]

For the '633 Patent to be entitled to the priority date of the provisional application, Purdue has the burden of providing evidence that the provisional application satisfies both the written description

---

[87] ***Source***: *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 26-27 (W.D. Tex. Oct. 6, 2021).

[88] ST proposes that the Court should decide the priority date issue.

[89] Adapted from *VideoShare, LLC v. Google LLC et al.*, No. 6:19-cv-663-ADA, Dkt. 215 at 24 (W.D. Tex. Nov. 15, 2021).

[90] Purdue opposes any instructions related to whether the patents are "well-understood, routine, or conventional" because Defendants have no evidence, including expert testimony, regarding any Section 101 defense.

[91] Adapted from *VideoShare, LLC v. Google LLC et al.*, No. 6:19-cv-663-ADA, Dkt. 215 at 24 (W.D. Tex. Nov. 15, 2021).

and enablement requirements, which I will explain below. If Purdue does so, ST has the burden of showing by clear and convincing evidence that the provisional application does not meet **[ST's alternative proposal**: either of] those two requirements.

Note that the written description and enablement requirements are relevant both to deciding the priority date and to ST's overall invalidity defenses.

I will now talk a little about each of these two requirements.

**FINAL JURY INSTRUCTION NO. 26: WRITTEN DESCRIPTION**

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed invention as of the patent's effective filing date.

ST contends that the asserted claims are invalid because the specification does not contain an adequate written description of the invention. To succeed, defendants must show by clear and convincing evidence that a person having ordinary skill in the field on the effective filing date of January 23, 2006, reading the specification would not understand that it describes the full scope of the invention as it is finally claimed in the Asserted Claims of the '633 and the named inventors were in possession of the full scope of the claimed invention. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date.

[**Purdue's proposal**: The patent must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the provisional application discloses. It is not sufficient that the provisional application discloses only enough to make the claimed invention obvious to the person having ordinary skill.] [92] [93]

[**ST's proposal**: The specification must describe the full scope of the claimed invention, including each element thereof. Your assessment regarding written description is limited to the "four corners" of the specification.] [94]

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, *etc.*, contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention. However, a mere wish or plan for obtaining the claimed invention is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

---

[92] Adapted from *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-00511-ADA, Dkt. 241 at 21–22 (W.D. Tex. June 21, 2021). ST objects to this paragraph because it feels that Purdue has not adequately alleged inherency, but (1) that is false and (2) the jury should be instructed on the full scope of the law.

[93] ST contends that Purdue's proposed paragraph is improper because Purdue has not adequately alleged or supported an inherency argument.

[94] Adapted from *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-00511-ADA, Dkt. 247 at 21–22 (W.D. Tex. June 22, 2021).

**FINAL JURY INSTRUCTION NO. 27: ENABLEMENT**[95]

The patent law contains certain requirements for the part of the patent called the specification. One of those requirements is called the enablement requirement. ST contends that the Asserted Claims are invalid because the specification does not "enable" the full scope of the claimed invention. [**ST's proposal**: If a patent claims an entire class of processes, machines, manufactures, or compositions of matter, the patent's specification must enable a person skilled in the art to make and use the entire class. In other words, the more one claims, the more one must enable.] [96][97] To succeed, ST must show by clear and convincing evidence that the patent specification does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of January 23, 2006, without undue experimentation. If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

1.  the time and cost of any necessary experimentation;

2.  how routine any necessary experimentation is in the field of the patented invention;

3.  whether the patent discloses specific working examples of the claimed invention;

4.  the amount of guidance presented in the patent;

5.  the nature and predictability of the field of the patented invention;

6.  the level of ordinary skill in the field of the patented invention; and

7.  the nature and scope of the claimed invention.

No one or more of these factors is necessarily enough. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of

---

[95] Adapted from *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-00511-ADA, Dkt. 247 at 23–24 (W.D. Tex. June 22, 2021).

[96] *See Amgen Inc. v. Sanofi*, 143 S. Ct. 1243, 1254 (2023) ("If a patent claims an entire class of processes, machines, manufactures, or compositions of matter, the patent's specification must enable a person skilled in the art to make and use the entire class. In other words, the specification must enable the full scope of the invention as defined by its claims. The more one claims, the more one must enable.").

[97] Purdue objects to this portion of the instruction because there is no allegation or opinion that the Asserted Claims fall into the genus/species type of claiming as address in *Amgen*. Defendants' expert does not allege in her report that the claims cover an entire class of SiC MOSFETs.

this invention and the state of the art at the time of the effective filing date, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

## JURY INSTRUCTION NO. 28: ANTICIPATION[98]

[**ST's proposal**: Once you have determined that a reference is prior art, *i.e.* that it came before the '633 patent, then you must decide whether that reference invalidates the asserted patent claims.][99] In order for someone to be entitled to a patent, the invention must actually be "new." ST contends that Asserted Claims 9 and 10 are invalid because the claimed inventions are anticipated, that is not new. ST must convince you of this by clear and convincing evidence, *i.e.*, that the evidence highly probably demonstrates that the claims are invalid.

Specifically, ST contends that the following pieces of prior art anticipate one or both of the asserted patent claims 9 and 10:

> The 2003 Book I identified in the prior art instruction.

> U.S. Pat. Publication No. US 2002/0038891A1 listing as inventors Sei-Hyung Ryu, Anant Agarwal, Mrinal Das, Lori Lipkin, John Palmour, and Ranbir Singh, called the 2002 Patent Publication for shorthand.

Anticipation must be determined on a claim-by-claim basis. ST must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate a claim, the prior art does not have to use the same words as the claim, but all requirements of the claim must have been disclosed and arranged as in the claim. You must determine whether the claim requirements are disclosed expressly, such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

[**ST's proposal**: Where ST is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may give more weight to that prior art when considering whether ST has carried its clear-and-convincing burden of proving invalidity.][100] [**Purdue's proposal**: Purdue objects to this instruction as prejudicial, confusing, misleading, and an inaccurate statement of the law. The clear and convincing evidentiary standard of proof applies irrespective of whether the prior art offered to invalidate the patent was considered by the PTO during the prosecution of the patent. That the evidence makes meeting the burden "easier" is confusing, misleading, and prejudicial.][101]

---

[98] ***Source***: *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 28 (W.D. Tex. Oct. 6, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 22-23 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 30 (W.D. Tex. Apr. 9, 2021).

[99] Adapted from *NCS Multistage Inc. v. TCO AS*, No. 6:20-cv-00622-ADA, Dkt. 272 at 23–25 (W.D. Tex. Aug. 25, 2022).

[100] ST's proposed instruction is perfectly valid, as the Court recognized in *NCS Multistage Inc. v. TCO AS*, No. 6:20-cv-00622-ADA, Dkt. 272 at 23–25 (W.D. Tex. Aug. 25, 2022). *See also VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, Dkt. 687 at 32 (W.D. Tex. Nov. 15, 2022).

[101] *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305, 86 U.S.P.Q.2d 1385, 1389 (Fed. Cir. 2008)

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

**FINAL JURY INSTRUCTION NO. 29: OBVIOUSNESS**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent before the filing date of the patent.

[**Purdue's proposa**l: ST may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time of the invention in the field of the silicon carbide DMOSFETS.]

[**ST's proposal**:

ST may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the patent was filed in the field of semiconductor devices." [102]

ST alleges one or both of the asserted patent claims are obvious over the following references or combinations of references:

The 2003 Book I identified in the prior art and anticipation instructions.

The 2002 Patent Publication I identified in the anticipation instruction.

The 2003 Book with either the 2002 Patent Publication or an abstract entitled *Design and Process Issues for Silicon Carbide Power DiMOSFETs* by Sei-Hyung Ryu, Anant K. Agarwal and John W. Palmour from a conference in Boston in the year 2000, that is called the 2000 Boston Abstract for shorthand.

An article entitled *Design and Process Issues for Silicon Carbide Power DiMOSFETs* by Sei-Hyung Ryu, Anant K. Agarwal, Lori Lipkin and John W. Palmour from that same Boston conference, called the 2000 Boston Paper for shorthand, and any one of the following six pieces of prior art that are collectively called the Island Art: the 2003 Book; U.S. Patent No. 5,877,044 to Neilson *et al.*, called Neilson for shorthand; an article entitled *Low-Voltage MOSFET with Small on-Resistance: an Extended Characterization in High-Efficiency Power Converter Applications* by Belverde, *et al.* included in the Conference Record of the 2001 IEEE Industry Applications Conference, called Belverde for shorthand; Application Note AN1506 from STMicroelectronics dated January 2002, called AN1506 for shorthand; ST's AD6A products I identified in the prior art instruction; and U.S. Pat. No. 6,043,532 to Depetro, called Depetro for shorthand.

The 2002 Patent Publication and any one of the Island Art.

The 2000 Boston Paper and any of the Island Art further combined with either the 2002 Patent Publication or the 2000 Boston Abstract.

---

[102] ST contends that Purdue's description of the field is improperly narrow.

[**Purdue's proposal**: Purdue objects to this laundry list of prior art references and purported combinations. ST continues to obfuscate and hide the ball, knowing full well which prior art combinations they will assert at trial. ST should provide a reasonable number of combinations that it may present a trial.] [103]

In determining whether a claimed invention is obvious, you must consider (1) the level of ordinary skill in the field that someone would have had at the time the [**Purdue's proposal**: invention was made] [**ST's proposal**: patent was filed][104]; (2) the scope and content of the prior art; (3) any differences between the prior art and the claimed invention; and (4) if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the [**Purdue's proposal**: invention] [**ST's proposal**: patent's effective filing date, January 23, 2006].

[ST's proposal:

*Level of Ordinary Skill*

In deciding what the level of ordinary skill in the field of the invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

*Scope and Content of the Prior Art*

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Where ST is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether ST has carried its clear-and-convincing burden of proving invalidity.

---

[103] ST's proposed exhibit and instruction-specific lists of relevant prior art references will simplify the jury's deliberation. *See, e.g.*, *NCS Multistage Inc. v. TCO AS*, No. 6:20-cv-00622-ADA, Dkt. 272 at 26–32 (W.D. Tex. Aug. 25, 2022) (obviousness instruction including list of relevant prior art, including combinations of references).

[104] As noted above, ST contends that the Court should decide the priority date.

*Differences Between the Prior Art and the Claimed Inventions*] [105]

[**Purdue's proposal**: Purdue objects to these purported explanations in this section. Purdue submits that the level of ordinary skill should be separately addressed, as shown below. The scope and content of the prior art instruction is confusing and prejudicial as it repeats a similar instruction ST proposes under Anticipation above.] [106]

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; and (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies. [Purdue's proposal: A standalone prior art reference must enable a skilled artisan to make and use the claimed invention for the portions of the prior art reference being relied upon.] [107]

[**ST's proposal**: *Secondary Considerations of Non-Obviousness*] [108] [**Purdue's proposal**: headings not needed]

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

1. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

---

[105] Adapted from *NCS Multistage Inc. v. TCO AS*, No. 6:20-cv-00622-ADA, Dkt. 272 at 26–32 (W.D. Tex. Aug. 25, 2022).
[106] ST disagrees and opposes the separate instruction. *See NCS Multistage Inc. v. TCO AS*, No. 6:20-cv-00622-ADA, Dkt. 272 at 26–32 (W.D. Tex. Aug. 25, 2022).
[107] ST contends that this sentence is not needed in this case because Purdue has not attacked ST's prior art on enablement grounds.
[108] Adapted from *NCS Multistage Inc. v. TCO AS*, No. 6:20-cv-00622-ADA, Dkt. 272 at 26–32 (W.D. Tex. Aug. 25, 2022).

2.   Whether the claimed invention satisfied a long-felt need;

3.   Whether others had tried and failed to make the claimed invention;

4.   Whether others invented the claimed invention at roughly the same time;

5.   Whether others copied the claimed invention;

6.   Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

7.   Whether the claimed invention achieved unexpected results;

8.   Whether others in the field praised the claimed invention;

9.   Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

10.  Whether others sought or obtained rights to the patent from the patent holder; and

11.  Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.
.

**JURY INSTRUCTION NO. 30: PERSON OF ORDINARY SKILL IN THE ART**

In deciding what the level of ordinary skill in the field of the invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

[**Purdue's proposal**: Purdue's position is that a person of ordinary skill in the art at the time of invention would have had either an M.S. degree in electrical engineering or related subject with a concentration in the design and fabrication of silicon carbide power semiconductor devices, or a B.S. degree in electrical engineering or related subject, and two years of experience working with the design and fabrication of silicon carbide power semiconductor devices. Less work experience may be compensated by a higher level of relevant education, and vice versa, where "relevant" in either case must include design and fabrication of silicon carbide power semiconductor devices.] [109]

[ST's proposal: No separate instruction.] [110]

---

[109] Federal Circuit Bar Association Model Patent Jury Instructions § B.4.3c(i) (2020).
[110] ST objects to this instruction. The first paragraph should be included in Final Instruction No. 29 on obviousness. The second paragraph is overly narrow and improper.

**JURY INSTRUCTION NO. 31: PATENT ELIGIBILITY**

[**ST's proposal**: ST contends that the '633 patent is invalid for failure to claim patent-eligible subject matter. To succeed on its claim for invalidity for failure to claim patent-eligible subject matter, ST must show by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the date of invention (January 23, 2006). In determining whether a patent claim involves well-understood, routine, and conventional technology to a person of ordinary skill in the art, you may consider statements made in the patent's specification, as well as evidence of the prior art.

Whether a particular technology was well-understood, routine, and conventional goes beyond what was known in the prior art. The mere fact that something is disclosed in a piece of prior art does not mean that it was well-understood, routine, and conventional. At the same time, the specification of the '633 patent may be such evidence, if you find that the specification shows that the elements of the Asserted Claims involve only technology which a person of ordinary skill in the art would have considered as well-understood, routine, and conventional. [111] [112]

[**Purdue's Proposal**: No instruction.]

---

[111] Adapted from *EcoFactor. Inc. v. Google LLC*, No. 6:20-cv-00075-ADA, Dkt. 209 at 31 (W.D. Tex. Feb. 10, 2022).

[112] Purdue opposes any instructions related to patent eligibility. Defendants first disclosed this instruction on September 11, 2023, the day before the deadline for submission of the JPTO. Further, this is not a live issue in the case as Defendants' expert offers no opinion on Section 101 in her report. In fact, at the time of her deposition, she did not know what patent eligibility was.

**Q.  Okay. You are not offering an opinion that Claims 9 and 10 are ineligible under Section 101 of the patent laws, correct?**
A.  Can you tell me what Section 101 is, please?
**Q.  Patent eligibility.**
A.  I'm afraid I don't know how to answer the question. I -- I don't know what Section 101 is. And I don't -- I don't see it listed in my report.

Defendants are sandbagging.

## JURY INSTRUCTION NO. 32: DAMAGES—INTRODUCTION

[**Purdue's proposal**: If you find that ST infringed any valid claim of the '633 Patent, you must then consider what amount of damages to award to Purdue. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that ST has not infringed any valid claim of the '633 Patent, then Purdue is not entitled to any damages.] [113] [**ST's proposal**: If you find that Purdue owns the '633 patent and that ST infringed any valid claim of the '633 patent and that any other defense does not apply, you must then consider what amount of damages to award to Purdue. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Purdue does not own the '633 patent or that ST has not infringed any valid claim of the asserted patent, then Purdue is not entitled to any damages.] [114]

[**Purdue's proposal**: The damages you award must be adequate to compensate Purdue for the infringement. They are not meant to punish ST. Your damages award, if you reach this issue, should put Purdue in approximately the same financial position that it would have been in had the infringement not occurred.] [**ST's proposal**: The damages you award, if any, must be adequate to compensate Purdue for any infringement. They are not meant to punish ST. Your damages award, if you reach this issue, should not be less than what the patent holder would have received had it been paid a reasonable royalty, which I will define shortly. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate the patent holder for any infringement.] [115]

Purdue has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Purdue establishes that are more likely than not. While Purdue is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Purdue seeks damages in the form of what it contends to be a reasonable royalty. [**Purdue's proposal**: A reasonable royalty is defined as the money amount Purdue and ST would have agreed upon as a fee for use of the invention at the time just prior to when infringement

---

[113] ***Source***: Federal Circuit Bar Association Model Patent Jury Instructions § B.5.1 (2020) (with modifications); *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 16 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 33 (W.D. Tex. Oct. 6, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 31 (W.D. Tex. Jun. 22, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 27 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 31 (W.D. Tex. Apr. 9, 2021).

[114] ST contends that its version is clearer and more thorough. Adapted from *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, Dkt. 687 at 35 (W.D. Tex. Nov. 15, 2022).

[115] ST contends that its version is clearer and more thorough. Adapted from *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, Dkt. 687 at 35 (W.D. Tex. Nov. 15, 2022).

began.] [116] [**Purdue's proposal**: But, regardless of the type of damages you may choose to award,] [117] you must be careful to ensure that [**ST's proposal**: any] award is no more and no less than the value of the patented invention.

The court expresses no opinion on whether Purdue is entitled or not entitled to any damages.

---

[116] ST contends that this sentence is unnecessary in light of Final Instruction 33, which defines a reasonable royalty. ST also objects to the use of the word "fee."
[117] ST opposes this clause as unnecessary and prejudicial.

**FINAL JURY INSTRUCTION NO. 33: REASONABLE ROYALTY—DEFINITION**

[**Purdue's proposal**: A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. If you find that a patent claim is infringed and not invalid, Purdue is entitled to at least a reasonable royalty to compensate it for that infringement.][118] [119]A reasonable royalty is defined as the money amount that the patent owner and the alleged infringer would have agreed to if a hypothetical negotiation had taken place at the time just prior to when any infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.

[**Purdue's proposal**: In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.] [120] [**ST's proposal**: Unlike in a real-world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patent is valid and infringed and that both parties were willing to enter into an agreement.] The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement. [**ST's proposal**: Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited to or increased by the actual profits the alleged infringer made.

Purdue has the burden to establish the amount of any reasonable royalty damages by a preponderance of the evidence. [**ST's proposal**: The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires a careful determination of the value added by the patented features. Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the

---

[118] Federal Circuit Bar Association Model Patent Jury Instructions § B.5.5 (2020).

[119] ST objects to this language as unnecessary given the other language in Final Instructions Nos. 32 and 33.

[120] **Source**: Federal Circuit Bar Association Model Patent Jury Instructions § B.5.6 (2020); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 35 (W.D. Tex. Oct. 6, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 32 (W.D. Tex. Jun. 22, 2021).

law. An appropriate combination of royalty base and royalty rate must reflect the value attributable to the infringing features, if any, of the ST products, and no more.] [121] [122]

---

[121] ST's proposals add important detail to this instruction (and ST's expert does address apportionment in his report). Adapted from *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, Dkt. 687 at 36 (W.D. Tex. Nov. 15, 2022) and *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 25 (W.D. Tex. Oct. 14, 2020). *See also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute.").

[122] Purdue objects to this instruction. It is derived from the Model Instruction regarding Apportionment. Defendants' expert says nothing about apportionment in his report.

**FINAL JURY INSTRUCTION NO. 34: LUMP SUM ROYALTY VS. RUNNING ROYALTY DAMAGES**

[**ST's proposal**: Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all the sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales. In determining whether a lump sum payment is appropriate, you may consider whether the parties to the hypothetical negotiation accepted lump sum payments in connection with comparable patent agreements, if any.

Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of the licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate.

It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.] [123]

[**Purdue's proposal**: Purdue objects to this instruction as unsupported by the evidence and prejudicial, misleading and inconsistent with the guidance provided by the model jury instructions. To the extent such an instruction is necessary, Purdue proposes the following:

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented technology. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.]

---

[123] ST's proposal reflects language this Court has used before. Adapted from *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, Dkt. 687 at 42 (W.D. Tex. Nov. 15, 2022).

**FINAL JURY INSTRUCTION NO. 35: REASONABLE ROYALTY—RELEVANT FACTORS**

[**Purdue's proposal**: Purdue submits that the language of the factors should track the language of the model instructions, as follows:

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)    The value that the claimed invention contributes to the accused product.

(2)    The value that factors other than the claimed invention contribute to the accused product.

(3)    Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.[124]

The so-called "*Georgia-Pacific*" factors, which can be considered to inform the hypothetical negotiations, include the following:

(1)    The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)    The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)    The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

---

[124] Federal Circuit Bar Association Model Patent Jury Instructions § B.5.8 (2020).

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is enough, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.]

[**ST's proposal**:[125]

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1. Any royalties received for licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by ST to license other patents comparable to the '633 patent.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

5. The effect of selling the patented products in promoting other sales of the licensee (ST); the existing value of the claimed invention to the licensor as a generator of sales of its non-patented items; and the extent of such other sales.

6. The duration of the '633 patent and the term of the license.

7. The established profitability of the products made under the '633 patent; their commercial success; and their popularity.

8. The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

9. The nature of the patented inventions; the character of any commercial embodiment of it as owned and produced by or for the licensor; and the benefits, if any, to those who have used the claimed invention.

10. The extent, if any, to which ST has made use of the claimed invention; and any evidence that shows the value of that use.

11. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

---

[125] ST proposes a more streamlined instruction based on language this Court has used previously. Adapted from *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, Dkt. 687 at 38–39 (W.D. Tex. Nov. 15, 2022).

Purdue's lengthy preamble is particularly unnecessary given the numerous *Georgia Pacific* factors.

12. The portion of the profit that arises from the patented inventions themselves as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

13. The opinion testimony of qualified experts.

14. The amount that a licensor and a licensee would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patent owner who was willing to grant a license.

15. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is enough, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people. Any reasonable royalty you award must compensate for the use made of the invention by the accused infringer.

**FINAL JURY INSTRUCTION NO. 36: REASONABLE ROYALTY—TIMING**[126]

[**Purdue's proposal**: Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.]

[**ST's proposal**: No instruction at this time.][127]

---

[126] ***Source***: *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 32 (W.D. Tex. May 19, 2021); *MV3 Partners, LLC v. Roku, Inc*., No. 6:18-cv-00308-ADA, Dkt. 379 at 29 (W.D. Tex. Oct. 14, 2020).

[127] ST contends that this instruction is unnecessary in light of the more detailed Final Instruction No. 33.

**FINAL JURY INSTRUCTION NO. 37: REASONABLE ROYALTY—AVAILABILITY OF NON-INFRINGING SUBSTITUTES[128]**

[**Purdue's proposal**: In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product that is licensed under the patent or that does not infringe the patent, and that is equally acceptable to customers.

[**ST's proposal**: In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must not infringe the patent.] [129]

---

[128] ***Source***: *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 32 (W.D. Tex. May 19, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 29 (W.D. Tex. Oct. 14, 2020).

[129] ST contends that its instruction is more accurate while omitting an unnecessary and distracting reference to licensing. Adapted from *Textron Innovations Inc. v. SZ DJI Tech.*, 6:21-cv-00740-ADA, Dkt. 301 at 42 (W.D. Tex. Apr. 21, 2023).

**FINAL JURY INSTRUCTION NO. 38: DAMAGES—COMPARABLE AGREEMENTS**

[**Purdue's proposal**: Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.] [130]

[**ST's proposal**: The existence of any comparable agreement such as a license or other transactions may inform your decision as to the proper amount and form of the reasonable royalty award.

Whether a particular patent agreement or other transaction is comparable to the hypothetical license depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structures and comparable scope. An agreement may be comparable even if the patented technology and economic circumstances of the agreement are not identical to the hypothetical negotiation. The question is whether the agreement is sufficiently comparable that it provides a reasonable indication of how the parties to the hypothetical negotiation would have negotiated a license to the asserted patent just prior to when the first infringement began. To the extent that an agreement is not comparable to the hypothetical license to the asserted patent, it should not be used to determine the amount or form of any reasonable royalty award.

However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between the patent owner and the accused infringer, including in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination. While the parties to the hypothetical negotiation assume a patent is valid and infringed, an agreement may be comparable even if there has been no determination or assumption by the parties to the agreement that the patent is valid and infringed. However, this is one of the differences you may consider in whether a license agreement is comparable to the hypothetically negotiated license: The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the voluntary hypothetical license, you may consider whether the license agreement is or was between parties who were involved in a lawsuit or threats of lawsuits.] [131]

---

[130] ***Source***: Federal Circuit Bar Association Model Patent Jury Instructions § B.5.9 (2020); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 38 (W.D. Tex. Oct. 6, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 39 (W.D. Tex. Jun. 22, 2021). Defendants purport to add detail, but the "detail" is prejudicial and risks having the Court comment on the evidence.

[131] ST contends that its proposal adds important detail. Adapted from *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, Dkt. 687 at 40–41 (W.D. Tex. Nov. 15, 2022).

**JURY INSTRUCTION NO. 39: DATE OF COMMENCEMENT OF DAMAGES**

[**Purdue's proposal**: In determining the amount of damages,][132] [**ST's proposal**: If you find that Purdue is entitled to damages,] you must determine when the damages began.

When a product has been sold or licensed by the patentholder that includes the claimed invention, then the date that damages commence depends on whether that product has been "marked" with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. If substantially all products sold or licensed by the patentholder have been "marked," then damages for infringement commence on the date the patent issued, the date infringing began, or six years before the lawsuit was filed, whichever is later in time. But if products sold or licensed by the patentholder have not been "marked," then damages for infringement commence on the date that the infringing party was first given actual notice of the patent.

To be awarded damages from the date the patent issued or six years before the lawsuit was filed if that date is more recent than the date the patent issued, Purdue has the burden of establishing that the patentholder substantially complied with the marking requirement. This means Purdue must show that substantially all of the products made, offered for sale, or sold under the '633 patent have been marked and that reasonable efforts were made to ensure that licensees who made, offered for sale, or sold products under the '633 patent marked the products.

[**Purdue's proposal:**

In this case, it is undisputed that Purdue itself did not sell any products that needed to be marked. However, ST contends that one of Purdue's licensees, GE Global Research ("GEGR"), had a license from the patentholder to sell products that included the claimed invention and that (1) GEGR  sold products that included the claimed invention, (2) those products were not marked, and (3) the patentholder did not make any efforts to ensure that products sold by GEGR including the claimed invention were marked.

The parties dispute whether any products GEGR sold were authorized under the license and thus met the definition of "Licensed Products." Purdue contends that the GEGR products were not licensed products as defined the parties' license and so no obligation to mark arose. Purdue likewise contends that if any marking obligation arose, Purdue undertook reasonable efforts to ensure compliance with the marking requirement. ST contends that the products sold by GEGR were licensed products subject to the marking requirement because they were made by GEGR in a manner such that they were licensed.]

---

[132] **Source**: *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 33 (W.D. Tex. May 19, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 30 (W.D. Tex. Oct. 14, 2020).

[ST's proposal:[133]

In this case, it is undisputed that a third party, General Electric Company, had a license from the patentholder to sell products that included the claimed invention. It is also undisputed that (1) General Electric sold products that included the claimed invention, (2) those products were not marked, and (3) the patentholder did not make any efforts to ensure that products sold by General Electric including the claimed invention were marked.

The parties dispute, however, whether the products that General Electric sold were licensed by the patentholder. Purdue contends that the products sold by General Electric did not comply with General Electric's license because they were manufactured by a third party, X-Fab, and thus were unlicensed products. ST contends that the products sold by General Electric were licensed products subject to the marking requirement because they were made by General Electric in a manner such that they were licensed.]

If you find that the unmarked products sold by [ST's proposal: General Electric] [Purdue's proposal: GEGR] were licensed products, then you must find that any damages to which Purdue may be entitled began accruing on the date Purdue first provided ST with actual notice of the '633 patent. [Purdue's proposal: ST contends that ST's date of first actual notice is July 14, 2021, the date that Purdue filed the complaint in this case alleging infringement.] [ST's proposal: ST's date of first actual notice is July 20, 2021, the date that Purdue served the complaint in this case alleging infringement.] [Purdue's proposal: Purdue claims to have provided actual notice prior to filing of the complaint, on April 2021, when it sent a letter to ST.

If you find that the products sold by GEGR were unlicensed or that Purdue used reasonable efforts to ensure compliance with the marking requirement, then you must find that any damages that Purdue may be entitled to started accruing on July 14, 2015, the date that is six years before this lawsuit was filed.]

[ST's proposal: If you find that the products sold by General Electric were unlicensed, then you must find that any damages that Purdue may be entitled to started accruing on July 14, 2015, the date that is six years before this lawsuit was filed.

---

[133] ST's proposals regarding this instruction are adapted from *NCS Multistage Inc. v. Nine Energy Serv., Inc.*, No. 6:20-cv-00277-ADA, Dkt. 246 at 31 (W.D. Tex. Jan. 21, 2022) and 35 U.S.C. § 286.

## JURY INSTRUCTION NO. 40: ROYALTY—APPORTIONMENT

[**ST's proposal**: Any amount of damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused products or other factors such as marketing or advertising. A royalty compensating the patent owner for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the products accused of infringement have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.] [134]

[**Purdue's proposal**: Purdue objects to this instruction. Dr. Becker does not challenge Mr. Holzen's model with respect to apportionment.] [135]

---

[134] Adapted from *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, Dkt. 687 at 37 (W.D. Tex. Nov. 15, 2022).
[135] ST does not agree with Purdue's assertion. Dr. Becker did challenge Mr. Holzen's model.

## JURY INSTRUCTION NO. 41: DUTY TO DELIBERATE; NOTES[136]

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. Answer each question in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

---

[136] **Source**: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 23 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 41 (W.D. Tex. Oct. 6, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 40 (W.D. Tex. Jun. 22, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 34 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 37-38 (W.D. Tex. Apr. 9, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 30-32 (W.D. Tex. Oct. 14, 2020).

**JURY INSTRUCTION NO. 42: SOCIAL MEDIA**[137]

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, or X (formerly known as Twitter) to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.

---

[137] ***Source***: *Densys Ltd. v. 3Shape Trios A/S*, No. 6:19-cv-00680-ADA, Dkt. 181 at 24 (W.D. Tex. Apr. 8, 2022); *Profectus Tech. LLC v. Google LLC*, No. 6:20-cv-00101-ADA, Dkt. 193 at 42 (W.D. Tex. Oct. 6, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 34 (W.D. Tex. May 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 39 (W.D. Tex. Apr. 9, 2021); *MV3 Partners, LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 379 at 32 (W.D. Tex. Oct. 14, 2020).

## GLOSSARY OF PATENT AND TECHNICAL TERMS[138]

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation**: A situation in which a claimed invention is described in a single piece of prior art and, therefore, is not considered new and is not entitled to be patented.

**Assignment**: A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, *i.e.*, similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed [**ST's proposal**: (though this right is not unlimited)][139]. Claims may be independent or dependent. An **independent claim** stands alone. A **dependent claim** does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception**: The complete mental part of the inventive act when the inventor forms a definite and permanent idea of an invention someone else could make without undue experimentation. Conception must be capable of proof, as by drawings, disclosure to another, etc.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

---

[138] ***Source***: *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-511-ADA, Dkt. 247 at 42-44 (W.D. Tex. Jun. 22, 2021); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, Dkt. 150 at 35-38 (W.D. Tex. May 19, 2021).

[139] *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 374–75 (2017) ("What a patent adds—and grants exclusively to the patentee—is a limited right to prevent others from engaging in . . . practices" including "us[ing], sell[ing], or import[ing] an item").

**Embodiment**: A product or method that contains the claimed invention.

**Enablement**: A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention without undue experimentation. The specification of the patent must contain such an enabling description.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. [**Purdue's proposal**: Infringement may be direct, by inducement, or contributory. Direct infringement is making, using, or selling the patented invention without permission. Inducing infringement is intentionally causing, urging, or encouraging another to directly infringe a patent.] [140]

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness**: One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the invention.

**Office Action**: A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive [**ST's proposal**: but limited][141] right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed (or, in some cases, 17 years from the date the patent issued). When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in

---

[140] ST opposes Purdue's induced infringement instruction because Purdue has not alleged sufficient facts to support an inducement claim.

[141] *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 374–75 (2017) ("What a patent adds—and grants exclusively to the patentee—is a limited right to prevent others from engaging in . . . practices" including "us[ing], sell[ing], or import[ing] an item").

the United States.

**Prior Art**: Evidence that the claimed invention was already known or would have been obvious. This evidence includes items that were publicly known or that have been used or offered for sale, or references such as publications or patents.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice**: The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose or when a patent application describing the invention is filed.

**Requirement**: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty**: A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:** The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.