FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| THE TRUSTEES OF<br>PURDUE UNIVERSITY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>STMICROELECTRONICS<br>INTERNATIONAL N.V., and<br>STMICROELECTRONICS, INC.,<br><br>　　　　Defendants. | Civil Action No. 6:21-cv-00727-ADA<br><br>JURY TRIAL DEMANDED<br><br>PUBLIC VERSION |

**PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF
DEFENDANTS' DAMAGES EXPERT STEPHEN L. BECKER**

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................................1

II.  LEGAL STANDARD.............................................................................................................2

III. ARGUMENT...........................................................................................................................2

    A.   Becker's opinions about the licensing agreements are not admissible. ....................2

    B.   Becker's cost approach is pure speculation. .............................................................7

IV.  CONCLUSION.....................................................................................................................10

Case 6:21-cv-00727-ADA-DTG   Document 447   Filed 09/26/23   Page 3 of 15
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adasa Inc. v. Avery Dennison Corp.*,
55 F.4th 900 (Fed. Cir. 2022), *cert. denied*, No. 22-822, 2023 WL 3696138
(U.S. May 30, 2023) ...................................................................................................5

*Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*,
No. 222CV00126JRGRSP, 2022 WL 14318049 (E.D. Tex. Oct. 24, 2022) ........................2, 7

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015) ...................................................................................2

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) ...................................................................................3

*CloudofChange, LLC v. NCR Corp.*,
No. 6:19-CV-00513-ADA, 2021 WL 11549625 (W.D. Tex. Nov. 1, 2021) .............................9

*Cox v. State Farm Lloyds*,
No. SA-21-CV-01051-XR, 2023 WL 139152 (W.D. Tex. Jan. 9, 2023) .................................8

*DataQuill Ltd. v. High Tech Computer Corp.*,
887 F. Supp. 2d 999 (S.D. Cal. Dec. 1, 2011) ...............................................................4

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ..............................................................................7

*IP Innovation L.L.C. v. Red Hat, Inc.*,
705 F. Supp. 2d 687 (E.D. Tex. 2010) ..........................................................................4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ....................................................................................3, 5

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .............................................................................3, 5, 7

*Multimedia Patent Trust v. Apple Inc.*,
No. 10-cv-2618-H KSC, 2012 WL 5873711 (S.D. Cal. Nov. 20, 2012) ..................................4

*Omega Patents, LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ................................................................................3, 4

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
Case No. 3:20-cv-02390-RSH-MSB, 2023 WL 2130379 (S.D. Ca. Feb. 10, 2023) .................3

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)......................................................................................................3

*Shopify Inc. v. Express Mobile, Inc.*,
    No. CV 19-cv-439, 2021 WL 4288113 (D. Del. Sept. 21, 2021) .............................................4

*Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*,
    289 U.S. 689 (1933)...................................................................................................................7

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)..................................................................................................3

*United States v. Valencia*,
    600 F.3d 389 (5th Cir. 2010) .....................................................................................................2

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)..........................................................................................3, 4, 5

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010)..................................................................................................3

**Rules**

Fed. R. Civ. P. 5 ...............................................................................................................................11

Fed. R. Evid. 702 ...............................................................................................................................2

L.R. CV-5.........................................................................................................................................11

Plaintiff The Trustees of Purdue University ("Purdue") respectfully submits this *Daubert* Motion to Exclude the Testimony of Defendants STMicroelectronics International N.V. and STMicroelectronics, Inc.'s, (collectively, "ST") damages expert, Stephen L. Becker ("Becker") of Applied Economics Consulting Group, Inc. ("Applied Economics").

## I.   INTRODUCTION

Becker's damages report suffers from two fatal flaws: 1) Becker relies on two incomparable licensing agreements to support his market approach and 2) Becker's cost approach is pure speculation.

As to the market approach, Becker's conclusion that the appropriate form and amount of compensation in this case is a [REDACTED] for a license to the patent-in-suit (the "'633 Patent") through patent expiration is allegedly supported by two licensing agreements – the [REDACTED] and the [REDACTED] (the [REDACTED]"). Ex. 1 (Becker Report) ¶¶ 112, 254-255, 354. But Becker ignores the *key differences* in these agreements, including that [REDACTED] —and that the [REDACTED] was not a [REDACTED]. [REDACTED] Becker also completely ignores the book of wisdom, which instructs that these two agreements are irrelevant as they do not account for the huge growth in the SiC MOSFET market from which ST would significantly benefit.

As to the cost approach, Becker provides no support that ST's alternative [REDACTED] is commercially acceptable to customers, no validation of ST's research and development cost estimates, and instead relies solely on unverified cost figures provided by ST's Mario Saggio. Becker also ignores the higher costs to manufacturing the alternative [REDACTED]. *Id*. ¶¶ 257-

1

272. Finally, despite being available for years, the ▮REDACTED▮ Becker touts as an alternative has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .

The Court should exclude Becker's baseless and unreliable opinions from trial.

## II. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. "Federal Rule of Evidence 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony." *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. 222CV00126JRGRSP, 2022 WL 14318049, at *1 (E.D. Tex. Oct. 24, 2022). Although there are various factors that the district court may consider in determining admissibility the ultimate inquiry is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial." *Id.* (citing *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)).

## III. ARGUMENT

### A. Becker's opinions about the licensing agreements are not admissible.

In a patent case, if infringement is found, the plaintiff is "entitled to damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1329-30 (Fed. Cir. 2015) (cleaned up). "The most common method for determining a reasonable royalty is the hypothetical negotiation approach, which attempts to ascertain the royalty upon which the parties

2

would have agreed had they successfully negotiated an agreement just before infringement began." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

"In determining a reasonable royalty, parties frequently rely on comparable license agreements." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372 (Fed. Cir. 2020). But the licenses relied on must be "sufficiently comparable to the hypothetical license at issue in suit." *VirnetX*, 767 F.3d at 1330 (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009)). "[Parties can]not rely on license agreements that [are] radically different from the hypothetical agreement under consideration to determine a reasonable royalty." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011) (cleaned up). *See also Pelican Int'l, Inc. v. Hobie Cat Co.*, Case No. 3:20-cv-02390-RSH-MSB, 2023 WL 2130379, at *26-27 (S.D. Ca. Feb. 10, 2023) (excluding expert damages opinion regarding or relying upon a "radically different agreement"). "Assessing . . . comparability . . . requires a consideration of whether the license at issue involves comparable technology, is economically comparable, and arises under comparable circumstances as the hypothetical negotiation." *Bio-Rad*, 967 F.3d at 1372-73. Further, parties must "account" for any "distinguishing facts when invoking the licenses to value the patented invention." *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1380 (Fed. Cir. 2021) (cleaned up).

The Federal Circuit "has often excluded licenses that are technologically or economically non-comparable" as a matter of law when comparability is not a close enough call to reach the jury. *Bio-Rad*, 967 F.3d at 1373; *see, e.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010); *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320-21 (Fed. Cir. 2010); *see also Lucent Techs.*, 580 F.3d at 1327-32 (vacating damages verdict because the jury

was improperly presented with "license agreements [that were] radically different from the hypothetical agreement"); *cf. Omega*, 13 F.4th at 1381 (vacating damages verdict because the plaintiff failed to "present to the jury a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in th[e] case" (quotation marks omitted)). The Federal Circuit has thus "cautioned that district courts performing reasonable royalty calculations must exercise vigilance when considering past licenses to technologies other than the patent in suit, and must account for differences in the technologies and economic circumstances of the contracting parties." *Virnetx*, 767 F.3d at 1330 (quotation marks and brackets omitted). The bottom line is that "[t]he testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded." *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1022 (S.D. Cal. Dec. 1, 2011) (citing *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 690-91 (E.D. Tex. 2010)); *see Shopify Inc. v. Express Mobile, Inc.*, No. CV 19-cv-439, 2021 WL 4288113, at *27 (D. Del. Sept. 21, 2021); *Multimedia Patent Trust v. Apple Inc.*, No. 10-cv-2618-H KSC, 2012 WL 5873711, at *7 (S.D. Cal. Nov. 20, 2012).

Here, Becker relies on two licensing agreements, the REDACTED and the REDACTED, neither of which are remotely comparable.

REDACTED: As for the REDACTED, there is no evidence that REDACTED would never pay any amount for a license because it would be higher than REDACTED actual or expected gain from its use. Becker does not explain why Purdue would offer ST REDACTED the same price point as REDACTED.

4

As to technological comparability, "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics*, 694 F.3d at 77; *see Virnetx*, 767 F.3d at 1330. The REDACTED allows REDACTED. *See* Ex. 2 REDACTED §§ 1.2 & 3.1-3.2. This shows that the REDACTED. Without more, Becker cannot establish comparability for a licensing agreement that addresses such a broad category of technologies.

It is not enough to allege that inventions come from the same broad field or area of invention, and therefore, it is certainly insufficient to rely on a REDACTED as a comparison to the license terms Purdue would offer to a market participant that REDACTED Ex. 11 (Saggio Depo. Tr. Vol. 2) at 234:3-11; 268:3-18; 300:22-25, 301:1-5; Ex. 12 (Arno Depo. Tr.) at 52:4-18; 53:2-7; 74:12-15. For example, in *Lucent Techs.*, the Federal Circuit concluded that it was insufficient for "the patentee [to] rel[y] on various licenses in the same general computer field without proving a relationship to the patented technology or the accused infringing products." 580 F.3d 1301, 1327-32 (Fed. Cir. 2009). Similarly, in *Adasa*, the Federal Circuit concluded that it was *proper* to exclude expert testimony about certain licenses that involved "hundreds or thousands of patents that spanned a broad range of technologies" without "any meaningful comparison of the licensed technology with the invention disclosed by" the patent-in-suit. *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022), *cert. denied*, No. 22-822, 2023 WL 3696138 (U.S. May 30, 2023). *See also id.* ("That the licensed

5

portfolios 'include' patents that cover 'RFID technology' says little, if anything, about their relation to the '967 patent."). The same is true here. Becker provides no basis for comparing REDACTED with ST's expected commercial benefits from licensing the '633 Patent, a REDACTED Ex. 11 (Saggio Depo. Tr. Vol. 2) at 234:3-11; 268:3-22; 300:22-25, 301:1-5; Ex. 12 (Arno Depo. Tr.) at 52:4-18; 53:2-7; 74:12-15.

REDACTED: While the REDACTED, meaning it did not grant rights comparable to what ST would require for the hypothetical license. Importantly, REDACTED Ex. 3 (REDACTED), §§ 2.1, 2.2, & 7.1; Ex. 4 (Stevanovic Depo. Tr) at 175:2-176:5 (confirming same). REDACTED Ex. 5 (Fedison Depo. Tr.) at 18:17-19, 19:3-12, 23:17-24:17. REDACTED. (Stevanovic Depo. Tr) at 181:3-8. Had the REDACTED.[1]

Additionally, in considering both the REDACTED and the REDACTED Becker completely ignores the book of wisdom. Neither of these agreements account

---

[1] The REDACTED Ex. 6 (REDACTED), § 4.

6

for the growth in the SiC MOSFET market ▮▮▮▮▮. The growth in the Accused Product market since the hypothetical negotiation date is undoubtedly a proper consideration. Becker simply ignores this basic principle. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (Factor 11 considering "the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use."); *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 697 (1933) ("The use that has been made of the patented device is a legitimate aid to the appraisal of the value of the patent at the time of the breach ... Here is a book of wisdom that courts may not neglect."); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1310, 1333-34 (applying the book of wisdom under *Georgia-Pacific* Factor 11).

The Eastern District of Texas recently explained that the value of the accused product to the customer defendants—even though sales of the accused product to customer defendants occurred years after the hypothetical negotiation date—"fall[s] squarely within *Georgia-Pacific* Factor 11 and the book of wisdom." *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. 222CV00126JRGRSP, 2022 WL 14318049, at *2 (E.D. Tex. Oct. 24, 2022). Becker's assessment that at the time of the [REDACTED] and [REDACTED] ▮▮▮▮▮," means that these agreements fail to consider the growth in the SiC MOSFET market or ▮▮▮▮▮ [REDACTED]) and therefore, are not economically comparable.

**B.   Becker's cost approach is pure speculation.**

Becker's cost approach relies entirely on ST's ▮▮▮▮▮

███████. *See* Ex. 1 ¶¶ 257-272.

Becker estimates that ███████ REDACTED ███████ *Id.* ¶ 269. But these estimates are demonstrably inaccurate, and Becker undertook no independent analysis of potential costs. Ex. 7 (Supplemental Report of Drs. Dhar & Shanfield) ¶¶ 3-13. Dr. Becker does not detail any of the underlying cost inputs contemplated in his assessment. Ex. 1 ¶ 269 (referencing Exhibit SLB-12, which is based entirely on ███████ He does not rely upon ███████. *Id.* ███████

███████. In fact, Mr. Saggio testified that ███████ REDACTED ███████. *See, e.g.*, Ex. 11 (Saggio Depo. Tr. Vol. 2) at 320:1-10. Nothing qualifies him as an expert at ███████. The numbers are just accepted by Becker. Becker simply repeated ST's numbers without any semblance of verification. Becker even admits in part that ███████. *Id.* Becker "fails to provide any independent, objective support or factual basis for his opinions." *See Cox v. State Farm Lloyds*, No. SA-21-CV-01051-XR, 2023 WL 139152, at *7 (W.D. Tex. Jan. 9, 2023).

Moreover, Purdue requested discovery from ST on the costs of non-infringing alternatives, and ST provided none. ST's cost estimates are based on ███████ (Dkts. 38, 84, 111 &

8

116). ST's interrogatory response on this issue provides that REDACTED . *See* Ex. 8 (First Supplemental Response to Interrogatory No. 28). Dr. Neikirk admitted in his deposition that REDACTED . Ex. 9 (Neikirk Depo. Tr.) 211:22-25; *id.* at 216:22-217:4. ST did not provide REDACTED . To the extent that Becker relies on Dr. Neikirk to assess the costs, Dr. Neikirk admitted in his deposition that REDACTED . Neikirk Depo. Tr. at 199:5-200:25, 201:25-204:7, 219:2-10. ST's damages expert should not be allowed to offer an opinion at trial based on a cost figure that ST REDACTED

Finally, Becker does not undertake any kind of analysis to determine whether a purported design-around would be acceptable to ST's customer. The Western District has allowed evidence on a design-around approach "where the customer would not know there is any difference in the accused product's functionality." *CloudofChange, LLC v. NCR Corp.*, No. 6:19-CV-00513-ADA, 2021 WL 11549625, at *4 (W.D. Tex. Nov. 1, 2021). REDACTED . According to Becker, REDACTED . Ex. 1 ¶ 384. But ST's witnesses repeatedly testified that REDACTED . *See, e.g.*, Ex. 10 (Saggio Depo. Tr. Vol. 1) at 64:8-65:1; Ex. 12 (Arno Depo. Tr.) at 107:22-108:19; 127:15-128:1. Becker fails to note in his report that the alternative design REDACTED

9

███████████. Becker has no support for his assumption that ST's customers are willing and able to adopt the alternative REDACTED and ███████████████████████ so.

## IV. CONCLUSION

Purdue's *Daubert* Motion to Exclude the Testimony of ST's damages expert, Dr. Stephen Becker, should be granted, and opinion testimony and evidence related to the REDACTED █████████, the REDACTED, and ST's costs estimates should be excluded.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dated: August 8, 2023

Respectfully submitted,

By: */s/ Michael W. Shore*
Michael W. Shore (SBN 18294915)
Chijioke E. Offor (SBN 24065840)
Halima Shukri Ndai (SBN 24105486)
THE SHORE FIRM LLP
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone: (214) 593-9110
Fax: (214) 593-9111
mshore@shorefirm.com
coffor@shorefirm.com
hndai@shorefirm.com

Brian D. Melton (SBN 24068095)
John P. Lahad (SBN 24068095)
Abbey McNaughton (SBN 24116751)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
bmelton@susmangodfrey.com
jlahad@susmangodfrey.com
amcnaughton@susmangodfrey.com

***COUNSEL FOR PLAINTIFF***
***THE TRUSTEES OF PURDUE UNIVERSITY***

**CERTIFICATE OF SERVICE**

In accordance with Federal Rule of Civil Procedure 5 and Local Rule CV-5, I hereby certify that a true and correct copy of the foregoing has been served on counsel for Defendants VIA ECF and email on August 8, 2023.

*/s/ Michael W. Shore*