~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **THE TRUSTEES OF PURDUE UNIVERSITY,** | |
| **Plaintiff,** | **Civil Action No. 6:21-CV-00727-ADA-DTG** |
| **vs.** | **JURY TRIAL DEMAND** |
| **STMICROELECTRONICS INTERNATIONAL N.V. and STMICROELECTRONICS, INC.,** | ~~**FILED UNDER SEAL**~~ |
| **Defendants.** | |

### DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF STANDING

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

## TABLE OF CONTENTS

I.  STATEMENT OF FACTS ....................................................................................1

   A.  BACKGROUND. ........................................................................................1

   B.  PLAINTIFF'S RELEVANT CORPORATE GOVERNANCE DOCUMENTS. .................2

II.  LEGAL STANDARDS ......................................................................................4

III.  ARGUMENT ..................................................................................................7

   A.  PLAINTIFF'S GENERAL COUNSEL, STEVEN SCHULTZ, LACKED THE AUTHORITY TO ENTER INTO A PATENT TRANSFER AGREEMENT AT THE TIME OF THE ALLEGED TRANSFER. ....................................................................................7

     1.  The Transfer Imposed Financial Obligations Greater than $2M, Thus Board Approval Was Required, and Not Obtained. ...............................8

     2.  The "Delegation of the President's Authority" Did Not Authorize Mr. Schultz to Accept the Assignment. .........................................10

     3.  Even if the Transfer is Viewed as Imposing No Financial Obligations and Not a "Matter Involving Purdue Research Foundation," Mr. Schultz Did Not Have Authority to Approve It, Absent Documented Delegation of Authority from the Treasurer, Which Does Not Exist. ....................11

   B.  BECAUSE MR. SCHULTZ LACKED AUTHORITY TO ENTER INTO THE ASSIGNMENT ON PLAINTIFF'S BEHALF, THE CONTRACT IS VOID. ............................11

   C.  THE PROPER REMEDY IS DISMISSAL – LACK OF STANDING AT THE TIME OF FILING CANNOT BE CURED. ....................................................................14

IV.  CONCLUSION ..............................................................................................15

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Point of Care Inc. v. Epocal, Inc.*,
666 F.3d 1299 (Fed. Cir. 2012) .................................................................................. 4

*Abraxis Bioscience, Inc. v. Navinta LLC*,
625 F.3d 1359 (Fed. Cir. 2010) ............................................................................. 5, 14

*Barlow & Haun, Inc. v. United States*,
805 F.3d 1049 (Fed. Cir. 2015) .................................................................................. 6

*Bd. of School Comm'rs v. State ex rel. Wolfolk*,
199 N.E. 569 (Ind. 1936) .......................................................................................... 12

*Black Knight Prods., Inc. v. Univ. of Illinois at Chicago*,
50 Ill. Ct. Cl. 406 (1998) ................................................................................. 7, 11, 13

*Franco v. State ex rel. Bd. of Regents of Univ. of Oklahoma*,
482 P.3d 1 (2020) ........................................................................................... 7, 11, 13

*Froeschke v. City of Vincennes*,
No. 42C01 1105 PL 246, 2012 WL 8133613 (Ind. Cir. Dec. 20, 2012) ..................... 6, 11, 13

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
850 F.3d 1315 (Fed. Cir. 2017) .................................................................................. 6

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019) .............................................................................. 5, 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................................... 5

*Morgan v. S. Bend Cmty. Sch. Corp.*,
797 F.2d 471 (7th Cir. 1986) .................................................................................... 12

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007) .............................................................................. 5, 6

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994) ................................................................................................... 6

*Peck-Williamson Heating & Ventilating Co. v. Steen School Tp. of Knox County*,
30 Ind. App. 637, 66 N.E. 909 (Ind. App. 1903) ................................................ 7, 11, 13

ii

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*Propat Int'l Corp. v. RPost, Inc.*,
    473 F.3d 1187 (Fed. Cir. 2007)........................................................................5

*Rockwell v. MSD Southwest Allen County*,
    737 N.E.2d 829 (Ind. App. 2000)....................................................... 7, 11, 12, 13

*Russell v. Trustees of Purdue Univ.*,
    201 Ind. 367, 168 N.E. 529 (Ind. 1929) ...........................................................12

*Script Security Solutions, LLC v. Amazon.com, Inc.*,
    No. 2:15-CV-1030-WCB, 2016 WL 6433776 (E.D. Tex. Oct. 31, 2016) .............................6

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005)..........................................................................4

*Uniloc 2017 LLC v. Google LLC*,
    No. 4:20-cv-05339-YGR (N.D. Cal. Dec. 22, 2020) ..........................................6

*WiAV Sols. LLC v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010).........................................................................5

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. 1981) ...........................................................................6

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants STMicroelectronics International N.V. and STMicroelectronics, Inc. (collectively, "ST") move for dismissal of this case for lack of standing to assert U.S. Patent No. 7,498,633 (the "'633 patent"). The burden to establish standing rests squarely on Plaintiff The Trustees of Purdue University ("Plaintiff"). Plaintiff alleges it and Purdue Research Foundation ("PRF") agreed shortly before the filing of this lawsuit to transfer the patent from PRF to Plaintiff in order to ███████████████ ████████████—Plaintiff is a body of the State of Indiana. However, as a state body, Plaintiff only has power to act as state law permits, and its own corporate governance documents establish that the person who allegedly agreed to the transfer on behalf of Plaintiff lacked the authority to enter into such an agreement. The purported transfer is thus void under Indiana law, which controls as to patent ownership for purposes of standing to assert infringement. Accordingly, Plaintiff did not own the '633 patent when it filed suit and thus lacked standing to bring this suit, entitling ST to an immediate dismissal.

## I.      STATEMENT OF FACTS

### A. Background.

1.      Plaintiff is the managing body of an institution of higher education ("Purdue University") located in Indiana and governed by Indiana Code Title 21. Purdue University is a public institution, and Plaintiff is a body of the State of Indiana.

2.      Plaintiff filed the complaint in this case on July 14, 2021. Dkt. 1 at 1.

3.      Plaintiff currently asserts claims 9 and 10 of the '633 patent against ST. Dkt. 154 at 13.

4.      Plaintiff does not dispute that, before June 18, 2021, Purdue Research Foundation ("PRF"), a separate and distinct legal entity from Plaintiff, owned the '633 patent. PRF is a non-profit corporation located in Indiana and governed by Indiana Code, Title 23, Article 17.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

5.      Plaintiff asserts that PRF assigned the '633 patent from PRF to Plaintiff on June 18, 2021.  Ex. 1, Recorded Assignment at 2.

6.      Plaintiff asserts that Ken Waite, Chief Patent Counsel for PRF, and Steven Schultz, General Counsel for Plaintiff, orally agreed to transfer the '633 patent from PRF to Plaintiff in June 2021 for zero dollars.  Ex. 2, Supp. Resp. Interrog. No. 3 at 5.  Plaintiff further asserts that the only written portion of the agreement is a document entitled "Assignment" dated June 18, 2021, that was recorded at the Patent Office.  *Id.*  That "Assignment" is signed only by Ken Waite on behalf of PRF.  Ex. 1 at 4.  Plaintiff did not sign it.

7.      Plaintiff asserts that Ken Waite for PRF and Steven Schultz for Plaintiff agreed to the transfer entirely on their own, and that each had authority to do so:

> The only discussions regarding the assignment involved Kenneth Waite, Esq. of PRF and Steven Schultz, Esq.  No others were involved.  Both Mr. Waite and Mr. Schultz had the requisite authority to agree on the assignment, and neither had to obtain authority or consent from their respective boards or wait for a board meeting.  Accordingly, neither Mr. Waite nor Mr. Schultz were required (or did) inform their respective boards about the assignment before obtaining it.  There was no "formal approval process" and no Trustee or PRF board member was required or did approve of the assignment.  Once Messrs. Waite and Schultz reached an understanding on the assignment, Mr. Waite initiated and managed drafting, execution, and filing of the assignment.  The first discussion related to the potential for the assignment was on or about June 10, 2021.  There were no additional terms and conditions for the assignment, and there was no additional monetary consideration.  There are no other documents or other writings related to the assignment.

Ex. 2 at 4-5.

**B.  Plaintiff's Relevant Corporate Governance Documents.**

8.      Ken Waite was designated as Plaintiff's 30(b)(6) designee on the topic of the authority of himself and Mr. Schultz to enter into the purported agreement to transfer the '633 patent from PRF to Plaintiff.  Ex. 3, Waite Tr. at 64:15-65:10.  He confirmed as Plaintiff's 30(b)(6) designee that ██████████████████████████████████████████████████

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

███████████████████████████████████████████████████████

*Id.* at 86:8-13.

9.      Article VII of Plaintiff's bylaws governs who at Plaintiff has authority to enter into agreements, such as for the transfer of patents owned by PRF to Plaintiff.  Any such agreement "imposing financial obligations on the part of [Plaintiff] in excess of $2,000,000" must be approved by the Board of Plaintiff.  Ex. 4, Plaintiff's Bylaws at 8 (section 1, paragraph (e)).  Any such agreement "imposing financial obligations of $2,000,000 or less" may be executed by the Treasurer.  *Id.*  Any such agreement not imposing any financial obligations "shall be executed … by the Chairman, the Vice Chairman, the Treasurer, the Assistant Treasurer, or a person duly authorized by the Treasurer."  *Id.* at 9 (section 2)

10.      Plaintiff's corporate governance policies require any delegation of authority from an executive officer, such as the Treasurer, to be documented and provided to the University Policy Office ("UPO").  Ex. 5, Delegations at 2.  The UPO maintains "an online posting of delegations made by executive officers."  *Id.*

11.      Mr. Schultz, the General Counsel, asserted at his deposition that ██████████
████████████████████████████████████████████████████████████
██████████  Ex. 6, Schultz Tr. at 42:14-43:12.  But he admitted ██████████████
██████████████████████  *Id.* at 43:13-21.  Furthermore, Plaintiff has produced no documents setting forth a delegation from Mr. Ruhl to Mr. Schultz of authority to enter into an agreement for the transfer of patents owned by PRF to Plaintiff.  And ST is not aware of any such document posted online by the UPO.

12.      Mr. Schultz also asserted at his deposition that ████████████████████
████████████████████████████████████████████████████████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

█████ *Id.* at 31:2-33:19.  That document is entitled Delegation of the President's Authority and states in relevant part regarding delegation to the General Counsel:

> IX.  The following assignments of administrative authority and responsibility are hereby delegated to General Counsel to assist and act for the President, except for such duties as may be assigned directly by the Board:
>
> > A.  Chief legal officer for the University system.
> >
> > B.  Management and oversight of the University's legal function.
> >
> > C.  Delivery of legal services to the University, including internal legal support and procurement of legal services by external providers.
> >
> > D.  Review of University System policies in collaboration with the Vice President for Ethics and Compliance, including comprehensive review of existing policies and policy-making process.

Ex. 7 at 7.  However, that document also states that authority regarding "[a]ll matters related to the Purdue Research Foundation" is retained by the President and thus not delegated to anyone, including Mr. Schultz, the General Counsel, or Mr. Ruhl, the Treasurer.  *Id.* at 3.  And the document also states:  "Any changes, temporary or permanent, in the delegations of authority and responsibility to members of the executive staff of the University as set forth in this policy must have advance written approval from the President."  *Id.* at 9.

13.    Plaintiff has produced no documents purporting to alter the retention of authority for all matters related to PRF by the President, or setting forth a delegation from the President (or anyone else) to Mr. Schultz of authority to enter into an agreement for the transfer of patents owned by PRF to Plaintiff.  And ST is not aware of any such document posted online by the UPO.

## II.    LEGAL STANDARDS

"Standing to sue is a threshold requirement in every federal action."  *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005).  As the purported patent owner, Plaintiff

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

bears "the burden to show necessary ownership rights to support standing to sue." *Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012).  To meet its burden, Plaintiff "must demonstrate that it held enforceable title to the patent at the inception of the lawsuit" or else its infringement claims must be dismissed for lack of jurisdiction.  *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010).

The plaintiff must satisfy the requirements of both Article III of the U.S. Constitution (constitutional standing) and 35 U.S.C. § 281 (statutory standing).  *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234-36 (Fed. Cir. 2019).  Constitutional standing determines whether a plaintiff "may invoke the judicial power" at all, while statutory standing "establish[es] when a party may obtain relief under the patent laws."  *Id.* at 1235.

To meet the "injury in fact" requirement for constitutional standing, the plaintiff must possess exclusionary rights in the asserted patent.  *Id.* at 1234 (citing *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010)).  "Exclusionary rights" are "the ability to exclude others from practicing an invention or 'to forgive activities that would normally be prohibited under the patent statutes.'"  *Id.* (quoting *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1342 (Fed. Cir. 2007)).  Constitutional injury in fact "arises from invasion of a legally protected interest" and thus "occurs when a party performs at least one prohibited action with respect to the patented invention that violates these exclusionary rights."  *Morrow*, 499 F.3d at 1339 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Absent exclusionary rights to the patent, the plaintiff cannot be injured by an alleged infringer.  *Morrow*, 499 F.3d at 1340-41.  Thus, a plaintiff lacking exclusionary rights cannot have constitutional standing because no injury in fact can occur.  *See id.*  This deficiency cannot be cured by joining the patent owner. *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193-94 (Fed. Cir. 2007) (holding that an entity

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

that is neither the owner nor an exclusive licensee has no standing, even as a co-plaintiff).

The plaintiff's lack of constitutional standing can be raised at any time by a defendant, or *sua sponte* by the Court. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994); *Barlow & Haun, Inc. v. United States*, 805 F.3d 1049, 1060 n.5 (Fed. Cir. 2015). A challenge to a plaintiff's constitutional standing is properly raised under Federal Rule of Civil Procedure 12(b)(1). *Williamson v. Tucker*, 645 F.2d 404, 412-15 (5th Cir. 1981); *Uniloc 2017 LLC v. Google LLC*, No. 4:20-cv-05339-YGR, at *1, *6 (N.D. Cal. Dec. 22, 2020) (attached as Ex. 8).[1] Where, as here, the standing challenge is "factual" rather than "facial," the Court "does not assume the correctness of the factual allegations in the complaint. Rather, in the case of a factual challenge to jurisdiction, the question is whether the facts actually establish that the court has jurisdiction over the matter. In that setting, the burden is on the plaintiff to show jurisdiction, and parties may offer factual evidence bearing on that question." *Script Security Solutions, LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776 at *2 (E.D. Tex. Oct. 31, 2016); *see also Williamson*, 645 F.2d at 412-15.

When determining the metes and bounds, including validity, of an agreement purporting to transfer a patent, courts apply the applicable state law. *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1320 (Fed. Cir. 2017) ("We apply state law to contractual disputes and interpretations of the parties' patent assignment agreements."). Under Indiana state law, when employees and/or officials of a state or local governmental body, including public

---

[1] An exclusive licensee may have constitutional standing. *Morrow*, 499 F.3d at 1340. Such a licensee must additionally prove that it has *statutory* standing by possessing "all substantial rights," such that it qualifies as the "patentee"; otherwise, the actual patentee is a necessary party who must join as a co-plaintiff. *Id.* A challenge to statutory standing may be brought under Federal Rule of Civil Procedure 12(b)(6). *See Lone Star*, 925 F.3d at 1235-36. These issues are not pertinent to the present motion because Plaintiff does not claim to be any kind of licensee, nor does it allege any facts that would support finding it to be a licensee.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

educational institutions created pursuant to Indiana law such as Purdue University, enter into a contract without the authority to do so, the contract is void. *Froeschke v. City of Vincennes*, No. 42C01 1105 PL 246, 2012 WL 8133613, at *3-4 (Ind. Cir. Dec. 20, 2012) (when city official without authority enters into contract with company, contract is void); *Rockwell v. MSD Southwest Allen County*, 737 N.E.2d 829, 832-34 (Ind. App. 2000) (when school official without authority enters into contract with individual, contract is void); *Peck-Williamson Heating & Ventilating Co. v. Steen School Tp. of Knox County*, 30 Ind. App. 637, 66 N.E. 909, 910 (Ind. App. 1903) (when township trustee without authority enters into contract with company, contract is void); *see also Black Knight Prods., Inc. v. Univ. of Illinois at Chicago*, 50 Ill. Ct. Cl. 406, 410-12 (1998) (under Illinois law, when state university agent without authority enters into contract with company, contract is void); *Franco v. State ex rel. Bd. of Regents of Univ. of Oklahoma*, 482 P.3d 1, 9-10 (2020) (under Oklahoma law, when state university official without authority enters into contract with individual, contract is void).

## III.   ARGUMENT

Immediate dismissal of this case is warranted as Plaintiff cannot establish it had standing to sue at the time this suit was filed. The purported pre-suit transfer of the asserted patent from PRF to Plaintiff is void, because Plaintiff's officer who allegedly agreed to the transfer lacked such authority. Because Plaintiff is a body of the State of Indiana, it has power to act only as state law authorizes it—and acts taken outside the scope of state authority are void. Because the agreement is void, Plaintiff did not own the asserted patent when the suit was filed, and therefore lacks standing. The proper remedy is dismissal of this action. *Post-hac* cure is not allowed.

### A.  Plaintiff's General Counsel, Steven Schultz, Lacked the Authority to Enter Into a Patent Transfer Agreement at the Time of the Alleged Transfer.

Because Plaintiff is a body of the State of Indiana, its governing structure is determined

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

by statute.  The Indiana Code provides that "[t]he board of trustees consists of ten (10) members," seven of whom are to be appointed by the governor, and three of whom are to be selected by the Purdue University alumni association.  Ind. Code § 21-23-3-1; *id.* § 21-23-3-3; *id.* § 21-23-3-4.  The Indiana Code requires that the Board President be selected by the Board from among the Trustees, Ind. Code § 21-23-4-1, and requires that the Board elect a Treasurer who is *not* a Trustee, *id.* § 21-23-4-2; *id.* § 21-23-4-3.  The Indiana Code further provides that "[t]he board of trustees of Purdue University may make all bylaws, rules, and regulations required or proper to conduct and manage Purdue University."  *Id.* § 21-27-7-5.

Operating pursuant to its statutory mandate, Plaintiff has established bylaws and rules dictating which individuals have authority to act on Plaintiff's behalf.  Under those bylaws and rules, there are three potential views of whose authority was required for the transfer agreement: the Board as a whole, the President, or potentially via proper, documented delegation by the Treasurer.  ST respectfully suggests the first is correct.  But, under any of these readings, Mr. Schultz lacked authority to enter into the assignment and agreement.

### 1. The Transfer Imposed Financial Obligations Greater than $2M, Thus Board Approval Was Required, and Not Obtained.

Pursuant to Plaintiff's bylaws, any agreement imposing financial obligations on Plaintiff of more than $2M has to be approved by the Board.  SOF, ⁋9.  Plaintiff's bylaws provide that "[e]xcept as otherwise *expressly authorized by resolution of the Board or these Bylaws*," specified "types of contracts and other written instruments shall require specific approval and authorization by the Board."  Ex. 4, Plaintiff's Bylaws Art. VII § 1 (emphasis added).  This includes "all … contracts imposing financial obligations on the part of the University or the Corporation in excess of $2,000,000."  *Id.* § 1(e).  The bylaws specify that "[t]he Treasurer may execute all other contracts imposing financial obligations"—*i.e.*, contracts imposing financial

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

obligations in an amount less than $2,000,000—"as approved by the Board." *Id.*

The transfer agreement is properly viewed as imposing over $2M in financial obligations on Plaintiff at the time of transfer for several reasons. First, Mr. Shore was retained in ███ Ex. 9, Halladay Tr. at 30:19-23 (████████████████████████████████████ ███), so, certainly by June 2021, Plaintiff had the engagement agreement spelling out the financial obligations to him and his firm to litigate both this case and the parallel case against Wolfspeed, each asserting the '633 patent. Of course the prosecution of two separate patent litigation suits in two different forums against two different companies must be reasonably expected to exceed $2M. Second, ████████████████████████████ ████████████████. Ex. 10, Sept. 27, 2005 Ltr. at 1-2. If Plaintiff's damages ask is to be believed (its expert report seeks ████████████, Ex. 11, Holzen Rpt. at 6), that commitment to the named inventors is also over $2M on its own. Third, the assignment committed Plaintiff to cover IPR defenses. Ex. 1 at 3 (purporting to assign "right to [] defend (including in any *Inter Partes Review*)" the '633 patent). Both ST and Wolfspeed filed IPRs, which Plaintiff defended and is defending, and the Wolfspeed IPR is ongoing with a substantial record of proceedings so far. Those are yet more financial obligations.

Given that the transfer is properly viewed as imposing over $2M in financial obligations on Plaintiff, "specific approval and authorization by the Board" was required under the plain terms of Plaintiff's bylaws. Ex. 4, Plaintiff's Bylaws Art. VII § 1(e). But Plaintiff has unequivocally stated that "neither Mr. Waite nor Mr. Schultz were required (or did) inform their respective boards about the assignment before obtaining it" and that "no Trustee or PRF board member was required or did approve of the assignment." SOF, ¶7. It is undisputed, therefore, that no "specific approval and authorization" by the Board was provided.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

  **2.** **The "Delegation of the President's Authority" Did Not Authorize Mr. Schultz to Accept the Assignment.**

Plaintiff's primary argument in support of Mr. Schultz's authority is based on the document entitled Delegation of the President's Authority.  SOF, ¶12.  Plaintiff points to the delegation in that document of certain legal functions to the General Counsel.  That argument fails, however, because the assignment imposes obligations in excess of $2,000,000—which means that "*specific* approval and authorization by the Board" was required.  Ex. 4, Plaintiff's Bylaws Art. VII § 1(e) (emphasis added).  But regardless, even on its own terms, the Delegation of the President's Authority does not authorize Mr. Schultz to accept the assignment at issue.

To the contrary, that document dooms any claim that Mr. Schultz was delegated authority to enter into a transfer agreement with PRF.  That document begins:  "The Board of Trustees, which by law is granted all powers and responsibility for the operation and management of the University, has in turn made specific delegations of authority to the President."  Ex. 7 at 3.  It then states: "The following authorities are retained by the President: … H. All matters related to the Purdue Research Foundation."  *Id.*  Thus, whatever authority was delegated to the General Counsel pursuant to that document, it certainly does not include entering into an agreement with PRF to transfer a patent.  Authority for such matters are explicitly retained *by the President*, and *not* delegated to the General Counsel, or anyone else, such as the Treasurer to then sub-delegate.

Here, Plaintiff's interrogatory responses confirm that the President was not involved in accepting the assignment, as Plaintiff there admitted that "[t]he only discussions regarding the assignment involved Kenneth Waite, Esq. of PRF and Steven Schultz, Esq.[, and that n]o others were involved."  SOF, ¶7. Moreover, the Delegation document states that any changes to the scope of delegation must be in writing, SOF, ¶12, and Plaintiff has produced no documents evidencing any such changes, SOF, ¶13.  It is clear, therefore, that the President did not authorize

the assignment, even if he had authority under the bylaws and Delegation document to do so—

and further that the Delegation document did not create any relevant authority in Mr. Schultz.

> **3.     Even if the Transfer is Viewed as Imposing No Financial Obligations
> and Not a "Matter Involving Purdue Research Foundation," Mr.
> Schultz Did Not Have Authority to Approve It, Absent Documented
> Delegation of Authority from the Treasurer, Which Does Not Exist.**

Even if the Court finds that the transfer agreement imposes no financial obligations on

Plaintiff (which it does), and further finds that the transfer agreement is not a "matter involving

Purdue Research Foundation" (which, again, it is), Plaintiff still could not establish Mr. Schultz

had authority to enter into the purported transfer agreement.  In that world, the bylaws still do *not*

assign that authority to Mr. Schultz.  Furthermore, Plaintiff's delegation policy requires any

delegation from the Treasurer (or any officer who does have authority under the bylaws) to Mr.

Schultz to be documented in writing and posted online by the UPO.  SOF, ¶¶9-10. ██████

████████████████████████████████████ Plaintiff has produced no such

documentation, and ST has been unable to find any such documentation posted online by UPO.

SOF, ¶11.  Thus, even if the authority to enter into the contract was not retained by the Board as

a whole or by the President, and even if the Treasurer did have the authority, no document

authorized Mr. Schultz to enter into the transfer agreement, and thus it is void.

> **B.     Because Mr. Schultz Lacked Authority to Enter into the Assignment on
> Plaintiff's Behalf, the Contract Is Void.**

For any or all of the reasons set forth above, Mr. Schultz lacked authority to enter into the

transaction on Plaintiff's behalf—and the purported transfer agreement is therefore void *ab*

*initio*.  *Rockwell*, 737 N.E.2d at 832-34; *Froeschke*, 2012 WL 8133613, at *3-4; *Peck-*

*Williamson*, 66 N.E. at 910; *Black Knight Prods.*, 50 Ill. Ct. Cl. At 410-12; *Franco*, 482 P.3d at

9-10.

The Indiana Supreme Court has held that Purdue University is "an educational institution

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

sustaining relations to the people at large analogous to those occupied by other public schools and colleges of the state, maintained at public expense, and one in which all the inhabitants of the state have a common interest.  The general principles underlying the educational system of the state are, consequently, applicable to the government and control of Purdue University, and, in the absence of express legislative provisions, must be invoked in determining the powers which that institution may exercise."  *Russell v. Trustees of Purdue Univ.*, 201 Ind. 367, 382, 168 N.E. 529, 534 (Ind. 1929).  As the Seventh Circuit explained in a ruling applying Indiana law, public educational institutions are different from private corporate entities, in that they simply lack power to take actions that are unauthorized by the statutes that created them—and therefore agency principles such as apparent authority or ratification do not apply.  *Morgan v. S. Bend Cmty. Sch. Corp.*, 797 F.2d 471, 479 (7th Cir. 1986).  As the court explained, "[a] decision 'can be binding only on the school officers to do what the statute authorizes, in the manner prescribed, and all who deal with such school officers do so at their peril and take notice of the extent of their authority. … *Persons contracting with school trustees are bound to take notice that their powers are limited by law.*'"  *Id.* (emphasis added) (quoting *Bd. of School Comm'rs v. State ex rel. Wolfolk*, 199 N.E. 569, 572 (Ind. 1936)).

For instance, in *Rockwell*, a school official entered into an employment contract with an individual without obtaining board approval, despite the fact board approval was required.  *Rockwell*, 737 N.E.2d at 832-34.  In a suit on the contract by the individual, the court held the contract void.  *Id.* at 834.  It did so in the face of the individual's argument that it reasonably appeared the official had authority.  In rejecting that argument, the court relied on a long line of authority holding that persons dealing with state and local governmental bodies are charged with knowing the powers of the entities and the authority of their agents.  *Id.* ("Therefore, because the

business manager in our case lacked the requisite authority and [the plaintiff] was required to take notice of the laws governing the school in making contracts, the trial court properly granted summary judgment in favor of [the school].”); *see also Froeschke*, 2012 WL 8133613, at *3-4 (city official); *Peck-Williamson*, 66 N.E. at 910 (township trustee).

So too here, the Indiana Code explicitly established the Board of Trustees, as well as the offices of President and Treasurer, and directed how those offices are to be filled.  Yet Plaintiff now seeks to elide these statutory differences, arguing that one office can exercise the roles assigned in Plaintiff's own bylaws to another.  Where Plaintiff purports to enter a contract—but fails to comply with the limits on authority in its bylaws—the resulting contract is void.[2]

It is surely no surprise to Plaintiff and PRF that state entities are different from private ones.  Indeed, PRF was formed as a private entity, separate from Plaintiff, for the purpose of (among other things) “protect[ing]” and “[m]anaging” Purdue's intellectual property.  *See* About PRF, online at https://prf.org/about/index.html.  Yet Plaintiff and PRF chose to depart from that practice with the '633 patent.  Plaintiff admitted the reason it attempted to transfer the asserted patent from PRF to Plaintiff and sue in Plaintiff's name, rather than in PRF's name, was to

████████████████████████████████████████████████████

████████████████████.  Ex. 13, Waite 30(b)(1) Tr. at 78:22-79:5.  But another feature of state entities is that their authority to act is circumscribed by law.  And where an entity like Plaintiff fails to comply with the procedural requirements imposed in the bylaws created through its statutory authority, that action is void and without legal effect.  For these reasons, the

---

[2] In *Rockwell*, the school body was a state secondary school, not a state university, but the same holds true for state universities, as shown by decisions from other states with similar laws in cases involving their state universities.  *Black Knight*, 50 Ill. Ct. Cl. at 410-12; *Franco*, 482 P.3d at 9-10.

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

assignment agreement here was void *ab initio*—and Plaintiff lacks standing to sue.

### C.  The Proper Remedy is Dismissal – Lack of Standing at the Time of Filing Cannot be Cured.

If the Court agrees that Mr. Schultz lacked authority to enter into the purported transfer agreement on behalf of Plaintiff and thus the agreement is void, the case must be dismissed:

> A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit.  … [W]e have held that in a patent infringement action, "the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit" to assert standing.  Thus, "if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured" after the inception of the lawsuit.

*Abraxis*, 625 F.3d 1364 (internal citations omitted).  Indeed, in *Abraxis*, the plaintiff tried to cure its lack of standing by having its affiliated company (that owned the patent on the day suit was filed) execute a *nunc pro tunc* assignment after suit was filed purporting to be retroactive to before the suit was filed.  The Federal Circuit rejected that as insufficient, even though the entities were closely related.  *Id.* at 1366 ("It was a futile attempt by the parties to correct a critical error by a *nunc pro tunc* assignment. … Common corporate structure does not overcome the requirement that even between a parent and a subsidiary, an appropriate written assignment is necessary to transfer legal title from one to the other.").  Anything Plaintiff and PRF might do here attempting to remedy Plaintiff's similar critical error should also be found unavailing.

Moreover, should Plaintiff magically come forward in opposition with any previously unproduced documents purporting to establish that Mr. Schultz had authority, the Court should preclude Plaintiff from relying on such.  In response to ST's discovery dispute charts, the Court twice ordered Plaintiff to produce all documents related to this issue.  First, on January 18, 2023, the Court ordered Plaintiff to, by January 31, supplement its interrogatory responses to fully describe the circumstances surrounding the purported transfer agreement, "as well as produce all corresponding documents."  Dkt. 248 at 2.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

On January 31, Plaintiff supplemented its interrogatory responses, but it produced no documents.  ST thus went back to the Court and successfully obtained an order requiring Plaintiff's to gather and produce:

> Purdue Research Foundation's ("PRF") bylaws ***and all documents from Trustees and PRF relating to the authority (or lack thereof) of Mr. Waite and Mr. Schultz to enter into any agreement for the transfer of the asserted patent.***

Dkt. 283 at 1 (emphasis added).  Plaintiff was to gather the documents by March 24 and produce them that same day unless it objected that said documents were somehow outside the scope of any of ST's RFPs.  *Id.*  Plaintiff did object, forcing ST to prepare another dispute chart, but when the date came (March 31) for Plaintiff to provide its portion of that chart, Plaintiff withdrew its objections and produced documents. Ex. 12, Lahad Email at 1 (stating: "we will agree to produce PRF's by-laws and the authority documents.  We will get those to you this evening.").  Thus, Plaintiff should have produced any documents it might now want to rely on by March 31 at the absolute latest.  Therefore, even if fact discovery had not closed long ago (it did), Plaintiff should be held to have forfeited the ability to inject any new documents on this issue.  *E.g.*, Fed. R. Civ. P. 37(b)(2)(A) (if party "fails to obey an order to provide or permit discovery," court may enter order, among other things, "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence").

## IV.   CONCLUSION

ST respectfully requests that the Court grant this motion and immediately dismiss the case.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dated:  August 8, 2023                    Respectfully submitted,

By:  /s/  Michael D. Hatcher
    Michael J. Bettinger
    California Bar No. 122196
    mbettinger@sidley.com
    SIDLEY AUSTIN LLP
    555 California Street, Suite 2000
    San Francisco, California 94104
    (415) 772-1200
    (415) 772-7400 – Fax

    Michael D. Hatcher
    Texas Bar No. 24027067
    mhatcher@sidley.com
    SIDLEY AUSTIN LLP
    2021 McKinney Avenue, Suite 2000
    Dallas, Texas 75201
    (214) 981-3300
    (214) 981-3400 – Fax

    Richard A. Cederoth
    Texas Bar No. 6185199
    rcederoth@sidley.com
    SIDLEY AUSTIN LLP
    One South Dearborn
    Chicago, Illinois 60603
    (312) 853-7026
    (312) 853-7036 – Fax

    Max Ciccarelli
    Texas Bar No. 00787242
    max@ciccarellilawfirm.com
    CICCARELLI LAW FIRM
    100 North 6th Street, Suite 502
    Waco, Texas 76701
    (214) 444-8869

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

Thomas N. Tarnay
Texas Bar No. 24003032
ttarnay@tarnaylaw.com
THOMAS TARNAY PLLC
2103 Virginia Place
Plano, Texas 75094
(214) 395-8212

**ATTORNEYS FOR DEFENDANTS
STMICROELECTRONICS
INTERNATIONAL N.V. and
STMICROELECTRONICS, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, do hereby certify that a true and correct copy of the foregoing

document was served on all parties to this action via electronic mail on August 8, 2023.

 */s/  Michael D. Hatcher*
Michael D. Hatcher

17